THE HON. MARSHA J. PECHMAN

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

TRAVIS MICKELSON, DANIELLE H. MICKELSON, and the marital community thereof

                    Plaintiffs,

vs.

CHASE HOME FINANCE LLC, an unknown entity; JPMORGAN CHASE BANK, N.A., a foreign corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a foreign corporation; NORTHWEST TRUSTEE SERVICES, INC., a domestic corporation; CHICAGO TITLE, an unknown corporation; ROUTH CRABTREE OLSEN, P.S., a domestic personal services corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, a corporation; JEFF STENMAN and JANE DOE STENMAN, individually, and the marital community comprised thereof; VONNIE MCELLIGOTT, and JOHN DOE MCELLIGOTT, individually, and the marital community comprised thereof; RHEA S. PRE and JOHN DOE PRE, individually, and the marital community

NO.  2:11-cv-01445

AMMENDED COMPLAINT

DEMAND FOR JURY

AMENDED COMPLAINT - 1

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

comprised thereof; and, ROBOSIGNERS
DOE 1-10

                                    Defendants.

## I.  NATURE AND SUMMARY OF ACTION

1.1.    On March 25, 2011, plaintiffs TRAVIS MICKELSON and DANIELLE MICKELSON ("Mickelsons") were told they lost their family home on Camano Island to a non-judicial foreclosure.

1.2.    This happened after defendants CHASE HOME FINANCE LLC, an unknown entity; JPMORGAN CHASE BANK, N.A., a foreign corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a foreign corporation; NORTHWEST TRUSTEE SERVICES, INC., a domestic corporation; CHICAGO TITLE, an unknown corporation; ROUTH CRABTREE OLSEN, P.S., a domestic personal services corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, a corporation;  JEFF STENMAN and JANE DOE STENMAN and the marital community comprised thereof;  VONNIE MCELLIGOTT and JOHN DOE MCELLIGOTT and the marital community comprised thereof;  RHEA S. PRE and JOHN DOE PRE and the marital community comprised thereof; and, ROBOSIGNERS DOE 1-10 engaged in a pattern of unfair and deceptive practices, criminal profiteering, torts, and breaches of contract which were in violation of Washington law as more fully enumerated herein.

1.3.    Plaintiffs allege the above defendants, along with many other mortgage brokers, banks, servicers, robo-signers, and trustees, together with defendant MERS, committed (in concert) misconduct in virtually every aspect of their residential lending, securitization, servicing, collection and foreclosure operations – from originating residential loans and

AMENDED COMPLAINT - 2

security instruments; to servicing of residential loans and security instruments; collecting miscalculated loan payments; collecting other money from borrowers by promising modifications; and/or, threatening to foreclose or actually foreclosing on owners' personal residences. These activities are in violation of a myriad of federal statutes, Washington statutes, common law causes of action, and equitable doctrines each of which will be more fully set forth herein.

1.4.    The plaintiffs allege that at the time they purchased their private residence until today the home residential lending, servicing, collections, and foreclosure industry was, and still is, engaged in a broad range of unfair, deceptive, and criminal practices that have injured U.S. and Washington consumers, including plaintiffs.  These practices include:

*    structured mortgage loans that relied on deceptive terms and underwriting to artificially lower plaintiffs and other borrowers' initial loan payments;

*    misleading marketing and sales techniques to convince persons, including the plaintiffs, to take out risky loans;

*    misrepresenting to investors of mortgage-backed securities the characteristics of the plaintiffs' obligation and security instrument, and other such assets comprising investment pools, and thereby misrepresenting the riskiness and providing fallacious financial figures;

*    failing to follow Washington's Deed of Trust Act by creating "uniform" "Deed of Trust" forms, such as the documents[1] the Mickelsons were required to sign. Such documents were not consistent with the provisions of Wash. Rev. Code § 61.24, *et. seq.*

---

[1] The deed of trust document plaintiffs were required to sign is titled "WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS".

AMENDED COMPLAINT - 3

These inconsistencies include, but are not limited to: (a) naming MERS as both the beneficiary and legal owner of the deed of trust with the power to foreclose, and (b) providing in the uniform language that "the Lender may from time to time appoint successor trustee to any appointed hereunder who has ceased to act."

*    working in concert to create non-judicial foreclosure system where the person or entity purporting to be the trustee is not the trustee under the terms of their deed of trust agreement and/or the Deed of Trust Act, but only the "bought and paid for agent" of the entity who seeks to take possession of the plaintiffs' home, and homes of persons like plaintiffs.

*    employing the use of substantively and procedurally unconscionable agreements in order to facilitate non-judicial foreclosures of homeowners' homes, including plaintiffs' home;

*    deceptively and unfairly utilizing defendant MERS in such a way as to prevent borrowers from knowing the identity of those persons who were the true beneficiaries of deed of trusts pursuant to Washington's Deed of Trust Act thereby preventing any interaction between homeowners and the holders of their notes;

*    engaging in "robo-signing" practices. The term "robo-signing" describes the robotic process of the mass production of false and forged execution of mortgage assignments, endorsement's, satisfactions, affidavits, and other legal documents related to mortgage foreclosures and legal matters being created by persons without knowledge of the facts being attested to. It also includes accusations of notary fraud wherein the notaries notarize the affidavits and signatures of so-called robo-signers before or after the robo-

AMENDED COMPLAINT - 4

signers actually submit affidavits and sign documents.   Robo-signing of documents began in the late 1990s and continues today.[2]

\*   Banks and servicers taking undisclosed kickbacks from inflated insurance payments which borrowers, including the plaintiffs, were required to pay under their note and/or deed of trust;

\*   falsely promising consumers, including the plaintiffs, that their loans could be modified and that loan servicers and beneficiaries would make reasonable attempts to accommodate modifications which would reduce their monthly payments;

\*   falsely promising consumers, including the plaintiffs, that their initial "trial" modification would be made permanent if and when they made the required payments on those plans, but then failing to convert those modifications and keeping these additional monies;

\*   falsely assuring the plaintiffs and other consumers like them, that their homes would not be foreclosed while their requests for modifications were pending;

\*   misrepresenting the eligibility criteria for modifications and providing consumers, including the plaintiffs, with inaccurate and deceptive reasons for denying their requests for modifications;

\*   falsely notifying consumers or credit reporting agencies that consumers, including the plaintiffs, were in default when they were not; and,

---

[2] Robo-signing documents in an attempt to create a proper chain of title is a practice which began in the late nineties and which apparently continues today in the home lending, servicing, collection, foreclosure industry notwithstanding illegality and continuing disregard for the law and/or the settlement agreements banks have made with various governmental entities.  See, e.g., Kate Berry,  Robo-Signing Redux: Servicers Still Fabricating Foreclosure Documents, American Banker, Sept. 1, 2011, available at http://www.americanbanker.com/issues/176_170/ (click on link to article posted 5:47 pm EDT)(Exhibit H).

AMENDED COMPLAINT - 5

\*    offering the plaintiffs and other consumers modifications on one set of terms, but then providing them with agreements on different terms, or misrepresenting that consumers have been approved for modifications.

1.5.    Taken together and separately, defendants' deceptive practices have resulted in an explosion of foreclosures in the United States.  These foreclosures have had a devastating impact on homeowners, communities, and the economy; stripping homeowners of their assets (including those who do not have loans originated or serviced by defendants, but whose property values have fallen dramatically), dislocating families, blighting neighborhoods, and deeply disrupting the housing markets. See, e.g.,  Ctr. for Responsible Lending, The Cost of Bad Lending in Nevada (Sept. 7, 2010),  http://www.responsiblelending.org/mortgage-lending/tools-resources/factsheets/  (last visited Oct. 24, 2011) (select "Washington") (estimating total loss of home equity wealth in Washington due to nearby foreclosures at 19.5 billion for 2009-2012); (select "Nevada") (estimating total loss of home equity wealth in Nevada due to nearby foreclosures at $54.4 billion for 2009-2012);   (select "Florida") (estimating total loss of home equity wealth in Florida due to nearby foreclosures at $331.3 billion for 2009-2012).

1.6.    The Plaintiffs, and others, have been injured by the toxic home lending practices identified above, as well as, by other acts or failures to act, as are more fully set forth herein.[3]

---

[3] The allegations set forth in this "Nature and Summary of Action" are supported by 1.) Complaint on behalf of Federal Housing Finance Agency as Conservator for the Federal National Mortgage Association and Federal Home Loan Mortgage Corporation (hereafter FHFA) v. Citigroup, et al. (filed September 2, 2011); (attached as exhibit I) Complaint on behalf of FHFA v. JP Morgan Chase et. al. (filed September 2, 2010) (attached as exhibit J); Complaints on behalf of FHFA against the following multiple defendants: Ally Financial Inc. f/k/a GMAC, LLC, Bank of America Corporation,  Barclays Bank PLC, Countrywide Financial Corporation, Credit Suisse Holdings (USA), Inc., Deutsche Bank AG, First Horizon National Corporation, Goldman Sachs & Co., HSBC North America Holdings, Inc., G.E. Electric, Merrill Lynch & Co.; First Franklin Financial Corp.; Morgan Stanley; Nomura Holding America Inc.; The Royal Bank of Scotland Group PLC; and Société Générale (filed on September 3, 2010) (Not attached as exhibits); Complaint in State of Washington v. Countrywide Financial

AMENDED COMPLAINT - 6

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

## II.  PARTIES AND JURISDICITION

2.1.     Plaintiffs TRAVIS MICKELSON and DANIELLE H. MICKELSON ("Mickelsons") are married couple and residents of Camano Island, Washington.

2.2.     The Mickelsons reside in the property which is a subject of their complaint, located at: 426 Ezduzit Lane, Camano Island, WA 98282, described as:

> PARCEL A: THAT PORTION OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 32 NORTH, RANGE 2 EAST OF WILLAMETTE MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 25: THENCE SOUTH 89 DEGREES 54'20" EAST ALONG THE SOUTH LINE OF SAID SECTION 25, 329.60 FEET; THENCE NORTH 0 DEGREES 27'18" WEST 30.00 FEET TO NORTHERLY MARGIN OF THE CROSS ISLAND COUNTY ROAD; THENCE CONTINUE NORTH 0 DEGREES 27'18" WEST 316.45 FEET TO THE TRUE POINT OF BEGININNG; THENCE CONTINUE NORTH 0 DEGREES 27'18" WEST 158.22 FEET; THENCE SOUTH 89 DEGREES 55'15" EAST 329.98 FEET TO THE EAST LINE OF SAID SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER THENCE SOUTH 0 DEGREES 24'37" EAST ALONG SAID EAST LINE, 158.25 FEET TO A POINT THAT IS SOUTH 89 DEGREES 54'56" EAST FROM THAT TRUE POINT OF BEGINNING; THENCE NORTH 89 DEGREES 54'56 WEST 329.86 FEET TO THE TRUE POINT OF BEGINNING. PARCEL B: AN EASEMENT FOR A ROAD INGRESS AND EGRESS AND PUBLIC AND PRIVATE UTILITIES BEING 60 FEET IN WIDTH FROM THE NORTHERLY MARGIN OF THE CROSS ISLAND COUNTY ROAD TO THE NORTH LINE OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 32, RANGE 2 EAST OF THE WILLAMETTE MERIDIAN, THE CENTERLINE OF SAID 60 FOOT EASEMENT IS DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 25; THENCE SOUTH 89 DEGREES 54'20" EAST ALONG THE SOUTH LINE OF SAID SECTION 25, 329.60 FEET; THENCE NORTH 0 DEGREES 27'18" WEST 30.00 FEET SAID

---

Corporation, et. al., Superior Court of Thurston County, Cause no. 09-2-01690-6 (attached as exhibit K); Assurance of Discontinuance in In the matter of Wells Fargo Bank (attached hereto as exhibit L); Complaint in State of Washington v Recon Trust, King County Superior Court No. 11-2-26867-5; (attached as exhibit M); Second amended complaint in State of Nevada v. Bank of America Corporation, et. al. (attached as exhibit N); Complaint in American Home Mortgage Servicing, Inc. v. Lender Processing Services, Inc., and Docx, LLC (attached as exhibit O).

AMENDED COMPLAINT - 7

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

NORTHERLY MARGIN OF THE CROSS ISLAND COUNTY ROAD AND THE TRUE POINT OF BEGINNING OF SAID CENTERLINE; THENCE CONTINUE NORTH 0 DEGREES 27'18 WEST 632.89 FEET TO THE NORTH LINE OF SAID SUBDIVISION AND THE TERMINUS OF SAID CENTERLINE. SITUATED IN ISLAND COUNTY, WASHINGTON.

(hereafter referred to as the "Plaintiffs' Property").

2.3.     Plaintiffs executed two documents which are subjects of this complaint. Plaintiffs' Promissory Note, an old copy is attached hereto as exhibit A and incorporated herein by reference (hereafter referred to as "Note"); and Plaintiffs' Deed of Trust, an old copy attached hereto as exhibit B and incorporated herein by reference (hereafter referred to as "Deed of Trust").

**i.     Trustee appointed under deed of trust.**

2.4.     Defendant CHICAGO TITLE is either a foreign or domestic corporation doing business in Island County, State of Washington. Chicago Title is the trustee identified in the plaintiffs' original deed of trust (hereafter referred to as "Original Trustee" or "Chicago Title").  A title company appeared on behalf of Chicago Title by and through their attorney Erin McDougal Stines with Fidelity National Law Group, located at 1200 6th Ave Ste 620, Seattle, WA 98101. Chicago Title, through their attorney, filed a motion to dismiss plaintiffs' original complaint pursuant to Fed. R. Civ. Pro. 12(b)(6).

2.4.1.     On October 18, 2011, Counsel for Chicago Title filed a corporate disclosure statement pursuant to Fed. R. Civ. P. 7.1 identifying: Corporate Parent Fidelity National Title Group, Inc., Corporate Parent Fidelity National Financial, Inc., Corporate Parent Chicago National Title and Trust Company for Chicago Title.

**ii.     Purported successor trustee**

AMENDED COMPLAINT - 8

2.5.     Defendant NORTHWEST TRUSTEE SERVICES, INC (hereafter referred to as "purported trustee" or "Northwest Trustee Services") is incorporated under the laws of the State of Washington and is doing business in Island County, State of Washington. Northwest Trustee Services has on multiple occasions purported to be a trustee authorized under Wash. Rev. Code § 61.24, *et. seq.* The purported trustee agents, recorded in the office of the Auditor of Island County, Washington:

2.5.1.     "Limited Power of Attorney" under Auditors File No. 4152512, on October 28, 2005; a copy is attached hereto as exhibit C and incorporated herein by reference;

2.5.2.     "Assignment of Deed of Trust" under Auditors File No. 4236910, on September 19, 2008; a copy is attached hereto as exhibit D and incorporated herein by reference;

2.5.3.     "Assignment of Successor Trustee" under Auditor's File No. 4236911 on September 19, 2008; a copy is attached hereto as exhibit E and incorporated herein by reference;

2.5.4.     a "Notice of Trustee Sale" of the Plaintiffs' Property under Auditor's File No. 4237228, on September 25, 2008; a copy is attached hereto as exhibit F and incorporated herein by reference;

2.5.5.     a "Notice of Trustee Sale" of the Plaintiffs' Property under Auditor's File No. 4280389, on September 7, 2010; a copy is  attached hereto as exhibit G and incorporated herein by reference;

2.6.     The purported trustee sold the Plaintiffs' Property at public auction on March 25, 2011; and, granted or conveyed a "Trustees Deed" to defendant FEDERAL HOME LOAN MORTGAGE CORPORATION.

