THE HON. MARSHA J. PECHMAN

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| TRAVIS MICKELSON, DANIELLE H. MICKELSON, and the marital community thereof<br><br>                              Plaintiffs,<br><br>    v.<br><br>CHASE HOME FINANCE LLC, an unknown entity; et. al.<br><br>                              Defendants. | NO.  2:11-cv-01445<br><br>RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN<br><br>**Noted on Motion Calendar:<br>FEBRUARY 3, 2012**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.  PROCEDURAL MATTERS BEFORE THE COURT

Defendants JPMorgan Chase Bank ("Chase"), MERS, and Federal Home Loan Mortgage Corp. ("Freddie Mac") moved to dismiss pursuant to Fed. R. Civ. Pro. 12 (b)(6) and were subsequently joined by other defendants in this matter, some of whom raised separate issues. *See* Dkt. 43 ("Mot."); *see also*, dkt. 45-47, (joinder of motion by Defendants Northwest Trustee Services Inc., ("NWTS") Routh Crabtree Olsen PS ("RCO")); *c.f.*, dkt. 49-50 (joinder of motion by other defendants noted for Feb. 10, 2012). In order to preserve judicial economy

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 1
No. 2:11-CV-01445

**STAFNE LAW FIRM**
_____
239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

the Mickelsons have endeavored to respond to all of defendants' motions in this consolidated response.

## II. STANDARD FOR CONSIDERATION UPON MOTION TO DISMISS

In *Corinthian*, the Court states:

> As a general rule, we "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee,* 250 F.3d at 688 (internal citation and quotation marks omitted). We may, however, consider materials that are submitted with and attached to the Complaint. *Id.* We may also consider unattached evidence on which the complaint "necessarily relies" if: (1) *the complaint refers to the document*; (2) the document is central to the plaintiff's claim; and (3) *no party questions the authenticity of the document*. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006); *Lee,* 250 F.3d at 688.

> Pursuant to Federal Rule of Evidence 201, we may also take judicial notice of "matters of public record," *Lee,* 250 F.3d at 689, *but not of facts that may be "subject to reasonable dispute*." *Id.* at 689. More specifically, we may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed. *See id.* at 689-90.

*United States v. Corinthian Colleges*, 655 F.3d 984, 998-9 (9th Cir. 2011)(Emphasis Supplied). The Court noted that documents are "open questions requiring further factual development. At the very least, they are certainly subject to "reasonable dispute." *Id.* at 999. So, while one party's factual assertions may "ultimately prove true," fact finding regarding these disputed factual matters could not be cut short pursuant to a motion to dismiss. *Id.*

The application of the foregoing precepts to Defendants' 12(b)(6) motion does not allow for consideration of Chase's alleged "bearer note," which is being urged by the Defendants. <u>See</u> Mot. at 1. Nor should this Court take judicial notice of documents which the Mickelsons allege are fraudulent and/or have been robosigned.[1]

---

[1] Plaintiffs attached an unendorsed note which they received from Northwest Trustee Service ("NWTS") as part of the package initiating the foreclosure in question. *See* Compl. at Ex. A. Defendants included in their motion on the pleadings (well after the foreclosure has occurred) an unauthenticated bearer note as part of their motion suggesting that at some point in time MHL Funding (perhaps after MHL Funding was defunct) someone endorsed the Note in blank, making it bearer paper. *See* Motion

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

It is this unendorsed Note (Compl. at Ex. A) that controls because it was the one used in the foreclosure process. The bearer note proposed by the Defendants at this juncture[2] was never made available to the Mickelsons, nor was it made available generally and thus is not the proper subject for judicial notice.  Mickelsons' complaint contradicts the bearer note submitted by Defendants (*see e.g.*, Compl. at ¶¶ 3.9.4, 3.18; 3.23; 3.31) and alleges the documents submitted for judicial notice are not authentic or valid. *See Balderas*, at *11-12.[3]

Furthermore, this Court's previous ruling, that Plaintiffs have presented a plausible claim that Chase was not properly appointed as successor beneficiary and lacked the authority to replace Chicago Title with NWTS becomes *law of the case* and is binding upon the parties and proceedings going forward. *See, e.g.*, *Folsom v. County of Spokane*, 111 Wash. 2d 256, 759 P.2d 1196 (1988)(Reconsideration of an identical legal issue in a subsequent appeal of the same case will be granted only if the holding in the prior appeal is clearly erroneous and failure to reconsider would result in manifest injustice); *see also*, 5 Am. Jur. 2d Appellate Review §605 (1995).

///

///

to Dismiss at 2. Such endorsement does not appear on the copy attached to the complaint, which was the copy supplied to the plaintiffs by NWTS on or about September 9, 2010, notifying them of default and trustee sale. *Compare*, Compl. Ex. A (copy supplied by NWTS to Plaintiffs at non-judicial foreclosure) *with* Mot. at 2, Ex. A (p. 4)(assurances defendant can bring note to oral argument).

[2] While Federal Rule of Evidence 201, allows court to take judicial notice of "matters of public record..."  Defendants make no showing that the recently disclosed purported bearer paper was ever a matter of public record.

[3] Therein:
> "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff case can be rejected on evidentiary grounds." A complaint containing allegations that, if proven, present a winning case is not subject to dismissal under 12(b)(6), no matter how unlikely such winning outcome may appear to the district court.

*Balderas*, at *11-12.

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 3
No. 2:11-CV-01445

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

### III. ARGUMENT

Contrary to Defendants' contention that the Mickelsons' complaint is premised on two theories; MERS' beneficiary status and its transfer of the Deed of Trust ("DOT") to Chase (*see* Mot. at 8:1-2) the complaint is based on much more. Specifically, the Mickelsons contend that Chase was not entitled to foreclose because: (A) Chase nor MERS were not entitled to enforce the instrument; (B) the DOT contract was illegal and void under the Washington Deed of Trust Act ("WDTA") and as a result, the Mickelsons could not have agreed to the provisions of an illegal DOT contract; and (C) the beneficiary status advanced by the Defendants under this DOT is excluded under RCW 61.24.005(2).

Mickelsons then further respond to defendants' motion regarding Waiver, Mootness, and CPA arguments.

### A.   Neither MERS nor Chase are entitled to enforce the instrument

The Mickelsons contend that MERS and Chase are not entitled to enforce the instrument. Whether an entity or a person qualifies as a "beneficiary" is defined by statute. See RCW 61.24.005. " 'Beneficiary' means the holder of the instrument or document evidencing the obligation secured by the deed of trust [***]" RCW 61.24.050(2). First, it is undisputed that MERS never held the promissory note executed by the Mickelsons, and has not identified any principal directly following MHL Funding becoming defunct. Therefore, MERS cannot be a valid beneficiary under this DOT as defined by the Act; nor can it be a valid nominee without a principal.

The Mickelsons also contend that Chase was not entitled to foreclose regardless of MERS because Chase did not have any rights under the promissory note at the time it commenced foreclosure through NWTS (Response to Mot. at 12:5-13:6). Washington's

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 4
No. 2:11-CV-01445

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
Tel. 360.403.8700/STAFNELAWFIRM@AOL.COM

Uniform Commercial Code permits enforcement of a note only by a party who: (1) is in possession of the instrument payable to that party (*see* RCW 62A.1-201(20)); (2) previously had the ability to enforce the note, but it was lost, destroyed, or stolen (*see* RCW 62A.3-309); (3) has possession of an endorsed-in-blank instrument (*see* RCW 62A.1-201(5), (20)); or (4) can prove both possession and the enforcement rights received from its transferor. *See* RCW 62A.3-203, .3-301; *see also*, *In re McMullen Oil Co.*, 251 B.R. 558, 568 (Bankr. C.D. Cal. 2000); *In Re Carlyle*, 242 B.R. 881, 887 (Bankr. E.D. Va. 1999).

