1
2
3
4
5
6

The Honorable Judge Marsha Pechman

7

**UNITED STATE DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

8

| | | |
|---|---|---|
| TRAVIS MICKELSON, DANIELLE H. MICKELSON, and the marital community thereof, | ) ) ) | No.  C11-01445 MJP |
| | ) | **DEFENDANTS NORTHWEST** |
| Plaintiffs, | ) | **TRUSTEE SERVICES, INC.'S, JEFF** |
| | ) | **STENMAN, VONNIE MCELLIGOTT,** |
| v. | ) | **RHEA PRE, AND ROUTH CRABTREE** |
| | ) | **OLSEN, P.S.'S MOTION FOR** |
| CHASE HOME FINANCE, LLC, an unknown | ) | **JUDGMENT ON THE PLEADINGS** |
| entity; JPMORGAN CHASE BANK, N.A., a | ) | |
| foreign corporation; MORTGAGE | ) | **NOTE ON MOTION CALENDAR:** |
| ELECTRONIC REGISTRATION SYSTEMS, | ) | **June 15, 2012** |
| INC., a foreign corporation; NORTHWEST | ) | |
| TRUSTEE SERVICES, INC., a domestic | ) | |
| corporation; JOHN DOES, unknown entities; | ) | |
| MORTGAGEIT, INC., a foreign corporation; | ) | |
| GMAC MORTGAGE CORPORATION, a | ) | |
| foreign corporation; CHICAGO TITLE, an | ) | |
| unknown corporation; ROUTH CRABTREE | ) | |
| OLSEN, P.S., a domestic Personal Services | ) | |
| Corporation; and FEDERAL HOME LOAN | ) | |
| MORTGAGE CORPORATION, a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## I.      RELIEF REQUESTED

COME NOW, Defendants Northwest Trustee Services, Jeff Stenman, Vonnie McElligott, and Rhea Pre (collectively, the "NWTS Defendants") and Routh Crabtree Olsen, P.S. ("RCO") (collectively, "Defendants") and move the court for entry of an Order of judgment on the pleadings in Defendants' favor pursuant to Fed. R. Civ. P. 12(c).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## II.     STATEMENT OF FACTS

The following facts are taken from Plaintiffs' Amended Complaint ("FAC"), the documents attached thereto, or referenced therein.

### A.  Note and Deed of Trust

On or about November 22, 2005, Plaintiffs Travis Mickelson & Danielle H. Mickelson refinanced their home and received a loan in the amount of $403,500.00. FAC, ¶¶ 3.3, 3.2.58 [Dkt. 29].  The loan was evidenced by a promissory note ("Note"), endorsed in blank, which was signed by Plaintiffs.  *Id*. ¶¶ 2.11, 3.3 & FAC Exhibit A [Dkt. 29].

To secure repayment of the Note, Plaintiffs granted to Mortgage Electronic Registration Systems ("MERS") as nominee for the original lender, MHL Funding Corp. and its successors and assigns, a deed of trust (the "Deed of Trust").  FAC ¶ 3.6 & Exhibit B [Dkt. 29]. The Deed of Trust encumbers the real property commonly known as 436 Ezduzit Lane, Camano Island, Washington, 98282 (the "Property").  *Id*.  The Deed of Trust was recorded on November 29, 2005, under Island County Auditor's File No. 4155570.  *Id.*

All parties to the Deed of Trust agreed that MHL Funding Corp. was the lender, and that MERS, as nominee for MHL Funding Corp., would be the beneficiary as that term is defined in the Deed of Trust.  *Id*.  The Deed of Trust names Chicago Title as the Trustee, and grants the Trustee the power of sale in the event of a default.  *Id*.

Chase Home Finance LLC ("Chase") became the servicer of the loan on or about June 3, 2006.  *See* FAC ¶ 2.11.  Also, Chase has been in possession of the Note since at least September 5, 2007; thus, making Chase the holder of the Note endorsed to bearer.  *See* Chase Mot., 3:14-17 [Dkt. 43].

### B.  Assignment of the Deed of Trust

On or about August 25, 2008, MERS, as nominee for MHL Funding Corp., executed an Assignment of the Deed of Trust ("Assignment") whereby all beneficial interest in the Deed of Trust was transferred to Chase.  FAC ¶¶ 2.5.2, 3.18, 6.28 & Exhibit D. [Dkt. 29-1].  The

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Assignment was recorded on September 19, 2008 under Island County Auditor's No. 4236910.

2    *Id*.

3        **C.  Default**

4        On or about August 1, 2008, Plaintiffs defaulted by failing to make the payment due for

5    August 1, 2008, and every payment thereafter due. FAC ¶ 3.23 & Exhibit F [Dkt. 29-1].  On or

6    about August 25, 2008, as an agent of Chase, NWTS mailed and posted a notice of default in

7    response to Plaintiffs' default.  FAC ¶¶ 2.5.4, 3.23 & Exhibit F.  On or about August 25, 2008,

8    on behalf of Chase, Routh Crabtree Olsen, P.S. ("RCO") mailed to Plaintiffs via first class mail

9    letters discussing lost mitigation options.  FAC ¶¶ 3.23.

10       **D.  Assignment of the Successor Trustee**

11       In October 2005, Chase Home Finance LLC executed a Limited Power of Attorney,

12   appointing NWTS employees Jeff Stenman and Vonnie McElligott, among others, as attorneys-

13   in-fact for purposes of default-servicing duties. FAC Exhibit C [Dkt. 29-1].

14       On or about September 18, 2008, Chase executed an appointment of successor trustee (the

15   "Appointment") naming Northwest Trustee Services, Inc. the successor trustee. FAC ¶ 3.17 &

16   Exhibit E [Dkt. 29-1].  On September 19, 2008 the Appointment was recorded under Island County

17   Auditor's File No. 4236911. *Id.*

18       **E.  Notice of Trustee's Sale**

19       On or about September 25, 2008, NWTS recorded a Notice of Trustee's Sale under Island

20   County Auditor's File No. 4237228, setting the trustee's sale for December 26, 2008. FAC,

21   Exhibit F [Dkt. 29-1].  On or about that same day, NWTS sent a Notice of Foreclosure.  *Id.*

22       The Trustee's Sale did not occur on December 26, 2008.  On or about April 9, 2009 NWTS

23   recorded a Notice of Discontinuance of Trustee Sale under Island County Auditor's File No.

