THE HON. MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRAVIS MICKELSON, et. ux.

        Plaintiffs,

vs.

CHASE HOME FINANCE LLC, et. al.

        Defendants.

NO. 2:11-cv-01445

NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION

    NOW COMES Plaintiffs, Travis and Danielle H. Mickelson (The Mickelsons), by and through undersigned counsel, and gives notice of supplemental authority in support of their pending Motion for Certification of Appeal. Subsequent to the filing of the above motion, the Washington State Supreme Court issued a decision in <u>Albice v. Premier Mortg. Servs. of Wash.</u>, Cause No. 85260-0, decision filed May 24, 2012, review granted, <u>Albice v. Premier Mortg. Servs. of Wash., Inc.</u>, 170 Wn.2d 1029, 249 P.3d 623 (2011). Attached hereto as Exhibit A.

    <u>Albice</u> addresses "interpretation of the Deed of Trust Act, chapter 61.24 RCW," and the statutory procedural requirements for nonjudicially foreclosing on an owner's interest. At 1. The Court affirmed the Court of Appeals "holding that failure to comply with the statutory requirements was reason to set the sale aside and that factually, the purchaser did not qualify as a BFP." <u>Id</u>.

NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
PLAINTIFFS' MOTION FOR CERTIFICATION- 1

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

<u>Albice</u> supports the Mickelson's position that there is "substantial ground for difference of opinion … and an immediate appeal from the order may materially advance the ultimate question of the litigation."

DATED this 7th day of June, 2012 at Arlington, Washington.

STAFNE LAW FIRM
Attorneys for Plaintiffs

/s/ *Scott E. Stafne*
Scott E. Stafne, WSBA #6964
Andrew J. Krawczyk, WSBA #42982
Jocelynne R. Fallgatter, WSBA # 44587
Stafne Law Firm
239 North Olympic Avenue
Arlington, WA 98223
Phone: (360) 403-8700
Fax: (360) 386-4005

NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
PLAINTIFFS' MOTION FOR CERTIFICATION- 2

**STAFNE LAW FIRM**
239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on June 7, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred B. Burnside: fredburnside@dwt.com
Rebecca J. Francis: RebeccaFrancis@dwt.com
Heidi E. Buck: hbuck@rcolegal.com
Andrew Gordon Yates: yatesa@lanepowell.com
John S. Devlin, III: devlinj@lanepowell.com
Erin McDougal Stines: erin.stines@fnf.com

DATED this 7th day of June, 2012 at Arlington, WA.

/s/ *Chessa R. Tachiki*
Chessa Tachiki, Paralegal
Stafne Law Firm

NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
PLAINTIFFS' MOTION FOR CERTIFICATION- 3

**STAFNE LAW FIRM**
239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

EXHIBIT A



1 of 2 DOCUMENTS



Analysis
As of: Jun 07, 2012

CHRISTA L. ALBICE ET AL., *Respondents*, v. PREMIER MORTGAGE SERVICES OF WASHINGTON, INC., ET AL., *Defendants*, RON DICKINSON ET AL., *Petitioners*.

No. 85260-0

SUPREME COURT OF WASHINGTON

*2012 Wash. LEXIS 378*

May 24, 2012, Filed

**PRIOR HISTORY:** Appeal from Mason County Superior Court. 07-2-00172-1. Honorable Toni A. Sheldon.
*Albice v. Premier Mortgage Servs. of Wash., Inc., 157 Wn. App. 912, 239 P.3d 1148, 2010 Wash. App. LEXIS 2199 (2010)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioners, a nonjudicial foreclosure sale purchaser and his wife, sought review of a decision from the Court of Appeals (Washington), which reversed the trial court and set aside the trustee's sale of respondent borrowers' property.

**OVERVIEW:** The borrowers defaulted on the loan and received a notice of trustee's sale. They entered into a forbearance agreement to cure the default. Although the borrowers tendered each payment late, the lender accepted each payment, except for the last. The trustee's sale was continued six times, for a total of more than 120 days, while the borrowers made payments under the agreement. The borrowers provided evidence that they did not receive a notice of breach required under the agreement. The court held that the foreclosure sale was invalid because *Wash. Rev. Code § 61.24.040(6)* (2012) divested the trustee of authority to conduct the sale after the trustee had continued the sale for more than 120 days. In light of the borrowers' reasonable belief that their last payment would be accepted and their lack of grounds to restrain the sale while in default, the borrowers did not waive their challenge by failing to pursue presale remedies under *§ 61.24.040(1)(f)(IX)*. The purchaser, who was familiar with foreclosure law and had bought several properties at foreclosure sales, did not qualify as a bona fide purchaser under *§ 61.24.040(7)* because he should have been aware of the defects in the sale.

**OUTCOME:** The court affirmed the decision of the court of appeals and remanded to the trial court with directions to enter an order declaring the sale invalid and quieting title in the borrower.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
[HN1] In a case raising questions of law and statutory interpretation on appeal from summary judgment, review is de novo.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Private Power-of-Sale Foreclosure*

[HN2] Washington's deeds of trust act, Wash. Rev. Code ch. 61.24, creates a three-party mortgage system allowing lenders, when payment default occurs, to nonjudicially foreclose by trustee's sale. The act furthers three goals: (1) that the nonjudicial foreclosure process should be efficient and inexpensive, (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure, and (3) that the process should promote stability of land titles. Because the act dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor. The procedural requirements for conducting a trustee sale are extensively spelled out in *Wash. Rev. Code §§ 61.24.030* (2012), 61.24.040 (2012). Procedural irregularities, such as those divesting a trustee of its statutory authority to sell the property, can invalidate the sale.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Private Power-of-Sale Foreclosure*
[HN3] *Wash. Rev. Code § 61.24.040(1)(f), (2)* (2012) provides the requirements for a deed of trust foreclosure, including the notice requirements for the trustee's sale and foreclosure. Under *§ 61.24.040(6)*, a trustee may continue a sale for any cause the trustee deems advantageous for a period or periods not exceeding a total of 120 days. A plain reading of this provision permits a trustee to continue a sale once or more than once but unambiguously limits the trustee from continuing the sale past 120 days.

