THE HON. MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRAVIS MICKELSON, et. ux.

                    Plaintiffs,

vs.

CHASE HOME FINANCE LLC, et. al.

                    Defendants.

NO.  2:11-cv-01445

PLAINTIFFS' RESPONSE TO DEFENDANTS' NWTS, STENMAN, MCELLIGOTT, PRE, AND RCO'S MOTION FOR JUDGMENT ON THE PLEADINGS

Noted for Consideration:  June 15, 2012

## I. COUNTER-STATEMENT OF FACTS

For purposes of this motion the facts are as stated in the complaint and its attachments.

## II. NATURE OF CASE/RELIEF REQUESTED

Defendants, Northwest Trustee Services, Inc., ("NWTS"), Jeff Stenman ("Stenman"), Vonnie McElligott ("McElligott"), and Rhea Pre ("Pre") and Routh Crabtree Olsen, P.S. ("RCO"), (collectively, "NWTS and RCO Defendants" or simply "Defendants") seek dismissal of Plaintiffs, Travis and Danielle Mickelson's claims under Washington's Deed of Trust Act ("DTA"), Consumer Protection Act ("CPA") and the Fair Debt Collection Practices Act ("FDCPA").  Dismissal should be denied because the Mickelsons have presented

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

plausible evidence to support their claims going to trial.

*First*, Defendants' Motion for Judgment on the Pleadings ("Defendants' Motion") is predicated on this Court's acceptance of the facts as construed or fabricated by Defendants, in favor of Defendants, contrary to established law. The linchpin of Defendants' assertions is that the chain of title for the Mickelson's Promissory Note ("Note") and the Deed of Trust ("DOT"), underlying the notice of default, notice of foreclosure sale, the foreclosure sale itself, and the subsequent transfer of title to Freddie Mac, is unbroken and valid. The determinative facts concerning the Note and the DOT are in dispute, and as matters for the trier of fact to decide, should not be determined by the court at this stage of the proceedings.

*Second*, Defendants' own arguments serve to expose the nature of the illicit scheme, which forms the basis of the Mickelsons' claims against the Defendants. If waiver is found under the DTA, then defendants' abusive, unfair and deceptive "dual tracking" practices induced that waiver, in violation of FDCPA and CPA. If FDCPA claims are dismissed because, as NWTS & RCO claim, they are not debt collectors, then their respective representations to the Mickelsons that Defendants were indeed debt collectors is a patently unfair and deceptive business practice under Washington's CPA.

## III. ISSUES

The following issues are presented for resolution by this court:

1. Whether the NWTS Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) should be denied?

2. Whether Defendant RCO' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) should be denied?

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

## IV. STANDARD OF REVIEW AND ARGUMENT

### A. STANDARD OF REVIEW UNDER FRCP 12(b)(6):

Retiring the "no set of facts" language used in <u>Conley</u>,[1] as "an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" the Supreme Court in <u>Twombley</u>,[2] enunciated a more context oriented "plausibility" standard that "neither demand[ed] a heightened pleading of specifics nor impos[ed] a probability requirement." <u>Phillips v. County of Allegheny</u>, 515 F. 3d 224, 230-24 (3rd Cir. 2008).  In sum, the pleading standard "requires a complaint with enough factual matter (taken as true) to suggest" the required element, but "does not impose a probability requirement at the pleading stage." <u>Id</u>. 234, (Citing <u>Twombley</u> at 1965).

The Ninth Circuit defined the standard of review for a motion to dismiss under FRCP 12(b)(6):

> "The focus of any rule 12(b)(6) dismissal — both in the trial court and on appeal — is the complaint." "We review dismissals under Rule 12(b)(6) *de novo*, accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most favorable to the [plaintiffs]."

<u>United States v. Corinthian Colleges</u>, 655 F. 3d 984, 991 (9th Cir. 2011).  Internal citations omitted.  The court "must determine whether the Complaint contains 'sufficient factual matter' that, taken as true, 'state a claim for relief is plausible on its face.'"  <u>United States v. Corinthian Colleges</u>, 655 F. 3d 984, 991 (9th Cir. 2011) (citing, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949).  The court continued:

---

[1] <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99 (1957).

[2] <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955(2007).

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

> If the Complaint does contain such supporting factual allegations, we assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

Id., 655 F. 3d. at 991.  The facts as pleaded by the plaintiff, under this standard, are clearly "entitled to assumption of the truth." Id.

The Ninth Circuit also enumerated an exception to the general rule not to consider any material beyond the pleadings in a FRCP 12(b)(6) motion to dismiss, where the complaint "necessarily relies" on the unattached evidence, "if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.  Id. 655 F. 3d at 999 - 1000 (9th Cir. 2011).

Recently, the Ninth Circuit applied these standards in reversing a trial court's 12(b) dismissal of Truth on Lending Act claims and abrogating the authority the lower court had relied upon[3]. Balderas v. Countrywide Bank, N.A.2011 U.S. App. LEXIS 25957 (2011). Chief Judge Kozinki writing for the panel observed that while a signed document may give rise to an evidentiary presumption, "presumptions 'are inappropriate for evaluation at the pleadings stage.' Balderas v. Countrywide Bank, N.A.2011 U.S. App. LEXIS 25957 (2011) (quoting, 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (Supp. 2011)."

Here, the Mickelsons' complaint undeniably contains sufficient factual matter (taken as true) to state a claim for relief is that is amply plausible on its face.  Defendants urge an impermissibly heightened standard requiring the Plaintiffs to prove their allegations within

---

[3] Anderson v. Countrywide Financial, No. 2:08-cv-01220-GEB-GGH, 2009 U.S. Dist. LEXIS 100788, 2009 WL 3368444 (E.D. Cal. Oct. 16, 2009).

their Complaint.  Because the existing disputes concerning the authenticity and legal effect of the documents necessarily relied upon in the complaint are factual in nature, dismissal is simply inappropriate at the pleading stage.  Therefore Defendants' Motion should be denied.

**B. PLAINTIFFS' CLAIMS UNDER THE DTA, CPA, AND FDCPA ARE PLAUSIBLE.**

Plaintiffs' reassert and incorporate by reference their Arguments in Response to the Partial Motion to Dismiss by Defendants JPMorgan Chase Bank, NA, ("Chase") Mortgage Electronic Recoding System ("MERS"), and Federal Home Loan Mortgage Corporation ("Freddie Mac"), (hereafter collectively referred to as "Chase Defendants"). Under Fed. R. Civ. P. 12(b)(6).  Notwithstanding this Court's order dismissing the Mickelson's Deed of Trust Act ("DTA") claims against the Chase Defendants, allegations contained in the Plaintiffs' Amended Complaint continue to cast doubt on the actions of defendants NWTS, Stenman, McElligot, Pre, and RCO (collectively, "NWTS and RCO Defendants" or simply "Defendants") concerning foreclosure proceedings against the Mickelsons.

