1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | TRAVIS MICKELSON and DANIELLE H. MICKELSON, | CASE NO. C11-1445 MJP

11 |                                              | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs,

12

v.

13

14 | CHASE HOME FINANCE, LLC, et al.,

Defendants.

15

16

This matter comes before the Court on Defendants Northwest Trustee Services

17

("NWTS"), Jeff Stenman, Vonnie McElligott, Rhea Pre, and Routh Crabtree Olsen's ("RCO")

18

motion for judgment on the pleadings. (Dkt. No. 70.) Having reviewed the motion, Plaintiffs'

19

response (Dkt. No. 78), Defendants' reply (Dkt. No. 79), and all the related filings, the Court

20

GRANTS in part and DENIES in part Defendants' motion for judgment on the pleadings.

21

**Background**

22

Plaintiffs Travis and Danielle Mickelson filed suit against NWTS, Jeff Stenman, Vonnie

23

McElligott, Rhea Pre, (collectively "NWTS Defendants") and RCO alleging various violations

24

related to the foreclosure of their home. On November 22, 2005, Plaintiffs received a loan from MHL Funding Corp ("MHL") to purchase a home in Island County. (Dkt. No. 29 at 14.) A promissory note ("Note"), endorsed in blank signed by the Plaintiffs, evidenced the loan. (Dkt. No. 43-2.) The Deed of Trust securing the loan named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and nominee for the original lender MHL. It also named Chicago Title Insurance Company ("Chicago") as the trustee. (Dkt. No. 70 at 2.) In June of 2006, Chase Home Financial LLC ("Chase") became the holder of the Note and servicer of the loan. (Amended Complaint ("AC") ¶ 2.11.) On August 25, 2008, MERS executed an assignment of the Deed of Trust to Chase. (AC ¶ 2.5.2). MERS recorded the assignment on September 19, 2008. (Dkt. No. 29-1 at 17.) Vonnie McElligott signed the assignment as "Vice President" for MERS, although she appears everywhere else in the record to be a NWTS employee. (Id.) The same day, Chase executed an appointment of successor trustee which named NWTS as the successor trustee to Chicago Title. (Dkt. No. 29-1 at 29.) Jeff Stenman signed the document on behalf of Chase. An earlier document, which Chase recorded in Island County on October 28, 2005, granted Stenman a limited power of attorney to represent Chase's interest. (Dtk. No. 29-1 at 24.)

In August of 2008, Plaintiffs defaulted on their mortgage and Chase and NWTS threatened foreclosure. (AC ¶ 3.23.) Chase sent a letter to Plaintiffs dated February 9, 2009, indicating that a loan modification would be available subject to several clearly disclosed requirements (Dkt. No. 43-4 at 13.) The letter states in bold: "Failure to return this Loan Modification Agreement and the money by the stipulated date will cause the modification agreement to be cancelled and the collection and/or foreclosure process to continue immediately." (Id. (emphasis removed).) Plaintiffs make no allegation that they complied with

1  all the terms of the letter. (AC ¶ 3.32.13.) By a letter dated February 20, 2009, Chase then

2  extended the deadline for compliance, but Plaintiffs still made no payments. (AC ¶ 3.32.13.)

3      NWTS, acting as trustee on the Deed of Trust for Chase, provided notices of default to

4  Plaintiffs. (AC ¶ 3.28.) NWTS then began the first of its two foreclosure proceedings. On

5  September 25, 2008 NWTS recorded a Notice of Trustee's sale and sent a Notice of Foreclosure

6  to Plaintiffs. (Dkt. No. 29 at Ex. F.) NWTS discontinued the trustee's sale on April 9, 2009. On

7  April 7, 2010, Chase allegedly executed a Beneficiary Declaration stating that Chase "is the

8  actual holder of the promissory note or other obligation," and provided this to NWTS.  (Dkt. No.

9  70, Ex. A.) After obtaining this declaration NWTS instituted a second foreclosure and recorded a

10  Notice of Trustee's Sale on September 7, 2010. (Dkt. No. 29-1 at 39-45.) On March 25, 2011,

11  NWTS oversaw a non-judicial foreclosure sale to Chase as the highest bidder. Chase then

12  directed NWTS, to issue the Deed of Trust directly to Freddie Mac. (Dkt. No. 29-11 at 38-40.)