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

### iii.  Alleged Beneficiaries

2.7.     Defendant CHASE HOME FINANCE LLC, purported to be the assigned or successive "beneficiary" of the Mickelson's deed of trust from MERS and/or alleges to be the "holder" or "owner" of the Mickelson's note which are the subject of this action (hereafter referred to solely as "Chase" or "Alleged Beneficiary"). Chase is a foreign limited liability company whose principal location is purported to be Columbus, Ohio. On information and belief, Chase is doing business in Island County, State of Washington, without registering as a foreign limited liability company with Washington's Secretary of State. Chase appeared by and through their attorneys Fred B. Burnside and Rebecca J. Francis with Davis Wright Tremaine, 1201 Third Ave Ste 2200, Seattle, WA 98101-3045.

2.8.     Defendant JPMORGAN CHASE BANK, N.A., (hereafter referred to as "JPMorgan Chase") is a national banking association, a wholly-owned bank subsidiary of JPMorgan Chase & Co., a Delaware Corporation, and doing business in Island County, State of Washington. At various times, JPMorgan Chase was purported to be at times: the servicer, the assigned or successive beneficiary of plaintiffs' Deed of Trust and/or holder of their Note. JPMorgan Chase Bank appeared by and through their attorneys Fred B. Burnside and Rebecca J. Francis with Davis Wright Tremaine, 1201 Third Ave Ste 2200, Seattle, WA 98101-3045.

2.9.     Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is and was at all times material hereto, a corporation, incorporated under the laws of Delaware.[4] MERS is not authorized to do business in the State of Washington. MERS is

---

[4] What is MERS?

     MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, ***MERS becomes the mortgagee of record for participating***

AMENDED COMPLAINT - 10

purported to be a valid "nominee" and "beneficiary" under the plaintiffs' Deed of Trust. MERS appeared by and through their attorneys Fred B. Burnside and Rebecca J. Francis with Davis Wright Tremaine, 1201 Third Ave Ste 2200, Seattle, WA 98101-3045.

2.9.1.    On information and belief MERS, never possessed or was assigned the plaintiffs' Note or other borrowers' notes and obligations.

2.9.1.    On information and belief, MERS's database system was used by one or more unknown parties to assign or transfer a beneficial right or interest in the plaintiffs' Deed of Trust to one or more unknown parties without recordation in the Island County Assessor's office.

2.9.3.    MERS is compensated for its services through fees charged to participating MERS members.

2.10.    Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION (commonly and hereafter known as "Freddie Mac") is the alleged grantee of the Plaintiffs' Property by the Purported Trustee. Freddie Mac is a corporation chartered by Congress under 12 U.S.C. § 1452; and under section (c)(7) of the same may sue and be sued, complain and defend, in any State, Federal, or other court and is doing business in Island County, State of Washington.

---

*members through assignment of the members' interests to MERS*. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The *lenders retain the promissory notes, as well as the servicing rights to the mortgages*. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members. [...it has been argued that] In attempting to circumvent the statutory registration requirement for notice, MERS creates a system in which the public has no notice of who holds the obligation on a mortgage.

Mortgage Elec. Reg. Sys., Inc. v. Nebraska Depart. of Banking, 270 Neb. 529, 530, 704 N.W.2d 784 (2005)(emphasis supplied)(MERS is in essence a provider of online databases which purports to eliminate paper assignments). The legality of some of MERS's actions is under review in Washington State Supreme Court. See generally, Bain v. Metropolitan Mortgage Group Inc., et al. Supreme Court No. 86206-1 (June 24, 2011)(also exhibit AA to this complaint); Selkowitz v. Litton Loan Servicing, LP, et al., Supreme Court No. 86207-9 (July 27, 2010).

AMENDED COMPLAINT - 11

Freddie Mac purchases and holds mortgages and mortgage-related securities. Freddie Mac appeared by and through their attorneys Fred B. Burnside and Rebecca J. Francis with Davis Wright Tremaine, 1201 Third Ave Ste 2200, Seattle, WA 98101-3045.

2.10.1.    On information and belief Freddie Mac encourages or promotes the MERS system and certain uniform language in deeds of trust, including the Plaintiffs, as further alleged below.

2.10.2.    Investors in Freddie Mac's debt securities include investment managers, insurance companies, commercial and central banks, and pension funds.

2.10.3.    On information and belief, Freddie Mac claimed to have possession or an interest in either, and or both, the plaintiffs' Note and/or Deed of Trust prior to the March 25, 2011 sale.

### iii.   Servicers and Agents

2.11.    On June 3, 2006, Defendant Chase, claimed they were the "servicing" the Mickelson's obligations held by Defendant JPMorgan Chase. On information and belief, Chase, was only a servicer for Freddie Mac, who purported to hold the Mickelson's note or a beneficial interest in the Mickelson's Deed of Trust when the alleged trustee sent Notices of Trustee's Sale to the Plaintiffs.

2.12.    Defendant ROUTH CRABTREE OLSEN, P.S. (hereafter referred to as "debt collector attorneys" or "Routh Crabtree Olsen") is a law firm and Professional Services Corporation, principally based in Bellevue, Washington, and doing business in Island County. Debt collector attorneys appeared by Heidi E. Buck a lawyer employed by Routh Crabtree Olsen. Beginning on August 25, 2008, the ROUTH CRABTREE OLSEN, P.S. claimed they were a debt collector for Chase. At various times, the servicer requested payments from the

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

plaintiffs on behalf of Chase, offered to assist them in modifications, and/or represented they could foreclose on or evict the plaintiffs. On information and belief, the principal of debt collector attorneys was not the "beneficiary" under plaintiffs' Note and/or holder of the plaintiffs' Note.

2.13.     On information and belief JEFF STENMAN (hereafter known as "substitution trustee robo signer" or "Jeff Stenman") and JANE DOE STENMAN who is expected to be identified during discovery, and the MARITAL COMMUNITY COMPOSED; are residents of the State of Washington. Jeff Stenman is an employee of Defendant Northwest Trustee Services.

2.14.     VONNIE MCELLIGOTT (hereafter known as "MERS Vice President robo signer" or "Vonnie McElligott") and JOHN DOE MCELLIGOTT who is expected to be identified during discovery, and the MARITAL COMMUNITY COMPOSED; are residents of the State of Washington. Vonnie McElligott is an employee of Defendant Northwest Trustee Services.

2.15.     RHEA S. PRE (hereafter referred to as "Substitution Notary", "Assignment Notary", or "Rhea Pre") and JOHN DOE PREA, who is expected to be identified during discovery and the MARITAL COMMUNITY COMPOSED THEREOF, are residents of the State of Washington. Rhea S. Pre is an employee of Defendant Northwest Trustee Services.

2.16.     ROBOSIGNERS DOE 1-10, who are expected to be identified during discovery, engaged in a pattern of unfair and deceptive practices, criminal profiteering, and torts.

### iv.   Jurisdiction and Venue

2.18.     This court has jurisdiction under 28 U.S.C. 1331 because this complaint alleges civil actions arising under 15 U.S.C. 1692(a)(5); and ancillary jurisdiction under 28 U.S.C. § 1367 as the federal claim and ancillary claims form the same case or controversy as to the

AMENDED COMPLAINT - 13

rights of Chase and its agents to foreclose and transfer title to the Mickelson Property. Mickelson's reside in Island County, Washington, and at all material times to this complaint, the Defendants were doing business in Island County, Washington.

### III. FACTS

3.1.    Plaintiffs incorporate all preceding paragraphs of this complaint as if they were set forth herein.

3.2.    The Mickelsons' purchased the Plaintiffs' Property on or about November 22, 2005, and as of the filing of this complaint, reside therein with their two daughters.

**i.    Origination of Note and Deed of Trust.**

3.3.    On November 22, 2005, the Mickelsons executed an "ADJUSTABLE RATE NOTE" (exhibit A), with a principal of $403,500, 6.625% introductory rate with Lender MHL Funding Corp. MHL Funding Corp advised and/or encouraged the Plaintiffs to intentionally withhold certain information related to their income, debts and/or other financials and to apply for a stated income loan. "Stated income" applications were known in the industry during this time period as "liars loans" and were purposefully utilized to secure approval for home loans which lenders knew or should have known were likely to result in default.

3.4.    On information and belief, the type of loan offered and/or marketed to the plaintiffs by MHL Funding Corp. was "predatory" because: (1) the loan generated artificially lower monthly payments, which allowed Lender to reach less creditworthy customers, like the Plaintiffs, and increase the Lender's loan volume; (2) it allowed the Lender and its successors or assigns to charge consumers higher fees; (3) it included features that generated a higher rate of return in the MERS secondary market; and/or (4) which were more likely to result in consumer default and foreclosure of homes.

AMENDED COMPLAINT - 14

3.5.     The type of note MHL Funding Corp presented to plaintiffs, which they and others in the industry (including the defendants) knew or should have known was destined for complete default.

3.6.     The Mickelsons also executed a Deed of Trust (exhibit B), which, in event of default, agreed to transfer rights in the Plaintiffs' Property, by Chicago Titles' power of sale, to the beneficiary MERS.

**ii.    Transfer of Note and/or Deed of Trust**

3.7.     On information and belief, MERS never possessed the Note.[5]

3.8.     On information and belief, MERS's database system is a secondary market, or facilitates a secondary market, for transacting mortgages including the plaintiffs' deed of trust. Alternatively, full or partial interests in the Note and/or Deed of Trust's beneficial power of sale were severed and transferred one or more times to unknown persons.

3.8.1.   Based on information and belief, plaintiffs' Deed of Trust (exhibit B) went into the MERS database system for various purposes. One purpose was to conceal transactions of beneficial and contingent interests in the Plaintiffs' Property. Plaintiffs allege this process started shortly after executing the Deed of Trust.

3.8.2.   The Plaintiffs' Note, and other notes, were traded by two or more unknown entities who gathered unknown number of notes together into pools to create a mortgage backed security; one or more unknown entities were appointed to serves as trustees of Plaintiffs' pool; and one or more unknown entities underwrote the sale of that security to investors who purchased certificates or shares of the investment.

---

[5] See also, MERSCORP, INC., Rules of Membership, at *25-27 (effective July 22, 2011) available at: http://www.mersinc.org/files/filedownload.aspx?id=172&table=ProductFile (last visited Sept. 24, 2011)(attached hereto as Exhibit AB.

AMENDED COMPLAINT - 15

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

Figure 1 is provided for demonstrative purposes illustrating MERS transactions.  It is also attached hereto as exhibit P.

**Figure 1**



3.8.3.   On information and belief, consumers' mortgages/deeds of trust (including plaintiffs) were never assigned to some of the entities that purchased them, for several reasons:

(a) to do so would invite audits by the investors of the quality of the mortgages, and they are of much lower quality than what the banks represented to the investors. (See, e.g., Complaint in NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co., 08 Civ 10783 (S.D.N.Y. Jan. 28, 2010))

(b) to do so would prevent the lender and/or its successors and assigns from selling the same mortgage Notes to multiple entities at the same time. See Yves Smith, How Did the Banks Get Away with Pledging Mortgages to Multiple Buyers?,

AMENDED COMPLAINT - 16

Naked Capitalism (October 26, 2010) at *3)(attached as exhibit Q, and incorporated herein by reference); or,

(c) to do so would threaten the tax-exempt status of these entities.

3.8.4.   Based on information and belief each of the defendants participated in the various types of transactions identified by **Figure 1** through the use of fraudulent robo-signing.[6]

3.8.5.   Based on information and belief, plaintiffs' pool was marketed, represented, and/or sold to investors pursuant to the premise, among others, that the notes are secured by agreements that allow servicers to foreclose on homes if the notes are not properly repaid.

3.8.6.   Based on information and belief, one or more unknown persons, investors or entities own, retain, or otherwise have rights in, or to, a legal or equitable partial or full interest in plaintiffs' debt payments, Note and/or Deed of Trust.

3.9.   On information and belief, MERS is and was a "straw man" for the Lender, and **not** an agent or nominee for each person with a full or partial interest in either the plaintiffs' Note or Deed of Trust bought or sold on the MERS or other secondary markets of mortgages. MERS is listed as the "nominee" and "beneficiary" in the official records maintained at the Island County Auditor; but MERS retains no control over the security interest (i.e., beneficiary interest under the Deed of Trust). MERS defines a "beneficial rights transfer" as the transfer of the security interest held under a mortgage or deed of trust for a loan or group

---

[6] As previously explained the term robo-signing describes the process of the mass production of false, forged, and/or not appropriately authenticated legal documents related to home foreclosures and other legal matters having to do with the lending practices identified in this complaint.  Robo-signing also includes notary fraud wherein the notaries notarize the affidavits and signatures of so-called robo-signers before or after the robo-signers actually submit affidavits and sign documents.

AMENDED COMPLAINT - 17

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

of loans to a new owner or investor. Attached as exhibit R, and incorporated herein by reference, are excerpts of the MERS user manual. Of note:

3.9.1.    Transfers of beneficiary rights to other active members are performed electronically, without endorsement on deed or note, or recording at the Island County Assessor, or assessment of additional fees, taxes or costs of said actions.

3.9.2.    The MERS system does not maintain a physical copy of the consumers' note or deed of trust; and the data entered represents only portions of a deed of trust.

3.9.3.    Transfers in the MERS system do not transfer physical possession of a promissory note or deed of trust. Transfers occur in batches sometimes with large numbers of notes and/or deeds of trust.

3.9.4.    Transfers are perfected by robo signing agents, who have little or no knowledge, training, and/or authority to conduct the transfer, and knowingly, intentionally, or negligently claim to be individuals with authority to perform the transaction.

3.10.    At the time this complaint was filed, the legality of MERS being a beneficiary in Washington State is under review in the Washington State Supreme Court. See Bain v. Metropolitan Mortgage Group Inc., et al., Wash. Supreme Court No. 86206-1 (June 24, 2011)(also exhibit AA to this complaint); Selkowitz v. Litton Loan Servicing, LP, et al., Wash. Supreme Court No. 86207-9 (July 27, 2010).

**iii.    Servicing Rights**

3.11.    On information and belief, banks, including the defendants, formed associations-in-fact and purchased servicing companies to act as their agents and to distance themselves from the actions of their agents.

AMENDED COMPLAINT - 18

3.12.    On information and belief, the servicing right was initially sold to Mortgageit, Inc.

3.13.    Between November 2005 and June 2006, three different entities: Mortgageit, Inc., GMAC Mortgage Corporation, and Chase claimed to be the servicers of the plaintiffs' obligation.