These requirements apply to every link in the chain of transfer of the note. *In Re Doble*, 2011 Bankr. LEXIS 1449 (S.D Dist. CA, April 14, 2011). When a note has been assigned several times, each assignment in the chain must be valid or the party claiming the note cannot enforce it. *In re Gavin*, 319 B.R. 27, 32 (B.A.P. 1st Cir. 2004); *In re Wells*, 407 B.R. 873 (Bankr. N.D. Ohio 2009). Even if a party is the owner of a promissory note, it is not entitled to enforce the note unless it meets the statutory criteria for enforcement. RCW 62A.3-203 cmt.1-2.

The application of these principles to the case at bar proves that Chase did not have any rights relating to the Note at the operative time, i.e., the commencement of the Mickelsons foreclosure. Enforcement option 1 is not applicable. The Note used in the foreclosure had no endorsement whatsoever and was made payable only to MHL Funding. Additionally, because the Note had no endorsement, no defendant in this matter can enforce the Note as a direct payee or endorsee. *See National City Bank v. Titlow*, 233 F. 838 (W.D. Wash. 1916); *In re Wilhelm*, 407 B.R. 392, 402 (Bankr. D. Idaho 2009); *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 905 A.2d 366, 374 (Md. 2006). No claim has been made that the Note was lost or stolen, which eliminates option 2. This leaves options 3-4.

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 5
No. 2:11-CV-01445

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

**1. Plausible Claim that Chase and MERS did not have Bearer Note at Nonjudicial Foreclosure**

As to option 3, not until this motion did Defendants produce the Note endorsed in blank by MHL Funding. Mot. At Ex. A. An endorsement is not effective until it is signed by an authorized representative. RCW 62A.3-301; *Bowles v. Billik*, 27 Wash. 2d 629, 178 P.2d 954 (1947). Until the note is properly endorsed, assignments of the deed of trust do not serve to transfer enforcement rights. *Id*. The endorsement must be on the note or attached. *Lopez v. Puzina*, 239 Cal. App. 2d 708, 714, 49 Cal. Rptr. 122 (1st Dist. 1966).

Here, the Court has before it two copies of the promissory note. The one attached to the Mickelsons' complaint was included as part of the foreclosure packet sent by NWTS to the Mickelsons on or about September 9, 2010. *See* Compl. at Ex. A. This Note while signed by the Mickelsons, was not endorsed by the Lender and therefore is not bearer paper. [4] The copy of the Note Defendants provided recently purports to be endorsed in blank. *See* Motion at Ex. A. Defendants assert this version of the Note must have been signed before MHL Funding went out of business in 2007. Mot. at 3:15-17. This speculation has not a shred of support: The endorsement is not dated and while that is acceptable, it does not support Chase's claim that the endorsement was made *before* MHL Funding became defunct. *See* Mot. at Ex. A. [5] If the endorsement in fact was made prior to the State filed its Certificate of Revocation of MHL Funding, why didn't the trustee include this copy of the bearer note in the foreclosure packet?

---

[4] The NWTS Note used in the foreclosure is also stamped several times with "I hereby certify this to be a true & correct copy of the original By [indecipherable signature]" *See* Compl. at Ex. A.

[5] *Deutsche Bank National Trust, as Trustee for Long Beach Mortgage Loan 2002-1 v. Braumburg*, 2012 OK 3 (2012); *Reinke v. Northwest Trs. Srvs. (In Re Reinke)*, 2011 Bankr. LEXIS 4142 (Bankr. W.D. Wash. Oct. 26, 2011); *Pavino v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 77456 (July 18, 2011); *c.f.*, *Olander v. ReconTrust Corp.* Case No. C11-177 MJP, 2011 U.S.Dist. LEXIS 22397 (W.D.Wash. March 7, 2011) (Also involved situations in which the originator of the note is now defunct and no clear chain as to how the note was transferred).

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 6
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

**2. Plausible Claim Chase did not receive possession and the enforcement rights received from its transferor.**

Option 4 Runs afoul of the same proof problem as option 3. Supra II Sec. A 1 (i.e., being unable to establish itself as the holder of the Note). In addition Chase also cannot invoke any right assigned by MERS via the Assignment of the Deed of Trust to support an enforcement right. In the case of *In Re Doble* (at *33-34) the court noted the same fact pattern and held that the assignment from MERS is defective to convey substantive rights, particularly the right to foreclose nonjudicially. *Id*. at 33-34.

Even if the court had found that a proper agency relationship existed between the holder of the note and the party seeking to enforce its security, this does not excuse the agent from the requirement that the foreclosure must be prosecuted in the name of the real party in interest. *Id*.; *see also*, *In re McMullen Oil Co.*, 251 B.R. 558, 567 (Bankr. C.D. Cal. 2000); *In re Agard*, No. 10-77338-reg, 444 B.R. 231, 2011 Bankr. LEXIS 488, at *58 (Bankr. E.D.N.Y. Feb.10, 2011)("[E]ven if MERS had assigned the Mortgage acting on behalf of the entity which held the Note at the time of the assignment, this Court finds that MERS did not have authority, as "nominee" or agent to assign the Mortgage absent a showing that it was given specific written directions by its principal").

As a plausible theory, the Mickelsons alleged that Chase is the servicer, acting on behalf of Freddie Mac, or some other party, who is the trustee of the securitization or indenture trust holding the Mickelson's obligation as part of a pooled asset for the benefit those who invested in the securitized product. Failure of Chase to have Freddie Mac identified in the Notice of Trustee Sale is fatal to the sale because the real party in interest to Mickelson's obligation had not been identified pursuant to the procedural requirements of the WDTA. Such requires

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 7
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

additional fact finding to determine the validity of such a theory and is not properly dispensed by a 12(b)(6) motion.

**B.    Mickelson's DOT Agreement violates the WDTA**

The Mickelsons' DOT contains boilerplate language and is a complex legal document that many borrowers sign in order to obtain funds to purchase or refinance a property. Because the document provides for the power of sale without judicial oversight, the document must strictly comply with the WDTA in order to allow a statutory beneficiary, *i.e.* noteholder, to enforce the security given for a debt evidenced by a promissory note. *See CHD, Inc. v. Boyles*, 138 Wash. App. 131, 137, 157 P.3d 415 (2007); *Cox v. Helenius*, 103 Wash. 2d 383, 387, 693 P.2d 683 (1985). A boilerplate contract is void if its terms violate Washington's statutory law:

> It is well established that a contract or contract provision that is 'contrary to the provisions of any statute [is] void.' *Coey v. Low*, 36 Wn. 10, 17, 77 P. 1077 (1904); *Evans v Luster*, 84 Wn.App. 447, 450, 928 P.2d 455 (1996).

*Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1201 (W.D. Wa. 2006); *see also Coronado v. Orona*, 137 Wash. App. 308, 153 P.3d 217 (2007).