24   4248560. FAC ¶¶ 2.5.5, 3.28, 3.32.59 & Exhibit G [Dkt. 29-1].

25       On August 17, 2010, Chase executed a Beneficiary Declaration, by an Officer of the

26   Beneficiary, stating that Chase "is the actual holder of the promissory note or obligation,"

ROUTH
CRABTREE
OLSEN, P.S.

1  related to Plaintiffs' loan, in accordance with RCW 61.24.030(7). *See* Exhibit A ("Beneficiary
2  Declaration").

3         On September 7, 2010, NWTS recorded a Notice of Trustee's Sale under Island County
4  Auditor's File No. 4280389, setting the trustee's sale for December 10, 2010.  FAC, Exhibit G
5  [Dkt. 29-1].  On September 6, 2010, NWTS sent a Notice of Foreclosure.  *Id.*

6         The December 10, 2010 sale date was postponed while Plaintiffs requested that Chase
7  reconsider them for a loan modification.  *See* FAC ¶ 3.32.51. Plaintiffs admit that Chase notified
8  them on February 18, 2011, to say that the foreclosure sale would occur on March 25, 2011.  FAC ¶
9  3.32.59.

10  **F.  Trustee's Sale**

11         Plaintiffs did not seek to restrain the Trustee's Sale. On March 25, 2011, the Property was
12  sold to Chase as the highest bidder for $395,297.00. FAC 3.28 & Exhibit T.  Chase then
13  "directed [Northwest Trustee] to issue the Trustee's Deed directly to [Freddie Mac]." FAC, Ex.
14  T [Dkt. 29-11], ¶¶ 5, 10. On March 30, 2011, a Trustee's Deed was executed by NWTS granting
15  the Property to Federal Home Loan Mortgage Corporation.  FAC, Exhibit T. On April 4, 2011
16  the Trustee's Deed was recorded under Island County Auditor's No. 4293167.  *Id.*

## III.    STATEMENT OF THE ISSUES

17  The following issues are presented for resolution by this court:

19      1.  Whether the NWTS Defendants are entitled to judgment on the pleadings pursuant to
20        Fed. R. Civ. P. 12(c).

21      2.  Whether Defendant RCO is entitled to judgment on the pleadings pursuant to Fed. R.
22        Civ. P. 12(c).

23  //
24  //
25  ///

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
4 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

# IV.    AUTHORITY AND ARGUMENT

## A. LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS UNDER F.R.C.P. 12(c).

Pursuant to Federal Rule of Civil Procedure, Rule 12( c), "[a] district court will render a judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,* 132 F.3d 526, 529 (9th Cir. 1997) (citation and internal quotation marks omitted). While the allegations of the non-moving party must be accepted as true, a plaintiff is required to provide "more than labels and conclusions," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This is the same standard that applies to a Rule 12(b)(6) motion to dismiss. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,* 522 F.3d 1049, 1052 n.1 (9th Cir. 2008).

"Review is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1061 (9th Cir. Cal. 2008). The incorporation by reference doctrine allows a court to "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).

## B. DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS AS TO PLAINTIFFS' CLAIMS UNDER THE DTA, CPA, AND FDCPA.

### 1. Plaintiff's Post-Sale Claims under the Deed of Trust Act fail as a matter of law as to the NWTS Defendants.

Under Plaintiffs' DTA violations cause of action, Plaintiffs claim (1) NWTS was not authorized as successor trustee, (2) NWTS breached its duty of good faith owed under the DTA, (3) NWTS lacked the requisites to initiate a nonjudicial foreclosure, and (4) NWTS' acceptance

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

of the foreclosure sale bid was invalid.[1]

### a. NWTS was the valid successor trustee under Plaintiffs' Deed of Trust pursuant to the Appointment of Successor Trustee.

A trustee so appointed by a beneficiary may foreclose a deed of trust nonjudicially. RCW 61.24 *et seq*. The beneficiary has the power to appoint any trustee that is qualified to act as such pursuant to law. RCW 61.24.010(2). Upon recording the appointment of a successor trustee…the successor trustee shall be vested with all powers of an original trustee. *Id*.

On September 19, 2008, the beneficiary, Chase Home Finance LLC, named NWTS as successor trustee by recording the Appointment. *See* FAC, Ex. E; *see also* RCW 61.24.010(2). The Deed of Trust grants the Trustee the power of sale in the event of default. *See* FAC, Ex. B. Section 24 of the Deed of Trust states that "[w]ithout conveyance of the Property, the successor trustee shall succeed to all the title, power, and duties conferred upon Trustee herein and by Applicable Law." *Id*.

The Deed of Trust also specifies that "[a]fter the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the property at public auction..." *See* Exhibit 2 at ¶ 22. According to the Notice of Sale, and consistent with RCW 61.24.020, Plaintiffs were informed that the Property will be sold to "satisfy the expense of the sale and the obligation secured by the Deed of Trust as provided by statute." *See* FAC, Ex. G.

### b. Washington law allows the use of agents in nonjudicial foreclosure proceedings.

Jeff Stenman, as Attorney-in-Fact, pursuant to a recorded Power of Attorney signed the Appointment on behalf of Chase Home Finance LLC. Without citing any authority in support of such proposition, Plaintiffs claim that Stenman's execution of the Appointment as Chase's Attorney-in-Fact created "a fiduciary duty" between NWTS, Jeff Stenman, and Vonnie

---

[1] This has been adjudicated. *See* Order Denying Plaintiff's Motion for Reconsideration (bid is valid). Dkt. 66.

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
6 of 23   Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

McElligott that disqualified NWTS from acting a successor trustee under Plaintiffs' Deed of Trust.

First, Jeff Stenman is appointed Attorney in Fact individually, not as an employee of NWTS. Thus, to the extent Jeff Stenman signed the Appointment, he did in his own individual capacity, not in his capacity as an employee of NWTS.