*Governments > Legislation > Statutes of Limitations > General Overview*
*Governments > Legislation > Statutory Remedies & Rights*
[HN4] When a party's authority to act is prescribed by a statute and the statute includes time limits, failure to act within that time violates the statute and divests the party of statutory authority. Without statutory authority, any action taken is invalid.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Private Power-of-Sale Foreclosure*
[HN5] Under *Wash. Rev. Code § 61.24.040(6)* (2012), a trustee is not authorized, at least not without reissuing the statutory notices, to conduct a sale after 120 days from the original sale date, and such a sale is invalid.

*Civil Procedure > Equity > Maxims > Vigilance Principle*
*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Private Power-of-Sale Foreclosure*
[HN6] Waiver is an equitable principle that can apply to defeat someone's legal rights where the facts support an argument that the party relinquished their rights by delaying in asserting or failing to assert an otherwise available adequate remedy. Waiver may be found in a foreclosure setting where the facts support its application. Waiver of a postsale challenge has been held to occur where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale. Where the borrower had adequate opportunity to utilize his presale remedies to prevent wrongful foreclosure, finding waiver is appropriate. Waiver, however, cannot apply to all circumstances or types of postsale challenges.

*Civil Procedure > Equity > Maxims > Vigilance Principle*
*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Private Power-of-Sale Foreclosure*
[HN7] See *Wash. Rev. Code § 61.24.040(1)(f)(IX)* (2012).

*Civil Procedure > Equity > Maxims > Vigilance Principle*
*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Private Power-of-Sale Foreclosure*
[HN8] The word "may" in *Wash. Rev. Code § 61.24.040(1)(f)(IX)* (2012) indicates the legislature neither requires nor intends for courts to strictly apply waiver. Under the statute, courts apply waiver only where it is equitable under the circumstances and where it serves the goals of the act. Unlike judicial foreclosures, trustee foreclosure sales are conducted with little to no oversight. Still, once a property is sold, the act favors purchasers over property owners and other borrowers by giving preference to the third goal--stability of land titles. It does so by creating, at minimum, a rebuttable presumption that the sale was conducted in compliance with the procedural requirements of the act. Thus, in determining whether waiver applies, the second goal--that the nonjudicial foreclosure process should result in is interested parties having an adequate opportunity to prevent wrongful foreclosure--becomes particularly important.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Private Power-of-Sale Foreclosure*

[HN9] To ensure trustees strictly comply with the requirements of Washington's deeds of trust act, Wash. Rev. Code ch. 61.24, courts must be able to review postsale challenges where the claims are promptly asserted. The goal is to promote the stability of land titles. Enforcing statutory compliance encourages trustees to conduct procedurally sound sales. When trustees strictly comply with their legal obligations under the act, interested parties will have no claim for postsale relief, thereby promoting stable land titles overall.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Private Power-of-Sale Foreclosure*

*Real Property Law > Priorities & Recording > Bona Fide Purchasers*

[HN10] Under *Wash. Rev. Code § 61.24.040(7)* (2012), a deed's recital shall be prima facie evidence of statutory compliance and conclusive evidence thereof in favor of bona fide purchasers (BFPs). Whether a purchaser was a BFP is a factual and legal inquiry. A BFP is one who purchases property without actual or constructive knowledge of another's claim of right to, or equity in, the property, and who pays valuable consideration. But if the purchaser has knowledge or information that would cause an ordinarily prudent person to inquire further, and if such inquiry, reasonably diligently pursued, would lead to discovery of title defects or of equitable rights of others regarding the property, then the purchaser has constructive knowledge of everything the inquiry would have revealed. Thus, in considering whether a person is a BFP, a court asks (1) whether the surrounding events created a duty of inquiry, and if so, (2) whether the purchaser satisfied that duty. In this determination, the court considers the purchaser's knowledge and experience with real estate.

**JUDGES:** [*1] AUTHOR: Justice Charles W. Johnson. WE CONCUR: Chief Justice Barbara A. Madsen, Justice Tom Chambers, Justice Susan Owens, Justice James M. Johnson, Justice Charles K. Wiggins, Gerry L. Alexander, Justice Pro Tem. AUTHOR: Justice Debra L. Stephens. WE CONCUR: Justice Mary E. Fairhurst.

**OPINION BY:** Charles W. Johnson

**OPINION**

En Banc

¶1 C. JOHNSON, J. -- This case involves interpretation of the deeds of trust act, chapter 61.24 RCW, and the statutory procedural requirements for nonjudicially foreclosing on an owner's interest. This case also involves whether, under the facts here, the property owner waived the right to challenge the sale and whether the purchaser of the nonjudicial foreclosure sale statutorily qualifies as a bona fide purchaser (BFP).

¶2 The trial court ruled that despite procedural noncompliance, the purchaser was a BFP under the statute and quieted title in the purchaser. The Court of Appeals reversed, holding that failure to comply with the statutory requirements was reason to set the sale aside and that factually, the purchaser did not qualify as a BFP. We affirm the Court of Appeals.

FACTS

¶3 Christa Albice and Karen Tecca (hereinafter Tecca) inherited the property at issue here. In 2003, Tecca [*2] borrowed $ 115,500 against the property. Clerk's Papers (CP) at 305. The property was appraised at $ 607,000 in 2003 (CP at 1038) and at $ 950,000 in 2007. CP at 394. The loan was serviced by Option One Mortgage Corporation (Option One), and Premier Mortgage Services of Washington (Premier) acted as the trustee. Option One and Premier shared databases, having access to the same loan information, and everyone who worked for Premier was an employee of Option One.

¶4 In 2006, Tecca defaulted on the loan and received a notice of trustee's sale, setting the foreclosure sale for September 8, 2006. CP at 460. Tecca then, in July 2006, negotiated and entered into a forbearance agreement to cure the default. The total reinstatement amount was for $ 5,126.97, which included $ 1,733.79 for estimated foreclosure fees and costs. CP at 471. Under the agreement, payments were due the 16th of each month, ending January 16, 2007. CP at 472. Although Tecca tendered each payment late, Option One accepted each payment, except for the last. The last payment was sent on February 2, 2007, but was rejected by Option One. During a deposition, Premier's representative, an Option One employee, testified that the [*3] last late payment was the only breach of the Forbearance Agreement. CP at 259. Tecca learned the final payment was rejected on February 10, 2007, and the payment was refunded on February 16, 2007. Although the Forbearance Agreement provided that upon breach, a 10-day written notice would be sent, Tecca never received this notice. CP at 468, 454.