In interpreting the Deed of Trust Act, the Washington State Supreme Court recently stated:

> The deeds of trust act, chapter 61.24 RCW, creates a three-party mortgage system allowing lenders, when payment default occurs, to nonjudicially foreclose by trustee's sale. The act furthers three goals: (1) that the nonjudicial foreclosure process should be efficient and inexpensive, (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure, and (3) that the process should promote stability of land titles.

Albice v. Premier Mortg. Servs. of Wash., Inc., 2012 Wash. LEXIS 378 (2012) (A copy of which has been provided to this Court as supplemental authority.), at 5 (Citing, Cox v. Helenius, 103 Wash.2d 383, 387, 693 P.2d 683 (Wash. 1985). FN omitted.  The Court further stated:

> Because the act dispenses with many protections commonly enjoyed by
> borrowers under judicial foreclosures, lenders must strictly comply with the
> statutes and courts must strictly construe the statutes in the borrower's favor.
> Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882
> (2007); Koegel v. Prudential Mut. Sav. Bank, 51 Wn. App. 108, 111-12, 752
> P.2d 385 (1988). The procedural requirements for conducting a trustee sale are
> extensively spelled out in RCW 61.24.030 and RCW 61.24.040. Procedural
> irregularities, such as those divesting a trustee of its statutory authority to sell
> the property, can invalidate the sale. Udall, 159 Wn.2d at 911.

Id. at 6.

In Albice, the Court found that where the trustee's authority is prescribed by statute, the trustee's continuance of the sale beyond the 120-day time period unambiguously defined in the DTA, "violates the statute and divests the party of statutory authority. Without statutory authority, any action taken is invalid." Id., at 7, 8. The Court again emphasized the importance of strict statutory compliance. Id., at 8.

Next, the Court addressed the issue of waiver pursuant to RCW 61.24.040(1)(f)(IX):

> Wavier is an equitable principle that can apply to defeat someone's legal rights
> where the facts support an argument that the party relinquished their rights by
> delaying in asserting or failing to assert an otherwise available adequate
> remedy.

Id., at 8. However, the Court found waiver "cannot apply to all circumstances or types of postsale challenges." Id. At 10. Waiver should only be applied "where it is equitable under the circumstances and where it serves the goals of the act." Because nonjudicial foreclosure sales occur with little to no oversight, and favors purchasers by creating a rebuttable presumption of procedural compliance, it is particularly important that the process affords the borrower an adequate opportunity to prevent wrongful foreclosure. The DTA, by its terms creates specific exceptions to this general principal:

> The failure of the borrower or grantor to bring a civil action to enjoin a
> foreclosure sale under this chapter may not be deemed a waiver of a claim for

PLAINTIFFS' RESPONSE TO DEFENDANTS' NWTS,
STENMAN, MCELLIGOTT, PRE, AND RCO'S MOTION FOR
JUDGMENT ON THE PLEADINGS- 6

STAFNE LAW FIRM
239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

damages asserting: (a) Common law fraud or misrepresentation;   (b) A violation of Title 19 RCW; (c) Failure of the trustee to materially comply with the provisions of this chapter; or (d) A violation of RCW 61.24.026.

RCW 61.24.127(1).

The Mickelsons acknowledge that this Court is reluctant to wait on the Washington Supreme Court to decide Washington statutory law as it has already dismissed their MERS allegations, but this Court should not ignore Albice's holding as it applies to this case when ruling on the motions currently pending, including the Mickelson's Motion to certify its ruling regarding defendants motions to dismiss to the Court of Appeals.  Irrespective of the Court's prior Order of Dismissal, the unambiguous, plain language of the statute and Albice preclude dismissal of damage claims based on these enumerated grounds, according to remaining provisions of RCW 61.24.127.  Because the DTA specifically authorizes post-sale claims for damages, Defendants' Motion should be denied.

**1. The Mickelsons' Complaint Alleged Plausible Claims Under the Deed of Trust Act, Which They Did Not Waive.**

Under the DTA, a "beneficiary" is defined as "the holder of the instrument or document evidencing the obligations secured by the deed of trust, *excluding persons holding the same as security for a different obligation.*"  RCW.24.005(2).  [Emphasis Supplied] Where no trustee is named in the deed of trust, or the trustee otherwise resigns or is disqualified, the beneficiary is obligated to appoint a qualified trustee or successor trustee. RCW 61.24.010(1), (2).  Appointment of a successor trustee is predicated on (1) the beneficiary holding the underlying note secured by the deed of trust, and (2) that deed of trust is not held by the beneficiary as security for another obligation.  In this case the Mickelson's

complaint alleges that the beneficiary does not meet either requirement.  This Court ignores

the exclusion imposed by the Washington legislature without even discussing it.

Washington's Uniform Commercial Code ("WUCC") permits enforcement of a note

only by a party who: (1) is in possession of the instrument payable to that party (see RCW

62A.1-201(20)); (2) previously had the ability to enforce the note, but it was lost, destroyed,

or stolen (see, RCW 62A.3-309)); (3) has possession of an endorsed-in-blank instrument (see,

RCW 62A.1-201(5),(20)); or (4) can prove both possession and the enforcement rights

received from its transferor.  See, RCW 62A.3-203, .3-301; see also, In re McMullen Oil Co.,

251 B.R. 558, 568 (Bankr. C.D. Cal. 2000); In re Carlyle, 242 B.R. 881, 887 (Bankr. E.D. Va.

1999).

These requirements apply to every link in the chain of transfer of the note.  In Re Doble,

2011 Bank. LEXIS 1449 (S.D. Cal. April 14, 2011).  When a note has been assigned several

times, each assignment in the chain must be valid or the party claiming the note cannot

enforce it.  In re Gavin, 319 B.R. 27, 32 (B.A.P. 1st Cir. 2004; In re Wells, 407 B.R. 873

(Bankr. N.D. Ohio 2009).  Even a party owning a promissory note is not entitled to enforce

the note unless it meets the statutory criteria for enforcement.  RCW 62A.3.203 cmt.1.2.

Plaintiffs' Complaint contained a copy of the Promissory Note ("Note"), which the

Mickelsons received on or about September 9, 2010, as part of the foreclosure packet sent by

NWTS.  Compl., attached as Ex. A.  That copy of the Note, signed by the Mickelsons as

borrowers, identified MHL Funding Corp. as the Lenders, but was not endorsed by the

Lender.  Therefore, it fails to be bearer paper, transferring ownership rights to Chase by

possession pursuant to RCW 62A.1-201(5), (20).  Nor does this naked document, evidence a

contract between the Mickelsons and MHL Funding Corp., satisfying the criteria that its

PLAINTIFFS' RESPONSE TO DEFENDANTS' NWTS,
STENMAN, MCELLIGOTT, PRE, AND RCO'S MOTION FOR
JUDGMENT ON THE PLEADINGS- 8

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

possessor is to be the payable party pursuant to RCW 62A.1-201(20), or that it was previously enforceable by Chase, but it lost, destroyed, or stolen pursuant to RCW 62A.3-309)); and permitting enforcement under WUCC.