13      Plaintiffs allege several deficiencies with the assignment of the Deed of Trust from

14  MERS to Chase, the transfer of the Note, and the appointment of NWTS. First, they allege the

15  assignments from MERS was invalid because MERS is not legally capable of being a

16  beneficiary. (AC ¶¶ 6.4-6.21.) Second, they allege the assignment of the Deed of Trust to Chase

17  was invalid because the signer, Vonnie McElligott, and notary were "robo-signers," "who lacked

18  authority, knowledge, or training to notarize the transaction." (AC ¶ 6.23.) Third, they allege the

19  Note was not the bearer paper because MHL did not endorse it and thus it was not properly

20  transferred to Chase. (Dkt. No. 78 at 8.)  Fourth, Plaintiffs allege the appointment of NWTS as

21  successor trustee was invalid because Chase was not the proper Note holder/beneficiary.

22  Plaintiffs contend these facts support their claims under the Consumer Protection Act ("CPA"),

23

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS- 3

1  the Fair Debt Collections Practices Act ("FDCPA"), and the Deed of Trust Act ("DTA").  They

2  also contend that NWTS breached their duties of good faith as trustee under RCW 61.24.010(4).

3  Defendants seek dismissal of all of these claims.

**Analysis**

4

5  A.   Standard

6  "A judgment on the pleadings is properly granted when, taking all the allegations in the

7  pleading as true, the moving party is entitled to judgment as a matter of law." Heliotrope Gen.,

8  Inc. v. Ford Motor Co., 189 F.3d 971, 978-79 (9th Cir. 1999). The court applies the same

9  standard on a motion for judgment on the pleadings as a 12(b)(6) motion. McGlinchy v. Shell

10  Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The court must assess whether a complaint

11  contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on

12  its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This entails "more than labels and

13  conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell

14  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Instead, "a claim has facial plausibility

15  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

16  that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

17  Review is limited to the complaint, materials incorporated into the complaint by

18  reference, and matters of which the court may take judicial notice. Metzler Inv. GMBH v.

19  Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). The court may also "take into

20  account documents whose contents are alleged in a complaint and whose authenticity no party

21  questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN,

22  393 F.3d 1068, 1076 (9th Cir. 2005).

23  B.   Deed of Trust Act Claims

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS- 4

1         Plaintiffs argue that the NWTS Defendants violated the DTA because (1) NWTS was not

2    properly appointed a successor trustee to Chicago Title; (2) NWTS lacked the requisites to

3    initiate non-judicial foreclosure; and (3) NWTS breached its duty of good faith owed under the

4    DTA. (Dkt. No. 70 at 5.) Only the second and third arguments state a claim sufficient to survive

5    dismissal.

6         1.    <u>NWTS's Status as a Successor Trustee</u>

7         Plaintiffs allege two deficiencies with Chase's appointment of NWTS as successor

8    trustee: (1) the ownership rights were not properly transferred from MHL to Chase through an

9    endorsed promissory note; and (2) NWTS was not a successor trustee because Chase was not

10   properly assigned the Deed of Trust from MERS. (Dkt. No. 78 at 9; AC ¶ 6.25-.35). All of these

11   arguments fail.

12        First, there is no legal requirement that the lender endorse the original promissory note.

13   Plaintiffs cite to RCW 62A.1-201(5) and (20) for the proposition that the lender must first

14   endorse the promissory otherwise it fails to become proper bearer paper. (Dkt. No. 78 at 8.)

15   Neither section speaks to this requirement. The Court has already ruled that Chase was permitted

16   to initiate foreclosure because it held the Note endorsed in blank.  (Dkt. No. 58 at 8.)  Plaintiffs

17   fail to present any valid arguments or allegations why the Court should reconsider its holding.