3.14.    On information and belief, and on more than one occasion, the Mickelson's servicing rights were bought, sold or transferred through the MERS system.

**iv.    Robo-Signing**

3.15.    On May 18, 2010, in the "Deposition of Beth Ann Cottrell" in Chase Home Finance, LLC, v. Fleming (Circuit Court of the Fifteenth Judicial District, Palm Beach County, Florida, Case No. 50-2009-CA-026599) available at: http://www.icelegal.com/files/ 17may10cottrellb.pdf), Ms. Cottrell, a professional document-signer, also known as a "robo-signer" used by Defendant JPMorgan Chase, admitted in a deposition to signing off on about 18,000 (necessarily false) documents each month in mortgage-foreclosure cases for Defendant JPMorgan Chase, admitted that she falsely stated in affidavits that she was an employee of Chase, and testified that she was one of eight signers who did the same.

3.16.    A purported appointment of Chase's "Attorney-in-Fact" was recorded on October 28, 2005 in Island County Auditor's File No. 4152512 (see exhibit C) purporting, among other things, to give Defendants Vonnie McElligott and Jeff Stenman of Northwest Trustee Services; and Stephan D. Routh and Lance E. Olsen (partners and attorneys with Defendant Routh, Crabtree and Olsen) the full power and authority and to do and perform all and every act and thing whatsoever requisite and necessary to be done to accomplish the acts described above, as Chase Home Finance LLC would or could do if personally present. The document was signed by Ryan L. Reitmajer, Sr, purporting to be assistant secretary of Defendant Chase.

AMENDED COMPLAINT - 19

3.17.     A document purporting to be an "Assignment of Successor Trustee" was recorded in Island County Auditor's File No. 4236911 on September 19, 2008 (see exhibit E). The document purports to authorize Northwest Trustee Services, Inc. as successor trustee and is signed by defendant Jeff Stenman who purports to be Attorney in Fact for defendant Chase and notarized by defendant Rhea Pre. The date of the signing of the document is unknown. Both Jeff Stenman and Rhea S. Pre are employees of defendant Northwest Trustee Services and not Defendant Chase.

3.18.     Furthermore, a document purporting to be an "Assignment of Deed of Trust" was recorded in Island County Auditor's File No. 4236910 on September 19, 2008 (see exhibit D). The document purports to assign all beneficial interest in plaintiffs' Deed of Trust from MERS to Chase Home Finance, LLC; is signed by defendant Vonnie McElligott who purports to be Vice President of MERS, and notarized by defendant Rhea Pre. Both Vonnie McElligott and Rhea S. Pre are employees of defendant Northwest Trustee Services and not MERS.

3.19.     On information and belief, declarations or affidavits offered in support of initiating non-judicial sale of Plaintiffs' Property, if any, were prepared by a defendant Robosigner Doe 1-10 and/or notarized by defendant Robosigner Doe 1-10, whom lacked authority, knowledge and/or training about this transaction.

3.20.     Based on information and belief the plaintiffs' Note was never properly endorsed by Lender to some or all subsequent holders of the instrument. In the alternative, on information and belief, any signature in support of the transfer of the Note was made by Defendants Robosigners Does 1-10 who endorsed without authority or sufficient knowledge of the transaction.

**iv.   Loss of Wage Earner**

AMENDED COMPLAINT - 20

3.21.    Plaintiff Travis Mickelson had numerous medical procedures which caused significant expense and interruption of work. On June 3, 2008, he had an on-the-job accident which resulted in significant harm to his shoulders and knees. Mr. Mickelson also suffers from super ventricular tachycardia, a condition which results in rapid heartbeats. On August 11, 2008, Travis Mickelson was nearly killed by a botched heart ablation procedure to mitigate this heart condition. Since October of 2008, he had three different joint surgeries with periods of extensive physical therapy.

3.22.    The costs of medical procedures and temporary loss of a wage earner caused the Mickelsons to fall behind on their payments on the obligation. Their monthly income in August of 2008 was approximately $7,000 which declined to $3,000 to 4,000 due to Mr. Mickelson's injuries.

3.23.    Starting in August of 2008, the Mickelsons were threatened with foreclosure. The Mickelsons' received letters dated, August 25, 2008. The first was from Alice Moulton with defendant Chase, notifying them that they will commence with a foreclosure unless a foreclosure alternative is agreed upon. A second letter was from defendant Routh Crabtree Olsen which stated in bold all caps "WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!" and stating they may be eligible for certain opportunities to stay in their home. A notice of default, notice of foreclosure, and notice of trustee's sale (the recorded copy attached as exhibit F) were sent by Defendant Northwest Trustee Service's Vonnie McElligott. The letters allege "…the beneficial interest in which was assigned by [MERS] to [Chase], under an Assignment/Successive Assignments recorded under Auditor's File No. 4236910." A copy of the Trustee's letters in 2008 are attached hereto as Exhibit A and incorporated by reference.

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

3.24.    Exhibits D and E, which purported to appoint successor trustee and assign the beneficial interest from MERS to Chase were recorded on September 19, 2011; over two weeks after the notice of trustee's sale (exhibit F) was sent by Northwest Trustee Services to the plaintiffs.

3.25.    The Mickelsons made multiple attempts to enter into a homeowner's assistance "program" with Chase, and staved off the initial non-judicial foreclosure by signing a modification agreement. A copy of the modification agreement is attached hereto as exhibit S and incorporated by reference.

3.26.    While the Mickelsons continued to seek an affordable program, a second non-judicial foreclosure was initiated by the Trustee on or about September 6, 2010 (exhibit G). The old copy of the note attached to the Notice of Trustee Sale contained no endorsements to Chase, MERS, or holders of beneficial interest obtained using the MERS system.

3.27.    On information and belief, Chase did not have possession of the original instrument; nor did they provide it to Northwest Trustee Services, when Chase requested the purported successor trustee initiate non-judicial foreclosure either in 2008 or 2010, or both.

3.28.    On March 25, 2011, Northwest Trustee Services conducted the trustee's sale. This occurred despite repeated assurances from Chase, not to worry about the sale, repeated past postponements, and that the Mickelsons were under active consideration for a modification. The Trustee's Deed was issued on March 30, 2011, and a copy is attached hereto as exhibit T and incorporated herein by reference.

3.29.    The Plaintiffs have no knowledge of whether Freddie Mac was a third party buyer; but, on information and belief, allege that Freddie Mac claimed to Northwest Trustee Services

AMENDED COMPLAINT - 22

it was a beneficiary who could utilize, "all or any part of the monetary obligations secured by the deed of trust" to purchase the deed. See Wash. Rev. Code § 61.24.070

3.30.     Beginning on April 7, 2011, Routh Crabtree Olsen, P.S., now allegedly representing Freddie Mac as its attorney, stated they would be moving for an unlawful detainer action under Freddie Mac's Trustee's Deed. A copy of the action is attached hereto as exhibit U and incorporated by reference (as of the date of this filing, the Plaintiff believes the unlawful detainer actions has not been filed).

**v.    Dual Tracking**

3.31.     Beginning August of 2008, the Mickelson's actively and persistently sought and followed Chase's recommendations to obtain assistance due to Travis's medical problems and temporary loss of income. The Mickelson's were advised by Chase to pursue several "programs", and to not actively make payments in order to qualify for certain "programs".

3.32.     A representative sample of the Mickelsons attempts to obtain assistance and qualify for a helpful program is located in **Appendix 1** to this complaint. **Appendix 1** is attached hereto and incorporated specifically herein.

3.33.     On March 29, Mickelson's attorney, Greg Gilday, wrote a letter to Chase stating the Plaintiffs' Property was sold by mistake and sent two cashiers checks totaling $1,315.00 per Chase's rate change letter effective Jan. 1, 2011.

3.34.     On April 20, 2011, Chase stated they received the inquiry, and were looking into what had occurred.

3.35.     On April 29, 2011, Chase stated they needed 15 more days to look into what had occurred.

AMENDED COMPLAINT - 23

3.36.    On May 7, 2011, the Mickelsons received a letter from Chase, attached hereto as exhibit V and incorporated herein by reference, stating that effective June 1, 2011 from Dec. 1, 2011, the new payment would be $1,272.97.

3.37.    On May 16, 2011, the Mickelsons were told by Chase they needed another 15 days to look into what had occurred.

3.38.    On May 19, 2011, the Mickelsons went to the Stanwood Chase branch and were given a copy of the screen which showed their new rate and new payment amount of $1,272.97, effective 1/1/2011 would expire on 1/1/2016. A copy of that screenshot is attached hereto as exhibit W, and incorporated herein by reference.

3.39.    On May 25, 2011, Chase sent a letter stating it would not honor the rate change and that the home was sold. A copy of that letter is attached hereto as exhibit X and incorporated by reference.

## IV.  CAUSES OF ACTION

### A.    ILLICIT SCHEME

4.1.    Plaintiffs re-allege paragraphs 1.1 through 3.39 above as if set forth more fully herein.

4.2.    The Plaintiffs, like many others, were injured by the toxic home lending practices identified in paragraph 1.4, as well as, by other acts or failures to act described with greater specificity below and in amounts to be proved at trial.

### B. ALLEGED BENEFICIARIES NOT HOLDER OF PLAINTIFFS' NEGOTIABLE INSTRUMENT

5.1.    Plaintiffs re-allege paragraphs 1.1 through 4.2 above as if set forth more fully herein.

AMENDED COMPLAINT - 24

5.2.    Plaintiffs allege their Note (exhibit A) is an old copy of their negotiable instrument.

5.3.    Article 3 of the UCC defines the law of negotiable instruments; who has the right to enforce those instruments and, in part, what must be proven to establish the right to enforce the Note under non-judicial or judicial foreclosure. Specifically, Wash. Rev. Code § 62A.3-201 states:

> (a) **"Negotiation" means a transfer of possession**, whether voluntary or involuntary, **of an instrument** by a person other than the issuer **to a person who thereby becomes its holder**.
>
> (b) Except for negotiation by a remitter, **if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.** [emphasis supplied].

5.4.    Plaintiffs allege there were numerous payees and alleged holders of the plaintiffs Note for purposes of furthering the aforementioned illicit scheme.

5.5.    Plaintiffs allege defendant Chase, or other alleged beneficiaries, did not hold or have physical possession of plaintiffs' actual[7] Negotiable Instrument; only an old copy, at various statutorily required moments related to the non-judicial foreclosure process; for example on either September 25, 2008 or September 6, 2010 (dates upon which a non-judicial foreclosure was initiated by notice from a successor trustee pursuant to Wash. Rev. Code § 61.24.030(7)). In the alternative, allege plaintiffs allege the defendant Chase, or other alleged beneficiaries possessed the actual negotiable instrument, but the note had not been properly negotiated to them by prior note holders; and/or there were intentional, known or negligent

---

[7] "Actual" refers to the document bearing the original or "wet ink" signature of the Plaintiffs, and endorsements by Lender and all subsequent parties by authorized and knowledgeable persons; or otherwise negotiated within the meaning of UCC article 3 as codified in Ch. 62A.3 Wash. Rev. Code; or otherwise meant by "holder of the instrument or document evidencing the obligations" within the definition of "beneficiary" under Ch. 61.24 Wash. Rev. Code.

AMENDED COMPLAINT - 25

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

deficiencies in transferring either the rights of a holder or entitlement to enforce the instrument to Defendant Chase Home Finance LLC, or other alleged beneficiaries from MERS or other unknown parties.

5.5.1.    On information and belief, any endorsement on the note was performed by a Defendant robo signer who lacked authority, training and/or knowledge of the transaction.

5.5.2.    Plaintiffs have no knowledge of whether the Defendant Chase Home Finance LLC has since negotiated or come into physical possession of the note.

5.6.    Plaintiffs allege defendant Chase Home Finance LLC, and/or other alleged beneficiaries were not the "holder in due course" of the note within the meaning of Wash. Rev. Code § 62A.3-302.

5.7.    Plaintiffs allege defendants Chase, JPMorgan Chase, Routh Crabree Olsen, Northwest Trustee Services, Jeff Stenman, Vonnie McElligott, Rhea S. Pre, and Robosigners Doe 1-10; purported to hold the Plaintiffs' Note or act on behalf those who held the note. Such purporting to the plaintiff, and notice to the public through recording, constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

5.8. That but for the aforementioned allegation, the foreclosure sale of the Plaintiffs' Property would not have occurred.

## C. DEED OF TRUST ACT

6.1.    Plaintiffs re-allege paragraphs 1.1 through 5.8 above as if set forth more fully herein.

AMENDED COMPLAINT - 26

6.2.    Under Washington law, a deed of trust is a security instrument involving three parties: (i) the borrower or grantor; (ii) the lender or beneficiary; and (iii) the trustee. <u>See</u> Wash. Rev. Code § 61.24.005(2), (3), (6), & (13).

6.3.    Pursuant to a deed of trust, the trustee holds, on behalf of the beneficiary, a legal interest in the title to the grantor's real property.

### i.    DEFENDANT MERS IS NOT A "BENEFICIARY"

6.4.    Under the statute "Beneficiary" means "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." Wash. Rev. Code § 61.24.005 (2).

6.5.    Notwithstanding the statutory definition of beneficiary the Deed of Trust Agreement (exhibit B) states:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of the Borrower's covenants and agreements under this Security Instrument and the Note.

6.6.    Plaintiffs' Deed of Trust is unenforceable and/or invalid because MERS cannot be a "beneficiary" under Washington's Deed of Trust Act.

6.6.1.    Plaintiffs' Deed of Trust defined MERS as "the beneficiary", without regard to whether MERS held the plaintiffs' Note.

6.6.2.    Plaintiffs allege the Lender, defendants MERS and/or Original Trustee never intended MERS to be a holder or assignee of the Note secured by the Deed of Trust and never held the plaintiffs' Note.

6.6.3.    Plaintiffs allege MERS never possessed the Plaintiffs' Note.

AMENDED COMPLAINT - 27

6.6.4.      By attempting to make MERS the beneficiary in contravention of the Deed of Trust statute to facilitate the securitization of the deed of trust into "stocks" which could be sold by the thousands to investors, Lender, MERS and/or Original Trustee waived the security the legislature intended to provide for the holder of the Note under Washington's Deed of Trust Statute by making the deed of trust security for a different obligation; *i.e.,* a stock investment.  The deed of trust agreement was never intended to comply with the letter and spirit of Washington's Deed of Trust Act.

6.7.      Plaintiffs' allege defendant Freddie Mac broadly encouraged the use of the uniform language with MERS.

6.8.      The failure to write the Deed of Trust as per the terms of the Washington's Deed of Trust statute makes the plaintiffs' Deed of Trust incomprehensible and unenforceable.

6.9.      The Lender and defendants MERS, Freddie Mac, and/or Original Trustee knew about and/or made MERS the beneficiary in the Deed of Trust. This constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

6.10.      That but for the aforementioned allegation, the foreclosure sale of the Plaintiffs' property would not have occurred.