The rule against enforcement of illegal contracts is not unique in Washington but has been applied by the United States Supreme Court to void a deed of trust instrument in Alabama. *See Chattanooga Nat'l Bldg. & Loan Asso. v. Denson*, 189 U.S. 408, 23 S. Ct. 630 (1903). More recently the Supreme Court of Hawaii, applied the same principle and held a deed of trust contract which did not comply with the provisions and policies of Hawaii's Deed of Trust statute are void:

> [c]ourts will always look to the language of the statute, the subject matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 8
No. 2:11-CV-01445

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

> was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold, and construe the statute accordingly . . . [T]he statute must be examined as a whole, to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so . . . When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.

*See, e.g.*, *Lee v. HSBC Bank USA*, 121 Haw. 287, 291-4, 218 P.3d 775 (2009). (citations omitted). Additionally, the interpretation of a DOT contract written under the WDTA must be construed in favor of borrowers. *See e.g.*, *Koegel v. Prudential Mut. Sav. Bank*, 51 Wash. App. 108, 111, 752 P.2d 385 (1988).

## 1.   Plausible Claim that MERS's role in the DOT violates the policies of the WDTA.

Mickelsons argue the uniform DOT they signed makes MERS a "super-party" and this causes the subject DOT to become illegal and unenforceable under the WDTA. The DOT at issue injects several additional players in place of the statutorily defined parties.[6] Compl. at Ex. B ("DOT"). The Mickelsons' DOT contract includes MERS (as a super-party) and defines the original note holder (MHL Funding) as the Lender, rather than the beneficiary (DOT at p. 1, ¶ C).[7] The DOT instrument appoints MERS as the "beneficiary under the security

---

[6] In response to this question defendants may repeat to the Court that: "The Deed of Trust statute provides that all deeds of trusts are subject to all laws relating to mortgages on real property." RCW 61.24.020. Washington's mortgage statute expressly provides that parties to a mortgage "may insert is such mortgage and lawful agreement or condition" such as agreeing MERS is a nominal beneficiary." Defendants motion misrepresents the statute. *Udall v. T.D. Escrow Services, Inc.*, 132 Wash. App. 290, 302, 130 P.3d 908 (2006)(General law of contracts does not apply to DOT agreements.); *see also*, RCW 61.24.020, which states in pertinent part:

> **Except as provided in this chapter**, a deed of trust is subject to all laws relating to mortgages on real property. A deed conveying real property to a trustee in trust to secure the performance of an obligation of the grantor or another to the beneficiary may be foreclosed by trustee's sale. The county auditor shall record the deed as a mortgage and shall index the name of the grantor as mortgagor and the names of the trustee and beneficiary as mortgagee. No person, corporation or association may be both trustee and beneficiary under the same deed of trust.

RCW 61.24.020. WDTA does not contain any provision authorizing "MERS to be the Lender's nominal beneficiary."

[7] Mickelson's DOT does not define either "Lender" or "Beneficiary" and it does not use these terms interchangeably. The DOT does not state that either the Lender or the Beneficiary can be the note holder. Therefore, an assignment of the DOT does not convey to the assignee either holder or owner status which is supported by the explanation that MERS is of a "nominee status" and holds "legal interest" as opposed to "beneficial interest." MERS cannot transfer anything that it does

---

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 9
No. 2:11-CV-01445

agreement" (DOT, p 1, ¶ D) but not in the meaning contemplated by the Statute because the same paragraph also states "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's Successors and Assigns." Then, in a separate unnumbered paragraph on page 3 of the DOT under the heading "TRANSFER OF RIGHTS IN THE PROPERTY", the contract also indicates that MERS owns legal title to the Security Instrument.

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns of MERS) and the successors and assigns of MERS.   This security agreement accrues to Lender: (i) the repayment of the Loan [***]; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and Note.
> [***]
> All of the foregoing is referred to in the Security Agreement as the "Property".
> ***Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument***, but if necessary to comply with law or custom, MERS as nominee for  Lender and Lender's successors and assigns) has the right to: exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including, but not limited to releasing and cancelling this Security Instrument.

DOT, p. 3 (Emphasis Supplied).

   The designation of MERS as a nominee to hold only a legal interest directly conflicts with the statutory definition of "beneficiary" which requires that the beneficiary must hold the note.[8] Under the statutory definition, only MHL Funding could be the note holder and therefore "beneficiary" at the time the foreclosure was initiated. *See* RCW 61.24.005(2).

**2. Plausible Claim that using MERS for Securitization violates WDTA.**

---

not have. Since the DOT does not contain the right of a noteholder or noteowner, MERS cannot transfer said right to another entity, including Chase. Where the WDTA is intended to make the foreclosure process transparent, the injection of MERS into the DOT obscures and conceals. Therefore, a securitized transaction using MERS as a straw man violates the spirit and intent of the Statute.

[8] Furthermore, "No person, corporation or association may be both trustee and beneficiary under the same deed of trust". RCW 61.24.020; *see also*, RCW 61.24.050(2), (16).  *State v. Kaiser*, 161 Wash. App. 705, 254 P.3d 850 (2011) (same party to contract be co-beneficiary and trustee violates CPA).

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 10
No. 2:11-CV-01445

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

The Mickelsons allege that their mortgage loan was securitized and sold in the secondary market shortly after it was originated by MHL Funding. The components of a securitized transaction are an originator (MHL Funding), the designation of a nominee (MERS), a sponsor (concealed by the Defendants), a depositor (concealed by the Defendants), a servicer or subservicer (Chase); the trustee of the securitized trust (Freddie Mac); and beneficial owner(s) of parts of the note. The issue has been examined quite closely by one Court:

> At ... [MERS] core, it is a system designed by the banks' lawyers to grow the securitization industry. In this it has been remarkably successful. Securitization has replaced financial institutions in funding home mortgage loans, with over eighty percent of all such loans originated in 2006 ... having been securitized. ... A closer look at the larger securitization process reveals a system apparently intended to raise a virtually impenetrable smokescreen to the detriment of homeowners and the communities where they live.
>
> Slicing and dicing a home mortgage transaction as was done here profoundly alters the economic incentives of the banking industry in the home mortgage market. Banks necessarily focus on the immediate cash return from securitizing their home mortgage loans, rather than relying upon them as long term investments. Their agents, the loan servicers, have little, if any, incentive to "work out" a troubled home mortgage loan and every incentive to realize an immediate return from foreclosure sales. Moreover, one who holds bare legal title, without more, has no incentive whatever to maintain the home it owns. Id.
> [***]
>
> What the process of securitization, and the market for loan servicing that has developed to support it, highlights is that loan servicers, despite their duty to act for the benefit of investors, are in fact "principal-less agents." Levitin & Twomey, supra, at 81. Their incentives in managing individual loans do not mirror the interests of investors or trustees acting on behalf of investors, much less homeowners.