Second, Washington courts have held that "[t]here is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions." *Bain v. Metropolitan Mortgage Group, Inc.*, 2010 WL 891585, *6 (W.D.Wash.) (*citing Russell v. Lundberg,* 120 P.3d 541, 544 (Utah Ct.App.2005)). An agent may perform "mere ministerial acts" relating to a foreclosure. *Id.* (*citing Buse v. First Am. Title Co.,* C08-0510-MJP, 2009 WL 1543994, at *3 (W.D.Wash. May 29, 2009)).

Here, Plaintiffs do not dispute that a recorded Power of Attorney gave Jeff Stenman authority to execute, acknowledge, and record documents on behalf of Chase Home Finance LLC. *See* FAC, Ex. C. Plaintiffs claim, again without citing any authority, that such a grant of authority was improper and disqualified NWTS from later acting as successor trustee. Plaintiffs' legal conclusions alone are insufficient to state a claim under the *Twombly* and *Iqbal* standards. A pleading that offers "labels and conclusions" or a "formulaic recitation of elements of a cause of action will not do." Nor so a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement." *Iqbal,* 129 S.Ct. at 1949 (internal citations omitted).

Third, under RCW 61.24.010(3), "The trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust." To the extent Plaintiffs rely on this provision of the DTA in support of their position that NWTS was disqualified as successor trustee, they have misconstrued the purpose and effect of the statute.

Prior to the 2008 legislative session, RCW 61.24.010 did not impose any formal duty on the trustee nor did it except the trustee from any duty. During the 2008 legislative session, the

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   legislature amended the DTA to read, the "trustee or successor trustee shall have no fiduciary

2   duty or fiduciary obligation to the grantor or other persons having an interest in the property

3   subject to the deed of trust." RCW 61.24.010(3). This subsection became effective on June 12,

4   2008, and was intended to address ambiguities regarding the duties of trustee after the

5   Washington Supreme Court imposed dual (and in many ways competing) obligations in *Cox*.[2] In

6   2008, the legislature also enacted RCW 61.24.010(4), which provides: "The trustee or successor

7   trustee shall act impartially between the borrower, grantor, and beneficiary." *Id.*

8       During the 2009 legislative session, the legislature removed the "duty of impartiality"

9   and replaced it with the "duty of good faith to the borrower, beneficiary, and grantor." *See* 2009

10  Reg. Sess. S.B. No. 5810 (July 26, 2009).

11      The effect and purpose of the legislature's addition of RCW 61.24.010(3) to the DTA

12  was to clarify that the foreclosing trustee is not a fiduciary to the borrower, grantor or

13  beneficiary. The purpose was not to place some affirmative prohibition upon the trustee. Thus,

14  nothing in the DTA limits an employee of the successor trustee to act in an agent capacity of the

15  beneficiary for purposes of executing documents.

16      Accordingly, the facts demonstrate NWTS acted properly in proceeding with foreclosure

17  as successor trustee for the beneficiary, Chase Home Finance LLC.

18                      c.   **NWTS did not breach its duty of good faith.**

19      Under RCW 61.24.010(4), "The trustee or successor trustee has a duty of good faith to

20  the borrower, beneficiary, and grantor." In general, "good faith" is also the "absence of intent to

21  defraud or to seek unconscionable advantage." *See* Black's Law Dictionary, 701 (7th ed. 1999);

22  *see also Indus. Indem. Co. of the Northwest, Inc. v. Kallevig,* 114 Wn.2d 907, 792 P.2d 520

23  (1990). A "covenant of good faith and fair dealing cannot 'be read to prohibit a party from doing

24  that which is expressly permitted by an agreement'." *Collins v. Power Default Services, Inc.,*

25

26  [2] *See Cox v. Helenius*, 103 Wn.2d 383, 389, 693 P.2d 683, 686 (1985); *see also Thepvongsa v. Reg'l Tr. Services Corp.*, C10-1045 RSL, 2011 WL 307364 (W.D. Wash. Jan. 26, 2011) (citing Wn. Senate Bill Report, 2008 Reg. Sess. S.B. 5378 (Feb. 9, 2008)); Wn. House Rep. Bill Report, 2008 Reg. Sess. S.B. No. 5378 (March 6, 2008).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  2010 WL 234902 (N.D. Cal. Jan. 14, 2010), *citing Carma Developers (Cal.), Inc. v. Marathon*

2  *Dev. Cal., Inc.,* 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992).

3  As a threshold matter, if NWTS was never properly appointed the successor trustee as

4  Plaintiffs allege here, it owed *no* legal duty of good faith under RCW 61.24 to either Plaintiff or

5  the purported beneficiary.

6  Nonetheless, Plaintiffs assert NWTS breached its duty of good faith because it knew or

7  should have known the "broad range of unfair, deceptive, and criminal practices" relating to the

8  "foreclosure industry." *See* FAC, ¶¶ 6.41 and 1.4. Such an allegation cannot support a breach of

9  duty claim in this case, however. Plaintiffs fail to connect any of the generalized conclusory

10 statements regarding these supposed "unfair, deceptive, and criminal practices" to the Plaintiffs,

11 their loan, or to the conduct of NWTS in this matter.

12 Moreover, as discussed *supra*, the Appointment executed by Jeff Stenman as Attorney-

13 in-Fact for Chase was authorized and in accordance with agency law principles. Thus, such an

14 allegation cannot give rise to a claim for breach of duty.

15 **d.   Plaintiffs' allegations that NWTS lacked requisites to initiate a**

16 **nonjudicial foreclosure fail as a matter of law.**

17 *i.   2008 Nonjudicial Foreclosure.*

18 Plaintiffs attack the 2008 nonjudicial foreclosure proceeding based on allegations that

19 NWTS recorded the Notice of Sale prior to it being appointed successor trustee.

20 The publicly recorded documents attached to Plaintiffs' FAC, however, refute this

21 allegation.

22 On or about September 19, 2008, Chase Home Finance LLC appointed NWTS successor

23 trustee by recording the Appointment. *See* FAC, Ex. E.