¶5 The trustee's sale originally set for September 8, 2006 was continued six times. Each continuance was tied to the payments Tecca made under the Forbearance Agreement. The foreclosure sale took place on February 16, 2007. CP at 352-59. Through an agent, the petitioner,

Ron Dickinson, successfully bid $ 130,000 for the property.[1]

> 1   Although four or five bidders showed up at the original sale date, only two bidders, one being Dickinson's agent, appeared at the February 16 sale. CP at 360, 426.

¶6 Dickinson has purchased about 9 of his 13 properties at nonjudicial foreclosure sales. CP at 418-19. Dickinson buys and sells houses as a business. He has familiarized himself with foreclosure law to some extent to keep himself out of "trouble." CP at 428. When Dickinson learned that the Tecca property was for sale, he researched the property and obtained [*4] a copy of the notice of trustee's sale, which listed the amount in arrears as $ 1,228.03. CP at 526, 530. About a week before the originally scheduled sale, Dickinson visited Karen Tecca's home and offered to buy the property. She refused and told him the sale would not happen. CP at 421. Dickinson attended the first scheduled sale, kept track of postponements, and phoned Premier to determine the next sale date. He was surprised when the property did finally come up for sale.

¶7 Tecca first learned the property was sold when Dickinson told Tecca they no longer owned it and needed to leave. Dickinson then filed an unlawful detainer action and sought to quiet title. Tecca countersued, seeking to quiet title in an action to set aside the nonjudicial sale. Tecca also brought suit against Option One and Premier, but the trial court dismissed the action based on an arbitration clause. Tecca's and Dickinson's actions were consolidated. Dickinson cross-claimed against Option One and Premier, but he voluntarily dismissed those claims.

¶8 Dickinson moved for summary judgment to establish that he was a BFP and entitled to quiet title. Tecca also moved for summary judgment, arguing the foreclosure sale [*5] should be set aside because the sale occurred after the statutory deadline and Premier was not a qualified trustee with authority to conduct the sale. The trial court granted Dickinson's motion, ruling that Dickinson was a BFP and despite procedural noncompliance by the trustee, the recitations in the trustee's deed were conclusive evidence of statutory compliance in favor of BFPs. The issue of whether Premier was a qualified trustee was left for trial. Following trial, the court concluded Premier was authorized to act as the trustee,[2] quieted title in Dickinson, and awarded Dickinson damages.

> 2   The trial court concluded Premier had statutory authority to act as a trustee under *RCW 61.24.010*, determining Premier was qualified based on its internal records rather than annual reports filed with the Secretary of State. We do not reach this issue.

¶9 Tecca appealed. The Court of Appeals reversed, setting the sale aside. It reversed the trial court's award of damages and instead awarded Tecca costs and fees as the prevailing party under *RCW 4.84.010*. *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 157 Wn. App. 912, 923-25, 928, 935, 239 P.3d 1148 (2010).

¶10 Dickinson petitioned for review. We granted [*6] review. *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 170 Wn.2d 1029, 249 P.3d 623 (2011).

## ISSUES

¶11 1. Whether a trustee's sale taking place beyond the 120 days permitted by *RCW 61.24.040(6)* warrants invalidating the sale.

¶12 2. Whether, under the circumstances of this case, a borrower waives the right to bring a postsale challenge for failing to utilize the presale remedies under *RCW 61.24.130*.

¶13 3. Whether a bona fide purchaser can prevail despite an otherwise invalid sale.

## ANALYSIS

¶14 [HN1] This case raises questions of law and statutory interpretation on appeal from summary judgment. Our review is de novo. *Lamtec Corp. v. Dep't of Revenue*, 170 Wn.2d 838, 842, 246 P.3d 788 (2011) (citing *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004)).

¶15 [HN2] The deeds of trust act, chapter 61.24 RCW,[3] creates a three-party mortgage system allowing lenders, when payment default occurs, to nonjudicially foreclose by trustee's sale. The act furthers three goals: (1) that the nonjudicial foreclosure process should be efficient and inexpensive, (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure, and (3) that the process should promote stability of [*7] land titles. *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985). Because the act dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor. *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007); *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 111-12, 752 P.2d 385 (1988). The procedural requirements for conducting a trustee sale are extensively spelled out in *RCW 61.24.030* and *RCW 61.24.040*. Procedural irregularities, such as those divesting a trustee of its statutory authority to sell

the property, can invalidate the sale. *Udall, 159 Wn.2d at 911.*

> 3   This chapter was revised in 2009 and 2012. No changes affect any of the statutes at issue here; thus, the current version is cited.

### 1. *Procedural Irregularities*

¶16 Throughout the proceedings, Tecca has argued that the trustee's failure to comply with certain statutory requirements renders the sale invalid. These procedural irregularities or defects include that Premier had no authority to conduct the sale 161 days after the original sale date under *RCW 61.24.040(6)*, [*8] that Premier violated *RCW 61.24.090(1)* by failing to discontinue the sale after they cured default more than 11 days before the actual sale date, and that the recitals contained in the trustee's deed were inadequate under *RCW 61.24.040(7)*. Regarding the recitals, the Court of Appeals agreed with Tecca, concluding that because the deed of trust failed to recite *any facts* triggering the protections of *RCW 61.24.040(7)*, Dickinson was not protected from the undisputed defects in the sale. The Court of Appeals then set the sale aside based on its conclusion that Premier had no statutory authority to sell the property when it continued the sale past the 120 days permitted by the act. We agree with the Court of Appeals' holding that Premier lost statutory authority after it continued the sale past 120 days from the original sale date and that the sale was invalid. We need not address or resolve any further issues regarding other procedural irregularities.

¶17 [HN3] *RCW 61.24.040(1)(f), (2)* provides the requirements for a deed of trust foreclosure, including the notice requirements for the trustee's sale and foreclosure. Under *RCW 61.24.040(6)*, a trustee may continue a sale "for any cause the trustee [*9] deems advantageous ... for a period or periods *not exceeding a total of one hundred twenty days*" (emphasis added). A plain reading of this provision permits a trustee to continue a sale once or more than once but unambiguously limits the trustee from continuing the sale past 120 days.