Consequently, even if Chase is the true owner of the Note, it has no right to enforce it without proving **both possession** and the **enforcement rights received from its transferor**. See, RCW 62A.3-203, .3-301. Chase has not done so.

This version of the Note, relied upon by NWTS in the foreclosure proceedings against the Mickelsons, is stamped several times "I hereby certify this to be a true & correct copy of the original By [indecipherable signature]".   Compl., attached thereto as Ex. A.   Assuming the veracity of the Note, as is appropriate under the Rule 12(b)(6) motion, and viewing Plaintiffs' allegations in the light most favorable to Plaintiffs,[4] dismissal is inappropriate because it is plausible the Note was never validly transferred to Chase, giving rise to a plausible claim Chase had no authority to subsequently appointment successor trustees. See supra, at § III. A; United States v. Corinthian Colleges, 655 F. 3d 984, 991 (9th Cir. 2011) (citing, Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937).  For this reason, Defendants' Motion should be denied.

While Chase subsequently provided this Court with another copy of the note purporting to be endorsed-in-blank (see Dkt. #43, at Ex. A), the court should not consider this additional document because its authenticity is disputed. See supra, United States v. Corinthian Colleges, 655 F. 3d 984, 999, 1000 (9th Cir. 2011).

Despite Defendants' claim "NWTS was the valid successor trustee, under Plaintiffs' Deed of Trust pursuant to the Appointment of a Successor Trustee," nowhere does their argument establish that Chase, rather than MHL Funding Corp., is the lawful beneficiary of the

Mickelson's Deed of Trust. Nor did NWTS establish that MERS[5] could, under the terms of the Promissory Note, supersede Washington's statutory exclusion of "persons holding the same as security for a different obligation" from the definition of a "beneficiary" under RCW.24.005(2), as alleged by the Mickelsons.

The fact Jeff Stenman appointed NWTS as successor trustee, pursuant to a recorded Power of Attorney by Chase, is not dispositive as to the validity of NWTS' appointment. Where Chase has failed to prove in the first instance, its lawful entitlement to enforcement of the Note, or to its status as beneficiary under the DOT, Stenman is incapable of demonstrating he is a validly appointed trustee of the Mickelson's DOT.

However, once again, the materials contained in the Mickelsons' Complaint contradicts the current assertions set forth by the Defendants. The recorded Power of Attorney ostensibly authorizing Stedman to appoint a successor trustee, names, Routh Crabtree Olsen, PS and also, Northwest Trustee Services, Inc., as "Attorney-in-Fact," not Jeff Stedman. See Mickelson Complaint, Ex. C; Cf., Defendant NWTS' Responses to Plaintiffs' Interrogatories and RRPS, Req. for Prod. #9, Attached here to as Exhibit 1.

Additionally, whether that note provides Chase any evidentiary presumption,[6] the very fact that Chase proffers a different document during litigation supports the Mickelsons' allegations the illicit schemes of the home residential lending, servicing, collections, and foreclosure industry (of which Defendants NWTS, Stenman, McElligott, Pre and RCO are all

---

[4] United States v. Corinthian Colleges, 655 F. 3d 984, 991 (9th Cir. 2011).

[5] This Court declined to consider issues regarding MERS, pending a ruling by the Washington State Supreme Court in Bain v. Metropolitan Mortgage Group Inc., et. al. Wash. Supreme Court. No. 86206-1 (June 24, 2011). However, establishing a clear chain of title becomes considerably murkier considering MHL, Corp. is the Lender on the Promissory Note, and its "Nominee," MERS, is the beneficiary under the Deed of Trust.

[6] Balderas v. Countrywide Bank, N.A.2011 U.S. App. LEXIS 25957 (2011) (quoting, 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (Supp. 2011)).

a part) engaged in a broad range of unfair and deceptive practices, including "robo-signing" mortgage related legal documents in order to facilitate non-judicial foreclosures of homeowners' homes, including the that of the Mickelsons, in violation of numerous federal and state laws, and deceptive "dual-tracking" homeowners attempting save their homes. Compl. ¶¶ 1.1 – 1.6; 3.31 – 3.39.  See generally, Complaint Ex. H, Robo-Signing Redux: Servicers Still Fabricating Foreclosure Documents.

The DTA requires the trustee's deed:

[R]ecite the facts showing that the sale was conducted in compliance with all of the requirements of this chapter and of the deed of trust, which recital shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value.

RCW 61.24.040(7).  While this creates a presumption, strongly favoring the purchaser, and furthering the acts' goal that the foreclosure process should promote stability of land titles, it is nevertheless, a rebuttable presumption.  The mere fact a recital *states* it is in in compliance with the DTA and the deed of trust itself, is insufficient to create the presumption.  Albice, at 6, 7 (failure to recite any facts triggering protections of § .040(7), is no protection against undisputed defects in the sale).  See generally, Glidden v. Municipal Authority of City of Tacoma, 111 Wash.2d 341, 348 758 P. 2d 487 (1988)

"A person is deemed to have 'constructive knowledge' of a fact if a person exercising reasonable care could have known that fact." Brown, 146 Wash. App. at 164-67; (citing, Denaxas v. Sandstone Court of Bellevue, *LLC*, 148 Wash. 2d 654, 667, 63 P.3d 125 (2003)); see e.g., Koegel v. Prudential Mut. Sav. Bank, 51 Wash. App. 108, 114 (1988) (where appellant and their attorney appeared at the sale and said nothing); Country Express Stores v. Sims, 87 Wash. App. 741, 752 (1997) (marshaling waived where during bankruptcy

proceedings, the issue of marshaling was raised several times).

The illicit scheme engaged in by all the named Defendants in this case, including Chase Defendants and NWTS and RCO Defendants, by design, precluded homeowners such as the Mickelsons from availing themselves of statutory presale remedies, because the identity of the true beneficiary is unknown. See Compl. 11.11, 12 (Enterprise).

Moreover, as with the facts in Albice, waiver of post-sale remedies cannot be equitably established under circumstances here, where the Mickelsons: acknowledged they were in default; sought forbearances and modifications; believed another modification had been granted; and had relied on assurances that the sale would not occur after following similar assurances in the past, where no sale occurred. See Yongbae Kim v. Bank of Am., N.A., 2011 U.S. Dist. Lexis (W.D. Wash. Aug. 11, 2011) (Dual tracking allegations sufficient to state a claim under WCPA).

Until the finder of fact weighs the evidence and determines as a matter of fact, the chain of title to the Note, and consequently the validity of any assignments under the Mickelsons' DOT, dismissal is inappropriate because it cannot be stated as a matter of law Stenman had the authority to appoint NWTS as successor trustee, or that NWTS had statutory authority to sell the Mickelsons' home at a trustee sale.