18        Second, Plaintiffs' allegation that Chase lacked the authority to appoint NWTS as

19   successor trustee fails. Under RCW 61.14.005(2) a beneficiary is "the holder of the instrument of

20   document evidencing the obligations secured by the deed of trust," and the beneficiary may

21   replace the trustee with a successor pursuant to RCW 61.24.010(2). The Court has already found

22   that Chase held the Note, which meant that it had the authority to appoint NWTS as a successor

23   trustee. (Dkt. No. 58 at 2.) Plaintiffs failed to allege that NWTS was not a valid successor trustee

24

1   to the Deed of Trust in violation of the DTA. Thus, the Court GRANTS the motion and

2   DISMISSES these claims against the NWTS Defendants.

3          2.     NWTS May Have Lacked Authority to Start Foreclosure Process

4          Plaintiffs argue that the NWTS Defendants violated the DTA because they lacked a

5   necessary requisite to institute either the 2008 and 2010 non-judicial foreclosures. Plaintiffs have

6   only pleaded sufficient allegations that the 2010 foreclosure may have been improperly

7   commenced.

8          RCW 61.24.030(7)(a) states that "before the notice of trustee's sale is recorded,

9   transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any

10  promissory note." RCW 61.24.030(7)(a). A declaration made by the beneficiary under the

11  penalty of perjury stating that it is the actual holder of the promissory note is sufficient proof.

12  RCW 61.24.030(7)(a).

13         As an initial matter, Plaintiffs inadequately allege that the NWTS Defendants violated the

14  DTA during the 2008 non-judicial foreclosure which was never carried to term. (AC ¶ 6.51.) As

15  Defendants point out, even if NWTS lacked authority to foreclose, it never engaged in any

16  foreclosure activity beyond sending the notice.  Where no sale occurs, there is no DTA violation.

17  See Vawter v. Quality Loan Serv. Corp. of Washington, 707 F. Supp. 2d 1115, 1123 (W.D.

18  Wash. 2010) (finding that in Washington, the DTA does not authorize a cause of action for

19  damages for the wrongful institution of non-judicial foreclosure proceedings where no trustee's

20  sale occurs).  Plaintiffs' DTA claim arising out of the 2008 against the NWTS Defendants is

21  DISMISSED.

22         Plaintiffs have adequately alleged a violation of the DTA arising out of the NWTS

23  Defendants' actions undertaken with regard to the 2010 foreclosure.  Plaintiffs argue NWTS did

24

1    not have sufficient proof that Chase was a beneficiary before initiating foreclosure, which RCW

2    61.24.030(7) requires. (AC ¶ 6.52.) While NWTS presents the Court with an exhibit that seems

3    to show Chase was the note holder as required by the DTA, the Court cannot consider it.  First,

4    the exhibit is not part of the pleadings that can be considered on motion to dismiss. Metzler, 540

5    F.3d at 1061. Defendants will need to file a motion for summary judgment for the Court to

6    consider such materials.  Second, the exhibit has not been properly submitted to the Court

7    because it lacks a declaration or affidavit explaining what it is and attesting to its authenticity.

8    Because the Court cannot consider the exhibit, Plaintiffs' claim is plausible that NWTS violated

9    the DTA by initiating foreclosure proceeding without knowledge of the beneficiary as required

10   by RCW 61.24.030(7).

11          Thus, the Court DENIES in part and GRANTS in part the motion on these claims.

12          3.      Duty of Good Faith

13          Plaintiffs allege the NWTS Defendants breached the duty of good faith under RCW

14   61.24.010(4) by (1) not informing them of the unfair, deceptive, and criminal practices in the

15   foreclosure industry, (2) purporting to be the successor trustee when NWTS was not, and (3) by

16   bringing non-judicial foreclosures without being the proper trustee. (See AC ¶¶ 6.43 and 1.4.)

17   Only the last argument is plausible and survives dismissal.

18          Under the DTA the trustee has a duty of good faith to the borrower, beneficiary, and the

19   grantor. RCW 61.24.010(4). The Court has already found that the duty of good faith extends

20   only to ensuring that there are no obvious or known defects in the documents replacing the

21   trustee. (Dkt. No. 35 at 6.)