**ii.    PLAINTIFFS DEED OF TRUST IS UNENFORCEABLE: MERS CANNOT BE BOTH EQUITABLE AND LEGAL OWNER IN TITLE.**

6.11.      In a Deed of Trust, the trustee holds, on behalf of the beneficiary, a legal interest in the title to the grantor's real property. By correlation, "the beneficiary" holds an equitable interest in the title to the grantor's real property.

AMENDED COMPLAINT - 28

6.12.     However, the Plaintiffs' Deed of Trust purports to give "legal title" to MERS.  In this regard, Plaintiffs' Deed of Trust states:

> Borrower understands and agrees that MERS holds **only legal title** to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument. [emphasis supplied]

6.13.     The above provision of the Deed of Trust constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020. Plaintiffs allege the provision is against public policy and violates the Deed of Trust statute because it purports to give MERS both legal and beneficial ownership of the security agreement without regard to the circumstances of who holds the Note thereby giving total power over foreclosure of Plaintiffs' Property to the servicer, not the beneficiary as is contemplated by the Deed of Trust Act.

### iii.   PLAINTIFFS' DEED OF TRUST IS UNENFORCEABLE AFTER A MORTGAGE IS SECURITIZED OR OTHERWISE TRANSACTED BY MERS

6.14.     Plaintiffs allege that at one or more times their Note and/or Deed of Trust was securitized and placed as an asset into a pool for purposes of backing mortgage-based securities.

6.15.     Plaintiffs' Deed of Trust states:

> The Note or a ***partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower***. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic obligations under the Note, this Security Instrument, and Applicable Law. There also might be changes of the Loan Servicer unrelated to a sale of the Note. [emphasis supplied].

AMENDED COMPLAINT - 29

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

6.16.     Securitization, i.e., one or more persons pooling Plaintiffs' Note and Deed of Trust and then dividing and transferring payments of the note and beneficial interests, renders a Deed of Trust practicably unenforceable. Plaintiffs allege one or more unknown persons, investors or entities own, retain, or otherwise have rights in, or to, a legal or equitable partial or full interest in Plaintiffs' debt payments, Note and/or Deed of Trust to which the Plaintiffs are still liable.

6.17.     Plaintiffs allege defendant MERS cannot and does not act as nominee and agent for all persons with beneficial interest in a securitized deed of trust; and their assertion otherwise constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

6.18.     Furthermore plaintiffs allege defendants failed to follow the required statutory procedures required under the Deed of Trust Act, and as otherwise required by Island County, when transferring full and partial interest in the Plaintiffs' mortgage in the MERS secondary market or utilizing the MERS database.

6.19.     Transactions in the MERS secondary market or utilizing the MERS database were performed by robo signers, agents of defendants or unknown parties without authority, training and/or knowledge to perform the specific transaction.

6.20.     Transactions in MERS violate public policy by transferring interests in land without notice to the public and/or the Plaintiffs. "Without prior notice to Borrower" provision of the Plaintiffs' Deed of Trust violates public policy by denying public notice of a transaction affecting the Plaintiffs' Property; and constituted an unfair or deceptive practice in

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

6.21.     Plaintiffs' allege "without prior notice to Borrower" does not mean the same as no notice to the Plaintiffs. Defendants MERS failed to provide reasonable notice after the fact to Plaintiffs of transfers in interest on the secondary market used for securitizing the plaintiffs' Deed of Trust. Such actions constituted a breach of defendant MERS' obligations under plaintiff's Deed of Trust and/or constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020. Failure to provide reasonable notice of secondary market transfers caused such damages and injuries as will be proved at trial.

### iv.   SUCCESSORS OF MERS ARE NOT BENEFICIARIES

6.22.     Any assignment of the beneficial interest from MERS is or was invalid under Washington law because MERS never possessed the Note necessary to constitute a "beneficiary" under Wash. Rev. Code § 61.24.005(2).

6.23.     The assignment recorded under Auditors file no. 4236910 where performed by defendant robo signer Vonnie McElligott, an employee of Northwest Trustee Services who purports to be vice president of MERS and who purports to assign the beneficial interest from MERS to Chase Home Finance LLC; but who lacked authority, knowledge or training to perform the transaction. The document is notarized by defendant and robo signer Rhea S. Pre who purports Defendant Vonnie McElligott is Vice President of MERS; but who lacked authority, knowledge or training to notarize the transaction. The execution and recording of this document constituted an unfair or deceptive practice in trade or commerce within the

AMENDED COMPLAINT - 31

meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

6.24.     Plaintiffs allege Defendant Chase Home Finance LLC, individually, and through Defendants Northwest Trustee Services, Inc., JPMorgan Chase Bank; Routh Crabtree Olsen, P.S., Jeff Stenman, and Robosigners Doe 1-10; purported to hold a successive full beneficial interest in the Plaintiffs' Deed of Trust. Such purporting to the plaintiff, and notice to the public through recording, constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

### v.   NOT AUTHORIZED SUCCESSOR TRUSTEE WITH POWER OF SALE

6.25.     Wash. Rev. Code § 61.24.010 states:

> [***]     (2) **The trustee may resign at its own election or be replaced by the beneficiary.** The trustee shall give prompt written notice of its resignation to the beneficiary. **The resignation of the trustee shall become effective upon the recording of the notice of resignation in each county in which the deed of trust is recorded**. If a trustee is not appointed in the deed of trust, or upon the resignation, incapacity, disability, absence, or death of the trustee, **or the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee. Only upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.**
>
>      (3) **The trustee or successor trustee shall have no fiduciary duty or fiduciary obligation** to the grantor **or other persons having an interest in the property subject to the deed of trust.** [***] [emphasis supplied].

6.26.     Plaintiffs allege defendant Chicago Title did not record a notice of resignation in Island County.

6.27.     An attorney in fact by power of attorney document was recorded on October 28, 2005, in Island County Auditors file No. 4152512.

AMENDED COMPLAINT - 32

6.28.     A person who is a beneficiary, or who otherwise receives full or partial interest in the deed of trust, is a person having an interest in the property subject to the deed of trust.

6.29.     Plaintiffs allege any attorney in fact relationship creates a fiduciary duty between defendants Northwest Trustee Services, Jeff Stenman and Vonnie McElligott, and those defendants purporting to be a beneficiary.

6.30.     Northwest Trustee Services, Jeff Stenman and Vonnie McElligott, lacked the qualifications to be a successor trustee under Wash. Rev. Code § 61.24.010(3) because they had fiduciary obligations and/or duties to persons having an interest in the property subject to the deed of trust.

6.31.     In the alternative, plaintiffs allege purported trustee, defendant Northwest Trustee Services' through defendant Vonnie McElligott, recorded on September 19, 2008, an appointment of Successor Trustee signed by defendants Jeff Stenman and Reha Pre. Jeff Stenman, employee for Northwest Trustee Services, purported to be an attorney in fact Chase Home Finance LLC successor by merger to Chase Manhattan Mortgage Corporation. Plaintiffs allege Jeff Stenman was a robo signer and lacked knowledge authority to designate Northwest Trustee Services as a successor trustee or otherwise perform the transaction. Defendant Reha Pre lacked knowledge, training and/or authority to notarize the transaction.

6.32.     For the aforementioned reasons defendant Northwest Trustee Services and Vonnie McElligott were not authorized and otherwise lacked the power to initiate and sell the Plaintiffs' Property at Trustee Sale; and, constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

AMENDED COMPLAINT - 33

## vi.   BREACH OF GOOD FAITH BY ORIGINAL TRUSTEE

6.33.     The plaintiffs' Deed of Trust provides with regard to the substitution of "actual trustee appointed under this note" that:   "**24.   Substitute Trustee.**   In accordance with Applicable Law, Lender may from time to time appoint successor trustee to any appointed hereunder who has ceased to act. ..."

6.34.     Wash. Rev. Code § 64.21.010 (2) provides:

> (2) The trustee may resign at its own election or be replaced by the beneficiary. The trustee shall give prompt written notice of its resignation to the beneficiary. The resignation of the trustee shall become effective upon the recording of the notice of resignation in each county in which the deed of trust is recorded. If a trustee is not appointed in the deed of trust, or upon the resignation, incapacity, disability, absence, or death of the trustee, or the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee. Only upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.

6.35.     Wash. Rev. Code § 64.21.010(4) provides:  "[t]he trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."    No Washington Court has construed the requirements of this provision.  Cf., Cox v. Helenius, 103 Wash. 2d 383, 593 P.2d 683 (1985) (construing predecessor statute). In Edmonson the Washington Supreme Court identified the duty of good faith which arose pursuant to a statutory warranty deed. Edmonson v. Popchoi, 256 P.3d 1223 (2011),   Washington Courts have also construed the meaning of the implied duty of good faith, which attaches to all contracts.  See, e.g., Frank Coluccio Const. Co., Inc. v. King County, 136 Wash. App. 751, 150 P.3d 1147 (2007).  A series of cases define the duty of good faith owed by an insurance company to their insured persons.  Representative cases include:  Ellwein v. Hartford Accident And Indemnity Co., 142 Wash. 2d 766, 15 P.3d 640 (2001); Indus. Indem. Co. of the Nw., Inc. v. Kallevig, 114 Wash.

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

2d 907, 916-917, 792 P.2d 520 (1990); <u>Anderson v. State Farm Mut. Ins. Co.</u>, 101 Wash. App. 323, 329, 2 P.3d 1029 (2000), <u>review denied</u>, 142 Wash. 2d 1017, 20 P.3d 945 (2001).

6.36.    Defendant Chicago Title, the actual trustee appointed under plaintiffs' Deed of Trust, had a duty of good faith, which included the duty to know and/or should know that the purported trustee, defendant Northwest Trustee Services, had not been properly appointed under either the language of the Deed of Trust Instrument and/or the Deed of Trust Statute (<u>see</u> Wash. Rev. Code § 64.21.010(2)); and therefore, was not authorized by contract or law to bring a foreclosure sale.[8]

6.37.    Plaintiffs allege the defendant Chicago knew, or should have known of one or more activities in paragraph 1.4 of this complaint and incorporated herein conflicted with their duty of good faith under Wash. Rev. Code § 61.24.010(4); and non-disclosure of these activities to the plaintiffs breached their duty causing plaintiffs such damages as will be proved at trial.

6.38.    Plaintiffs allege defendant Chicago Title had a duty to know and/or should have known that the appointment of the successor trustee by the purported trustee was a robo-signed document signed by an employee of Northwest Trustee Services[9].

6.39.    Plaintiffs allege that Chicago Title breached its aforementioned duties of good faith to plaintiffs by failing to intervene to prevent the illegal appointing defendant Northwest Trustee Services as successor trustee; and/or, allowing defendant Northwest to initiate a non-judicial sale and/or perform a trustee sale of Plaintiffs' Property when Chicago Title was the only entity with the authority to bring such non-judicial sale; and/or not litigating the

---

[8] Defendant actual trustee appointed under the Deed of Trust has brought a motion to dismiss apparently challenging, among other things, the extent and nature of any duty of good faith that it owed plaintiffs.

[9] At the time of the foreclosure Chicago Tile knew or should have known of the incidence of homeowners being foreclosed upon through used of robo-signed document and should have been monitoring County records of those persons to whom they owed a duty of good faith.

AMENDED COMPLAINT - 35

appropriateness of North West Trustees conduct where Chicago Title chose not to resign.  Cf.,

Edmonson, 172 Wash. 2d 272, 256 P.3d 1223 (construing duty of good faith to include duty

to defend under statutory warranty deed).

6.40.    Further, that by defendant Chicago Title's failure to intervene to prevent appointing

defendant Northwest Trustee Services as successor trustee; and/or, allowing defendant

Northwest to initiate a non-judicial sale and/or perform a trustee sale of Plaintiffs' Property

constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash.

Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch.

9A.82 Wash. Rev. Code.

6.41.    Defendant Chicago Title's breach proximately caused the defendant Northwest

Trustee's sale of Plaintiffs' Property and other such damages as will be proved at trial.

6.42.    With regard to the contention by defendant Chicago Title that Mickelsons "who fail

to enjoin a trustee's sale waive certain claims like the one alleged against Chicago [Title]",

plaintiffs respond that when trustees have no authority to bring a sale because of their failure

to follow the statutory prerequisites:

6.42.1.    the situation is equivalent of a judge failing to acquire subject matter

jurisdiction to foreclose on land pursuant to Washington law, see, e.g., Rosholt v.

County of Snohomish, 19 Wash. App. 300, 304, 575 P.2d 726 (1978) (Jurisdiction for a

foreclosure pursuant to Wash. Rev. Code § 84.64.050 is dependent on compliance with

the statute); see also, In re Proceedings of King County for Foreclosure of Liens for

Delinquent Real Property Taxes for Years 1985 Through 1988, 117 Wash. 2d 77, 811

P.2d 945 (1991)(where an accurate property description was necessary for a Superior

AMENDED COMPLAINT - 36

Court to acquire the subject matter jurisdiction over the res necessary to approve a tax sale);

6.42.2.    the plaintiffs have the right to challenge the sale as void. See Albice v. Premier Mortg. Services of Washington, Inc., 239 P.3d 1148 (2010) rev. pending, 170 Wash. 2d 1029, 249 P.3d 623 (2011); Cox, 103 Wash. 2d 383, 593 P.2d 683; Moon v. GMAC Mortgage Corp., 2009 U.S. Dist. LEXIS 91933 (W.D. Wash., Oct. 2, 2009) (Although the waiver doctrine bars claims that contest the underlying debt or obligation, it does not preclude a borrower or granter from challenging, in a post sale action, the procedures of foreclosure or trustee's sale.) (citing CHD v. Boyles, 138 Wash. App. 131 at 139, 157 P.3d 415 (2007)); and,

6.42.3.    that Wash. Rev. Code § 64.21.127 specifically provides:

> (1) The failure of the borrower or grantor to bring a civil action to enjoin a foreclosure sale under this chapter may not be ***deemed a waiver of a claim for damages asserting***: [***] ***(c) Failure of the trustee to materially comply with the provisions of this chapter.*** [emphasis supplied].

### vii.   BREACH OF GOOD FAITH BY PURPORTED TRUSTEE

6.42.    Plaintiffs allege that by acting as a trustee, purported trustee owed plaintiffs a duty of good faith under Wash. Rev. Code § 61.24.010(4) and the plaintiffs' Deed of Trust agreement.

6.43.    Plaintiffs allege the defendant Northwest Trustee Services intended to participate in, knew or should have known of all or a portion of the aforementioned activities in paragraph 1.4 of this complaint and incorporated herein.

6.44.    Plaintiffs allege the defendant Northwest Trustee Services intended, knew, or should have known that its participation as attorney-in-fact for one or more defendants

AMENDED COMPLAINT - 37

involved in the activities in paragraph 1.4 of this complaint and incorporated herein conflicted with their qualification of trustee under Wash. Rev. Code § 61.24.010.

6.45.    Plaintiffs allege that the defendant Northwest Trustee Services breached its duty of good faith to the plaintiffs by not informing them of, or otherwise concealing any of the aforementioned activities in paragraph 1.4 of this complaint; purporting to be a successor trustee under the illicit scheme, and/or bringing a non-judicial foreclosure under the illicit scheme.