*Culhane v. Aurora Loan Services of Nebraska*, 2011 U.S. Dist. LEXIS 136112, note 15 (D. MA. 2011). A full copy of this opinion is attached and note 15 incorporated by reference.  As Judge William G. Young observes in Culhane:  "Where a mortgage loan has been pooled with

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 11
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

others in a trust that then issues mortgage-backed securities to investors, *the holder of the note is the trustee on behalf of the investors, who are the real beneficial owners.*"[9] *Id.*

In this case, ¶ 1 of the Note states: "I understand that Lender may transfer this Note. Lender or anyone who takes this note and who is entitled to receive payment under this Note is called Note Holder." Compl. at Ex. A. This plain language does not provide for the scenario that the Note would be sliced and diced and placed into a pool of securitized products to be sold to a multitude of investors.  Additionally, the Deed of Trust, page 12, paragraph 20 states:  "The Note or a partial interest in the Note (together with the Security Agreement) can be sold one or more times *without prior notice* to the borrower." Id. (emphasis supplied). Defendants cite this provision for the proposition that it was not required to provide the Mickelsons with any notice regarding the sale of the note or part of the note. Mot. at 3:4-7.[10]

## C. Plausible Claim Exclusionary Language of RCW 61.24.005(2) Applies.

Both MERS and Chase are specifically excluded under the statutory definition of "beneficiary." Under the WDTA, "Beneficiary" means the holder of the instrument or document evidencing the obligations [the note] secured by the deed of trust, *excluding persons holding the same [note] as security for a different obligation*." RCW 61.24.005(2) (emphasis

---

[9] Judge Young ultimately concludes, in the circumstance involved. In that case, that the foreclosure was proper.  However, he observes at note 15 that a state judge might well have decided the same issue differently.  Judge Young's factual observation about how the securitization process works are worth considering here as the Mickelsons assert that such securitization and creation of super-party MERS violated the provisions of the WDTA (which must be construed in the Mickelsons' favor) and thereby exclude defendants from any of the security benefits conferred by the WDTA because of the illegality of the Mickelsons' DOT.  The Mickelsons' assert standing to challenge the legality of the DOT agreement because of the reasons stated above.  This basis for standing, i.e. MERS is part of the illegal structure of a DOT that does not comply with WDTA, does not rise or fall on MERS contractual dealings with others, except to the extent they violate Washington laws, such as the WDTA, the Criminal Profiteering Act, etc.

[10] Where notice is contemplated, but no time is stated in the contract, the law implies a reasonable time, i.e., when a contract does not fix a time for performance, it will be presumed that a reasonable time was intended. *Byrne v. Ackerlund*, 44 Wash. App. 1, 5, 719 P.2d 1363 (Wash. App. Div. 1 1986); *Foelkner v. Perkins,* 197 Wash. 462, 85 P.1d 1095 (1938); *see also,* RCW 62A.2-309. What constitutes a reasonable time for the performance of a contract will depend upon the circumstances of each case. *Peplinski v. Campbell*, 37 Wash. 2d 857, 226 P.2d 211 (1951); *see also*, RCW 62A.1-204. In this case, reasonable notice under the deed of trust contract would have been long before the foreclosure proceedings were started by NWTS.

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 12
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
Tel. 360.403.8700/STAFNELAWFIRM@AOL.COM

supplied). In construing this exclusion, this Court should "give effect to every word, clause and sentence of … [the] statute. No part of a statute should be deemed inoperative or superfluous unless the result of obvious mistake…" *Cox*, 103 Wash. 2d at 387-8. The construction should be given effect by the policies of the Deed of Trust Act: "(1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles." *Plein v. Lackey*, 149 Wash. 2d 214, 67 P.3d 1061(2003); *Cox* at 387.

Defendants cite numerous federal district court cases for the proposition that securitization has no effect on the Debt obligation. Mot. at 17. Mickelsons plausibly claim that "security for a different obligation" means, in a securitization setting, the obligation between investors and investor trustee (and their agents) with regards to the Notes. In other words changing the nature of the obligations owed to the beneficial owners of bits and pieces of a Note, changes the nature of the original note obligation and excludes the investors (note owners) from any beneficiary status under Washington Law. This, in turn, harms the plaintiff as they cannot find the real party in interest to negotiate the terms of their obligation with.[11] Furthermore, securitization is not consistent with the three underlying policies of the WDTA.

First, the securitization set up renders the servicer most profitable in the event of default because it receives more money servicing a default loan and when foreclosure occurs, it makes

---

[11] Under the securitization model, a homeowner has to initiate a lawsuit in the State of Washington to learn of the true identity of the owner and holder of their note and deed of trust. Litigation defeats the first goal of the WDOTA which is to make the nonjudicial foreclosure process efficient and inexpensive. The costs associated with nonjudicial foreclosure in these situations are escalated rather than contained because servicers have the most to gain when loans go into default. As evidence, the Defendants' conduct of using Vonnie McElligott as Vice President of MERS, attorney in fact for Chase and authorized signer for NWTS all at the same, while might have been intended to be cost saving, does not pass the smell test and cannot be deemed efficient.

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 13
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

more money processing the foreclosure. The servicer has little or no incentive to avoid foreclosure; it has no skin in the game and everything to gain by speeding up the process of default instead of promoting cure. Indeed, in this case, the Mickelsons complaint alleges the servicer dual tracked them into a foreclosure.

The costs resulting from these transactions transform our lending practices from long term and stable investments to service industries which make money on defaults and shake up our entire economy. This is the system that is in place and the resulting harm is of an epidemic proportion; from the stress imposed on our court system, to the blights imposed on our neighborhoods; to the enormous distrust by investors worldwide which in turn exacerbates our ailing economy.

Further, the Securitization of such promissory notes does not promote the stability of land titles. *Cox v. Helenius*, 103 Wash. 2d at 387. The instability is demonstrated by numerous judicial decisions finding in favor of and against MERS' involvement (MERS' purpose in retaining legal and equitable foreclosure was to facilitate foreclosures in its own name, so as not to appoint trustees); *See e.g.*, *Mortgage Electronic Registration Systems, Inc. v. Graham*, 229 P.3d 420 (Kan. App. 2010); *Mortgage Elec. Registration Sys. v. Saunders*, 2010 ME 79, 2 A.3d 289, 294-97 (Me. 2010) (MERS cannot foreclose because it does not have an independent interest in the loan because it functions solely as a nominee); *Hooker v. Northwest Tr. Servs*, No. 10-3111, 2011 U.S. Dist. LEXIS 57005, 211 WL 2119103, at *4 (D. Or. May 25, 2011) (defendants' failure to register all assignments of the deed of trust violated the Oregon recording laws so as to prevent non-judicial foreclosure).

Plaintiffs allege MERS was created by the mortgage banking industry to make the transfer of mortgages on the secondary mortgage market completely opaque, deprive county

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 14
No. 2:11-CV-01445

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
Tel. 360.403.8700/STAFNELAWFIRM@AOL.COM

recorders throughout the country of millions of dollars in recording fees; and to shield the real holder of the underlying obligation, or their successor in interest, from potential liability involving predatory loans and/or other statutory violations. *See* Compl. ¶¶ 3.8 - 3.9.4. MERS is the "straw-man" to hide the identity of the real holders of the securitized obligation, *See* id. Therefore, the use of MERS in real estate transactions causes instability in the land titles in contravention of WDTA. *See In re Arizmendi*, 2011 Bankr. LEXIS 2138, note 15 (The Court notes that circumventing the public recordation system is, in fact, the purpose for which the MERS system was created.) Because the securitization model is inconsistent with the WDTA, there is a plausible claim that possession of the note does not entitle the party to have beneficiary status under the WDTA.