24 Then, on or about September 25, 2008, NWTS executed and recorded Notice of Trustee's

25 Sale. *See* FAC, Ex. F. Clearly, Plaintiffs' allegations are false. Moreover, given that the 2008

26 nonjudicial foreclosure did not result in any sale of the Property, any challenge to the 2008

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
9 of 23   Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    nonjudicial foreclosure fails for lack of damages and mootness.[3]

2                              ii.   *2010 Nonjudicial Foreclosure.*

3    Plaintiffs attack the 2010 nonjudicial foreclosure proceeding based on allegations that (1)

4    NWTS did not have the "proof" required under 61.24.030(7)(a) before initiating 2010

5    foreclosure[4], (2) NWTS initiated foreclosure for party who was not the beneficiary, and (3)

6    NWTS wrongfully allowed Freddie Mac to credit bid at sale and failed to accept cash, certified

7    check, cashier's check, money order, or funds from Freddie Mac and that such constituted unfair

8    and deceptive act or practice.

9                         a.   NWTS obtained the requisite proof required under RCW

10                              61.24.030(7)(a).

11   Under RCW 61.24.030(7)(a), "for residential real property, before the notice of trustee's

12   sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the

13   owner of any promissory note or other obligation secured by the deed of trust. A declaration by

14   the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder

15   of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as

16   required under this subsection." RCW 61.24.030(7)(a).

17   Here, NWTS obtained a declaration dated August 17, 2010 on behalf of Chase Home

18   Finance LLC in compliance with RCW 61.24.030(7)(a), which was prior to when NWTS

19   recorded the Notice of Trustee's Sale on September 7, 2010. FAC, Ex. G. Thus, the evidence

20   demonstrates NWTS complied with the requisites of RCW 61.24.030(7)(a) prior to recording the

21   Notice of Trustee's Sale.

22                         b.   NWTS initiated foreclosure for the proper party.

23   As already discussed, the evidence demonstrates Chase Home Finance LLC was the

24   ───────────────────

25   [3] Moreover, NWTS recorded a notice of discontinuance of the 2008 NTS on or about April 9, 2009, under Island County Auditor's File No. 4248560.
     [4] Plaintiffs also allege alternatively, that even if they had the requisite proof, they knew or should have known any

26   such proof was insufficient based on the laundry list of purported unfair and deceptive acts listed in Paragraph 1.4, which as discussed *supra* contains no connection to the case at bar.

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    proper party to foreclose based on its possession of the blank endorsed promissory note.

2    Moreover, NWTS complied with the DTA in obtaining the only proof necessary to initiate the

3    foreclosure. Accordingly, Plaintiffs' baseless allegations fail.

4                        c.    Plaintiffs' allegations relating to Freddie Mac's alleged credit

5                              bid are mooted by the Order denying Plaintiffs' Motion for

6                              Reconsideration.

7          On or about May 7, 2012, the court denied Plaintiff's Motion for Reconsideration based

8    on allegations that Freddie Mac was improperly allowed to issue a credit bid at the trustee's sale

9    (an allegation which Defendants contest). *See* Dkt. 66.

10         **2.    Plaintiffs' Claim under the FDCPA fails as a matter of law as to the NWTS**

11                 **Defendants and RCO.**

12                 **a.    Plaintiffs' claim under the FDCPA is waived pursuant to RCW 61.24.127.**

13         Failure to take advantage of available presale remedies as provided by Washington's

14   Deed of Trust Act ("DTA") results in waiver of the right to object to the sale where a party 1)

15   received notice of the right to enjoin the sale, 2) had actual or constructive knowledge of a

16   defense to foreclosure prior to the sale, and 3) failed to bring an action to obtain a court order

17   enjoining the sale. *Plein v. Lackey,* 149 Wn.2d 214, 227, 67 P.3d 1061, 1067 (2003) (citing

18   *Country Express Stores, Inc.,* 87 Wn. App. at 749-51, 943 P.2d 374; *Steward v. Good,* 51 Wn.

19   App. 509, 515-17, 754 P.2d 150 (1988); *Koegel v. Prudential Mut. Sav. Bank,* 51 Wn. App. 108,

20   114, 752 P.2d 385 (1988); *Peoples Nat'l Bank of Wash. v. Ostrander,* 6 Wn. App. 28, 491 P.2d

21   1058 (1971)).

22         Even when a party has legitimate grounds to restrain a sale, by failing to take action the

23   party waives its dispute. *Carlson v. Gibraltar Sav. Of Washington, F.A.,* 50 Wn. App. 424

24   (1988). In addition to waiver of any ability to challenge or set aside the trustee's sale, post sale

25   claims for damages are also waived. *Brown v. Household Realty Corp.,* 146 Wn. App. 157, 160,

26   189 P.3d 223 (2008).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1     The Washington State Legislature created a very limited exception to the general rule

2     when it enacted RCW 61.24.127, which provides in pertinent part:

3         (1) The failure of the borrower or grantor to bring a civil action to enjoin a
          foreclosure sale under this chapter may not be deemed a waiver of a claim for

4         damages asserting:
              (a) Common law fraud or misrepresentation;

5             (b) A violation of Title 19 RCW; or
              (c) Failure of the trustee to materially comply with the provisions of this

6                 chapter.

7     RCW 61.24.127.

8         Here, there is no dispute the Plaintiffs made no effort to file the subject lawsuit and

9     obtain a temporary restraining order prior to the trustee's sale. It was only after the trustee's sale

10    that Plaintiffs filed the underlying lawsuit seeking to set aside the trustee's sale and for damages

11    against Defendants. Because a claim under the Fair Debt Collection Practices Act ("FDCPA") is

12    not one of the listed exceptions under 61.24.127, Plaintiffs' claim under the FDCPA is waived.

13              **b.   Notwithstanding waiver, Plaintiffs fail to state a claim under the FDCPA.**

14        The express purpose of the FDCPA is "to eliminate abusive debt collection practices by

15    debt collectors, to insure that those debt collectors who refrain from using abusive debt

16    collection practices are not competitively disadvantaged, and to promote consistent State action

17    to protect consumers against debt collection abuses."  15 U.S.C. §1692(e).