¶18 [HN4] When a party's authority to act is prescribed by a statute and the statute includes time limits, as under *RCW 61.24.040(6)*, failure to act within that time violates the statute and divests the party of statutory authority. Without statutory authority, any action taken is invalid. As we have already mentioned and held, under this statute, strict compliance is required. *Udall, 159 Wn.2d at 915-16.* Therefore, strictly applying the statute as required, we agree with the Court of Appeals and hold that [HN5] under *RCW 61.24.040(6)*, a trustee is not authorized, at least not without reissuing the statutory notices, to conduct a sale after 120 days from the original sale date, and such a sale is invalid.

¶19 Here, Premier issued the notice of trustee's sale listing the sale date as September 8, 2006. Premier held the actual sale on February 16, 2007, 161 days from the original sale date in violation of the statute and divesting [*10] its statutory authority to sell. The sale was invalid.

### 2. *Waiver*

¶20 Though undisputed that Premier failed to strictly comply with its statutory obligations, Dickinson nevertheless contends Tecca waived their right to bring a postsale challenge by failing to pursue the presale remedies provided for in *RCW 61.24.040(1)(f)(IX)*. [HN6] Waiver is an equitable principle that can apply to defeat someone's legal rights where the facts support an argument that the party relinquished their rights by delaying in asserting or failing to assert an otherwise available adequate remedy. Dickinson urges us to find waiver, contending that at any time after Tecca received notice of their presale rights and before the actual sale, they could have restrained the sale and litigated the issue of the alleged breach of the Forbearance Agreement and underlying debt. He argues that because Tecca failed to use their presale remedies, their postsale challenge is barred. We disagree.

¶21 We have found waiver in a foreclosure setting where the facts support its application. In *Plein*, we established that waiver of any postsale challenge occurs where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive [*11] knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale. *Plein v. Lackey, 149 Wn.2d 214, 227, 67 P.3d 1061 (2003)* (citing *Cox, 103 Wn.2d at 388*). In that case, the borrower received the notices of foreclosure and trustee's sale, notifying him of his presale right to seek a restraining order. Almost two months before the scheduled sale, the borrower sought a permanent injunction barring the trustee's sale on grounds that there was no default on the underlying debt. In addition, the parties were involved in a lawsuit disputing corporate dealings and other actions. The borrower failed to seek a temporary injunction, which would have halted the sale pending a hearing on the merits of the permanent injunction. As a result, the sale proceeded *as scheduled*, on the date listed in the notices, and the property was sold before the hearing. *Plein, 149 Wn.2d at 220-21.* Under these circumstances, in finding waiver, we recognized that allowing the borrower to delay asserting a defense until after the sale would have defeated the spirit and intent of the act. [4] *Plein, 149 Wn.2d at 228* (citing *Peoples Nat'l Bank of Wash. v. Ostrander, 6 Wn. App. 28, 32, 491 P.2d 1058 (1971)).* [*12] Given that the borrower had adequate opportunity to utilize his presale remedies to prevent wrongful foreclosure, we explained that finding waiver

under those circumstances furthered the goals of the act. *Plein*, 149 Wn.2d at 228.

> 4  Similarly, the Court of Appeals has found waiver in cases where the challenging party failed to seek a temporary restraining order even though they knew of proper grounds for such an order well in advance of the sale. *See, e.g., Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 32, 491 P.2d 1058 (1971) (defendants were barred from asserting a postsale challenge when defendants chose to wait until after the sale, about five months after discovery of the alleged fraud, to assert their claimed defense); *Koegel*, 51 Wn. App. at 116 (borrower waived right to contest the sale because as early as a month prior to the sale, the borrower, more than once, threatened to enjoin the sale, and the borrower's attorney attended the sale but made no continuance request or objection); *County Express Stores, Inc. v. Sims*, 87 Wn. App. 741, 744, 752, 943 P.2d 374 (1997).

¶22 Waiver, however, cannot apply to all circumstances or types of postsale challenges. *RCW 61.24.040(1)(f)(IX)* [*13] provides that [HN7] "[f]ailure to bring ... a lawsuit *may* result in waiver of any proper grounds for invalidating the Trustee's sale" (emphasis added). [HN8] The word "may" indicates the legislature neither requires nor intends for courts to strictly apply waiver. Under the statute, we apply waiver only where it is equitable under the circumstances and where it serves the goals of the act. Unlike judicial foreclosures, trustee foreclosure sales are conducted with little to no oversight. Still, once a property is sold, the act favors purchasers over property owners and other borrowers by giving preference to the third goal--stability of land titles. It does so by creating, at minimum, a rebuttable presumption that the sale was conducted in compliance with the procedural requirements of the act. [5] Thus, in determining whether waiver applies, the second goal--that the nonjudicial foreclosure process should result in is interested parties having an adequate opportunity to prevent wrongful foreclosure--becomes particularly important.

> 5  *RCW 61.24.040(7)* provides that the deed's recital of statutory compliance constitutes "prima facie evidence of such compliance and conclusive evidence thereof in favor [*14] of bona fide purchasers and encumbrancers for value."

¶23 Under the facts of this case, we conclude waiver cannot be equitably established. Dickinson seemingly argues that Tecca's presale remedies were triggered the moment they received notice of the trustee's sale. Yet this argument assumes the borrower can challenge the underlying debt. Although this was correct in *Plein*, because the borrower believed the debt had been paid, here, when Tecca received the notice, they had no grounds to challenge the underlying debt. In fact, by entering into the Forbearance Agreement, they were acknowledging default on their loan payment. This postponed the foreclosure sale, and tendering each monthly payment gave them additional time to cure the default. While making these payments, Tecca had no reason to seek an order restraining a sale that may not even proceed. [6]

> 6  Unlike in *Plein*, where the sale proceeded as scheduled on the date in the notices, the sale here was continued six times.

¶24 Further, unlike in *Plein*, where the borrower had a defense almost two months prior to the sale, here, Tecca had no knowledge of their alleged breach in time to restrain the sale. Tecca tendered all payments, albeit late, [*15] under the Forbearance Agreement. Option One accepted all of those late payments and permitted Premier to continue the sale each time, except for the last. By repeatedly accepting the prior late payments, Option One created expectancy in Tecca that their last late payment would also be accepted. Tecca could not have known Option One would consider their last late payment a breach of the agreement having never done so before. They reasonably believed their last payment cured the default. While the Forbearance Agreement stated they would receive a 10-day written notice upon breach, Tecca never received this notice. [7] They rightly assumed the sale would be canceled after they tendered their last payment. [8] And after learning their property had been sold, Tecca promptly brought their countersuit, showing no intention of "sleeping on" their rights.