**2. The Mickelsons' Complaint Alleged Plausible Claims Under the FDCPA and CPA, Which They Did Not Waive.**

The express purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e).

The FDCPA is generally characterized "as is a strict liability statute to the extent it

imposes liability without proof of an intentional violation." <u>Allen ex rel. Martin v. LaSalle Bank, NA</u>, 629 F. 3d 364, 368 (3rd Cir. 2011) <u>See</u> § 1692k. <u>See</u> <u>e.g.</u>, <u>LeBlanc v. Unifund CCR Partners</u>, 601 F.3d 1185, 1190 (11th Cir. 2010); <u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1030 (9th Cir. 2010); <u>Ellis v. Solomon and Solomon, P.C.</u>, 591 F.3d 130, 135 (2d Cir. 2010); <u>Ruth v. Triumph P'ships</u>, 577 F.3d 790, 805 (7th Cir. 2009).

Enactment of FDCPA specifically prohibiting all false, deceptive, misleading, unfair or harassing collection practices, served to expand prior existing federal law, creating new rights and remedies for consumers; "it is not written on a clean slate." <u>State of Alaska v. O'Neill Investigations, Inc.</u>, 609 P.2d 552, 530.  However, Congress found that despite existing law and enforcement by the FTC "inadequate to protect consumers, "and that there was "abundant evidence of abusive, deceptive and unfair debt collection practices by many debt collectors."  <u>Jeter v. Credit Bureau, Inc.</u>, 760 F. 2d 1168, 1173-4 (11th Cir. 1985) (quoting 15 U.S.C.A. § 1692(a),(b)).

Language of the FDCPA is to be broadly construed, "so as to effect its purpose" because it is a remedial statute.  <u>Brown v. Card Service Center</u>, 464 F. 3d 450, 455 (3rd Cir. 2006).  Citation omitted. Consistent with "basic consumer- protection principles," the court should analyze any lender-debtor communications from the perspective of the "least sophisticated debtor"[7] in order to ensure all consumers are protected, "the gullible as well as the shrewd." <u>Brown v. Card Service Center</u>, 464 F. 3d 450, 453-56 (3rd Cir. 2006).  Citations omitted.

---

[7] <u>See</u>, <u>generally</u>, <u>Wilson v. Quadramed Corp.</u>, 225 F. 3d 350, 354 (3rd Circuit 2000)(Although we have not expounded upon the definition of the "least sophisticated debtor," other courts of appeals which have adopted that standard have. <u>See</u>, <u>e.g.</u>, <u>Savino v. Computer Credit, Inc.</u> 164 F.3d 81 (2d Cir. 1998); <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30, 34-35 (2d Cir. 1996); <u>United States v. National Financial Serv. Inc.</u>, 98 F.3d 131, 136 (4th

The FDCPA clearly defines a "debt collector" as one "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

Defendants' arguments, in reliance on RCW 61.24.127 and Plein v. Lackey, 149 Wash.2d 214, 227, 67 P.3d 1061, 1067 (2003), that the Mickelsons waived their claims under the Fair Debt Collection Practices Act by failing to take advantage of pre-sale remedies are without merit. Defendants' Motion, at § IV.B.2.a.

State law cannot preempt federal law. U.S. Constitution Article 6. Washington State has no authority to preempt a remedial statute established by Congress.

**a. The Mickelsons' Claims Under the FDCPA Are Not Waived.**

The recent Albice decision distinguishes cases such as Plein where waiver is appropriate because the party received notice of right to enjoin sale, had actual or constructive knowledge of defense to foreclosure prior to sale, but failed to bring injunctive action.

> [O]ur Supreme Court has held that a person is not required to have knowledge of the existence of a legal cause of action, but merely knowledge of the facts necessary to establish the elements of the claim. Douchette v. Bethel Sch. Dist. No. 403, 117 Wash.2d 805, 814, 818 P.2d 1362 (1991).
> Similarly, in applying the waiver doctrine, a person is not required to have knowledge of the legal basis for his claim, but merely knowledge of the facts sufficient to establish the elements of a claim that could serve as a defense to foreclosure. In Peoples National Bank of Washington v. Ostrander, 6 Wash.App. 28, 491 P.2d 1058 (1971).

Brown v. Household Realty Corp., 146 Wash. App. 157, 160, 189 P.3d 223 (2008). This Court has already found the trustee allowed someone other than the beneficiary to bid on the property in violation of the DTA. There is no way, the Mickelsons could have known that

Cir. 1996); Smith v. Computer Credit Inc., 167 F.3d 1052, 1054 (6th Cir. 1999); and Terran v. Kaplan, 109

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

this violation would occur or file for an injunction 5 days before this illegal act occurred.

**b. Defendants NWTS and RCO Are Debt Collectors Who Represented Themselves as Debt Collectors.**

Defendants acknowledge Plaintiffs' allegations that "NWTS and RCO qualify as a debt collector[s] to the extent they purported to collect payments on either the note or deed of trust." Defendants' Motion, at p. 14:1-3  However, NWTS and RCO, then attempt to recast themselves as merely "enforcers" of a security interest, rather than as being in the business of collecting, or attempting to collect, debt.  Defendants' Motion, at § IV.B.2.a.  The facts unequivocally demonstrate the brazenly dishonest and deceptive manner in which NWTS and RCO conduct their business with respect to homeowners, such as the Mickelsons, and now before this Court.

In making this specious claim, Defendants argue they are not debt collectors because, "Washington courts have held, … that a nonjudicial foreclosure proceeding is not the collection of a debt for purposes of the FDCPA."  However, in <u>Pizan v HSBC Bank USA, N.A.</u>, 2011 U.S. Dist. LEXIS 66861, 7-10, (W.D. Wa. 2010) Judge Zilly of this Court noted:

> In asserting is not a "debt collector" within the meaning of the FDCPA, defendants rely on <u>Hulse v. Ocwen Fed. Bank, FSB</u>, 195 F. Supp. 2d 1188 (D. Or. 2002).  <u>Hulse</u>, however, has been called into question by two circuits and at least two district courts within the Ninth Circuit. <u>See</u> <u>Kaltenbach v. Richards</u>, 464 F.3d 524 (5th Cir. 2006); <u>Wilson v. Draper & Goldberg, P.L.L.C.</u>, 443 F.3d 373 (4th Cir. 2006); <u>Albers v. Nationstar Mortg. LLC</u>, 2011 U.S. Dist. LEXIS 182, 2011 WL 43584 (E.D. Wash. Jan. 3, 2011); <u>Allen v. United Fin. Mortg. Corp.</u>, 2010 U.S. Dist. LEXIS 26503, 2010 WL 1135787 (N.D. Cal. Mar. 22, 2010).  Thus, the Court is reluctant to simply rely on <u>Hulse</u>, but instead must analyze the question anew.