22          Plaintiffs' claim that the NWTS Defendants breached their duty of good faith by not

23   having sufficient knowledge of the true beneficiary to commence the foreclosure proceeding

24

1    survives dismissal.  While NWTS attempted to submit documents foreclosing this argument, the

2    Court cannot consider them in ruling on the motion.  Thus, even though it appears Chase

3    properly gave NWTS notice of its status as beneficiary, the Court cannot so hold.  Plaintiffs'

4    claim that NWTS breached its duty of good faith on this issue survives dismissal.

5            Plaintiffs' two other claims that the NWTS Defendants breached their duty of good faith

6    are inadequately pleaded.  Plaintiffs claim that NWTS failed to notify it of the general problems

7    in the foreclosure industry and that this is a breach of the duty of good faith. The complaint only

8    alleges generally that everyone in the mortgage industry was aware of the "unfair, deceptive, and

9    criminal practices" in the foreclosure industry, not that NWTS knew. (AC ¶ 1.4.) This vague and

10   conclusory allegation does not present a claim for breach of the duty of good faith.  Plaintiffs

11   remaining claim for breach of the duty of good faith—that NWTS was not properly appointed a

12   successor trustee—fails. As explained above, Chase had authority to appoint NWTS as a

13   successor trustee given that Chase was the holder of the Note.  See RCW 61.24.010(2). There is

14   no claim to be had on this issue.

15           Thus, the Court DENIES in part and GRANTS in part the motion on these claims.

16   C.     FDCPA

17           Plaintiffs have plausibly alleged NWTS and RCO are debt collectors under § 1692f(6)

18   and violated the FDCPA.

19           The FDCPA makes it illegal for a debt collector to "take or threaten to take any non-

20   judicial action to effect dispossession or disablement of property if -- there is no present right to

21   possession of the property claimed as collateral through an enforceable security interest." 15

22   U.S.C.A. § 1692f(6)(A). Under the FDCPA, a debt collector is defined as "any person who uses

23   any instrumentality of interstate commerce of the mails in any business the principle purpose of

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS- 8

1    which is the collection of any debts, or who regularly collects or attempts to collect, directly or

2    indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692f(6).  The

3    Ninth Circuit has not yet decided whether foreclosure proceedings fall within the FDCPA's

4    ambit. Amador v. Cent. Mortg. Co., C11-414 MJP, 2012 WL 405175, at *2 (W.D. Wash. Feb. 8,

5    2012). District courts, however, generally recognize trustees as debt collectors only to the extent

6    that the claims brought against them are under § 1692f(6). See id. at *3.

7            Plaintiffs plausibly allege NWTS and RCO violated § 1692f(6) by trying to foreclose on

8    a debt when it was unaware if the debt was properly owed to Chase.  Plaintiffs allege that NWTS

9    did not have sufficient knowledge of Chase's status as the beneficiary at the time of foreclosure.

10   Because the Court cannot consider the exhibit Defendants filed showing Chase's attestation to

11   NWTS (as explained above), Plaintiffs have adequately alleged that the Defendants attempted to

12   collected on a debt that may not have been owed to Chase. NWTS and RCO may have violated

13   the FDCPA because they did not yet have confirmation of Chase's right to possess the property,

14   and thus may have violated § 1692f(6)(A). The Court DENIES the motion on this claim.  The

15   Court also rejects Defendants' argument that Plaintiffs waived their FDCPA claim by failing to

16   challenge the foreclosure proceedings before the trustee's sale.  That argument wrongly assumes

17   the Washington DTA preempts federal law.   Defendants provide no authority for such a

18   proposition and the Court rejects it.

19   D.     CPA

20          Plaintiffs allege that the NWTS Defendants violated the CPA by (1) engaging in "robo-

21   signing"; and (2) initiating two non-judicial foreclosure proceedings without knowledge of who

22   was the beneficiary in violation of RCW 61.24.030(7). (AC ¶ 13.3, 13.2). Plaintiffs further allege

23   that RCO engaged in dual tracking.  Plaintiffs only state one plausible claim against NWTS.

24

1    To prevail on a CPA claim, a plaintiff must allege specific facts showing all of the

2    following: (1) an unfair or deceptive practice, (2) occurring in trade or commerce, (3) affecting

3    the public interest, (4) injuring plaintiff in his business or property, and (5) caused by the unfair

4    or deceptive act. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778,

5    791 (1986). Whether a particular act or practice is "unfair or deceptive" is a question of law.