6.46.    That the breach of the duty of good faith proximately caused such damages as will be provided at trial.

6.47.    That the breach of the duty of good faith proximately caused the sale of the plaintiffs' property at auction; and constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

### viii.  PURPORTED TRUSTEE LACKED REQUISITES TO INITIATE NON-JUDICIAL FORECLOSURE PROCEEDINGS

6.48.    Wash. Rev. Code § 61.24.030 states, in part:

It shall be requisite to a trustee's sale:

[***] (7)(a) That, for residential real property, *before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust*. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

(b) *Unless the trustee has violated his or her duty under RCW 61.24.010(4)*, the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection. [***][emphasis supplied].

AMENDED COMPLAINT - 38

### 1.    *2008 Non-judicial Foreclosure*

6.49.    Wash. Rev. Code § 61.24.030(7)(a) requires a purported trustee be qualified under Wash. Rev. Code § 61.24.010, before transmitting or recording a notice of trustee's sale.

6.50.    Plaintiffs allege defendant Northwest Trustee Services commenced a trustee's sale by sending a notice of trustee sale to the plaintiffs prior to any possible appointment of Northwest Trustee Services as successor trustee.

6.51.    Defendant Northwest Trustee Services commencing of a sale in 2008 before acquiring trustee authority constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code and caused such damages as will be proved at trial.

### 2.    *2010 Non-judicial Foreclosure*

6.52.    Plaintiffs allege Defendant Northwest Trustee Services did not have any proof or sufficient proof that Chase was either the "beneficiary" of the Plaintiffs' Deed of Trust and "owner of any promissory note or other obligation secured by the deed of trust" pursuant to Wash. Rev. Code § 61.24.030(7) before sending a notice of trustees sale. In the alternative, Defendant Northwest Trustee Services intended, knew or should have known any proof provided was insufficient because of the aforementioned activities in paragraph 1.4.

6.53.    Plaintiffs allege defendant Northwest Trustee Services willfully, knowingly, or intentionally initiated a non-judicial foreclosure for a party who was not a valid beneficiary under Washington law; which constituted an unfair or deceptive practice in trade or

AMENDED COMPLAINT - 39

commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted one or more criminal profiteering act activities within the meaning of Ch. 9A.82 Wash. Rev. Code.

6.54.    That for the above mentioned reasons the unauthorized Trustee's Sale of Plaintiffs' Property was void and caused such damages as will be proven at trial.

### ix.   TRUSTEE'S ACCEPTANCE OF BID INVALID

6.55.    Wash. Rev. Code § 61.24.070 states:

(1) The trustee may not bid at the trustee's sale. Any other person, including the beneficiary, may bid at the trustee's sale.

(2) The trustee shall, at the request of the beneficiary, *credit toward the beneficiary's bid all or any part of the monetary obligations secured by the deed of trust.* If the beneficiary is the purchaser, any amount bid by the beneficiary in excess of the amount so credited shall be paid to the trustee in the form of cash, certified check, cashier's check, money order, or funds received by verified electronic transfer, or any combination thereof. *If the purchaser is not the beneficiary, the entire bid shall be paid to the trustee in the form of cash, certified check, cashier's check, money order, or funds received by verified electronic transfer, or any combination thereof.* [Emphasis Supplied].

6.56.    Plaintiffs allege Freddie Mac is not the "beneficiary" within the meaning of Wash. Rev. Code § 61.24.005.

6.57.    Plaintiffs allege that defendant Northwest Trustee Services allowed defendant Freddie Mac to credit towards its bid for Plaintiffs Property all or any part of the monetary obligations secured by the plaintiffs' Deed of Trust.

6.58.    Plaintiffs allege that defendant Northwest Trustee Services failed to accept cash, certified check, cashier's check, money order, or funds received by verified electronic transfer, or any combination by defendant Freddie Mac; such failure constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

AMENDED COMPLAINT - 40

6.59.     Alternatively, Plaintiffs allege that because Plaintiffs' obligation had been securitized and/or bought or sold on the MERS secondary market; and allege partial interests remain in the Note and Deed of Trust; the value of the Plaintiff's obligation was not partially or fully available to be exercised at bid by defendant Freddie Mac; therefore, such bid was for less value than purported to defendant Northwest Trustee Services; and defendant Northwest Trustee Services representation of  the bid as the full value of the obligation constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

6.60.     Plaintiffs allege that acceptance of such a bid breached the trustee's duties of good faith, violated the Deed of Trust Statute, specifically Wash. Rev. Code § 61.24.070.

6.61.     Defendants Northwest Trustee Services failure to strictly comply with the Deed of Trust Statute makes the Trustees' auction, sale, and/or Deed of Plaintiffs' property null and void.

### x.     FREDDIE MAC NOT *BONA FIDE* PURCHASER FOR VALUE

6.62.     Defendant Freddie Mac knew or should have known that its bid at trustees sale or auction and/or trustee's Deed received was invalid under Washington Law; and their and Routh Crabtree Olsen's claiming rights to possession or restitution of the premises constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

6.63.     That for all of the aforementioned reasons, Defendant Freddie Mac cannot constitute a *bona fide* purchaser for value.

AMENDED COMPLAINT - 41

6.64.   For the aforementioned reasons Northwest Trustee Services' issuance of a Trustee's Deed to Freddie Mac is void and rescindable, and/or Freddie Mac's title should be quieted.  See Albice, 239 P.3d 1148 (2010) rev. pending, 170 Wash. 2d 1029, 249 P.3d 623 (2011); Cox, 103 Wash. 2d 383, 593 P.2d 683; CHD, 138 Wash. App. 131, 139, 157 P.3d 415.

### D.  QUIET TITLE

7.1.  Plaintiffs re-allege paragraphs 1.1 through 6.64 above as if set forth more fully herein.

7.2.  The interests of defendants are subordinate to the interests of plaintiffs and title should be quieted in Plaintiffs Property as to all defendants herein.

7.3.  Plaintiffs are entitled to judgment quieting title as to the ownership of the above described property with regard to those named defendants who cannot produce the obligation secured by deed of trust for Plaintiffs' Property.

### E.  THE PROMISSORY NOTE AND DEED OF TRUST ARE UNCONSCIONABLE AND UNENFORCEABLE

8.1.   Plaintiffs re-allege paragraphs 1.1 through 7.3 above as if set forth more fully herein.

8.2.   Plaintiffs had no bargaining power with regard to the "uniform" provisions of "interest-only period adjustable rate" Note offered by the Lender.  Plaintiffs allege the Adjustable Rate Note Agreement was procedurally unconscionable because: a.) the loan did not require documentation;  b.) the terms of the Note predisposed the Note to result in delinquencies and default; c.)  the terms of the Note were incomprehensible to a layman in many regards, particularly with regard to the term "lender" and "lenders" rights and to the Notes' relationship with the security agreement and the lenders intention to securitize the

**S T A F N E  L A W  F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

Note; and d.) by reason of each of the industry  practices set forth paragraph 1.4 which were ongoing, but undisclosed, to the Plaintiffs and other borrowers like them.

8.3.     Plaintiffs had no bargaining power with regard to the "uniform" or "non uniform" provisions of the Deed of Trust offered by the Lender.  Plaintiffs allege the Deed of Trust was procedurally unconscionable because a.) the Deed of Trust fails in many material respects to comply with the Deed of Trust Statute;  b.) the Deed of Trust is against public policy because it is designed to facilitate mass foreclosures of notes that were purposely predisposed to cause consumer defaults;   and c.) by reason of each of the industry  practices set forth under paragraph 1.4 which were ongoing, but undisclosed, to the Plaintiffs and other borrowers like them.

8.4.     The Note and Deed of Trust are substantively unconscionable because they are part of unfair and deceptive practices and criminal profiteering enterprise designed to make profits for the defendants at the expense of the borrower's home.

8.5.     Unconscionable and illegal contracts violate Washington's consumer protection act. See State v. Kaiser, 161 Wash. App. 705 (2011); see also, State v. Ralph Williams N.W. Chrysler Plymouth, 87 Wash. 2d 298, 553 P.2d 423 (1976).

### E.  BREACH OF CONTRACT

9.1.     Plaintiffs re-allege paragraphs 1.1 through 8.5 above as if set forth more fully herein.

9.2.     Each defendant named as a party to exhibits A and B and their successors and assigns to these agreements owed Plaintiffs a duty of good faith with regard to their contracts with Plaintiffs.

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

9.3.     Each defendant named as a party to exhibits A and B and their successors and assigns to these agreements violated that duty be engaging in those practices set forth under paragraph 1.4 which were ongoing, but undisclosed, to the Plaintiffs and other borrowers like them.

9.4.     Plaintiffs have been injured by breaches of the implied duty of good faith owed to Plaintiffs pursuant to the Note and Deed of Trust agreements by defendants MERS, JPMorgan, Chase, Chicago Title, and Northwest Trustee in an amount which will be proved with regard to each defendant.

## F. DUAL TRACKING

10.1.     Plaintiffs re-allege paragraphs 1.1 through 9.4 above as if set forth more fully herein.

10.2.     Defendants Chase Home Finance, LLC and JPMorgan Chase misrepresented whether and on what terms their modification requests had been approved; which constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.3.     Defendants Chase Home Finance, LLC and JPMorgan Chase told the Plaintiffs that their modifications and forbearances had been approved, but then notified them that they had never received modifications or proper documents; which constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.4.     Defendants Chase Home Finance, LLC and JPMorgan Chase use of dual tracking to suspend trustee's foreclosures for servicer's modifications, which are not affordable,

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.5.     Defendants Chase Home Finance, LLC and JPMorgan Chase failure or refusal to honor promises of modification constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.6.     Defendants Chase Home Finance, LLC and JPMorgan Chase instructions to forego making payments to qualify for a program, thus increasing arrears, rather than addressing a permanent solution as required by Homesaver Program Guidelines constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.7.     Defendants Chase Home Finance, LLC and JPMorgan Chase violated guidelines by moving the Mickelsons into foreclosure process prematurely, while still evaluating their modification applications. This constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.8.     Defendants Chase Home Finance, LLC and JPMorgan Chase assuring the Mickelsons, in writing and verbally, that they should not worry about the foreclosure sale date, and that they were still being considered for a modification, when they had not postponed the trustee's sale, constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

AMENDED COMPLAINT - 45

10.9.     Defendants Chase Home Finance, LLC and JPMorgan Chase informing the Mickelsons that their application was complete and under consideration, when in fact it was being denied, constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.10.    Defendants Chase Home Finance, LLC and JPMorgan Chase providing conflicting or inaccurate information to the Mickelsons at numerous critical points over more than two years constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.11.    Defendants Chase Home Finance, LLC and JPMorgan Chase having a communication system, which: delays, impedes or prevents contact and frustrates the plaintiff's good faith attempts to seek modification or forbearance constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

10.12.    Defendants Chase Home Finance, LLC and JPMorgan Chase non-disclosure of the actual person or interest with authority to make the decision on modification or forbearance; or obligations, duties, and responsibilities to unknown third parties who had no interest in allowing the Mickelson's participation in such programs, constituted an unfair or deceptive practice in trade or commerce within the meaning of Wash. Rev. Code § 19.86.020, and/or constituted criminal profiteering within the meaning of Ch. 9A.82 Wash. Rev. Code.

### G.  CRIMINAL PROFITEERING

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

11.1.    Plaintiffs re-allege paragraphs 1.1 through 10.12 above as if set forth more fully herein.

11.2.    Wash. Rev. Code § 9A.82.100(1)(a) provides:

> A person who sustains injury to his or her person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity, or [***] or by a violation of RCW 9A.82.060 or 9A.82.080 may file an action in superior court for the recovery of damages and the costs of the suit, including reasonable investigative and attorney's fees.

11.3.    Wash. Rev. Code § 9A.82.010(4) defines "pattern of criminal profiteering" to mean:

> any act, including any anticipatory or completed offense, committed for financial gain, that is chargeable or indictable under the laws of the state in which the act occurred and, if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable as a felony and by imprisonment for more than one year, regardless of whether the act is charged or indicted, as any of the following: [certain specifically defined predicate acts, which plaintiffs assert each of the following defendants committed in concert with an intent to deprive so as to deprive plaintiffs and others property and services.]

11.4.    Wash. Rev. Code § 9A.82.010 (12) defines "pattern of criminal profiteering" to mean:

> "Pattern of criminal profiteering activity" means engaging in at least three acts of criminal profiteering, one of which occurred after July 1, 1985, and the last of which occurred within five years, excluding any period of imprisonment, after the commission of the earliest act of criminal profiteering. In order to constitute a pattern, the three acts must have the same or similar intent, results, accomplices, principals, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise, and must not be isolated events. [***]

11.5.    Wash. Rev. Code § 9A.82.060 provides:

> (1) A person commits the offense of leading organized crime by:

AMENDED COMPLAINT - 47

(a) Intentionally organizing, managing, directing, supervising, or financing any three or more persons with the intent to engage in a pattern of criminal profiteering activity; [***]

11.6.    JPMorgan Chase and Chase did intentionally ORGANIZE, MANAGE, DIRECT, SUPERVISE AND FINANCE three (3) or more persons, to-wit: Ricky Rolfston, Ryan Reitmeyer, Ryan Reid and Da Nei Clark, Jenny Adams, Kelli Dillard, Customer Service Representatives: "Alex", "Alma", "Andrea", "Brandon", "Carmen", ""Chris", "Cody", "Craig", "Daniel", "Deborah", "Frankie", "Grace", "John", "Judy", "Julie", "Ken", "Larry", "Michelle", "Mrs. Bartlett", "Nicole", "Scott", "Stanwood Chase Branch", "Tammy", and "Warren"; and defendants Routh, Crabtree Olsen, Northwest Trustee Services, Jeff Stenman, Vonnie McElligott, Rhea S. Pre,  and such other persons who will be identified during discovery with the intent to engage in a pattern of criminal profiteering activity, to-wit: Forgery, as defined in Wash. Rev. Code § 9A.60.020 and .030; Theft, as defined in Wash. Rev. Code § 9A.56.030, .040, .060 and .080; Extortion, as defined in Wash. Rev. Code § 9A.56.120 and 130; and fraud, misrepresentation, and deception, as defined in Wash. Rev. Code § 19.144.080.

11.7.    MERS did intentionally ORGANIZE, MANAGE, DIRECT, SUPERVISE AND FINANCE three (3) or more persons, to-wit:  GMAC Mortgage Co, Mortgageit, defendants JP Morgan Chase, Chase, Routh, Crabtree Olsen, Northwest Trustee Services, Jeff Stenman, Vonnie McElligott, Rhea S. Pre, Freddie Mac, and such other persons who will be identified during discovery with the intent to engage in a pattern of criminal profiteering activity, to-wit: Forgery, as defined in WASH. REV. CODE § 9A.60.020 and .030; Theft, as defined in Wash. Rev. Code § 9A.56.030, .040, .060 and .080; Extortion, as defined in Wash. Rev. Code §

9A.56.120 and 130; and fraud, misrepresentation, and deception, as defined in Wash. Rev. Code § 19.144.080.