**D. Response to the Ninth Circuit's Recognition of MERS as a Proper Beneficiary**

The Mickelsons contend that *Cervantes* is distinguishable from this case. *See Cervantes v. Countrywide Home Loans*, 656 F.3d 1034 (2011). *Cervantes* involves analysis of an Arizona statute and did not involve contentions that the DOT contract was illegal and that the alleged beneficiaries were excluded by the language of state law. *See Cervantes*, 653 F.3d at 1047 ("The plaintiffs' claims that focus on the operation of the MERS system ultimately fail because the plaintiffs have not shown that the alleged illegalities associated with the MERS system injured them or violated state law"). Second, *Cervantes* relied upon Arizona law for the proposition that: "[b]y signing the deeds of trust, the plaintiffs agreed to the terms and were *on notice* of the contents." *See Kenly v. Miracle Props.*, 412 F. Supp. 1072, 1075 (D. Ariz 1976)(explaining a deed of trust is essentially "an essentially private contractual arrangement"); *Cervantes*, 653 F.3d at 1042. Washington Law holds that DOTs are not controlled by contract law:

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 15 No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

Applying the common law of contracts would interfere with these statutory procedures and contravene the Act's purpose and policy.

First, contract law is not directly applicable because a deed of trust necessarily involves three parties--the debtor, the lender, and the trustee (rather than two contractual parties), *Court Actions,* 59 Wash. L.REV. at 323, and possibly a fourth party, the purchaser at the foreclosure sale. Second, applying contract law could contravene the Act's policies by making the process more lengthy (e.g., no finality), inefficient (e.g., more procedures), and expensive (e.g. litigation). *See Cox,* 103 Wash. 2d at 387, 693 P.2d 683. Third, contract law is not necessarily interpreted in favor of borrowers, which is contrary to the Legislature's explicit requirement in the Act. *See Koegel,* 51 Wash. App. at 111, 725 P.2d 385. Lastly, if applied, contract law could provide exceptions to a narrowly prescribed statutory process that demands strict compliance. *See Koegel,* 51 Wash. App. at 111, 752 P.2d 385..

We hold, therefore, that the common law of contracts, including unilateral mistake, is inapplicable to nonjudicial foreclosure sales under Washington's Deeds of Trust Act.

*Udall v. T.D. Escrow Services, Inc.*, 132 Wash. App. 290, 302, 130 P.3d 908 (2006).

## E.   MERS as beneficiary is internally inconsistent

Finally, the DOT's designation of MERS as beneficiary actually conflicts with Defendants' position in the present motion to dismiss:

MERS did not attempt to endorse Plaintiff's note to any other entity.  Mot., Ex A.  Rather, MHL Funding endorsed the note in blank, making it bearer paper, and the note was endorsed and transferred to Chase, which became beneficiary under the Deed of Trust, by mere possession. ...  **The only interest MERS transferred to Chase under the recorded assignment of Deed of Trust was its limited right to act as a nominee for the original lender and its successors and assigns.**

Mot. at 12, FN 5 (emphasis supplied).

The foregoing statement is internally conflicted and facially irreconcilable. MERS must be the note holder in order to be beneficiary under the DOT but MERS never did hold the Note. Chase cannot obtain beneficiary status because it is clear that Chase did not hold the Note at the time of the foreclosure. MERS did not acquire beneficiary status (because it never

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 16
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

held the Note) and therefore has nothing to pass on to Chase but relinquishment of its nominal status to MHL Lending.

Defendants attempt to bootstrap the tenuous blank endorsement to the power of sale under the WDTA. This violates the WDTA.

### F.   Response to: "Plaintiffs waived their Quiet Title, Injunctive and Declaratory Relief, Criminal Profiteering Act, Unconscionability, and Breach of Contract Claims."

Defendants argue Mickelsons "waived" certain post sale contests and relief. Motion at 9:6-10:22. But "waiver" only applies if the WDTA applies to Mickelsons' DOT agreement. As pointed out earlier, Mickelsons' contention is the DOT agreement they signed was not consistent with the WDTA and therefore illegal.

Further, even if this Court rejects plaintiffs foregoing argument waiver, applies only to post sale contests regarding the underlying obligation; it does not apply to procedural or jurisdictional challenges to a trustee's sale. *See Cox v. Helenius*, 103 Wash. 2d 383 (setting forth certain post sale claims); *see also*, *CHD*, 138 Wash. App. at 139. In *Cox v. Helenius* this Court confirmed that a non-judicial deed of trust foreclosure may result in a void sale, even if the aggrieved party fails to restrain the sale. *Cox,* at 388 (setting forth certain post sale relief)(citations omitted).

Waiver is a common law doctrine which derived from the language of the notice required by RCW 61.24.040(1)(f)(IX): "[***] [f]ailure to bring such a lawsuit *may* result in a waiver of any proper grounds for invalidating the Trustee's sale." RCW 61.24.040(1)(f)(IX)(emphasis supplied).[12] *Plien, Brown,* and *Kaseburg* found that "[a] person

---

[12] Furthermore, "a party who unsuccessfully attempted to enjoin the sale should not be held to have waived the right to contest the completed sale. Under such circumstances, an action to set aside the trustee's sale may be appropriate." Joseph L. Hoffmann, *Comment: Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington*. 59 Wash. L. Rev. 323, 336 (Apr., 1984)

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 17 No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

waives the right to **contest the underlying obligations**." *In re Marriage of Kaseburg*, 126 Wash. App. 546, 558, 108 P.3d 1278 (2005)(emphasis supplied); *see*, *Plein*, 149 Wash. 2d at 227-28; *Brown v. Household Realty Corp.*, 146 Wash. App. 157, 164-67, 189 P. 3d 233 (2008). However, Washington Supreme and Appellate Courts in *Cox*, *Moon*, and *Albice*, found if the procedural defects in the sale are such that the trustee lacks authority to conduct the sale, or the sale is void, the sale can be set aside. *Cox,*103 Wash. 2d at 388; *see also*, *Moon v. GMAC Mortg. Corp.*, 2009 U.S. Dist. LEXIS 91933, at *26-27 (W.D. Wash., Oct. 2, 2009); *Albice v. Premier Mortgage Servs. of Wash., Inc.*, 157 Wash. App. 912, 239 P.3d 1148, *review granted*, 170 Wash. 2d 1029 (2011).[13] The authority to conduct nonjudicial or judicial foreclosure is dependent upon strict compliance with statutory prerequisites. *See id.*; *see also*, *Homeowners Solutions, LLC v. Nguyen*, 200 P.3d 743, 148 Wash. App. 545 (2009); *Mueller v. Miller*, 82 Wash. App. 236, 917 P.2d 604 (1996); *Rosholt v. County of Snohomish*, 19 Wash. App. 300, 304, 575 P.2d 726 (1978); *Pierce County v. Evans*, 17 Wash. App. 201, 204, 563 P.2d 1263 (1977)(authority related to judicial foreclosures).

Defendants mistakenly argue that RCW 61.24.127 forecloses all non-monetary claims relating to the foreclosure, regardless of when the claims arise and/or relate primarily to the foreclosure. *See* Motion at 9:25-10:3. Defendants do not provide any principals of statutory construction for reading RCW 61.24.127 so broadly.

As discussed below, the Legislature did not intend enactment of RCW 61.24.127 to supersede certain post sale claims and remedies. But even if that were the case, the limitations would only apply to certain claims; and would not limit relief sought under equitable powers

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 18
No. 2:11-CV-01445

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

of the Court or Trustee jurisdiction or authority challenges.[14] Furthermore, Plaintiffs raise plausible claims where they did not have actual or constructive pre-sale knowledge of the illegal actions occurring during the foreclosure, such as when GMAC bid at the auction as if it were the beneficiary.