18              *i.   Neither the NWTS Defendants nor RCO are debt collectors under 15*

19              *U.S.C. § 1692(a) and neither engaged in debt collection.*

20        The FDCPA clearly defines a "debt collector" as one "who uses any instrumentality of

21    interstate commerce or the mails in any business the principal purpose of which is the collection

22    of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

23    due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).[5]  The FDCPA further defines

---

[5] When defining a "debt collector," the FDCPA notes that "[f]or the purpose of section 1692f(6) of this title, such
term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the
principal purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6).  The effect of these two
provisions is that an entity with the principal purpose of enforcing security interests is a "debt collector" only for
purposes of section 1692f(6) but is not subject to the remainder of the FDCPA unless the entity also falls within the
general definition of a "debt collector" set forth in section 1692a(6).  *See Montgomery v. Huntington Bank*, 346 F.3d

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

a "debt" as any "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money [or] property . . . which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* at § 1692a(5).

Washington courts have held, however, that a nonjudicial foreclosure proceeding is not the collection of a debt for purposes of the FDCPA. *See Roman v. Nw. Tr. Services, Inc.,* C10-5585BHS, 2010 WL 5146593 *3 (W.D. Wash. Dec. 13, 2010); *Fong v. Prof'l Foreclosure Corp.*, 2005 WL 3134059 (W.D. Wash. Nov. 22, 2005). The reasoning behind the holding is that foreclosing on a deed of trust is entirely different from collecting funds from a debtor as the object of a foreclosure action is enforcement of a security interest rather than seeking payment of funds. *See Hulse v. Ocwen Fed. Bank,* 195 F.Supp.2d 1188, 1204 (D. Or. 2002) (any action taken in pursuit of actual foreclosure may not be challenged as a violation of the FDCPA). Numerous cases exist out of the Ninth Circuit that also adhere to this holding.[6] Similar holdings have also been adopted outside of the Ninth Circuit.[7]

___

693 (6th Cir. 2003) (quoting *Jordan v. Kent Recovery Serv.*, 731 F.Supp. 652, 657 (D. Del. 1990)). As explained below, Section 1692f(6) is not applicable to NWTS. *See infra* II.B.3.

[6] *Mansour v. Cal-Western Reconveyance Corp.*, 618 F.Supp.2d 1178 (D. Ariz. 2009) (nonjudicial foreclosure proceeding is not the collection of a debt for purposes of the FDCPA); *Diessner v. Mortgage Electronic Registration Systems*, 618 F. Supp. 2d 1184 (D. Ariz. 2009) (successor mortgagee who purchased loan and underlying promissory note from original mortgagee and initiated nonjudicial foreclosure not a "debt collector" under FDCPA). *See also Gonzalez v. CNA Foreclosure Service, Inc.*, 2011 WL 2580681 (S.D. Cal. 2011) (foreclosure process is the enforcement of an interest in property, not the collection of a debt.); *San Diego Home Solutions, Inc. v. ReconTrust Co.*, 2008 WL 5209972, (S.D. Cal. 2008) (plaintiff failed to state a claim against trustee because as a trustee pursuant to a deed of trust it is not a debt collector under FDCPA); (*Izenberg v. ETS Servs.*, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) ("[F]oreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA."); *Miller v. Wells Fargo Home Mortg.*, 2010 WL 3431802 (E.D.Cal. 2010) (claim that nonjudicial foreclosure on subject property violates the FDCPA held not to be a cognizable claim); *Powell v. Residential Mortg. Capital*, 2010 WL 2133011 (N.D. Cal. 2010) (foreclosure by trustee is not enforcement of the obligation because it is not an attempt to collect funds from debtor); *Barbanti v. Quality Loan Serv. Corp.*, 2007 WL 26775 (E.D. Wash. 2007) (foreclosing on trust deed is distinct from the collection of the obligation to pay money).

[7] *See e.g., Brown v. Morris*, 243 Fed. Appx. 31, 35-36 (5th Cir. 2008) ("[F]oreclosure is not *per se* FDCPA debt collection" and no error in jury instruction that "[o]rdinarily, the mere activity of foreclosing… under a deed of trust is not the collection of a debt within the meaning of the [FDCPA] unless other actions are taken beyond those necessary to foreclose under the deed of trust, and were taken in an effort to collect a debt."); *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (repossession agency does not fall within definition of "debt collector"); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (FDCPA does not apply to nonjudicial foreclosure); *Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp 2d 716 (D. W. VA. 1998) (trustee not collecting on debt but merely foreclosing on the property pursuant to the deed of trust, sucy activities do not fall within the terms of the FDCPA), *aff'd,* 173 F. 3d 850 (4th Cir. 1999); *Oldroyd v. Associates Consumer Discount Co.*, 863 F. Supp.

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
13 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Plaintiffs' own allegations concede that under 15 USC §1692(a), NWTS and RCO could

2    only qualify as a debt collector to the extent they purported to collect payments on either the note

3    or deed of trust. (Defendants "Northwest Title (sic)" and "Routh Crabtree Olsen were debt

4    collectors within the meaning of 15 U.S.C. § 1692A to the extent they purported to be collecting

5    payments on the note" and "collecting payments on the security interest"). FAC, ¶ 12.3. In its

6    capacity as successor trustee, NWTS is not in the business of collecting, or attempting to collect,

7    any debt. It is merely seeking to *enforce* a security interest. And, Plaintiffs only allege they

8    received a letter from RCO, which attempted to advised Plaintiffs of loss mitigation options that

9    could prevent foreclosure. Plaintiffs do not allege that either NWTS or RCO attempted to collect

10   any payments on the note or deed of trust. *See* FAC.