> 7  Dickinson argues that Option One notified Tecca of the breach by sending a letter on January 31, 2007. Karen Tecca, however, testified at her deposition that she did not receive the purported letter, and while Option One produced an internal electronic copy of the letter, it produced no proof of service. We view the facts in the light most favorable [*16] to Tecca as the nonmoving party on summary judgment.
> 8  As Tecca contends, Premier was required to discontinue the sale under *RCW 61.24.090(1)* as they submitted final payment curing the default more than 11 days prior to the actual sale date. Although under the Forbearance Agreement Tecca tendered payments to Option One, as the Court of Appeals noted, *Albice*, 157 Wn. App. at 934 n.16, it would be disingenuous to suggest Premier had no notice of Tecca's final payment. Option One and Premier were closely affiliated, if not the same company. The two companies shared databases, that is, had access to the same

loan information, and everyone who worked for Premier was an employee of Option One.

¶25 Additionally, and equally important, [HN9] to ensure trustees strictly comply with the requirements of the act, courts must be able to review postsale challenges where, like here, the claims are promptly asserted. Although Dickinson contends this defeats the third goal, the goal is to *promote* the stability of land titles. *Cox, 103 Wn.2d at 387*. Enforcing statutory compliance encourages trustees to conduct procedurally sound sales. When trustees strictly comply with their legal obligations under the act, interested [*17] parties will have no claim for postsale relief, thereby promoting stable land titles overall. Under the facts here, we hold that Tecca did not waive their rights.

3. *Bona Fide Purchaser*

¶26 Despite the trustee's failure to strictly comply with the statutory requirements and in addition to the waiver argument, Dickinson contends he is a BFP and should receive title. While the trial court concluded that Dickinson was a BFP, the Court of Appeals disagreed. We agree with the Court of Appeals.

¶27 [HN10] Under *RCW 61.24.040(7)*, the deed's "recital shall be prima facie evidence of [statutory] compliance and conclusive evidence thereof in favor of bona fide purchasers." [9] Whether Dickinson was a BFP is factual and legal inquiry. A BFP is one who purchases property without actual or constructive knowledge of another's claim of right to, or equity in, the property, and who pays valuable consideration. But if the purchaser has knowledge or information that would cause an ordinarily prudent person to inquire further, and if such inquiry, reasonably diligently pursued, would lead to discovery of title defects or of equitable rights of others regarding the property, then the purchaser has constructive knowledge [*18] of everything the inquiry would have revealed. Thus, in considering whether a person is a BFP, we ask (1) whether the surrounding events created a duty of inquiry, and if so, (2) whether the purchaser satisfied that duty. In this determination, we consider the purchaser's knowledge and experience with real estate. *Miebach v. Colasurdo, 102 Wn.2d 170, 175-76, 685 P.2d 1074 (1984)*.

   9  As mentioned, Tecca also contends that the recitals in the deed were inadequate to demonstrate compliance with the statute and cannot protect Dickinson even if he were a BFP. The act requires the deed to "recite *the facts* showing that the sale was conducted in compliance with all of the requirements of this chapter and of the deed of trust." *RCW 61.24.040(7)* (emphasis added). Here, the deed contained conclusory language stating "[a]ll legal requirements and all provisions of said Deed of Trust have been complied with, as to acts to be performed and notices to be given, as provided in Chapter 61.24 RCW." CP at 824. Although Dickinson argues that the recitals in the deed are almost identical to the form deed in 4 Washington State Bar Association, *Washington Real Property Deskbook* § 47.11(16) (3d ed. Supp. 2001), [*19] the party drafting the deed, or any legal document, must still consult the law to ensure compliance. The statute requires the deed to recite "facts" showing statutory compliance. Not only did the deed contain conclusory language stating compliance, the deed also misleadingly listed the sale date in the notice of trustee's sale as February 16, 2007, instead of the original sale date of September 8, 2006. It also incorrectly states that the default was not cured, that is, that final payment was not tendered, 11 days prior to the date of the trustee's sale. It is questionable whether the recitals in the deed satisfied the statute.

¶28 The facts pertaining to Dickinson's status are undisputed. We give, as did the Court of Appeals, substantial weight to Dickinson's real estate experience. Dickinson has extensive experience with nonjudicial foreclosure sales, purchasing 9 of his 13 properties at such sales. He familiarized himself with foreclosure law and knew enough about the process to obtain the notice of trustee's sale from a title company.

¶29 Dickinson had within his knowledge sufficient facts to put an experienced real estate purchaser, such as himself, on inquiry notice. He had a copy of the [*20] notice of trustee's sale, which listed the amount in arrears as only $ 1,228.03, suggesting Tecca had substantial equity in the property. CP at 530. Dickinson contacted Tecca, who refused to sell him the property and insisted the sale would not happen. Dickinson kept track of the numerous continuances and was surprised that the property was finally up for sale, five months after the date listed in the notice. The number of continuances, however, chilled the bidding process, contributing to the grossly inadequate purchase price. Although four or five bidders showed up to the original sale, only Dickinson and another bidder showed up at the actual sale. Dickinson was prepared to bid up to $ 450,000 for the property, showing he knew the property was worth at least that much. The substantial equity coupled with the minor default amount, Tecca's intention to keep the property, and the numerous continuances created a duty of inquiry, which Dickinson failed to satisfy. Given that he had already contacted Tecca once, Dickinson could have contacted Tecca again to determine whether default had been cured. Had Dickinson made a reasonably diligent

inquiry, he could have discovered that the numerous [*21] continuances were tied to payments under the Forbearance Agreement. Because real estate investment was his livelihood, Dickinson should have taken more care with this purchase in order to claim BFP protection. We agree with the Court of Appeals and hold that Dickinson was not a BFP.

## CONCLUSION

¶30 The nonjudicial foreclosure proceedings here were marred by repeated statutory noncompliance. The financial institution acting as the lender also appeared to be acting as the trustee under a different name; the lender repeatedly accepted late payments and, at its sole discretion, rejected only the final late payment that would have cured the default; and the trustee conducted a sale without statutory authority. Equity cannot support waiver given these procedural defects and the purchaser's status as a sophisticated real estate investor or buyer who had constructive knowledge of the defects in the sale.