After analyzing the question anew Judge Zilly decided that disposing of this issue pursuant to a motion to dismiss pursuant to Fed.R.Civ. Pro. 12 (b)(6) would not be

---

F.3d 1428, 1431-32 (9th Cir. 1997)).

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

appropriate.  This Court might also want to note that while several district courts have bought

defendants arguments, these arguments have been rejected by three circuits:  See Wilson v.

Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376-77 (4th Cir. 2006); Piper v. Portnoff Law

Assocs., Ltd., 396 F.3d 227, 234 (3d Cir. 2005); In re Martinez, 311 F.3d 1272 (11th Cir.

2002); Romea v. Heiberger & Assocs., 163 F.3d 111, 115-16 (2d Cir. 1998). But, see

McDonald v. Onewest Bank, FSB, No. C10-1952RSL, LEXIS 21449 (U.S. Dist. WDW,

decided Feb. 21, 2012).

   Bearing in mind, the language of the FDCPA is to be broadly construed "to effect its

purpose," the definition of "debt collector" as one "who uses any instrumentality of interstate

commerce or the mails in any business the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another," (15 U.S.C. § 1692a(6)) should be analyzed from the

perspective of the debtor receiving the communication.  Under the looks-like-a-duck-walks-

like-a-duck-quacks-like-a-duck rationale, it is reasonable to conclude that a debtor (regardless

of their level of sophistication) who receives correspondence from one who identifies

themselves as "attempt[ing] to collect a debt" or as a "debt collector attempting to collect a

debt" will assume the sender to be a debt collector.

   The Mickelsons received the following from NWTS and RCO:[8]

- NWTS Notice of Default, contained notice requirements pursuant to the
  FDCPA, and boldly stated:  **This is an attempt to collect a debt and any
  information obtained will be used for that purpose.** Dated 8/25/08, from
  Chase, by NWTS/Vonnie McElligott.  Mickelson Compl., Ex. F.

- NWTS Notice of Notice of Foreclosure, boldly stated:  **This is an attempt to
  collect a debt and any information obtained will be used for that purpose.**

---

[8] Additionally, the Mickelsons received correspondence directly from Chase regarding loan Modifications. Ex. E

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

Dated 8/25/08, from Chase, by NWTS/Vonnie McElligott.  Mickelson Compl., Ex. F.

- NWTS's Notice of Trustee's Sale boldly stated at p. 4/4: **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  Recorded, Effective 9/25/08, for Chase; from NWTS, Trustee; by Vonnie McElligot (Authorized signature).  Mickelson Compl., Ex. F.

- NWTS's Notice of Trustee's Sale boldly stated at p. 4/4: **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  Recorded, Effective 9/6/10, for Chase; from NWTS, Trustee; by Vonnie McElligot (Authorized signature).  Mickelson Compl., Ex. G.

- NWTS Notice of Notice of Foreclosure, boldly stated:  **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  Dated 9/06/10, from Chase, by NWTS/Vonnie McElligott.  Mickelson Compl., Ex. G.

- RCO's August 25, 2008, letter noticing commencement of foreclosure proceedings, just below its letterhead state: THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. Defendant RCO's Responses to Plaintiffs' Interrogatories and RFPS, Req. for Prod. #4, Attached here to as Exhibit 2.

- RCO's August 6, 2010, letter noticing commencement of foreclosure proceedings, just below its letterhead state: THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. Defendant RCO's Responses to Plaintiffs' Interrogatories and RFPS, Req. for Prod. #4, Attached here to as Exhibit 2.

Emphasis in originals.  Can NWTS and RCO contend, with a straight face and a firm voice that the Mickelsons would or could conclude Defendants are merely "enforcers of a security interest?"

Whether Defendants are indeed debt collectors only under §1692a(6), or also under §§1692d(1); e(4); and f(6) are not merely questions of law, but turn on factual determinations to made by the trier of fact.  For example, §1692f(6) makes it a violation to take or threaten "to take any nonjudicial action to effect dispossession or disablement of property if—(A)

there is no present right to possession of the property claimed as collateral through an enforceable security interest." This requires a determination of the validity of the chain of title.

Under 15 U.S.C. § 1692e(4) "A debt collector may not use any false, deceptive, or misleading representation or means in connection with **the collection of any debt**." "A debt collection letter is deceptive where 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" Brown v. Card Service Center, 464 F. 3d 450, 455 (3rd Cir. 2006). Citations omitted. Further proceedings are warranted where the least sophisticated debtor could reasonably be lead to believe a debt collector might take a certain course of action. Id.

Here, the Mickelsons allege they were actively pursuing a loan modification, and indeed had been lead to believe they had been granted the modification, and that the foreclosure sale would not occur, while at the same time their home was in fact being sold at a trustee's foreclosure sale. See, Mickelson Compl. at ¶¶ 10.1 - 10.12 (Dual Tracking); APPEN. I, at ¶¶ 3.32.1 – 3.32.64 (summary of dual-tracking to which the Mickelsons were subjected). These allegations abundantly support the Mickelsons' allegations they were treated unfairly and abusively through false, deceptive, and/or misleading representation intentionally designed to negate any rights afforded them while in default on their home loan. Accordingly, Defendants' Motion to Dismiss should be denied.

### c. The Mickelsons Asserted Plausible Claim Under the Consumer Protection Act Defendants NWTS and RCO.

Plaintiffs base their CPA claim against NWTS on allegations that (1) NWTS engaged in "robo signing" practices; (2) NWTS initiated two nonjudicial foreclosure proceedings in the absence of proof as to who is the beneficiary; (3) violations of the WDTA; and (4) dual

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

tracking.

Defendants argue the Mickelsons' claims for CPA violations fail as a matter of law to the NWTS Defendants and RCO.  See MTD, p. 18.  Defendants ignore <u>Yongbae Kim v Bank of Am., N.A.</u>, 2011 U.S. Dist. Lexis (W.D. Wash. Aug. 11, 2011) where this Court held a "dual tracking scheme", such as that alleged in plaintiffs' complaint, was sufficient to withstand a motion to dismiss.

> Reading the complaint in a light most favorable to Plaintiffs, the Court finds Plaintiffs sufficiently pled a CPA claim. As alleged, Defendants promised Plaintiffs their property would not be foreclosed on while Plaintiffs applied for a loan modification, yet Defendants foreclosed anyway. If proven, this is a deceptive act that occurred during the course of trade of commerce which resulted in the foreclosure of Plaintiffs' property.
>
> While Defendants argue Plaintiffs fail to allege acts "contrary to public policy," the Court finds the argument unavailing. The Washington legislature's enactment of RCW 61.24.127 demonstrates a public interest in the issue of deceptive foreclosure activities. As discussed above, RCW 61.24.127 is now a part of the DTA and explicitly preserves CPA claims post-foreclosure [*13] sale. RCW 61.24.127. In addition to this legislative mandate, the Court finds public policy favors transparent foreclosure proceedings. See, e.g., Panag v. Farmers Ins. Co. of Washington, 166 Wash.2d 27, 204 P.3d 885 (2009)(finding similarly regarding deceptive insurance subrogation collection activities).
>
> Since the CPA is to be construed liberally in order to protect the public from unfair and deceptive business practices, the Court DENIES Defendants' motion to dismiss Plaintiffs' CPA claim.