6    Panag v. Farmers Ins. Co. of Washington, 166 Wn.2d 27, 47 (2009).  To satisfy the first element,

7    Plaintiffs must show that the act or practice either has a capacity to deceive a substantial portion

8    of the public or that it constitutes an unfair trade or practice. Hangman Ridge, 105 Wn.2d at 785–

9    86.

10    Plaintiffs plead a plausible claim that NWTS and McElligott engaged in deceptive

11    signing practices, but they do not pled factual allegations supporting their claims that the any

12    other defendants were involved.  Plaintiffs adequately alleged that McElligott falsely signed a

13    document on MERS's behalf without proper authority (aka "robo-signing"), which has the

14    capacity to deceive a substantial portion of the public. McElligott signed the document as "Vice

15    President" of MERS, even though every other document in the record indicates that she is an

16    employee of NWTS. (Dkt. No. 29, Ex. D.) It is possible that she lacked the proper authority to do

17    so. Thus, Plaintiffs plead a plausible CPA claim that McElligott as an employee of NWTS

18    engaged in robo-signing practices. The Court DENIES the motion on this claim as to NWTS and

19    McElligott.  However, Plaintiffs plead only legal conclusions that Defendants Rhea Pre and Jeff

20    Stenman engaged in unfair and deceptive practices in trade or business which injured Plaintiffs,

21    including engaging in and/or participating with regard to 'robo-signing' practices. (AC ¶ 13.3.)

22    These claims are DIMISSED and the motion is GRANTED as pertains to them.

23

24

1    Second, while Plaintiffs make a plausible argument that NWTS initiated foreclosure

2    proceedings without knowledge of the true beneficiary, they do not show that it could deceive a

3    large portion of the public. Under RCW 61.24.030(7), the trustee must first prove "that the

4    beneficiary is the owner of any promissory note or other obligation secured by the deed of

5    trust." A declaration by the beneficiary made under the penalty of perjury stating it is the holder

6    of the promissory note is sufficient proof. RCW 61.24.030(7). This is a requirement particular to

7    each individual foreclosure. Plaintiffs plead no factual allegations that this practice extends

8    beyond this particular instance or that it has a capacity to deceive a large portion of the

9    population. (AC ¶ 13.3.) The Court GRANTS the motion and DISMISSES this CPA claim.

10    Third, Plaintiffs allege that RCO violated the CPA by participating in a "dual tracking"

11    scheme. (Dkt. No. 78 at 19.) The Court has already ruled that "it was at a loss to find any factual

12    allegations showing unfair or deceptive conduct with regards to Plaintiffs' dual tracking claim."

13    (Dkt. No. 58 at 10.) Again, Plaintiffs misguidedly base their claim on the notion that Chase

14    promised the loan modifications would halt foreclosure. Chase clearly indicated in bold that until

15    Plaintiffs made payments towards modification and submitted the loan modification agreement,

16    foreclosure proceedings would continue. (Dkt. No. 43-4 at 13.) Plaintiffs do not allege that they

17    complied with the terms of the letter in the time allotted. (AC ¶ 3.32.16.) Plaintiffs claim against

18    RCO for "dual tracking" when it sent letters on behalf of Chase fails for the same reason, as they

19    did not comply with the terms of RCO's letters.  The Court GRANTS judgment on the pleadings

20    for the CPA claim against RCO for this claim.

21                                        **Conclusion**

22    The Court DENIES in part and GRANTS in part the motion for judgment on the

23    pleadings. Plaintiffs present plausible claims that NWTS violated the DTA, the duty of good

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS- 11

1  faith, the CPA, and the FDCPA. As to RCO, they have only alleged one viable claim under the

2  FDCPA.  They also adequately allege McElligott violated the DTA and the CPA.  However, they

3  have not validly alleged claims against Prea and Stenman.  The motion is granted as to them and

4  those parties DISMISSED.

5      The clerk is ordered to provide copies of this order to all counsel.

6      Dated this 7th day of August, 2012.

7

8

9

           Marsha J. Pechman
10          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS- 12