11.8.     Defendants Chicago Title, Northwest Trustee Services, and Routh, Crabtree, Olsen did intentionally ORGANIZE, MANAGE, DIRECT, SUPERVISE AND FINANCE three (3) or more persons, to-wit:  each other, and defendants Jeff Stenman, Vonnie McElligott, Rhea S. Pre and such other persons who will be identified during discovery with the intent to engage in a pattern of criminal profiteering activity, to-wit: Forgery, as defined in Wash. Rev. Code §  9A.60.020 and .030; Theft, as defined in Wash. Rev. Code §  9A.56.030, .040, .060 and .080; Extortion, as defined in Wash. Rev. Code §   9A.56.120 and 130; and fraud, misrepresentation, and deception, as defined in 19.144.080.

11.9.     Wash. Rev. Code § 9A.82.080 provides:

> (1)(a) It is unlawful for a person who has knowingly received any of the proceeds derived, directly or indirectly, from a pattern of criminal profiteering activity to use or invest, whether directly or indirectly, any part of the proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

11.10.   Each of the defendants set forth above knowingly received proceeds derived, directly or indirectly, from a pattern the pattern(s) of criminal profiteering activity described in this complaint and invested part of the proceeds derived from their investments in the acquisition of rights, interest, or equity in, real property or in the establishment or operation of any enterprise.

### i.     ENTERPRISE

11.11.   An "enterprise" includes any individual, sole proprietorship, partnership, corporation, business trust, or other profit or nonprofit legal entity, and includes any union, association, or

AMENDED COMPLAINT - 49

group of individuals associated in fact although not a legal entity, and both illicit and licit enterprises and governmental and nongovernmental entities.

11.12.    Each of the defendants participated in association, in concert, and associated "in fact" to conduct the loan origination, securitization, servicing, and foreclosure enterprises that injured plaintiffs.  The nature of the activities conducted by these enterprises are set forth herein and in the attachments to this complaint.

## ii.    PREDICATE ACTS

*1. JPMorgan Chase and Chase*

11.13.    Plaintiffs allege defendants JPMorgan and Chase committed those predicate acts identified in Exhibit J to this complaint as set forth in paragraphs 1 - 36; 99 - 136; 213 - 229; 291 - 300; 319 - 358; 374 - 405; 184 - 556; 254 -671 - 705.   These paragraphs are incorporated herein and set forth numerous predicate acts which have occurred since 1985 and the time frame which each of these predicate acts took place.

11.14.    Plaintiffs allege JPMorgan Chase and Chase committed a predicate act with regard to threatening and facilitating the illegal foreclosure of plaintiffs' home on or about March 25, 2011, by the filing of a document with the Snohomish County Auditor's office on September 19, 2008, purporting to transfer MERS beneficial interest in the Plaintiffs' Property to JP Morgan Chase/Chase, when MERS never was a holder of the obligation securing the deed of trust.  The instrument violated Wash. Rev. Code §  9A.60.020 because it was not signed by a Chase officer, but an employee of Northwest Trustee, and purported to appoint Northwest Trustee as the new trustee under the deed of trust.  This false assertion of title was completed in this way so as to avoid the requirements of Wash. Rev. Code § 61.24.020, which state in

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

pertinent part:   "[***] No person, corporation or association may be both trustee and beneficiary under the same deed of trust: [***]"

11.15.   Plaintiffs allege JP Morgan Chase, and Chase committed a predicate act with regard to threatening and facilitating the illegal foreclosure of Plaintiffs' Property on or about March 25, 2011, by the filing of a document with the Snohomish County Recorder's office on September 19, 2008, purporting to transfer Legal Authority to sell the Plaintiffs' Property to Northwest Trustee Services, when JPMorgan or Chase never had a beneficial interest in the note.

11.16.   Plaintiffs allege JP Morgan Chase and Chase committed predicate acts from August 25, 2008 until March 16, 2011 by threatening to foreclose upon the Plaintiffs while simultaneously telling them that no foreclosure was planned and requesting they agree to loan modifications.   These mailings were designed to, and did, cause the Plaintiffs' to sign modification agreements in violation of Wash. Rev. Code § 9A.60.030.  ("(1) A person is guilty of obtaining a signature by deception or duress if by deception or duress and with intent to defraud or deprive he causes another person to sign or execute a written instrument.") These mailings were also false and deceptive and violated Wash. Rev. Code § 19.48.010, which states:

It is unlawful for any person in connection with making, brokering, obtaining, or modifying a residential mortgage loan to directly or indirectly:

(1)(a) Employ any scheme, device, or artifice to defraud or materially mislead any borrower during the lending process; (b) defraud or materially mislead any lender, defraud or materially mislead any person, or engage in any unfair or deceptive practice toward any person in the lending process; or (c) obtain property by fraud or material misrepresentation in the lending process;

*2. MERS*

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

11.17.     Plaintiffs allege MERS committed those predicate acts described in Exhibit Z to this complaint and incorporated herein by reference.  Exhibit Z is a complaint filed by Dallas County against MERS for the reasons stated therein.  Dallas County's complaint, at paragraphs 71 - 79; 89 - 99; and 103 - 104 alleges that MERS filed over 250,000 false documents (*i.e.* predicate acts of forgery in Dallas County alone) which were intended to, among other things; avoid the payment of taxes when the mortgages/deed of trusts changed ownership inside MERS.

11.18.     MERS participated in the filing of a deed of trust securing the obligation on Plaintiffs' Property on or about November 22, 2005.  In plaintiffs' Deed of Trust MERS purports to be a beneficiary and legal owner of that deed of trust.   To the extent such statements were intended to imply to the Mickelsons (and others) that MERS had an enforceable interest under Ch. 61.24 Wash. Rev. Code such filings were false, deceptive, and constituted forgery (a predicate act) pursuant to Wash. Rev. Code § 9A.60.020.  The alleged forgery was committed to avoid paying County filing fees for subsequent transfers of the deed of trust inside MERS as well as to prevent the Mickelson's from gaining knowledge regarding the actual holder of the note at any particular time.  See, e.g., Washington v. Soderholm, 68 Wash. App. 363, 842 P.2d 1039 (1993).

*3.     Chicago Title and Northwest Trustee Services*

11.19.     Plaintiffs allege Chicago Title and Northwest Trustees worked in concert and as an enterprise to deprive plaintiffs of the opportunity to have a neutral trustee bring a foreclosure pursuant to the prerequisites of Ch. 61.24 Wash. Rev. Code.  Plaintiffs allege that their contractual right and statutory right to an impartial beneficiary (or, at least, a beneficiary that perceives he owes a duty of good faith other than to someone other than the entity which pays

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

him) constitutes a contractual right and property owned by plaintiffs which exceeds a value of $5,000.

11.20.    Defendant Chicago Title's actionable conduct includes being a party to the Plaintiffs' Deed of Trust and later aiding and abetting Northwest Trustee Services in a scheme and enterprise whereby Chicago Title would be identified as the trustee on original deed of trust agreements with no intention of undertaking the good faith duties a trustee owes the borrower under Ch. 61.24 Wash. Rev. Code.  Notwithstanding Chicago Title's undertaking good faith duties owed to the Mickelsons until it "ceased to act" as trustee. *See* Exhibit B, p. 13 (paragraph 24), Chicago Title never resigned or ceased to act, but simply allowed Northwest Trustee Services to be appointed trustee by an entity who Chicago Title and all other defendants knew or should have known had no authority to make such an appointment, *i.e.* a Northwest Trustee Services employee had no authority to appoint Northwest Trustee Services as a subsequent trustee to foreclose on Plaintiffs' Property.  Chicago's failure to act to prevent Northwest Trustee Services from illegally assuming the trustee's position under the Deed of Trust agreement and pursuant to Wash. Rev. Code § 61.24.010, and engaging in an unauthorized foreclosure, was an intended and foreseen element of the criminal profiteering enterprise of illegally threatening and ultimately taking the Mickelson's property by acts of Forgery, as defined in Wash. Rev. Code §§ 9A.60.020 and .030; Theft, as defined in Wash. Rev. Code §§ 9A.56.030, .040, .060 and .080; Extortion, as defined in Wash. Rev. Code §§ 9A.56.120 and .130; and fraud, misrepresentation, and deception, as defined in Wash. Rev. Code § 19.144.080.

11.21:    Chicago Title's predicate acts included, among others:

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

11.21.1.        Entering into the Mickelson's Deed of Trust agreement as the trustee and filing that Deed of Trust securing the obligation on Plaintiffs' Property on or about November 22, 2005.  In that Deed of Trust MERS purports to be a beneficiary and legal owner of that Deed of Trust.  To the extent such statements were intended to imply to the Mickelsons (and others) that MERS had an enforceable interest under Ch. 61.24 Wash. Rev. Code  such filings were false, deceptive, and constituted forgery (a predicate act) pursuant to Wash. Rev. Code § 9A.60.020.  The alleged forgery was committed to avoid paying County filing fees for subsequent transfers of the deed of trust inside MERS, as well as, to prevent the Mickelson's from gaining knowledge regarding the actual holder of the note at any particular time.  See, e.g., Washington v. Soderholm, 68 Wash. App. 363, 842 P.2d 1039 (1993).  Chicago Title was an active participant in this predicate act.

11.21.2.     Chicago Title committed similar predicate acts on or about 11/22/2005 when it was named and recorded as trustee of the following deeds of trust:  Deed of Trust recorded under 200511220766 in the Snohomish County Auditors file; Deed of Trust recorded under 200511221014 in the Snohomish County Auditors file.

11.21.3.     Chicago Title acquiesced in the filing appointment of Northwest Trustee Services as trustee for the Plaintiffs' Property filed by a well known employee of Northwest Trustee Services to appoint themselves as the trustee for a beneficiary who did not hold the obligation secured by the deed of trust with the Snohomish County Auditor on or about September 19, 2008.  This constituted a predicate act as it was contrary to Wash. Rev. Code §§ 9A.60.020 and .030; Theft, as defined in Wash. Rev. Code §§ 9A.56.030, .040, .060 and .080; Extortion, as defined in Wash. Rev. Code §§

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

9A.56.120 and .130; and fraud, misrepresentation, and deception, as defined in Wash. Rev. Code § 19.144.080.

11.22.    Northwest Trustee Services, Inc. committed the following predicate acts under the following statutes to facilitate its scheme of extortion and taking of Mickelson's property in violation of Wash. Rev. Code §§ 9A.60.020 and .030; Theft, as defined in Wash. Rev. Code §§ 9A.56.030, .040, .060 and .080; Extortion, as defined in Wash. Rev. Code §§ 9A.56.120 and .130; and fraud, misrepresentation, and deception, as defined in Wash. Rev. Code §19.144.080.  These acts included:

11.22.1.    Between January 1, 2005 and December 31, 2010, Chicago Title entered into, as the trustee, approximately seven thousand five-hundred deeds of trust agreements recorded in Island County.  Plaintiffs allege a majority of these and other deed of trust agreements MERS purports to be a beneficiary and legal owner of that deed of trust.  To the extent such statements were intended to imply to the Mickelsons and others that MERS had an enforceable interest under Ch. 61.24 Wash. Rev. Code, such filings were false, deceptive, and constituted forgery (a predicate act) pursuant to Wash. Rev. Code § 9A.60.020.  The alleged forgery was committed to avoid paying County filing fees for subsequent transfers of the deed of trust inside MERS as well as to prevent the Mickelson's from gaining knowledge regarding the actual holder of the note at any particular time and thus being able to negotiate with regard to the impending foreclosure.  See, e.g., Washington v. Soderholm, 68 Wash. App. 363, 842 P.2d 1039 (1993).

11.22.2.    On or about September 19, 2008, Jeff Stenman, an employee of Northwest Services, purported to appoint Northwest Trustee Services as a trustee to foreclose on Plaintiffs' Property in violation Wash. Rev. Code § 61.24.010, which prohibits the

AMENDED COMPLAINT - 55

trustee and beneficiary from being the same person.  This constituted a predicate act as it was contrary to Wash. Rev. Code §§ 9A.60.020 and .030; Wash. Rev. Code §§ 9A.56.030, .040, .060 and .080; Wash. Rev. Code §§ 9A.56.120 and 130; and Wash. Rev. Code § 19.144.080. This predicate act was in furtherance of the enterprise to obtain money from plaintiffs by threat of taking their home.

11.22.3.        While actively pursuing foreclosure Northwest Trustee and its owners, Routh, Crabtree, and Olsen, as well as Chase were acting in concert by promising the Plaintiffs in letters dated August 25, 2008, and August 6, 2010, that if they modified their mortgage there would be no foreclosure while intending to and moving toward foreclosure at the same time.  In reliance on these promises the Plaintiffs made payments toward modifying their mortgage.   Each of the above representations identified in Appendix 1 to the complaint indicating that the foreclosure would not occur if Mickelsons paid money was a predicate act because said representation was contrary to Wash. Rev. Code §§ 9A.60.020 and .030; Wash. Rev. Code §§ 9A.56.030, .040, .060 and .080; Wash. Rev. Code §§ 9A.56.120 and .130; and Wash. Rev. Code § 19.144.080.

11.23.     The Plaintiffs sustained injury to their persons and property by acts of criminal profiteering that was part of a pattern of criminal profiteering activity by the above defendants.

## H.   FAIR DEBT COLLECTION ACT

12.1.     Plaintiffs re-allege paragraphs 1.1 through 11.23 above as if set forth more fully herein.

12.2.      Plaintiffs acknowledge they owe a debt to the true owner of the promissory note attached hereto as Exhibit A.   However, plaintiffs <u>deny</u> that they owe any debt as a result of

AMENDED COMPLAINT - 56

the deed of trust because its only purpose is to secure the promissory note.  In this case, plaintiffs challenge that defendants held or were acting as agents for the holder of the note.

> [I]n the case of suit on the note, presentment of the note or satisfactory proof that it has been lost or destroyed are essential elements of the because **the instrument itself is the exclusive grounds for the cause of action**

Union Sav. Bank v. Cassing, 691 S.W.2d 513, 514, 41 U.C.C. Rep. Serv. (Callaghan) 135 (Mo. Ct. App. 1985) (emphasis supplied).   Plaintiffs assert that without the instrument, meaning the original document bearing the signatures of the maker(s) and any endorsers of the instrument, that no debt was owed which JPMorgan, Chase, MERS, Northwest Trustee Services, and Routh, Crabtree, Olsen were entitled to collect upon.

12.3.     Defendants JPMorgan, Chase, Northwest Title, and Routh, Crabtree and Olsen were debt collectors within the meaning of 15 U.S.C. § 1692A to the extent they purported to be collecting payments on the note. Alternatively, Defendants JPMorgan, Chase, Northwest Title, and Routh, Crabtree and Olsen were debt collectors within the meaning of 15 U.S.C. §1692A to the extent they purported to be collecting payments on the note after they contended plaintiffs had defaulted in their payments.  Alternatively, to the extent defendants were purporting to collect on the security agreement itself Defendants JPMorgan, Chase, Northwest Title, and Routh, Crabtree and Olsen were debt collectors within the meaning of 15 U.S.C. § 1692A(6)(F).