**1.    Legislature did not intend RCW 61.24.127 to broaden waiver doctrine.**

Defendants argue that RCW 61.24.127 imposes limits on all unwaived claims, establishing a two-year limitations period, and barring all other relief except for money damages. *See* Motion at 9:25-10:3. But the language of RCW 61.24.127(1) only indicates that a failure to bring injunction "may not be deemed a waiver of a claim for damages" which acts only as an exclusion of waiver from the claims listed, not application of waiver doctrine to all possible claims. See RCW 61.24.127. Mickelsons argue the legislature did not intend to waive plaintiff's procedural challenges (under *Cox*) to a trustee sale. *See Brown*, 146 Wash. App. at 170; *Cox v. Helenius*, 103 Wash. 2d 383; S.B. 5810, 61st Leg., Reg. Sess. (Wash 2009) or S.S.B 5590, 62nd Leg., Reg. Sess. (Wash. 2011).

Furthermore, the Legislature is presumed to be aware of existing Washington case law on the subjects about which it is legislating. *Woodson v. State*, 95 Wash. 2d 257, 623 P.2d 683 (1980). Thus, if the legislature intended to supplant post sale challenges to procedural defects it would have indicated something to that effect.[15]

---

[14] Nor would it limit recovery for damages under those claims enumerated under RCW 61.24.127.

[15] Whether certain post sale claims and remedies have been superseded by RCW 61.24.127, is being considered by Washington State Supreme Court in the *Albice* appeal. *See Albice*, 157 Wash. App. 912, review granted, 170 Wash. 2d 1029; Response To Petition For Review, 2010 WA S. Ct. Briefs 52600; 2010 WA S. Ct. Briefs LEXIS 339 at *1 (Wash. Nov. 29, 2010) (issues presented for review); Supplemental Brief: Appellee-Respondent, 2010 WA S. Ct. Briefs 52600; 2011 WA S. Ct. Briefs LEXIS 144 at *3-9 (Wash. June 3, 2011) (arguments underscoring the legislature's intent was to continue to allow post-sale relief for void and substantially defective foreclosures). As argued in supplemental briefing therein: the Legislature's intent in passing S.B. 5810 was to fix a result of the *Brown* decision (which waived certain post sale damage claims arising from the underlying obligation). *See Brown*, 146 Wash. App. at 170; Appellee-Respondent, 2010 WA S. Ct. Briefs 52600; 2011 WA S. Ct. Briefs LEXIS 144 at *5-6; see also, 18 Wash. Prac., Real Estate § 20.17 (2d ed.); April 9,

---

**2.      Even if Wavier was broadened, it still only applies to certain claims.**

This Court is required, when possible, to give effect to every word, clause and sentence of a statute. *International Paper Co. v. Department of Rev*., 92 Wash. 2d 277, 281, 595 P.2d 1310 (1979). Contrary to defendants assertion (Motion at 10:1-2), RCW 61.24.127(2) only imposes limitations relief sought for: (a) Common law fraud or misrepresentation; (b) A violation of Title 19 RCW; (c) Failure of the trustee to materially comply with the provisions of this chapter; or (d) A violation of RCW 61.24.026. *See* RCW 61.24.127(2) ("***The nonwaived claims listed under subsection (1)*** of this section are subject to the following limitations [***]")(emphasis supplied).

Even if this Court or the Washington Supreme Court finds the legislature limited procedural challenges to damage relief, as argued below, the plaintiff should still have claims seeking quiet title, injunctive and declaratory relief under the (1) other inherent authority of Washington courts; or (2) challenges to the jurisdiction or authority of a trustee.

**3.      Limitations would not apply to relief sought under equitable powers of the Court.**

Superior courts have equitable powers, including injunctive relief, which cannot be abrogated or restricted by the legislature. *Bowcutt v. Delta North Star Corp*., 95 Wash. App. 311, 320, 976 P.2d 643 (1999); *c.f.*, *Moon v. GMAC Mortg. Corp.,* 2008 U.S. Dist. LEXIS 90912 at *9-10 (W.D. Wash. Oct. 24, 2008)("The court in *Bowcutt* did not hold that the requirements of RCW 61.24.130 could be waived, but rather held that the WDTA did not apply." (*citing Bowcutt* at 321).

2009, WA S.B. Rep., 2009 Reg. Sess. SB 5810 (witness testimony that, "The *Brown* court case fix is important"); April 9, 2009, WA H.R.B. Rep., 2009 Reg. Sess. SB 5810 (witness testimony that, "The *Brown* court case fix is important"); March 23, 2009, WA H.R.B. An., 2009 Reg. Sess. SB 5810 (explaining non-waiver of claims); 2011 Wash. Leg. Serv. Ch. 364 (S.S.B. 5590) ("In 2011, the Legislature expanded RCW 61.24.127 even further by adding a cause of action against a lender who fails to respond to a homeowner's tender of a short sale offer"); *c.f.*, Albice v. Premier Mortg. Servs. of Washington, 2010 WA S. Ct. Briefs 52600, at *23-25 (Wash. June 3, 2011) (authority to act as trustee is at issue).

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 20
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

Here, the Mickelsons allege potential violations of the criminal profiteering act, chapter 9A.82 RCW and seek declaratory, injunctive, and quiet title relief pursuant to the inherent power of this court to grant such relief.

**4.    Limitations would not apply to Trustee Jurisdiction or Authority Challenges.**

"Trustee" means the person designated as the trustee in the deed of trust or appointed under RCW 61.24.010(2). Plaintiffs bring claims related to appointment of NWTS; as well as, claims arising from RCW 61.24.010(2)-(4) for NWTS' being vested with the mantle of authority as trustee.

Here the wording of the statute is important: "Failure of the trustee to materially comply with the provisions of this chapter" RCW 61.24.127(1)(c). If (as is the case here) the party's claim goes to a person being the trustee, qualifying as a trustee, (such as: trustee conflicts of interest, and being vested with the powers of the trustee), then claims going to a person meeting definition of Trustee would not be limited to damages under RCW 61.24.127(2) because they constitute a challenge to the authority of the person purporting to be the trustee; and not their compliance with the procedures in the act. *c.f.*, *Torkild v. Johnston*, 2008 Wash. App. LEXIS 277 (Wash. Ct. App., Feb. 4, 2008)(Prior case law raised the "possibility of a defense based on a conflict of interest that would void the foreclosure sale").

**5.    Plaintiffs did not have actual or constructive knowledge of "Trustee's Acceptance of Bid Invalid" or claims based on defendants' deceit.**

Waiver applies only where a party had "actual or constructive knowledge of a defense to foreclosure." *Plein*, 149 Wash. 2d at 255. Here an improper purchase at Trustee Sale (Compl. at ¶¶ 6.55-6.61) cannot be waived since the improper acceptance of a non beneficiary credit bid occurred during the sale and therefore could not be known prior to the NWTS auction.