11   And, even if the Court were to decline to follow the majority of courts and determine that

12   foreclosure of a security interest is the collection of debt, communications that suggest loan

13   workout options and a notice of pending foreclosure sale required by statute is not debt

14   collection. *Santoro v. CTC Foreclosure Service*, 12 Fed.Appx. 476, 480, 2001 WL 275008, 4

15   (Cal. (9th Cir. 2001) (citing *Bailey v. Security National Servicing Corp*., 154 F.3d 384, 389 (7th

16   Cir.1998) ("A warning that something bad might happen if payment is not kept current is not a

17   dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the

18   circumstances wherein payments are missed and a real dun must be mailed.")).

19   Thus, even if NWTS and RCO are characterized as debt collectors as defined under the

20   FDCPA, foreclosure notices sent by NWTS as required under the DTA and the letter from RCO

21   on behalf of Chase aimed at providing defaulting borrowers options for avoiding foreclosure,

22   were not debt collection.

23   In fact, the opening paragraph of the letter states, "It is Chase Home Finance LLC's

24   mission to attempt to work out a solution to your loan situation." *See* FAC, Ex. #. Additionally,

25
26   237 (E.D. Pa. 1994) (mortgage company is not a "debt collector" under FDCPA) *Beadle v. Haughey,* 2005 WL
     300060, at *3 (D.N.H. 2005) ("[N]early every court that has addressed the question has held that foreclosing on a
     mortgage is not debt collection activity for purposes of the FDCPA.").

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
14 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

the letter plainly states in bold and all caps, "WE WANT YOU TO KEEP YOUR HOME!" *Id.* The language used and information contained in the letter was clearly an effort to help the Plaintiffs avoid foreclosure by providing them multiple avenues to contact RCO, providing a list and explanation of the specific options that may allow them to avoid foreclosure, and enclosing a form that Plaintiffs could fill out and return in order to take advantage of the alternatives. Nowhere in the letter are the Plaintiffs instructed to send money or is any effort made to actually collect a debt.

Congress' purpose in enacting the FDCPA was to stop abusive collection practices. 15 U.S.C. § 1692(e). RCO's conduct in making efforts to provide the Plaintiffs with tools and information to avoid foreclosure is clearly out of the purview of the conduct the statute is aimed at prohibiting. The Washington legislature has since been amended to both requiring beneficiaries provide information regarding alternatives to foreclosure at multiple junctures of the foreclosure process. Plaintiff's lawsuit seeks to outlaw this conduct and assess liability against a company engaged only in trying to provide assistance to a borrower. The claim is wholly without merit and an offense to homeowners everywhere that need and want assistance.

> ii. *Plaintiffs' claims against the NWTS Defendants and RCO under 15 U.S.C. § 1692d and § 1692e fail as a matter of law.*

Plaintiff alleges violations of 15 U.S.C. 1692d(1) and 1692e(4). Both of the provisions, however, involve limits on "debt collectors" engaged in "debt collection."[8]

As discussed *supra*, NWTS and RCO do not qualify as debt collectors pursuant to § 1692a and neither engaged in debt collection. Therefore, both claims fail as a matter of law.

---

[8] *See* 15 U.S.C. § 1692d(1) ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person **in connection with the collection of a debt**." (Emphasis added). Section 1692d(1) goes on to provide that "The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person" is a violation of the provision.); *see also* 15 U.S.C. § 1692e(4) ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with **the collection of any debt**." The provision goes on to provide that "the representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action" is a violation of the provision.

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
15 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

> *iii. Neither NWTS nor RCO's conduct fall within Section 1692(f)(6) of the FDCPA because the act of enforcing a security interest is not an action to effect dispossession of property or assert a present right to possession.*

Section 1692f(6) of the FDCPA prohibits the "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." *Id.* at § 1692f(6)(A).  A person whose principal purpose is the enforcement of security interests may be a "debt collector" for the purpose of Section 1692f(6), but such a person is not subject to the rest of the FDCPA unless he also fits Section 1692a(6)'s general definition of a "debt collector." *Fouche v. Shapiro & Massey, L.L.P.*, 575 F.Supp.2d 776, 783 (S.D. Miss. 2008); *see also Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003) (the term "debt collector" does not include an enforcer of a security interest for any section of the FDCPA other than 1692f(6)). As explained above, NWTS and RCO do not fall within the FDCPA's general definition of "debt collector."  Therefore, the only means by which these Defendants could potentially fall within the ambit of the FDCPA, if at all, is by way of a misapplication of section 1692f(6).

Any contention that NWTS (or RCO in its limited involvement of sending a letter to Plaintiffs on behalf of Chase as discussed in Sec. IV(B)(2)(b)(i)) "committed an 15 U.S.C. § 1692(f)(6)" is legally flawed and therefore fails to bring NWTS and RCO within the requirements of the FDCPA. In order for a claim under section 1692f(6) to succeed, as a matter of law, Plaintiffs would need to establish not only that NWTS and RCO were enforcing a security interest, but also that NWTS and RCO were threatening to effectuate dipossession of the property where there was no present right to possess the collateral. An examination of the nature of a nonjudicial foreclosure proceeding reveals that any allegation that NWTS and RCO threatened to effectuate dispossession of the property fails as a matter of law.

DEFENDANTS NWTS, STENMAN, MCELLIGOTT, PRE, AND RCO'S MOTION FOR JUDGMENT ON THE PLEADINGS
16 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Nonjudicial foreclosure is "a process where property that secures a defaulted obligation is

2    sold by a trustee pursuant to power of sale contained in a deed of trust, without recourse to the

3    courts." *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1105 (9th Cir. 1998).  The conduct of

4    NWTS and RCO in this case is therefore limited to that which it is permitted to accomplish

5    under the terms of the Note and Deed and pursuant to the DTA in enforcing the security interest.

6    A nonjudicial foreclosure proceeding is not an action wherein the trustee is effecting

7    dispossession of property or asserting a present "right to possess." Rather, a nonjudicial

8    foreclosure action in Washington is an action to establish title to the property.  In Washington,

9    "[t]he trustee holds an interest *in the title* of the grantor's property on behalf of the lender."

10   *Vawter v. Quality Loan Serv. Corp.*, 707 F.Supp.2d 1115, 1121 (W.D.Wash. 2010) (emphasis

11   added). This concept is also highlighted by the DTA's third public policy objective, which is to

12   promote the stability of land titles.  *Cox v. Helenius*, 693 P.2d 683 (Wash. 1985).