¶31 We conclude the trustee sale was invalid. We affirm the Court of Appeals and remand to the trial court to enter an order declaring the sale invalid and quieting title in Tecca as against Dickinson. We also affirm the Court of Appeals' decision reversing the trial court's judgments for rent, costs, [*22] and statutory attorney fees in favor of Dickinson.

MADSEN, C.J.; CHAMBERS, OWENS, J.M. JOHNSON, and WIGGINS, JJ.; and ALEXANDER, J. PRO TEM., concur.

**CONCUR BY:** Debra L. Stephens

## CONCUR

¶32 STEPHENS, J. (concurring) -- Washington's deed of trust act, chapter 61.24 RCW, reflects a legislative policy choice to create an efficient and inexpensive process for nonjudicial foreclosures. It balances the interests of preventing wrongful foreclosures and promoting the stability of land titles. In reaching for a remedy for the grantors in this case, the majority upsets this balance, broadly allowing postsale challenges to foreclosure sales and eroding the presumed validity of a standard-form deed of trust. While this leads to a positive outcome for Bart and Karen Tecca, ultimately it will disserve the public by undermining confidence in the deed of trust system and discouraging its use.

¶33 I would resolve this case on narrow equitable grounds and leave the deed of trust system intact. Washington courts recognize that a foreclosure sale may be set aside based on a grossly inadequate sales price coupled with unfair [*23] circumstances or procedural irregularities surrounding the sale. *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 914, 154 P.3d 882 (2007). While there is no firm benchmark for when a sale price is inadequate, courts frequently set aside sales for less than 20 percent of property value, especially when the surrounding circumstances suggest that irregular procedures may have contributed to the low price. RESTATEMENT (THIRD) OF PROPERTY § 8.3 cmt. b (1997) ("Generally, however, a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value ... ."); *Long Lake Lumber Co. v. Stewart*, 198 Wash. 348, 352, 88 P.2d 414 (1939) ("'But where there is a serious inadequacy in the price realized, *the court will seize upon any incident of surprise, undue advantage, irregularity, or other equitable circumstance to grant relief ... .*'" (emphasis added) (quoting 26 Ruling Case Law § 1294)).

¶34 The low sales price and unfair circumstances in this case provide equitable grounds to invalidate the sale despite the Teccas' failure to seek an injunction before the sale. Like the majority, I find it significant that the string of sale continuances made it difficult [*24] for potential buyers to participate. Four or five bidders appeared at the initial sale, but only Ron Dickinson and one other bidder were present at the eventual sale 161 days later. Dickinson himself had to do a fair amount of legwork to determine if the sale was going to happen. And, he paid far less than he was prepared to pay for the property. For their part, the Teccas tendered the final payment under the forbearance agreement more than 11 days before the sale, supporting their argument that it should have been canceled or rescheduled with additional public notice.

¶35 Moreover, in light of the clear procedural irregularities and the low sale price, Dickinson cannot claim the status of a bona fide purchaser, though not for all the reasons the majority articulates. [10] "A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration." *Glaser v. Holdorf*, 56 Wn.2d 204, 209, 352 P.2d 212 (1960). Notice of another's claim can be imputed when the buyer has "such information as would excite apprehension in an ordinary mind and prompt a person of average prudence [*25] to make inquiry ... ." *Id.* When such a circumstance would put a person of reasonable prudence on inquiry notice, however, that circumstance "is only notice of what a reasonable inquiry would reveal." *Id.* (citing *Paganalli v. Swendsen*, 50 Wn.2d 304, 311 P.2d 676 (1957)). Here, Dickinson obtained the original notice of sale; he therefore had actual notice the sale had been continued for more than 120 days. The procedural irregularities surrounding the sale, combined with the extremely low sale price, would put a person of reasonable prudence on inquiry notice. A reasonable inquiry would have revealed the Teccas' efforts to cure.

10   Given the majority's conclusion that the sale is invalid because it was without statutory authority, majority at 8-9, it is unclear why the majority goes on to consider whether Dickinson was a bona fide purchaser, majority at 14-15. While the majority does not use the term "void," it essentially concludes the sale was ultra vires and without legal force. But a void deed cannot pass title; only where a transaction is *voidable* (that is, subject to avoidance by the original parties under common law or statutory law) can a bona fide purchaser take good title. *See,* [*26] *e.g., State v. Mermis, 105 Wn. App. 738, 748, & nn.27, 28, 20 P.3d 1044 (2001).* Thus, if the transaction is truly invalid and of no legal effect, as the majority maintains, there is no need to consider whether Dickinson was a bona fide purchaser.

¶36 Accordingly, I would affirm the Court of Appeals based solely on the Teccas' equitable argument arising from these facts. I would not reach beyond these particular circumstances, however. I am concerned that the majority's resolution of this case greatly unsettles reasonable expectations in the arena of nonjudicial foreclosures. In particular, the majority declares that a trustee's violation of timelines in the act renders a foreclosure sale invalid, thereby allowing a grantor to set aside the sale after-the-fact, notwithstanding the grantor's failure to use the presale remedies under *RCW 61.24.130*. Further, in concluding that Dickinson is not a bona fide purchaser, the majority creates new duties of inquiry that are in no way reasonable and make it impractical for potential buyers to rely on the recitals in a deed of trust. I will address each of these concerns separately.

### *Procedural Irregularities*

¶37 Initially, I disagree with the majority that [*27] a violation of statutory timelines by a trustee is a procedural irregularity that invalidates a foreclosure sale. The majority's reasoning all but eliminates the statutory requirement that a challenge to a foreclosure sale be brought before the sale takes place. Until today, we have consistently held that the statutory procedure of seeking to enjoin the sale is "'the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure.'" *Plein v. Lackey, 149 Wn.2d 214, 226, 67 P.3d 1061 (2003)* (quoting *Cox v. Helenius, 103 Wn.2d 383, 388, 693 P.2d 683 (1985))*. Under the act, interest holders are notified that "[a]nyone having any objection to the sale *on any grounds whatsoever* will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale ... ." *RCW 61.24.040(1)(f)(IX)* (emphasis added). Accordingly, courts deem the claims of interested parties waived where they failed to seek an injunction despite having had an opportunity to do so. *Plein, 149 Wn.2d at 227.* Courts thereby maintain the sanctity of land titles and ensure efficient resolution of defaulted loans secured by real [*28] property.