<u>Yongbae Kim v. Bank of Am., N.A.</u>, 2011 U.S. Dist. Lexis (W.D. Wash. Aug. 11, 2011).

Defendant NWTS and RCO were part of the "dual tracking" scheme alleged by the Mickelsons.  Both represented themselves to the Mickelsons as "debt collectors" for the beneficiary, while at the same time the "alleged" beneficiary was telling the Mickelson's they did not have to worry about the debt collectors.  Now the

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

persons who held themselves out as debt collectors as part of the alleged scheme claim

to this Court they never were debt collectors.  Certainly, it is unfair and deceptive to

claim to the public in your trade and business that you are one thing and then to

declare to the Court in a motion to dismiss that you are something wholly different.

The Ninth Circuit recently decided in Kekauoha-Alisa v. Amerquest Mort. Co.

(In re Kekouha-Alisa) that a technical violation of Hawaii's Deed of Trust Act

violated that State's deceptive practices law.  Id. at 647 F.#rd 1083, 1091 (9th Cir.

2012).  That State's definition of deceptive practices is virtually identical to that

utilized in Washington.

This Court has already found that a violation of the DTA occurred when Freddie Mac

was allowed to bid as the beneficiary and assume allegedly assume ownership of the

Mickelson's home.  This Court found this violation had no effect for purposes of determining

waiver of the Mickelson's other claims.  After this Court's ruling in this regard the

Washington Supreme Court decided Albice v. Premier Mortg. Servs. of Wash., Inc., 2012

Wash. LEXIS 378 (2012) (A copy of which has been provided to this Court as supplemental

authority.)  Albice, like Kekouha-Alisa, both followed non-judical statutes having the same

purposes:

> Hawaii's nonjudicial foreclosure statute affords mortgagees a quick and
> inexpensive alternative to judicial foreclosure but balances that
> accommodation by mandating compliance with minimal procedural
> requirements  to protect mortgagors' interest in their property. [citation
> omitted]. That statutory balance would be upset if mortgagees could dispense
> with those procedures they perceive as futile, or substitute procedures they
> believe achieve the "spirit and purpose" of the law. A reviewing court would
> frequently have no evidence of the adequacy of those substitute procedures
> other than the testimony of the mortgagee's agent.

If Defendants' conduct is part of a scheme to violate the provisions of the DTA, then

PLAINTIFFS'   RESPONSE   TO   DEFENDANTS'   NWTS,
STENMAN, MCELLIGOTT, PRE, AND RCO'S MOTION FOR
JUDGMENT ON THE PLEADINGS- 20

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

1    this Court should allow the CPA causes of action to proceed.

2    **V. CONCLUSION**

3           For the reasons stated above, the court should deny Defendants' Motion for

4    Judgment on the Pleadings.

5

6           DATED this 11th day of June, 2012 at Arlington, Washington.

7

8                                                        STAFNE LAW FIRM
                                                         Attorneys for Plaintiffs

9

10                                                      /s/ *Scott E. Stafne*
                                                        Scott E. Stafne, WSBA #6964
11                                          Jocelynne R. Fallgatter, WSBA # 44587
                                                        Stafne Law Firm
12                                                  239 North Olympic Avenue
                                                        Arlington, WA 98223
13                                                  Phone: (360) 403-8700
14                                                    Fax: (360) 386-4005

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on June 11, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred B. Burnside:  fredburnside@dwt.com

Rebecca J. Francis:  RebeccaFrancis@dwt.com

Heidi E. Buck:  hbuck@rcolegal.com

Andrew Gordon Yates:  yatesa@lanepowell.com

John S. Devlin, III:  devlinj@lanepowell.com

Erin McDougal Stines:  erin.stines@fnf.com

DATED this 11th day of June, 2012 at Arlington, WA.

/s/ Chessa R. Tachiki
Chessa Tachiki, Paralegal
Stafne Law Firm

PLAINTIFFS' RESPONSE TO DEFENDANTS' NWTS, STENMAN, MCELLIGOTT, PRE, AND RCO'S MOTION FOR JUDGMENT ON THE PLEADINGS- 22

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

EXHIBIT 1

4236911

09/19/2008 01:59:06 PM
Recording Fee $14.00  Page 1 of 1
Appointment Of Successor Trustee
Island County Washington

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

## Appointment of Successor Trustee

*X55876 $14*

File No. 7037.16475

Travis Mickelson and Danielle H. Mickelson, husband and wife is/are the grantor(s), Chicago Title is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Lender and Lender's successors and assigns is the beneficiary under that certain deed of trust dated 11/22/05 and recorded on 11/29/05 under Island County, Washington Auditor's File No. 4155570.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, it is the owner and holder of the obligation secured by the subject deed of trust and is not holding the same as security for a different obligation.

**Chase Home Finance LLC successor by merger to Chase Manhattan Mortgage Corporation**
Jeff Stenman, Attorney-in-Fact by Power of Attorney recorded October 28, 2005 under Island County, Washington Auditor's File No. 4152512

By _____

STATE OF WASHINGTON)
                                          )ss
COUNTY OF KING)

I certify that I know or have satisfactory evidence that JEFF STENMAN is the person who appeared before me, and said person acknowledged that (he) signed this instrument, on oath stated that (he) was authorized to execute the instrument and acknowledged it as the ATTORNEY-IN-FACT of CHASE HOME FINANCE LLC to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: SEPTEMBER 18, 2008

RHEA S. PRE
STATE OF WASHINGTON
NOTARY — • — PUBLIC
MY COMMISSION EXPIRES  04-22-10

Notary Public in and for the State of WASHINGTON
Residing at RENTON
My appointment expires 4-22-10

02/06/2009 01:57:15 PM                    4244144
Recording Fee $44.00  Page 1 of 3
Power Of Attorney
Island County Washington

After Recording Mail to:

Northwest Trustee Services, Inc.
ATTN:  Jeff Stenman
P.O. Box 997
Bellevue, WA 98009-0997
*56313* $44

**Document Title(s): (or transactions contained therein)**
1.  Limited Power of Attorney
2.
3.

**Reference Number(s) of Documents assigned or released:**

_____Additional numbers on page_ of document

**Grantor(s): (Last name first, then first and initials)**
1.  Chase Home Finance LLC
2.  JPMorgan Chase Bank, N.A.
3.  Chase Bank USA, N.A.
4.
5.____Additional names on page_____of document

**Grantee(s): (Last name first, then first and initials)**
1.  Routh Crabtree Olsen, PS
2.  Northwest Trustee Services, Inc.
3.
4.
5.  Additional name on page_____of document

**Abbreviated Legal Description as follows:** (i.e. lot/block/plat or section/township/range/quarter/quarter)

_____Complete legal description is on page_____of document

**Assessor's Property Tax Parcel/Account Number(s):**

02/06/2009 01:57:15 PM
Recording Fee $44.00   Page 2 of 3
Power Of Attorney
Island County Washington

4244144

## LIMITED POWER OF ATTORNEY
### (Multiple Principals)

**STATE OF OHIO**

**COUNTY OF FRANKLIN**

The undersigned (each a "Principal" and collectively referred to as "Chase"), each with an office at 3415 Vision Drive, Columbus, Ohio, 43219, acting by and through their duly authorized officer, do each hereby make, constitute, and appoint Routh Crabtree Olsen, PS and Northwest Trustee Services, Inc. ("Attorney in Fact"), as its true and lawful attorney-in-fact in its name, place, and stead to do and perform acts as enumerated below relating to the management and disposition of the foreclosure of loans (as hereinafter defined) located in Washington.