12.4.     Defendants violated 15 U.S.C. § 1692D, which states:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>   (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person. [***]

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

12.5.     Defendants JPMorgan, Chase, Northwest Title, and Routh, Crabtree and Olsen threat and use of the non-judicial process to foreclose on Plaintiffs' property, while at the same time offering to modify the deed of trust (with little or no authority to modify the note) based only on the deed of trust threatened the use of a criminal means (see above) to foreclose illegally on Plaintiffs' Property.

12.6.     Defendants JPMorgan, Chase, Northwest Title, and Routh, Crabtree and Olsen violated 15 U.S.C. §1692E, which states in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> [***]
>
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> [***]
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

12.7.     Defendants had no legal right to use the Deed of Trust alone as a basis for threatening to foreclose and foreclosing on Plaintiffs' Property.

12.8.     Defendants JPMorgan Chase, Chase, Northwest Title, and Routh, Crabtree and Olsen violated 15 U.S.C. § 1692f, which states in pertinent part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or

AMENDED COMPLAINT - 58

expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

[***]

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

12.9.    Defendants violated the above provisions by imposing fees authorized by the Deed of Trust agreement upon plaintiffs, when the Deed of Trust agreement was unenforceable because of the absence of the negotiable instrument which it was originally intended to secure.

12.10.    Defendants also committed an unfair practice by threatening non-judicial foreclosure based solely on the ownership of just the Deed of Trust.

12.11.    Plaintiffs requests relief pursuant to 15 U.S.C. § 1692k for defendants violations of the Fair Debt Collection Act.

## I.  CONSUMER PROTECTION ACT

13.1.    Plaintiffs re-alleges paragraphs 1.1 through 12.11 above as if set forth more fully herein.

13.2.    Defendant MERS engaged in the following unfair and deceptive practices in it trade or business which injured Plaintiffs, including, but not limited to:

A.    misrepresenting to investors the characteristics and therefore the riskiness of the mortgages managed by their secondary marker;

B.    failing to follow Washington's Deed of Trust Act;

AMENDED COMPLAINT - 59

C.   employing the use of substantively and procedurally unconscionable agreements in order to facilitate non-judicial foreclosures of the Plaintiffs' Property and other homeowners' homes;

D.   deceptively and unfairly preventing borrowers from knowing the identity of those persons who were the true beneficiaries of deed of trusts pursuant to Washington's Deed of Trust Act thereby preventing any interaction between homeowners and the holders of their notes;

E.   engaging in and/or participating with regard to "robo-signing" practices, which include, but are not limited to, forging the signatures of other persons; forging the notarization of documents; having persons sign documents who do not have the authority and/or training to do so;

13.3.     Defendants Robosigner Does, Vonnie McElligott, Rhea S. Pre, Jeff Stenman and Northwest Trustee Services engaged in the following unfair and deceptive practices in her trade or business which injured Plaintiffs, including engaging in and/or participating with regard to "robo-signing" practices, which include, but are not limited to: forging the signatures of other persons; forging the notarization of documents; having persons sign documents or signing documents when they who do not have the authority and/or training to do so.

13.4.     Defendant JPMorgan Chase engaged in the following unfair and deceptive practices in her trade or business which injured Plaintiffs, including, but not limited to:

A.   buying structured mortgage loans that relied on deceptive terms and underwriting to artificially lower borrowers' initial loan payments;

AMENDED COMPLAINT - 60

B.    purchasing debt which it knew resulted from misleading marketing and sales techniques to convince the Plaintiffs, and other consumers, to take out these risky loans;

C.    failing to follow Washington's Deed of Trust Act;

D.    employing the use of substantively and procedurally unconscionable agreements in order to facilitate non-judicial foreclosures of homeowners' homes, including Plaintiffs' home;

E.    deceptively and unfairly utilizing defendant MERS in such a way as to prevent borrowers from knowing the identity of those persons who were the true beneficiaries of deed of trusts pursuant to Washington's Deed of Trust Act thereby preventing any interaction between homeowners and the holders of their notes;

F.    engaging in and/or participating with regard to "robo-signing" practices, which include, but are not limited to, forging the signatures of other persons; forging the notarization of documents; having persons sign documents who do not have the authority and/or training to do so;

G.    falsely promising Plaintiffs and other consumers that their loans could be modified and that loan servicers and beneficiaries under the deed of trust security agreement would make  reasonable attempts to accommodate modifications which would reduce their monthly payments;

H.   falsely promising Plaintiffs and other consumers that their initial, trial modification would be made permanent if and when they made the required payments on those plans, but then failing to convert those modifications and keeping these additional monies;

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

I.    falsely assuring Plaintiffs that servicer had authority to modify the terms of his debt when it had no such authority, had not undertaken to obtain such authority, and did not know who the note holder was;

J.    misrepresenting the eligibility criteria for modifications and providing consumers with inaccurate and deceptive reasons for denying their requests for modifications; and,

K.    offering modifications on one set of terms, but then providing them with agreements on different terms, or misrepresenting that consumers have been approved for modifications.

13.5.    Defendant Chase Home Finance, LLC engaged in the following unfair and deceptive practices in its trade or business, which injured Plaintiffs, including but not limited to:

A.    buying structured mortgage loans that relied on deceptive terms and underwriting to artificially lower borrowers' initial loan payments;

B.    purchasing debt which it knew resulted from misleading marketing and sales techniques to convince the Plaintiffs, and other consumers, to take out these risky loans;

C.    failing to follow Washington's Deed of Trust Act;

D.    employing the use of substantively and procedurally unconscionable agreements in order to facilitate non-judicial foreclosures of homeowners' homes, including Plaintiffs' home;

E.    deceptively and unfairly utilizing defendant MERS in such a way as to prevent borrowers from knowing the identity of those persons who were the true beneficiaries of deed of trusts pursuant to Washington's Deed of Trust Act thereby preventing any interaction between homeowners and the holders of their notes;

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

F.    engaging in and/or participating with regard to "robo-signing" practices, which include, but are not limited to, forging the signatures of other persons; forging the notarization of documents; having persons sign documents who do not have the authority and/or training to do so;

G.    falsely promising Plaintiffs and other consumers that their loans could be modified and that loan servicers and beneficiaries under the deed of trust security agreement would make  reasonable attempts to accommodate modifications which would reduce their monthly payments;

H.    falsely promising Plaintiffs and other consumers that their initial, trial modification would be made permanent if and when they made the required payments on those plans, but then failing to convert those modifications and keeping these additional monies;

I.    falsely assuring Plaintiffs that servicer had authority to modify the terms of his debt when it had no such authority, had not undertaken to obtain such authority, and did not know who the note holder was;

J.     misrepresenting the eligibility criteria for modifications and providing consumers with inaccurate and deceptive reasons for denying their requests for modifications; and,

K.    offering modifications on one set of terms, but then providing them with agreements on different terms, or misrepresenting that consumers have been approved for modifications.

13.6.    Defendant Northwest Trustee Services, Inc. and Vonnie McElligott initiated two non-judicial foreclosure proceedings in the absence of proof as to who is the beneficiary in violation of Wash. Rev. Code § 61.24.030 (7) which constituted an unfair and deceptive practices in its trade or business, which injured Plaintiffs.

AMENDED COMPLAINT - 63

13.7.      Defendants Chicago Title and Freddie Mac engaged unfair and deceptive practices in trade or business, which injured the plaintiffs, by contractually defining, enforcing, or drafting uniform language which defines MERS as a beneficiary under the Washington Deed of Trust Act in order to facilitate mass foreclosures, when by statute the beneficiary of a Deed of Trust is statutorily defined to be the person who holds the note.

13.8.      Defendant Routh, Crabtree, and Olsen engaged in the following unfair and deceptive practices in its trade or business, which injured Plaintiffs, including but not limited to:

A.      falsely promising Plaintiffs and other consumers that their loans could be modified and that loan servicers and beneficiaries under the deed of trust security agreement would make  reasonable attempts to accommodate modifications which would reduce their monthly payments;

B.  falsely promising Plaintiffs and other consumers that their initial, trial modification would be made permanent if and when they made the required payments on those plans, but then failing to convert those modifications and keeping these additional monies;

C.      falsely assuring Plaintiffs that servicer had authority to modify the terms of his debt when it had no such authority, had not undertaken to obtain such authority, and did not know who the note holder was;

D.       misrepresenting the eligibility criteria for modifications and providing consumers with inaccurate and deceptive reasons for denying their requests for modifications; and,

E.      offering modifications on one set of terms, but then providing them with agreements on different terms, or misrepresenting that consumers have been approved for modifications.

AMENDED COMPLAINT - 64

13.9.     Defendant Freddie Mac engaged in the following unfair and deceptive practices in its trade or business, which injured Plaintiffs, including but not limited to:

A.    failing to follow Washington's Deed of Trust Act;

B.    employing the use of substantively and procedurally unconscionable agreements in order to facilitate non-judicial foreclosures of homeowners' homes, including Plaintiffs' home;

C.    deceptively and unfairly utilizing defendant MERS in such a way as to prevent borrowers from knowing the identity of those persons who were the true beneficiaries of deed of trusts pursuant to Washington's Deed of Trust Act thereby preventing any interaction between homeowners and the holders of their notes;

13.10.    The unfair and deceptive trade practices described above violated the public interest for the reasons stated in the attached decision by Judge Coughenour attached hereto as Exhibit AA and incorporated herein by reference. See Bain, 2011 U.S. Dist. LEXIS 26318.

13.11.     Because MERS was contractually defined as a beneficiary  in a manner that was contrary to the statutory definition of "beneficiary", Wash. Rev. Code § 61.24.050 (2), the instant deed of trust is void and any attempt to foreclose thereon constitutes a *per se* violation of the Consumer Protection Act.  See Wash. Rev. Code § 61.24.135.

13.12.     Plaintiffs have been damaged because these practices have required Plaintiffs to expend resources to avert an unlawful foreclosure previously, caused Plaintiffs to pay sums which were not owed,  and prevented Plaintiffs from identifying the real beneficiary note holder and attempting to negotiate a new arrangement to avoid foreclosure.

AMENDED COMPLAINT - 65

# V.  REQUESTS FOR RELIEF

## A.   INJUNCTIVE RELIEF

14.1.    Plaintiffs re-allege paragraphs 1.1 through 13.12 above as if set forth more fully herein.

14.2.    This is an action for temporary and permanent injunctive relief which is brought pursuant to applicable law.

14.3.    Plaintiffs have a clear legal right to seek temporary and permanent injunctive relief as plaintiffs have title to the property and defendant Freddie Mac seeks to dispossess him of the premises.

14.4.    Plaintiffs have no adequate remedy at law to redress the harm complained of, and the sale of the plaintiff's property, under the circumstances of record, is contrary to equity and good conscience in that such sale was illegally instituted by parties who have no legal standing to institute or maintain the foreclosure *ab initio*. Moreover, plaintiffs allege that defendants past and continuing attempts to collect enforce an invalid security agreement pursuant to a debt which has become unsecured by virtue of their own actions violates Wash. Rev. Code § 9A.82.010 (4) (d), (e), (k), (l), (m), (n), (o), (s) and (qq).

14.5.    The specific facts set forth in this complaint demonstrate that unless injunction against Freddie Mac's representation of title to the premises then the plaintiff will suffer harm by loss of their property and dispossession and/or eviction thereof.

14.6.    As the Alleged Beneficiary and Trustee had no legal standing to institute or maintain a foreclosure of the Property, and, on information and belief, Freddie Mac was involved in the process to bid at and/or perform the illegal sale, there is no harm to said

AMENDED COMPLAINT - 66

defendant with the granting of the requested relief, and any claimed harm is substantially outweighed by the irreparable harm to the plaintiff if the relief requested herein is not granted.

14.7.     The granting of the relief requested herein is in the public interest, as the consuming public, including the plaintiff, will continue to be harmed by the illegal and unlawful conduct of Defendants Freddie Mac, Chase Home Finance LLC, Northwest Trustee Services, Vonnie McElligott, JPMorgan Chase, and Routh Crabtree Olsen, if the relief requested herein is not granted.

14.8.     Under the circumstances where Defendant Northwest Trustee Services had not properly performed the trustee's sale under the Deed of Trust or Note, and/or granted the Trustee's Deed to Freddie Mac, no bond should be required as a prerequisite to the granting the relief requested.  Moreover, because plaintiff demonstrated that he is likely to prevail on his criminal profiteering claims against defendants, this Court should exercise its discretion so as not to require any posting of a bond.  See Bowcutt v. Delta North Star Corp., 95 Wash. App. 311, 976 P.2d 643 (1999); see also, Pizan v. HSBC Bank USA, N.A., 2011 U.S. Dist. LEXIS 66861 (U.S. Dist. W.D. Wash., June 23, 2011).

WHEREFORE, Plaintiff respectfully request that this Court immediately take jurisdiction of this matter and enter an Order granting temporary and permanent injunctive relief expressly precluding the defendants from entering the Plaintiff's premises; and/or conveying title to third persons.

## B.   DECLARATORY RELIEF

15.1.     Plaintiff re-alleges paragraphs 1.1 through 14.8 above as if set forth more fully herein.

AMENDED COMPLAINT - 67

15.2.     This is an action for declaratory relief which is being brought pursuant to applicable law to declare that the deed of trust which secures the promissory note is against public policy and violates the Deed of Trust statute, Wash. Rev. Code § 64.21 Ch.

15.3.     Plaintiff has no adequate or alternative remedy at law with reference to the relief requested herein.

WHEREFORE, Plaintiff requests the court adjudge and declare:

the Deed of Trust in this case violates public policy;

AND,

the Deed of Trust and the procedures attempting to foreclose it violate the provisions of the Deed of Trust statute.

AND,

that Deed of Trust is invalid, void and unenforceable as security to enforce the promissory note.

AND,

That the Trustee's Auction and Trustee's Deed are void.

AND

That Freddie Mac's title to Plaintiffs premises be quieted.


## C.   DAMAGES AND EQUITABLE RELIEF

WHEREFORE, Plaintiff prays for all such legal and equitable remedies to which he may be entitled, including but not limited to: an order quieting title in his name; compensatory damages, exemplary damages, civil penalties, attorney fees and costs allowed pursuant to

AMENDED COMPLAINT - 68

statutes and/or contracts, statutory attorney fees and costs, and injunctive relief to restrain defendants' pattern of criminal profiteering activity.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

DATED this 31st day of October, 2011 in Arlington, Washington.

Respectfully submitted,

STAFNE LAW FIRM

 _/s/ Scott E. Stafne _____
Scott E. Stafne, WSBA 6964
Andrew J. Krawczyk, WSBA 42982
Stafne Law Firm
239 N. Olympic Avenue
Arlington, WA 98223
(360) 403-8700
Scott.Stafne@stafnelawfirm.com

AMENDED COMPLAINT - 69

**APPENDIX I**

3.32.1.    On September 5, 2008, the Mickelsons faxed a letter and forms for "help for homeowners" which explained their hardship, and included taxes, expenses and forms to secure a modification.