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 21
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

Additionally, the Mickelsons would not have actual or constructive knowledge of their defenses if the parties are engaged in fraud or misrepresentation with purposes to deceive the plaintiffs into thinking this was a valid foreclosure. It was discovery after the fact, that these Defendants were engaged in a collusion where they create documents for purpose of the foreclosure and allowed employee of one entity to pose as a corporate officer or representative of another entity, all in an effort to prevent the Mickelsons from knowing the facts that constitute their defenses to the sale. Furthermore plaintiffs present a plausible claim of relying upon servicer/agents promises of a modification and not being foreclosed upon under their dual tracking section of the complaint.

**G.     Response to: "The foreclosure sale mooted Plaintiffs' Quiet Title and Injunctive and Declaratory Relief claims.**

Seeking to extend the non-judicial authority given to the trustee, defendants cite *Ruvalcaba* and the DTA's prohibition on redemption for mooting declaratory, injunctive and quiet title relief. Mot. at 10:26-11:6. Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999) (citing *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 (9th Cir. 1998)). *Ruvalcaba* dealt with an issue fully litigated in a court of law where the doctrine of *res judicata* precludes the party from reopening that issue on remand. *See Id*. (bifurcated the claims). Additionally, *Cronkhite v. Kemp* is not on point, as goes to an appeal of the administrative decision not to consider the litigant for an assignment program and not to the procedures and requisites of the trustee's sale. *See Cronkhite v. Kemp*, 741 F. Supp. 822, 825 (E.D. Wash. 1989).[16]

---

[16] Defendants cite several California Deed of Trust cases to import *Ruvalcaba* in mooting injunctive relief. Cal. Civ.Code § 3412 goes to court-ordered cancellation instruments which is not the law in Washington. *Rosal v. First Fed. Bank of Cal.*,

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 22
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

**1.     Plausible claim that Freddie Mac was not a bona fide purchaser.**

The Purpose of the recording act is to make superior the first recorded deed by party acting in good faith. *Tacoma Hotel, Inc. v. Morrison & Co.*, 193 Wash. 134, 74 P.2d 1003 (1938). The index to real property conveyances and the recorded document itself, imparts notice concerning described property only as to matters within its chain of title; one conducting a search has a right to rely upon what the index and recorded document discloses and is not bound to search the record outside the chain of title of the property being investigated. *Koch v. Swanson*, 4 Wash. App. 456, 481 P.2d 915 (1971). But a recording instrument without a statute authorizing it may not operate as constructive notice. *Howard v. Shaw*, 10 Wash. 151, 38 P. 746 (1894); *Fischer v. Woodruff*, 25 Wash. 67, 64 P. 923 (1901); *Dial v. Inland Logging Co.*, 52 Wash. 81, 100 P. 157 (1909); *Flynn v. Garford Motor Truck Co.*, 149 Wash. 264, 270 P. 806 (1928).

A bona fide purchaser is one who purchases property without actual or constructive knowledge of competing interests and pays the vendor valuable consideration. *Glidden v. Mun. Auth. of Tacoma*, 111 Wash. 2d 341, 350; 758 P.2d 487 (1988); *Glaser v. Holdorf*, 56 Wash. 2d 204, 209, 352 P.2d 212 (1960). As suggested by learned commentators on this subject, recital of statutory compliance constitutes "prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value" and as such acts as a limitation to set aside the Trustee's Sale (but not damages for wrongful foreclosure) 59 Wash. L. Rev. 323, 336-338 (internal citations omitted).

---

671 F. Supp. 2d 1111, 1136 (N.D. Cal. 2009)(mootness raised for failure to meet burden of proof of claims, injunctive relief distinguished between void sale, and voidable sale); *see also*, *Kurek v. America's Wholesale Lender*, 2010 U.S. Dist. LEXIS 75401, 2-3 (N.D. Cal. July 26, 2010)(*Rosal* does not stand for the proposition a plaintiff must tender even when attacking the validity of an underlying debt). *Ancheta v. Golden Mortg. Empire, Inc.*, 2011 U.S. Dist. LEXIS 22549, *11 (N.D. Cal. 2011)(seeking rescission under TILA).

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 23
No. 2:11-CV-01445

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

A purchaser is on notice if he has knowledge of facts sufficient to put an ordinarily prudent man on inquiry and a reasonably diligent inquiry would lead to the discovery of title or sale defects. *Steward v. Good*, 51 Wash. App. 509, 513, 754 P.2d 150 (1988) (citation omitted) A bona fide purchaser is entitled to rely on trustee's recitals as to the correctness of foreclosure sale procedures. RCW 61.24.040(7); *Glidden*, 111 Wn.2d at 347. But a purchaser who is not bona fide is not entitled to such protections. *See Albice*, 157 Wash. App. at 922, 925, 928-930.

The Mickelsons plead sufficient facts showing that Freddie Mac was not a bona fide purchaser because of its awareness of defects in the sale. Specifically that: Freddie Mac paid with a credit bid in violation of RCW 61.24.070; that while Freddie Mac purported to be an arms-length beneficiary of the note, Freddie Mac's name appeared on the boilerplate form of the deed of trust and might be one of the authors of the form; that Freddie Mac is involved in MERS; that Freddie Mac is aware of numerous issues related to foreclosure including: invalid Deed of Trust, unauthentic notes, robo-signing; that Freddie Mac is a part of the securitization transaction; that Freddie Mac made Chase its agent and that Freddie Mac's attorney RCO and the Trustee NWTS have a conflicting relationship.

## 2.   Declaratory Relief

Declaratory Relief goes to the performance and validity of the sale; and the sale being void. As discussed *supra*, such may be brought under *Cox v. Helenius*; and is still an active controversy.

## 3.   Injunctive Relief

The injunctive relief sought is to prevent unlawful detainer action for eviction from the Mickelson's residence. Compl. ¶ 14.3 "Freddie Mac seeks to dispossess him of the premises"; id. ¶ 14.6 (beneficiary and trustee involved with illegal sale, and Freddie Mac was involved in

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 24
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

the process to bid at and/or perform an illegal sale). Rights of possession are superior to status under grantor/grantee claimed title. *See Clare House Bungalow Homes Residents Assocs. v. Clare House Bungalow Homes, LLC*, 447 B.R. 617 (Bankr. E.D. Wash., 2011); *see also*, RCW 61.24.060 (legislation incorporating summary proceedings for writ of restitution to obtain possession of real property); *Sav. Bank of Puget Sound v. Mink*, 49 Wash. App. 204, 209 (Wash. Ct. App. 1987)(citing *Cox*'s defects in the foreclosure process itself, and finding plaintiff failed to meet summary judgment standard of improper attorney-trustee relationship); *c.f.*, *Torkild*, at *8-9. As Plaintiffs are still in possession of the premises, the right to possess is still an active controversy.

**4.    Quiet Title**

Plaintiffs are not seeking to redeem the property. Plaintiffs are in possession of the premises and claim title to the premises. Quiet Title under RCW 7.28.010 specifically goes to any title to the premises claimed by Freddie Mac and the superiority of the Plaintiffs title. RCW 7.28.010; *see also*, *Standring v. Mooney*, 14 Wash. 2d 220, 229 (1942).