13   The effectuating of "dispossession" of the property and the "right to possess" the

14   property occurs only after the foreclosure process has completed. A sale through nonjudicial

15   foreclosure conveys to the purchaser at the sale the rights, title, and interest possessed by the

16   grantor, or borrower, when the borrower originally executed the deed of trust to the grantee, or

17   lender. *See* RCW 61.24.050.  Specifically, "the trustee sells the property at auction, the purchaser

18   pays the price bid, and the trustee executes the deed to the purchaser *at which time* 'all of the

19   right, title, and interest' in the property is conveyed." *Udall v. T.D. Escrow Services, Inc.*, 154

20   P.3d 882, 887 (2007) (emphasis in original). Moreover, the statutory scheme of the DTA grants

21   the purchaser at a trustee's sale the *right to possession* on the twentieth day following the sale.

22   RCW 61.24.060.[9]  Given the foregoing, any claim under section 1692f(6) fails as a matter of

23   law. NWTS was neither "taking or threatening to take any nonjudicial action to effect

24   dispossession or disablement" of the Property by virtue of its actions as foreclosure trustee nor

25
26   [9] Thus, to the extent Plaintiffs claim RCO violated Section 1692f in its capacity as counsel to Freddie Mac in conjunction with an unlawful detainer action, such a claim fails as a matter of law because an unlawful detainer action is not a nonjudicial action and as the Grantee on the Trustee's Deed, Freddie Mac was entitled to possession on the twentieth day following the sale under the DTA. *See* FAC, Ex. T.

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
17 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

was it asserting a "present right to possess" the Property via enforcement of the security interest, and RCO was neither "taking or threatening to take any nonjudicial action to effect dispossession or disablement" of the Property by virtue of its actions in sending a letter to Plaintiffs offering loss mitigation options nor was it asserting a "present right to possess" the Property via enforcement of the security interest. A logical extension of Plaintiffs' arguments in this case (essentially that NWTS has violated the FDCPA by adhering to the requirements of the DTA in effectuating nonjudicial foreclosure) would lead to every nonjudicial foreclosure proceeding in Washington resulting in a *per se* violation of the FDCPA. Plaintiffs' attempt to stretch the law is without merit. Therefore, Northwest Trustee's conduct as successor trustee does not fall within Section 1692f(6) of the FDCPA and Plaintiffs' claim must be dismissed.

In sum, because none of Plaintiff's contentions under the FDCPA can succeed as a matter of law, the claim must be dismissed.

### 3. Plaintiffs' claim for CPA Violations fails as a matter of law as to the NWTS Defendants and RCO.

#### a. Legal standard for a claim under the CPA.

The five elements of a Consumer Protection Act (CPA) claim under RCW 19.86 are: (1) an unfair or deceptive act or practice, (2) the act or practice occurred in the conduct of trade or commerce, (3) the act or practice impacted the public interest, (4) an injury to the plaintiff's business or property, and (5) a causal link between the unfair or deceptive act or practice and the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 719 P.2d 531 (1986). Failure to meet any one of these elements is fatal and necessitates dismissal. *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002). "[W]hether a particular action gives rise to a CPA violation is reviewable as a question of law." *Columbia Physical Therapy Inc., P.S. v. Benton Franklin Orthopedic Assoc., P.L.L.C.*, 168 Wn.2d 421, 228 P.3d 1260 (2010), *citing Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 930 11 P.2d 288 (1997).

"Implicit in the definition of 'deceptive' under the CPA is the understanding that the

DEFENDANTS NWTS, STENMAN, MCELLIGOTT, PRE, AND RCO'S MOTION FOR JUDGMENT ON THE PLEADINGS
18 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

practice misleads or misrepresents something of material importance." *Holiday Resort Comm. Ass'n v. Echo Lake Assoc., LLC,* 134 Wn. App. 210, 135 P.3d 499 (2006). But "acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Leingang*, *supra*. at 155.

Plaintiffs can meet the first CPA element in only two ways: they may show either that an act or practice (i) "has a capacity to deceive a substantial portion of the public," or (ii) that "the alleged act constitutes a per se unfair trade practice." *See Saunders v. Lloyd's of London*, 113 Wn.2d 330 (1989), *quoting Hangman*, *supra*.[10]

The third factor articulated in *Hangman Ridge* also requires "a showing of impact to public interest separate and apart from showing an unfair and deceptive act." *Holiday Resort*, *supra*. at 226, *citing Hangman Ridge*, *supra*.  Courts may look to a number of factors, including:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Id.*

In a private dispute, it is more difficult to show public interest. *Hangman Ridge*, *supra*. at 790; *see also Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05 (2009) (dismissing CPA claim where defendant did not advertise to the general public).

"Mere speculation that an alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public" is not sufficient. *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 816-17, 239 P.3d 602, 609 (2010), *citing Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n*, 133 Wn.App. 835, 854 n. 27, 138 P.3d 638 (2006). Instead, the test to determine the public interest requirement is based upon the context of the practice. "Where the transaction was essentially a consumer transaction... these factors are relevant to establish [a] public interest... (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act

---

[10] An unfair trade practice "requires a showing that a statute has been violated which contains a specific legislative declaration of the public interest impact." *Hangman*, 105 Wn.2d at 791.  Plaintiffs do not allege any per se CPA violation by NWTS or RCO.

DEFENDANTS NWTS, STENMAN, MCELLIGOTT, PRE, AND RCO'S MOTION FOR JUDGMENT ON THE PLEADINGS
19 of 23    Case C11-01445 MJP

ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?" *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,* 162 Wn.2d 59, 170 P.3d 10 (2007).

Under the fourth *Hangman Ridge* factor, the alleged acts must also result in injury to Plaintiff. *See Hangman Ridge* at 792, *citing Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 617 P.2d 415 (1980). The injury must be expressly "*by*" a violation of RCW 19.86.020, meaning that "but for" a defendant's conduct, the alleged injury would not have occurred. *See Carlile v. Harbour Homes, Inc.*, 147 Wn.App. 193, 194 P.2d 280 (2008).