¶38 The majority erodes these protections for reasons that cannot withstand scrutiny. First, the majority assumes that property owners such as the Teccas are not in a position to restrain a sale when they have acknowledged their default by entering into a forbearance agreement. Majority at 12 ("Dickinson seemingly argues that [the owners'] presale remedies were triggered the moment they received notice of the trustee's sale. Yet this argument assumes the borrower can challenge the underlying debt."). But an owner can seek to enjoin the sale even while acknowledging the underlying debt. *See Steward v. Good, 51 Wn. App. 509, 514-15, 754 P.2d 150 (1988)* (noting owners in default waived right to contest a procedurally defective sale where they failed to enjoin the sale). The second reason the majority declines to find waiver is that the owners had no opportunity to restrain the sale. *See* majority at 13. This contention is belied by the uncontested facts. The Teccas were given notice that their property was subject to a foreclosure sale unless they moved to enjoin. Given that the trustee did not file a notice of discontinuance or reinstate the deed of trust, *see RCW 61.24.090(3), (6),* [*29] it should have been clear to the owners that a motion to restrain the sale was in order. 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES--DEBTORS' RELIEF § 3.61, at 202-03 (1998) (noting "the dangers" in failing to enjoin the sale "are obvious").

¶39 The majority makes much of the forbearance agreement, suggesting that the sale itself violated its terms and that the owners were therefore taken by surprise when the sale occurred in breach of contract. *See* majority at 13-14. A breach of contract, however, is not unforeseeable. The statutory means for grantors to protect themselves against the contingency of a *scheduled, recorded* judicial foreclosure sale going forward is by enjoining it. *RCW 61.24.040(1)(f)(IX).* Assuming the property was sold in violation of the forbearance agreement, the owners' remedy is to be found in a suit for breach of contract seeking money damages. They should not be allowed to invalidate the sale when they had ample opportunity to obtain an injunction and raise these grounds in a presale lawsuit.[11]

> 11   Amendments to the act postdating this case additionally authorize a claim for monetary damages against a trustee for, among other things, failure to [*30] materially comply with the act. *RCW 61.24.127;* ENGROSSED S.B. 5810, at 8-9, 61st Leg., Reg. Sess. (Wash. 2009). While the Teccas argue these legislative changes sup-

port granting relief, significantly none of the relief they authorize includes invalidating a foreclosure sale. Nor do the amendments alter the strong statutory policy of requiring a motion to enjoin a sale before it occurs. Indeed, the amendments to *RCW 61.24.127* suggest that money damages against the trustee are warranted in part because the grantor cannot recover property sold to a bona fide purchaser. *See RCW 61.24.127(2)(c)* (noting claims for money damages do "not affect in any way the validity or finality of the foreclosure sale or a subsequent transfer of the property").

¶40 The majority claims this case is unlike *Plein*--where the borrower had a defense two months before the sale--because here the owners supposedly had no knowledge of their alleged breach of the forbearance agreement in time to restrain the sale. Again, this assertion is not borne out by the record. To the extent that the owners' "defense" is that the sale occurred outside the 120 day limit, they were on notice that the timelines had passed and had sufficient [*31] time to move to enjoin any sale. [12] To the extent the owners claim they had no written notice of the sale continuance in accordance with the forbearance requirement, they *did* receive the statutory notice their property was to be sold and could have sought an injunction to enforce the contract and restrain the sale.

> 12   The sale occurred 161 days after originally scheduled. Because the trustee must be given at least five days' notice, *RCW 61.24.130(2)*, the owners had 36 days following the expiration of the 120 day period during which they could have sought to restrain an untimely sale. At the time of the events in this case, the act permitted a continuance to be announced by public proclamation at the time and place fixed for sale. Former *RCW 61.24.040(6)* (2006). The act was subsequently amended to require written notice for continuances beyond the date of sale. SUBSTITUTE S.B. 5378, at 13, 60th Leg., Reg. Sess. (Wash. 2008).

¶41 This court in *Plein* held that waiver applies when the borrower has notice of the right to enjoin the sale, knows the asserted defense before the sale, and fails to pursue presale remedies. *Plein, 149 Wn.2d at 229* (citing *RCW 61.24.040(1)(f)(IX)*). In contrast, the majority [*32] today holds that "courts must be able to review postsale challenges" promptly brought "to ensure trustees strictly comply with the requirements of the act." Majority at 14. In fact, the majority concludes that seeking an injunction is merely permissive. *Id.* at 11 (noting use of the word "'may'").

¶42 This line of reasoning effectively ends the doctrine of waiver and overrules *Plein*. The majority concludes that "[w]hen trustees strictly comply with their legal obligations under the act, interested parties will have no claim for postsale relief ... ." *Id.* at 14. Of course, it is hard to imagine a claim for relief *not* based on a violation of some legal obligation. Therefore, the majority's approach would actually permit postsale challenges to foreclosure sales as a general rule, at least where "the claims are promptly asserted." *Id.* [13]

> 13   The act's procedural requirements are extensive. While strict compliance is ideal, it is far from certain that failure to comply with every statutory mandate will prejudice the interest-holder. Where the interest-holder believes noncompliance results in prejudice, an injunction should be sought. Of course, some procedural violations cannot be enjoined before [*33] the sale because they occur *at* the sale. For example, if the trustee accepted the third highest bid, instead of the first highest bid, a postsale challenge may be countenanced. However, the challenger would still need to show prejudice. *Colo. Structures, Inc. v. Blue Mountain Plaza, LLC, 159 Wn. App. 654, 666, 246 P.3d 835 (2011)* ("The same standard applies to defects occurring at or after the time of the sale--absent actual prejudice from the error, a claim is waived if no action is taken to set aside the sale."). Even then, the grantor would likely only have an action for money damages against the trustee, assuming the deed recitals were adequate under *RCW 61.24.040* and the buyer was a bona fide purchaser.