This Limited Power of Attorney arises out of a certain Attorney/Trustee Agreement as amended from time to time pursuant to any Schedule or other amendment (the "Agreement"), by and between Chase, any individual Principal, or any affiliate thereof, and Attorney in Fact, whereby Attorney in fact has agreed to prosecute foreclosure of loans referred to it by any Principal. Chase does hereby grant to Attorney in fact the power and authority to do and perform, in its place and stead, any and all lawful acts, matters and actions it deems necessary, proper or convenient in connection with the prosecution and disposition of the foreclosure of loans pursuant to the Agreement, including but not limited to:

The execution, acknowledgment, recording and delivery of beneficiary's Non Military Affidavit, Notice of default, Notice of sale, Appointment of Successor Trustee or Substitution of Trustee and Verifications of Debt wherein the above-named principal is the original or substituted beneficiary or servicing agent for the beneficiary, and Deeds to the Secretary of Veterans Affairs, Secretary of Housing and Urban Development, Deeds to the Federal National Mortgage Association, and Deeds to the Federal Home Loan Mortgage Corporation, to convey properties in which the mortgage foreclosed secured a loan guaranteed or insured by the Department of Veterans Affairs or Department of Housing and Urban Development, and Deeds and assignment of beneficial interest to the investor on mortgage loans in which the principal is the beneficiary of record of the Mortgage.

Notwithstanding anything contained herein to the contrary, the rights and powers granted by this Limited Power of Attorney expressly do not include the following: granting or releasing real or personal property liens or encumbrances; entering into granting any loan, mortgage or other indebtedness; entering into any guaranty, surety obligation, bond, indemnity or other similar undertaking for any party; settlement or compromise of any claim, action or chose-in-action either in favor of or against Chase or any affiliate thereof; or entering into, modifying or terminating any lease or occupancy agreement.

The authority of Attorney in Fact to exercise the rights and powers herein granted shall commence and be in full force and effect on the date this Limited Power of Attorney is signed by the undersigned, and such rights and powers herein shall be in full force and effect until revoked by the undersigned, and all persons dealing with its said Attorney in Fact shall be entitled to rely on such authority unless such person has actual knowledge of the revocation of this Limited Power of Attorney by Chase (or its successor in interest), or until a written revocation is filed in the real property records of the county or town where this Limited Power of Attorney has been previously filed, as required by applicable law. Notwithstanding the foregoing, this Limited Power of Attorney shall expire, if not sooner terminated, on the third (3rd) anniversary of the execution date hereof.

1

02/06/2009 01:57:15 PM                    4244144
Recording Fee $44.00  Page 3 of 3
Power Of Attorney
Island County Washington

The undersigned hereby certifies that he/she is the duly authorized officer of each Principal signed this Limited Power of Attorney, and is executing this Limited Power of Attorney pursuant to proper authority of the Board of Directors thereof, and that all necessary action for the execution and delivery of this instrument has been taken and done.

Executed this 2‾ day of January, 20 09

_____
            Ralph Gerardi
(printed name)

Authorized Vice President of:

CHASE HOME FINANCE LLC, A DELAWARE LIMITED LIABILITY COMPANY
JPMORGAN CHASE BANK, N.A.
CHASE BANK USA, N.A

Signed in the presence of:

Erin Spencer
(printed name)

_____
(printed name and title)

STATE OF        Ohio          )
                              )
COUNTY OF       Franklin      )

This instrument was acknowledged before me this 2‾ day of January, 20‾ by _____Ralph Gerardi_____, the Vice President of Chase Home Finance LLC, a Delaware Limited Liability Company, and JPMorgan Chase Bank, N.A., on behalf of said Principals.

VALERIE RAMOS
Notary Public, State of Ohio
My Commission Expires Jan 7, 2013

_____
Notary Public

My Commission expires: _____

EXHIBIT 2

# ROUTH CRABTREE OLSEN, P.S.

*A Law Firm and Professional Services Corporation*
3535 Factoria Blvd. SE, Suite 200
Bellevue, WA 98006
Telephone (425) 458-2121 ◆ Facsimile (425) 458-2131
www.rcolegal.com

THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. THE FOLLOWING LETTER IS A DISCUSSION OF ALTERNATIVES TO FORECLOSURE.  IT IS OUR UNDERSTANDING THAT YOU ARE NOT CURRENTLY IN BANKRUPTCY.  IF YOU ARE IN BANKRUPTCY, THEN PLEASE DISREGARD THIS LETTER IN ITS ENTIRETY AND HAVE YOUR ATTORNEY CONTACT OUR OFFICE AS SOON AS POSSIBLE.

August 25, 2008

Re:   Property:      436 Ezduzit Lane, Camano Island, WA 98282
      Loan No.:      1915309566
      Our File No.:  7037.16475

Dear Homeowner:

Please be advised that **Routh Crabtree Olsen, P.S.** is working with Chase Home Finance, LLC - Columbus OH to help you keep your home. We represent your mortgage company and have received notice to commence foreclosure proceedings against your property. It is Chase Home Finance, LLC - Columbus OH's mission to attempt to work out a solution to your loan situation, and they have asked us to open a line of communication with you.

## WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!

You may be eligible for certain opportunities that will help you stay in your home. You may have had an unexpected expense or a circumstance beyond your control that has forced you to miss some mortgage payments. Chase Home Finance, LLC - Columbus OH would like to discuss your situation with you to determine what you can do to bring your loan current.

These alternatives are voluntary and could include:

- **Forbearance Plan:** An agreement to temporarily let you pay less than the full amount of your mortgage payment, or pay nothing at all, during the forbearance period. Your lender may consider a forbearance when you can show that funds from a bonus, tax refund, or other source of future income will let you bring the mortgage current or qualify you for a repayment plan or loan modification at the end of the forbearance period.

- **Reinstatement of Your Loan:** You would pay the total amount past due in one lump sum by a specified date.