3.32.2.    On October, 20, 2008, the Mickelsons called Chase, whose representative "Craig" suggested also asking for a "special forbearance."

3.32.3.    On October 21, 2008, the Mickelsons faxed ten pages requesting a special forbearance.

3.32.4.    On October 30, 2008, the Mickelsons called Chase, whose representative "Alex" stated the fax machine is "backed up" and would take 5-10 days to get their faxes.

3.32.5.    Between October 30, 2008, and March of 2009, the Mickelsons were not advised as to their request for special forbearance.

3.32.6.    On November 18, 2008, the Mickelsons called Chase, whose representative "Carmen" told "Ricky Rolfston" was assigned their file on November 11, 2008 and the Mickelsons would have to work with him exclusively to get help.

3.32.7.    On December 9, 2008, the Mickelsons called Chase whose representative "Ken" informed them the auction was postponed from December 26, 2008 to January 16, 2009.

3.32.8.    On December 24, 2008, the Mickelsons called Chase whose representative "Anthony" gave them the direct extension of Ricky Rolfston

3.32.9.    On January 14, 2009, the Mickelsons attempted to call Chase's Representative "Ricky Rolfston" but his mailbox was full. The Mickelson's then called Chase Customer

Service, and representative "Allen" said he would have "Ricky Rolfston" email them. To their knowledge, Ricky never emailed the Mickelsons.

3.32.10.   On the eve of an auction, January 15, 2009, the Mickelson's placed three calls to Northwest Trustee Services, Chase's Customer Service department, and Chase's Foreclosure department to postpone the auction and determine the status of being placed into a special program. On information and belief, due solely to the Mickelsons' efforts, the auction was postponed until February 6, 2009.

3.32.11.   On January 23, 2009, Mickelsons placed a call to the foreclosure department's representative "Daniel." The Mickelsons offered to make substantial payments, but Daniel indicated that Chase would not accept any money, except a complete payment, until Ricky Rolfston put them into a program, which would take another 30-45 days. Daniel gave the Mickelsons the understanding that Ricky Rolfston would contact them soon. He never did.

3.32.12.   On the eve of the auction, February 5, 2009, the Mickelsons placed seven calls to Chase, Routh, Crabtree, Olsen, and Northwest Trustee Services to find out their status for a program and postponing the auction. They learned from a customer representative named "Deborah" they had a new representative, "Da Nei Clark" and were approved for a modification program, but the auction date had not been postponed. Deborah claimed she could not open file which contained their paperwork and promised to find out why the auction had not been postponed.

3.32.13.   On February 13, 2009, the Mickelsons received modification paperwork dated February 5, 2009, which had been delayed in the mail due to the President's Day weekend. The paperwork indicated the Mickelsons were approved for a loan modification with a monthly payment of $2,949.02. The letter requested the Mickelsons forward a cashier's check

or money order in the amount of $3,400 for a fee, closing cost and first month payment and stated there will not be another opportunity to modify your loan. The letter and attached agreement purported that the Mickelsons had accumulated $29,304.83 in added indebtedness since August of 2008.

3.32.14.   On February 17, 2009, the Mickelsons called Da Nei Clark and left a message to see if they could lower their interest rate on the modification.

3.32.15.   On February 18, 2009, the Mickelson's called Da Nei Clark twice without being able to reach her. The Mickelsons than called "Frankie" at Customer Service who gave them Da Nei Clark's supervisor "Ryan Reitmeyer." The Mickelson's called Ryan Reitmeyer whose mailbox was full and gave "Ryan Reid" as an alternative contact. The Mickelson's then called Ryan Reid whose mailbox was full and gave Ryan Reitmeyer as the contact. Unable to reach Da Nei Clark or her supervisors to ask questions about the loan modification, the Mickelson's called Chase Customer Service again and talked to "Chris" who gave them fax numbers for Da Nei Clark and Home Modification, and they wrote and faxed their questions to both.

3.32.16.   On February 25, 2009, the Mickelsons received a letter, dated February 20, 2011, from Chase indicating they had until February 26, 2009 to sign the modification. The Mickelsons called Da Nei Clark, whose mailbox was full, then Ryan Reitmeyer whose mailbox was full and indicated he was out of the office until March 10, 2009, then to Ryan Reid, whose mailbox was full, then to Chase Switchboard who transferred them to "Scott" who said he would email Da Nei Clark and her supervisor a note to call the Mickelsons.

3.32.17.   Facing the deadline and having made many attempts to contact Chase to determine whether they could get a lower rate. The Mickelsons sent some of the loan modification

documents and a letter trying to get a hold of them and sent a Cashier Check for $3,400 to Chase.

3.32.18.   Defendants do not recall the specific date in late February or early March of 2009, but they received a brief early morning phone message from Da Nei Clark confirming receipt of a prior call, and if they still had questions to give her a call.

3.32.19.   Between February 27, 2009 and March 10, 2009, the Mickelson's placed over fourteen calls to Ricky Rolfston, Ryan Reitmeyer, Ryan Reid and Da Nei Clark to discuss options on getting a lower rate. Each time they were unable to speak with these representatives or leave a message in their phone mailbox.  Each time the Mickelsons called the customer service, who did answer, customer service would claim to send an email to these individuals to speak with the Mickelsons.

3.32.20.   On March 10, 2009, Mickelsons placed a call and "Cody" with Chase Customer Service indicated they should fill out the paperwork for help for homeowners.

3.32.21.   On March 11, 2009, to March 12, 2009, the Mickelson's placed four more calls to Da Nei Clark, Ricky Rolfston, and Ryan Reid to discuss loan modification.

3.32.22.   On March 12, 2009, a "Mrs. Bartlett" from Chase called and left a message. The Mickelsons returned the call, and she advised the Mickelsons to re-apply for homeowners assistance and for special forbearance.

3.32.23.   The Mickelsons called Chase Customer Service and talked to a "Warren" who suggested the Mickelsons fax Da Nei Clark a message declining the prior modification and requesting they reapply under the new rules being enforced by the Obama administration.

3.32.24.   Between March 13, 2009, and March 23, 2009, the Mickelsons made one or more daily attempts during the workweek to reach Da Nei Clark by phone and fax.

3.32.25.    Facing the deadline and having made many attempts to contact Chase to determine whether they could get a lower rate, the Mickelson's executed the loan modification on March 24, 2009, and Chase cashed a the previously sent Cashier Check in February for $3,400. The Mickelsons were not represented by counsel, nor had they succeeded in ever having a conversation with Da Nei Clark to discuss a lower percentage rate, the amount alleged to have been added to the obligation, or alternative modification terms.

3.32.26.    On March 24, 2009, the Mickelsons talked to "Nicole" with Chase customer service to see if they could reach someone about whether their paperwork had been received and auction postponed. Nicole told the Mickelsons to call back a week later.

3.32.27.    On March 31, 2009, the Mickelsons learned from 'Ken" with Customer service that their foreclosure had been lifted, and they could go ahead and reapply for homeowners assistance and to send their cashier's check for April under their modification.

3.32.28.    On April 11, 2011, the Mickelsons made a $2,949.02 payment on the modified note.

3.32.29.    On April 27, 2009, the Mickelsons called Chase Customer Service, who told them to talk with Da Nei Clark about getting into the Obama Administration's Home Affordable Modification Program (HAMP) or other modification "program," as well as, get into a special forbearance "program". Throughout May of 2009, the Mickelsons made attempts to contact Da Nei Clark to discuss getting a lower rate modification or forbearance, she did not return their calls nor did she talk with them.

3.32.30.    Between June 11, 2009 and July 22, 2009, Chase sent delinquency notices to the Mickelsons and threatened foreclosure. The Mickelsons frequently called Chase to get advice. On July 23, 2007, the Mickelsons attended a workshop in Everett where Chase representatives

advised the Mickelsons to supply information for assistance "program". On August 7, 2009, the Mickelsons submitted supplemental information pursuant to a Chase's request.

3.32.31.   On September 1, 2009, "Rose" with Chase called to offer the Mickelson's a "special forbearance" of three months at $1320.00 a month, and she would be sending them paperwork to sign and require a cashier check. Rose also advised the Mickelsons' that they would need to resubmit paperwork to get into another program for a lower rate modification. Rose also advised that "Kelli Dillard" replaced Da Nei Clark as their file representative. The Mickelsons called Chase on September 2, 2009, and told them they would accept and Chase would send the paperwork.

3.32.32.   On September 8, 2009, the Mickelsons called Chase to find out why they had not received the paperwork, Customer Service Representative "Alma" said it would take another 7-10 days and to call back then if the Mickelsons had not received it.

3.32.33.   On September 18, 2009, the Mickelsons called Chase to determine why they had not received their approved special forbearance documents, Chase representative "John" said to call back in 7-10 days.

3.32.34.   On September 29, 2009, Mickelsons called Chase to find out why they had not received the paperwork for their approved special forbearance documents. Chase customer service "Mike" promised to email "Kelli Dillard" and the Mickelson's underwriter to see what was responsible for the delay.

3.32.35.   On October 5, 2009, the Mickelsons spoke to "Alma" with Chase customer service, who told the Mickelsons they re-sent the documents. Alma also said Chase would send the Mickelsons a note letting them know what the Mickelsons needed to do to re-apply for homeowners assistance.

APPENDIX 1- 6

3.32.36.    On October 22, 2009, the Mickelsons spoke with "Grace" with Chase customer service who told the Mickelsons they would email Kelli Dillard to find out where the documents were.

3.32.37.    The paperwork for the special forbearance arrived on October 26, 2009, but had September, October, and November of 2009 as the months approved for the special forbearance.

3.32.38.    On November 3, 2009, the Mickelsons called Chase to see if they could change the dates because the documents never arrived at the Mickelsons.

3.32.39.    On November 14, 2009, the Mickelsons sent their acceptance letter for special forbearance and mailed a cashier checks for $1320.00 on December 4, 2009, and January and February, 2010.

3.32.40.    On January 18, 2010, Chase sent a letter which advised the Mickelsons that Chase could help, and to re-apply for a home assistance program.

3.32.41.    On January 29, 2010, Chase sent the Mickelsons a notice of intent to foreclose claiming $51,522.83 past due, including late fees, with $1,097.98 held in suspense.

3.32.42.    On April 8, 2010, the Mickelsons faxed documents to get into a loan modification program. On April 20, 2010, Chase claimed it never received the documents and the Mickelsons needed to re-fax the materials. On April 22, 2010, "Larry" with Chase Loan Modification indicated they received the documents, but was having computer problems. Larry also indicated on one form, of many which had the number, the Mickelsons did not put on Travis Mickelsons social security number, and that they would need to refax pages of the application, and they did.

3.32.43.   On August 6, 2010, Defendant Routh Crabtree Olsen sent the Mickelson's a letter stating they would commence foreclosure proceedings against the Mickelsons and take advantage of opportunities to keep their home.

3.32.44.   Throughout August and November, 2010, the Mickelson made calls to defendants to stop a foreclosure sale, get a loan modification and get into a program.

3.32.45.   In November, the Mickelsons received a letter dated Nov. 6, 2010, asking the Mickelsons to send $1,861.37 to fully amortize their new loan payment plan effective January 1, 2011 to June 1, 2011. Attached as exhibit Y and incorporated herein by reference is a copy of that letter. The Mickelsons sent two cashier's checks per request by Chase's customer representative "Andrea" who was being directed by "Relation Expert" "Brandon."

3.32.46.   On November 17, 2010, Brandon left a message to call him back, the Mickelson's called and spoke with "Tammy" who would not transfer the Mickelsons to Brandon because he "only looks at accounts once a week". The Mickelsons learned that Chase wanted more information sent to them and faxed that information.

3.32.47.   On November 29, 2010, the Mickelson's received a letter stating that Chase would not accept their Cashier's checks.

3.32.48.   On November 30, 2010, Chase's customer service indicated their system was down for two days and to call back.

3.32.49.   On December 1, 2010, Chase's customer service representative "Michelle" indicated that Chase had all paperwork and would sent to underwriting, and that the foreclosure had been delayed.

3.32.50.   On December 7, 2010, Chase's phone system would not accept the Mickelson's repeated calls.

3.32.51.   On December 8, 2010, Chase customer service indicated the sale would go through because underwriting had not received all of the Mickelson's documents, and that they were missing pages of the bank statements. The missing pages were a blank page and balance sheets. Chase stated, again, they would postpone the sale until January, 2011, and to re-fax the pages.

3.32.52.   On December 15, 2010, Chase confirmed a new request for modification under the Making Home Affordable program, but requested additional documentation to finish the application, which the Mickelsons submitted.

3.32.53.   On December 30, 2010, "Julie", with Chase, became the Mickelson's contact for the Making Home Affordable program. Julie requested that the Mickelsons fax additional documents, and the Mickelson's faxed the materials.

3.32.54.   On January 1, 2011, Chase sent a letter regarding the Mickelsons new rate and payments effective January 1, 2011 to June 1, 2011.

3.32.55.   On January 12, 2011, Julie indicated that the Mickelson's paperwork was complete and in underwriting; and that the sale date was on hold and to call her back the following week.

3.32.56.   On January 19, 2011, Julie called indicating that underwriting wanted more information, including: a household list of monthly expenses, and profit and loss statements. The Mickelsons sent this information.

3.32.57.   On January 27, 2011, Chase sent a letter to the Mickelson's stating they needed additional information; the Mickelsons sent this information on January 31, 2011.

3.32.58.   On February 10, 2011, "Judy" with Chase indicated the Mickelson's account had been flagged as an "inactive foreclosure" and no sale date was issued. Subsequently, the

Mickelsons spoke with Julie who indicated underwriting wanted more information including a new profit and loss statement, a letter stating why Travis Mickelson was not working; and Julie reconfirmed there was no sale date. Later, Julie called to ask for a letter as to why Danielle Mickelson was no longer doing real estate. The requested information was faxed to Chase.

3.32.59.    On February 18, 2011, the Mickelsons received a letter from the trustee stating the foreclosure has been postponed to March 25, 2011. This letter was inconsistent to the statements of Chase that the sale had been inactivated.

3.32.60.    On March 10, 2011, the Mickelsons returned Chases call, and Jenny Adams in underwriting wanted more information, including updated bank statements for January and February, and contribution letter from the Mickelson's parents for the program. The Mickelsons faxed this information.

3.32.61.    On March 10, 2011, the Mickelsons received a letter stating their mortgage account "may be closed." This was inconsistent to the statements of Chase that they may qualify for a program.

3.32.62.    On March 16, 2011, Chase requested updated 4506T forms because it "had been longer than 90 days" since they had received those forms from the Mickelsons. On March 20, 2011, the Mickelsons faxed the forms.

3.32.63.    On March 25, 2011, notice of the foreclosure sale occurrence was taped to the Mickelsons door.

3.32.64.    After the sale, the Mickelsons continued to receive bills and calls requesting payments on their Note.

APPENDIX 1- 10