**H.  Response to: the Motion to Dismiss CPA claims.**

MERS claims the statute of limitations ran on the DOT contract constituting a CPA violation on November 22, 2005 because the Mickelsons' loan closed on December 22, 2009. Motion, p. 18.10-25.  MERS acknowledges that this CPA claim, presumably the one set forth in ¶ 13.11, is a "deception based" claim that accrues when the plaintiff "knows or should have known all facts necessary to establish a legal claim".  Id.  As the allegations of the "Section 13 Consumer Protection Act" make clear it was the pre-foreclosure and foreclosure activities based on the illegal contract which proximately caused the Mickelsons damage. Nothing happened to the Mickelsons or millions of other homeowners in 2004 to put them on notice of

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 25
No. 2:11-CV-01445

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

the catastrophic damages they and millions of homeowners were about to sustain. The Mickelsons brought this action within four years of the time the defendants' pre-foreclosure activities began.

The Mickelsons sufficiently plead fact-specific instances of their attempts to obtain a loan modification from Chase. The complaint avers that Chase employed certain tactics designed to lure Plaintiffs into believing that the foreclosure would not occur on March 25, 2011, while loan modification discussions were ongoing, only to have NWTS go ahead with the nonjudicial sale. This phenomenon is called "dual tracking." The Complaint specifically refers to a "representative sample of the Mickelsons attempts to obtain assistance and qualify for a helpful program is located in Appendix 1 to this complaint." Compl. ¶ 3.32. In contrast, the Defendants simply claim that "Chase never told them they would get a loan modification, and never told them the foreclosure sale was canceled or indefinitely postponed" (Mot. at 6:1-6:3); that Plaintiffs failed to "comply with the requirements for consummating a loan modification" (id at 6:17-18); and repeatedly missed deadlines, se*e* id. at 1:4-9, 7:3-18. These assertions by Chase remain the bare words of counsel and are insufficient to challenge the Mickelsons' allegations in the context of a motion to dismiss. *Corinthian Colleges*, 655 F.3d 984 (Court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion); *Lewis County Sav. & Loan Asso v. Black*, 60 Wash. 2d 362**,** 374 P.2d 157 (1962) (the entry of a decree of foreclosure, on motion for summary judgment, was improper unless (1) there were no disputed issues of fact, or (2) the disputed facts were irrelevant to the question of whether or not the mortgage should be foreclosed); *Beers v. Ross*, 137 Wash. App. 566**,** 154 P.3d 277 (2007)(There exists a basic evidentiary premise that on summary

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK,
MERS, AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S PARTIAL MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 26
No. 2:11-CV-01445

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

judgment, a later declaration should be considered in light of other evidence presented in the case to determine whether sufficient evidence raises a factual issue).

Finally, Defendants are mistaken with regard to what must be alleged in CPA action based on unfair or deceptive trade practices related to a boilerplate illegal contract. *See, e.g., State v. Kaiser*, 161 Wash. App. 705, 254 P.3d 850 (2011).  In *Kaiser* Judge Schlinder writes:

> Kaiser also contends the trial court erred in ruling that the creation and enforcement of the overage play agreements was "unfair and unconscionable under the [CPA]." It is a violation of the CPA to misrepresent the terms of a transaction or to fail to disclose material terms. *Ralph Williams*, 87 Wn.2d at 305-09. Grossly unfair or unconscionable contracts also violate the CPA. *See Ralph Williams*, 87 Wn.2d at 309. Because CPA enforcement actions implicate substantial harm to consumers, the test for unfairness and deception differs from traditional contract law defenses. *See Ralph Williams*, 87 Wn.2d at 309.
>
> In determining whether the agreements were unconscionable and unfair, we examine "'[t]he manner in which the contract was entered,' whether [a party] had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.'" *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 347, 103 P.3d 773 (2004) (alterations in original) (quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975)).
>
> Here, there is no dispute that *Kaiser* [in this case Chase and the other defendants] solicited property owners facing tax foreclosure by offering to help save their property from foreclosure, and induced them to enter into agreements that misrepresent material facts. Kaiser purposefully withheld material information regarding the tax foreclosure sale, including the likelihood of receiving an overage, and buried any information about an overage in the numerous documents signed by the property owner. As a matter of law, the overage play agreements were unfair and unconscionable agreements that violated the CPA.

*Id*.

The Mickelsons allege CPA damages. Compl. at ¶ 3.12. The boiler plate nature of the DOT contract and the attached exhibits to the complaint provide sufficient facts whereby this Court can conclude that substantially the same violations that are alleged as occurring

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 27
No. 2:11-CV-01445

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

to the Michelson have harmed a large number of other citizens, as well as, numerous public entities themselves.

**I.     This Court should not dismiss Plaintiffs' FDCPA claims against NWTS, RCO, Jeff Stenman, Vonnie McElligott and Rhea Pre**

The above defendants urge this Court to follow the majority view and hold the above defendants are not debt collectors.  The Mickelsons' question whether the above defendants correctly state the majority rule.  For example, *Hulse v Ocwen Federal Bank, FSB*, 195 F. Supp. 1204 (2002) was abrogated by *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 525 (2009).

## IV. CONCLUSION

For the Foregoing reasons the Defendants' Motion to Dismiss and Joinders therein should be denied.

DATED this 30th day of January, 2012, in Arlington, Washington.

/s/ Scott E. Stafne
Scott E. Stafne, WSBA 6964
Ha Thu Dao, WSBA 21793
Andrew Krawczyk, WSBA 42982
Stafne Law Firm
239 N. Olympic Avenue
Arlington, WA 98223
(360)403-8700
scott.stafne@stafnelawfirm.com
andrew@stafnelawfirm.com
Attorneys for Plaintiffs

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND JOINDERS THEREIN - 28
No. 2:11-CV-01445

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700/STAFNELAWFIRM@AOL.COM

**CERTIFICATE OF SERVICE**

I, Andrew J. Krawczyk, certify that on the date given below I electronically filed this document entitled:

RESPONSE TO DEFENDANTS JPMORGAN CHASE BANK, MERS, AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND TO DEFENDANTS NORTHWEST TRUSTEE SERVICES INC AND ROUTH CRABTREE OLSEN PS JOINDER THEREIN

with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following persons:

Erin McDougal Stines
FIDELITY NATIONAL LAW GROUP
1200 6TH AVENUE STE 620
SEATTLE, WA 98101
(206) 224-6005
Fax: (877) 655-5286
Email: erin.stines@fnf.com
Attorney for Defendant Chicago Title Insurance Company

Fred B Burnside and Rebecca J. Francis
DAVIS WRIGHT TREMAINE (SEA)
1201 THIRD AVENUE STE 2200
SEATTLE, WA 98101-3045
206-757-8016
Fax: FAX 206-757-7016
Email: fredburnside@dwt.com
Email: RebeccaFrancis@dwt.com
Attorneys for Defendants: Chase Home Finance LLC, JPMorgan Chase Bank, N.A., Mortgage Electronic Registration Systems, Inc. and Federal Home Loan Mortgage Corporation

Heidi E. Buck
ROUTH CRABTREE OLSEN
13555 SE 36TH STREET

CERTIFICATE OF SERVICE- 1

STE 300
BELLEVUE, WA 98006
425-213-5534
Email: hbuck@rcolegal.com
Attorneys for Defendants: Northwest Trustee Services, Inc. and Routh, Crabtree, Olsen, P.S.

SIGNED this 30th day of January, 2012.

/s/ Andrew J. Krawczyk
Scott E. Stafne, WSBA 6964
Andrew J. Krawczyk, WSBA 42982
Stafne Law Firm
239 N. Olympic Avenue
Arlington, WA 98223
(360) 403-8700
scott.stafne@stafnelawfirm.com
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE- 2