Even if Plaintiffs did somehow allege facts supporting the other four elements of a CPA claim, the final *Hangman Ridge* factor requires that they also allege a causal link between a defendant's unlawful actions and a resulting injury. *See Indoor Billboard*, *supra*.

The State Supreme Court has clarified that reliance on false or deceptive acts is not an element under the CPA; rather, the Court concluded that "where a defendant has engaged in an unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact, our case law establishes that there must be some demonstration of a causal link between misrepresentation and the plaintiff's injury." *Indoor Billboard*, 162 Wn.2d at 81-82. A plaintiff must demonstrate that the "injury complained of ... would not have happened" if not for defendant's acts. *Id.* at 82.

### b. <u>Plaintiffs' claim under the Consumer Protection Act fails as a matter of law as to the NWTS Defendants.</u>

Plaintiffs base their CPA claim against NWTS on allegations that (1) NWTS engaged in "robo signing" practices and (2) NWTS initiated two nonjudicial foreclosure proceedings in the absence of proof as to who is the beneficiary. 13.3.

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
20 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

*i.   Deceptive act or practice.*

As a matter of law, no conduct by NWTS was deceptive or misleading. First, Plaintiffs allege the NWTS employees, Jeff Stenman, Vonnie McElligott, and Rhea Pre, were "robo signers." However, the evidence demonstrates that all documents were signed pursuant to either the Limited Power of Attorney recorded to give Jeff Stenman the authority to sign on behalf of Chase or pursuant to the Appointment of Successor Trustee giving NWTS the authority to act as trustee under the Deed of Trust. Thus, even if Plaintiff could prove the NWTS Defendants engaged in robo signing and that such conduct had a capacity to deceive a substantial portion of the public, because Washington courts have held that "there is nothing deceptive about use of agents" the conduct here falls within "acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *See Bain*, 2010 WL 891585, *6 (W.D.Wash.) (*citing Russell v. Lundberg,* 120 P.3d 541, 544 (Utah Ct.App.2005)); *see Buse,* C08-0510-MJP, 2009 WL 1543994, at *3 (W.D.Wash. May 29, 2009)); *and see Leingang*, *supra*. at 155.

Second, Plaintiffs allege NWTS initiated two nonjudicial foreclosures without obtaining the requisite proof to do so. As discussed *supra* in Sec. IV(B)(d)(ii)(a), NWTS obtained the requisite proof in the form of a declaration pursuant to RCW 61.24.030(7)(a) prior to recording the 2010 Notice of Sale.

As for the 2008 nonjudicial foreclosure, the proof requirements under RCW 61.24.030(7)(a) were not in effect in 2008.[11] Prior to the enactment of RCW 61.24.030(7)(a), there was no requirement under the DTA or any other Washington authority that prior to any stage of the nonjudicial foreclosure proceeding that the successor trustee verify or obtain proof of the beneficiary's authority.  In other words, prior to the enactment of RCW 61.24.030(7), a trustee could rely on the word of the beneficiary that it was entitled to enforce the underlying obligation as NWTS did in the context of the 2008 nonjudicial foreclosure.

---

[11] RCW 61.24.030(7)(a) was part of the 2009 DTA amendments and took effect on or about July 26, 2009.

DEFENDANTS NWTS, STENMAN,
MCELLIGOTT, PRE, AND RCO'S MOTION
FOR JUDGMENT ON THE PLEADINGS
21 of 23    Case C11-01445 MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1       Plaintiffs also allege Defendants committed an unfair practice by threatening non-judicial

2  foreclosure based solely on the ownership of just the Deed of Trust. 12.10. The evidence before

3  the court refutes such an allegation.

4       As demonstrated in Chase's Motion to Dismiss, it is the holder of the original promissory

5  note, which has been endorsed in blank and is in the possession of Chase Home Finance LLC.

6  *See* Dkt. 43, Sec. II(A). Moreover, as demonstrated by the Beneficiary Declaration, NWTS

7  obtained the requisite proof of Chase's authority to enforce the promissory note. Accordingly,

8  because Plaintiffs cannot meet even the first element of a CPA claim, their claim must be

9  dismissed.

10                    *ii.  Public interest impact, damages, and causation.*

11       Even if Plaintiffs could show a deceptive or misleading act or practice, the CPA claim

12  still fails because Plaintiffs fail to allege any public interest impact under their CPA allegations

13  as to NWTS and any damages that resulted were a direct result of Plaintiffs' own default.

14          **c.**  <u>Plaintiffs' claim under the Consumer Protection Act fails as a matter of law as</u>

15              <u>to RCO.</u>

16       Plaintiffs base their CPA claim against RCO on allegations that in sending the Aug. 2008

17  and Aug. 2010 letters on behalf of Chase advising Plaintiffs of loss mitigation options RCO

18  promised to modify Plaintiffs loan and promised that no foreclosure would occur if they

19  attempted to modify their loan.

20       As the court noted in the Order Granting Motion to Dismiss, Dkt. 58, the information

21  provided to Plaintiffs, including the August 2008 and August 2010 letters, clearly stated that the

22  foreclosure action would continue whether or not Plaintiffs took advantage of any loss mitigation

23  options that were available and any offer of modification was conditional. Thus, just as the court

24  dismissed the CPA claim against Chase based on such allegations, the court should also dismiss

25  the CPA claim against RCO.

26

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

## VI.    CONCLUSION

2

In view of the foregoing, Defendants respectfully request the court grant their Motion for

3

Judgment on the Pleadings and dismiss the causes of action against the NWTS Defendants and

4

RCO.

5

6

DATED this 23rd day of May, 2012.

7

**ROUTH CRABTREE OLSEN, P.S.**

8

_____/s/ Heidi E. Buck_____

9

Heidi E. Buck, WSBA No. 41769
Of Attorneys for Defendants Northwest

10

Trustee Services, Inc., Jeff Stenman, Vonnie
McElligott, Rhea Pre, and Routh Crabtree

11

Olsen, P.S.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131