¶43 There may be some merit to creating a system that allows courts to broadly review procedural irregularities in foreclosure proceedings after a sale is complete, but this is not the system our legislature created in the act. The legislature ranked finality of land sales over entertaining the postsale grievances of grantors. This valuing of sale finality is evidenced by the *conclusive* presumption given to deed recitals showing statutory compliance when the buyer is a bona fide purchaser. [*34] *RCW 61.24.040(7)*. It is also manifested by the statutory warning that failure to enjoin may result in waiver "of *any* proper grounds for invalidating the Trustee's sale." *RCW 61.24.040(1)(f)(IX)* (emphasis added). This rule makes sense. Many interest-holders, especially grantors in default, may decide a challenge is not worth their while and will allow the sale to proceed. Doing so is a gamble, the risk of which the act places squarely on the interest-holder.

¶44 The majority would undo this risk allocation. Its insistence that the goal of stable land titles is better met

"[w]hen trustees strictly comply with their legal obligations under the act," majority at 14, misses the mark. If a postsale challenge may be entertained, grantors aware of a procedural flaw will be well advised to keep mum until after the sale, especially when no cure of default is on the horizon. After all, a presale challenge may not delay the sale at all; it may simply result in a court order requiring the sale conform to the act. Waiting until the sale has occurred, however, may prove advantageous: under the majority's view, the sale is invalid and the beneficiary's only option may be to begin the notice and sale process [*35] all over again. By the time the property is finally renoticed for sale, the grantor may be able to cure and avoid the sale altogether.

¶45 Although avoiding the sale may benefit the individual grantor, allowing such postsale challenges will weaken the reliability of nonjudicial foreclosure sales to the detriment of landowners and purchasers alike. Indeed, if a trustee's sale can be challenged after the fact, "'title insurers will not insure, secured lenders will not lend on, and buyers will not purchase real property with title tracing to a trustee's deed.'" *Plein, 149 Wn.2d at 228 n.5* (quoting amicus mem.).

### Bona Fide Purchaser Doctrine

¶46 I also disagree with the majority's analysis of the bona fide purchaser doctrine. The breadth of circumstances the majority considers to conclude Dickinson was not a bona fide purchaser will make it very difficult for buyers at foreclosure sales to qualify for this status.

¶47 Building on Dickinson's real estate experience, the majority finds significance in Dickinson's brief conversation with Karen Tecca, during which he offered to buy the property and she insisted the foreclosure sale would not happen. From this exchange, which lasted about one minute, the majority [*36] draws the remarkable conclusion that Dickinson was on inquiry notice that the sale may have violated the forbearance agreement. The majority's implicit reasoning goes like this: Tecca's refusal to sell would suggest to the reasonably prudent person that Tecca intended to cure her default; a reasonable person, learning the property had come up for sale, would contact Tecca again to see if she had tried to cure the default; this conversation would likely reveal the forbearance agreement and its terms; and a reasonable person would then discern the fact that the sale was not in accordance with the agreement.

¶48 Not only does this chain of reasoning pile inference upon inference, it promotes a duty of inquiry previously unknown in this area of the law. Under the majority's view, a potential buyer must approach foreclosure proceedings with an inquisitiveness verging on the paranoid. He is no longer entitled to rely on the notice of sale as establishing default if the owner has said something that implies an intent to cure. If such a verbal statement puts a potential buyer on notice that the owner may not actually be in default, what about the owner's *written* statement of intent to make payments? [*37] After all, a trust deed grantor has promised to make timely payments to the beneficiary, so is the existence of a recorded trust deed a circumstance putting a reasonable person on notice to ask the grantor whether the default referred to in the notice of sale actually exists? Apparently so, because the majority holds that Dickinson was not entitled to rely on the deed recitals here.

¶49 As to the deed recitals, the majority acknowledges that a recital of statutory compliance constitutes prima facie evidence of such compliance, which is conclusive in favor of a bona fide purchaser. Majority at 12 & n.5; *see RCW 61.24.040(7)*. However, the majority takes an unprecedented look at these recitals, questioning their adequacy in light of "conclusory language" stating that all legal requirements of the act are met. Majority at 15 & n.9. The majority insists the deed must set forth the "facts" supporting this statement, which apparently includes the existence of any forbearance agreement that might support an owner's claim that a default has been cured. But we have never required such an exacting standard and have previously accepted nearly identical conclusory recitals. *See Glidden v. Mun. Auth. of Tacoma, 111 Wn.2d 341, 345, 347, 758 P.2d 487, 764 P.2d 647 (1988)* [*38] (giving conclusive presumption where deed inaccurately stated that notice had been "'transmitted by mail to all persons entitled thereto'" and that "'[a]ll legal requirements and all provisions of said Deed of Trust have been complied with, as to acts to be performed and notices to be given, as provided in Chapter 61.24 RCW'" (quoting recitals)).

¶50 Moreover, the specific recitals in this deed follow the form set out in the real property desk book and undoubtedly repeated in countless deeds recorded in Washington. 4 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 47.11(16), at 39-40 (3d ed. Supp. 2001). There is no precedent for the majority's conclusion that the drafters of deeds of trust fail to "recite the facts showing [statutory compliance]," *RCW 61.24.040(7)*, when they use standard-form statements of statutory compliance. Majority at 15 n.9. The majority does not explain why conclusory recitals of fact are any less recitals of fact, and we have never before construed the statute in the way the majority would. Moreover, the majority is really complaining that the recitals in the deed of trust were inaccurate. *Id.* (noting "the deed also misleadingly listed the sale date [*39] in the notice of trustee's sale as February 16, 2007, instead of the original sale date of September 8, 2006" and that it "incorrectly states that the default was not cured"). Such looking be-

hind the face of the deed's factual recitals is precisely what the presumptive validity of the deed precludes. *RCW 61.24.040(7)*. I fear that the majority's new-found scrutiny of deeds of trust will greatly unsettle reasonable expectations in land titles.

¶51 In sum, I depart from the majority's reasoning. I would reject the argument that a trustee's failure to strictly comply with the procedural requirements of the act invalidates a sale and opens the door to a postsale challenge. I would also be more circumspect in considering when a buyer at a foreclosure sale may rely on the recitals in a trust deed to claim the status of a bona fide purchaser. Instead, I would resolve this case on the narrow equitable ground that courts may invalidate an unfair foreclosure sale based on the combination of a grossly inadequate sale price and procedural irregularities. The combination of these circumstances cannot be known before the sale, and so it is appropriate--in exceptional circumstances--for a court to grant [*40] relief even after the sale has occurred. On this basis alone, I would affirm the Court of Appeals.

FAIRHURST, J., concurs with STEPHENS, J.