- **Repayment Plan:** An agreement that gives you a fixed amount of time to repay the amount you are behind by combining a portion of what is past due with your regular

mortgage payment. At the end of the repayment period you will have gradually paid back the amount of your mortgage that was delinquent.

- **Modification:** This is a written agreement between you and the lender that permanently changes the terms of the loan that in some instances may make your payments more affordable. Common loan modifications include:
  1. **Adding missed payments to your existing loan balance**
  2. **Making an adjustable-rate mortgage into a fixed-rate mortgage**
  3. **Extending the number of years you have to pay to a longer term**

## WHAT IF YOU CAN NO LONGER AFFORD TO KEEP YOUR HOME?

If you cannot or do not want to keep your home, your lender can work with you to avoid foreclosure. This can help reduce the negative effect on your credit reputation. There are several different ways this might occur depending on your financial circumstances:

- **Deed in Lieu of Foreclosure:** Under certain circumstances, you would voluntarily transfer ownership of your property to the lender in exchange for cancellation of your mortgage debt. In most cases, you must attempt to sell your home for its fair market value for at least 90 days. You would be given a specific period of time to relocate. This option may not be available to you if there are other liens or judgments on your home.

- **Short Payoff:** If you can sell your house but the sales proceeds are less than the total amount you owe on your mortgage, your lender may agree to a short payoff and write off the portion of your mortgage that exceeds the net proceeds from the sale.

- **Assumption of Your Loan:** This option permits a qualified buyer to take over your mortgage debt and pay the payments, even if the mortgage is non-assumable.

### <u>HOW DO YOU TAKE ADVANTAGE OF THESE ALTERNATIVES?</u>

Complete the enclosed two-page financial form and return it in the enclosed self-addressed envelope.

<u>**Please note that the foreclosure action will continue whether or not the form is completed and returned. The foreclosure action will continue unless your lender determines that you are eligible for one of these alternatives and an agreement is signed.**</u>

<u>**You also have the right and should seek the advice of an attorney.**</u>

Time is of the essence; this information will enable us to determine what option is best suited to keep your account from being foreclosed upon. Please return the requested information via fax at (425) 283-0983, or mail to:

Routh Crabtree Olsen, P.S.

Attention:  Pam Clark
P.O. Box 4143
Bellevue, WA 98009-4143

We hope that you will complete the enclosed forms so that we can work with you to consider alternatives to the pending foreclosure of your property.

Sincerely,

ROUTH CRABTREE OLSEN, P.S.



## ROUTH CRABTREE OLSEN, P.S.

*A Law Firm and Professional Services Corporation*
3535 Factoria Blvd. SE, Suite 200
Bellevue, WA 98006
Telephone (425) 458-2121 ◆ Facsimile (425) 283-0938
www.rcolegal.com

THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. THE FOLLOWING LETTER IS A DISCUSSION OF ALTERNATIVES TO FORECLOSURE.   IT IS OUR UNDERSTANDING THAT YOU ARE NOT CURRENTLY IN BANKRUPTCY. IF YOU ARE IN BANKRUPTCY, THEN PLEASE DISREGARD THIS LETTER IN ITS ENTIRETY AND HAVE YOUR ATTORNEY CONTACT OUR OFFICE AS SOON AS POSSIBLE.

Aug 06, 2010

Re:     Property:      436 Ezduzit Lane
Camano Island, WA 98282, Camano Island, WA 98282
        Loan No.:      1915309566
        Our File No.:  7037.08418

Dear Homeowner:

Please be advised that **Routh Crabtree Olsen, P.S.** is working with Chase Home Finance, LLC to help you keep your home. We represent your mortgage company and have received notice to commence foreclosure proceedings against your property. It is Chase Home Finance, LLC's mission to attempt to work out a solution to your loan situation, and they have asked us to open a line of communication with you.

## WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!

You may be eligible for certain opportunities that will help you stay in your home. You may have had an unexpected expense or a circumstance beyond your control that has forced you to miss some mortgage payments. Chase Home Finance, LLC would like to discuss your situation with you to determine what you can do to bring your loan current.

These alternatives are voluntary and could include:

- **Forbearance Plan:** An agreement to temporarily let you pay less than the full amount of your mortgage payment, or pay nothing at all, during the forbearance period. Your lender may consider a forbearance when you can show that funds from a bonus, tax refund, or other source of future income will let you bring the mortgage current or qualify you for a repayment plan or loan modification at the end of the forbearance period.
- **Reinstatement of Your Loan:** You would pay the total amount past due in one lump sum by a specified date.

- **Repayment Plan:**  An agreement that gives you a fixed amount of time to repay the amount you are behind by combining a portion of what is past due with your regular mortgage payment. At the end of the repayment period you will have gradually paid back the amount of your mortgage that was delinquent.
- **Modification:** This is a written agreement between you and the lender that permanently changes the terms of the loan that in some instances may make your payments more affordable.  Common loan modifications include:
  1. **Adding missed payments to your existing loan balance**
  2. **Making an adjustable-rate mortgage into a fixed-rate mortgage**
  3. **Extending the number of years you have to pay to a longer term**

## WHAT IF YOU CAN NO LONGER AFFORD TO KEEP YOUR HOME?

If you cannot or do not want to keep your home, your lender can work with you to avoid foreclosure. This can help reduce the negative effect on your credit reputation. There are several different ways this might occur depending on your financial circumstances:

- **Deed in Lieu of Foreclosure:**  Under certain circumstances, you would voluntarily transfer ownership of your property to the lender in exchange for cancellation of your mortgage debt. In most cases, you must attempt to sell your home for its fair market value for at least 90 days.  You would be given a specific period of time to relocate. This option may not be available to you if there are other liens or judgments on your home.
- **Short Payoff:** If you can sell your house but the sales proceeds are less than the total amount you owe on your mortgage, your lender may agree to a short payoff and write off the portion of your mortgage that exceeds the net proceeds from the sale.
- **Assumption of Your Loan:** This option permits a qualified buyer to take over your mortgage debt and pay the payments, even if the mortgage is non-assumable.

## HOW DO YOU TAKE ADVANTAGE OF THESE ALTERNATIVES?

Complete the enclosed two-page financial form and return it in the enclosed self-addressed envelope. Time is of the essence; this information will enable us to determine what option is best suited to keep your account from being foreclosed upon. Please return the requested information via fax at (425) 283-0938, or mail to:

Routh Crabtree Olsen, P.S.
Attention:  Antoinette Bartlein
P.O. Box 4143
Bellevue, WA 98009-4143

**Please note that the foreclosure action will continue whether or not the form is completed and returned. The foreclosure action will continue unless your lender determines that you are eligible for one of these alternatives and an agreement is signed. You also have the right and should seek the advice of an attorney.**

We hope that you will complete the enclosed forms so that we can work with you to consider alternatives to the pending foreclosure of your property.

Sincerely,
**ROUTH CRABTREE OLSEN, P.S.**