THE HON. MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRAVIS MICKELSON, et. ux.,

                              Plaintiffs,

vs.

CHASE HOME FINANCE LLC, et. al.,

                              Defendants.

NO.  2:11-cv-01445

CONSOLIDATED MOTIONS:  1.)
MOTION TO VACATE PREVIOUS
ORDERS OF THIS COURT
PURSUANT TO FED. R. CIV. PRO.
54 (B); AND 2.) MOTION TO
RECONSIDER THIS COURT'S
OCTOBER 21 ORDER PURSUANT
TO FED. R. CIV. PRO. 59 (E)

NOTED FOR CONSIDERATION:
August 27, 2012

## I.  REQUESTED RELIEF

The Mickelsons move this Court pursuant to Fed. R. Civ. Pro. 54 (b) to vacate its previous orders dismissing defendants pursuant to the Washington Supreme Court's rulings in Bain v Metro. Mortg. Grp., Inc. (attached as Appendix 1), which was decided on August 16, 2012.

This Court's latest order granting Chicago Title's Motion to Dismiss (Dkt. no. 93) was granted on August 21, 2012 and is the subject of this motion to reconsider.  This order was decided five days after the Supreme Court's decision in Bain and is purportedly based on the federal precedent this Court utilized its earlier rulings.   Bain rejected the federal court

precedent relied upon by this Court for previously dismissing cuases of action related to the purported non-judicial foreclosure of the Mickelsons' home based on a MERS beneficiary under the Washington Deed of Trust Act, RCW Ch. 61.24.  See Bain, pp. 21-22 (rejecting the reasoning of Cervantes v. Countrywide, 656 F.3d 1034 (9th Cir. 2011)), 26-28 (rejecting decisions of this and other federal courts as being applicable to the Deed of Trust Act's definition of "beneficiary" set forth at RCW 61.24.005 (2)).

## II.  ISSUE

Should this Court vacate each of its earlier rulings dismissing the Mickelsons' "sprawling" amended complaint because Bain v. Metro. Mort. Grp., Inc. changed the law to the extent that the Mickelsons' complaint against defendants sets forth causes of action which are now plausible under the Washington Supreme Court's most recent interpretation of Washington's Deed of Trust Act, Ch. RCW 61.24, and the Consumer Protection Act, Ch. 19.86?

## III.  EVIDENCE RELIED UPON

Plaintiffs rely upon their Complaint (dkt. no. 29), the various Motions to Dismiss their Complaint (dkt. no(s). 18, 37, 43, 70, 73, 83), their Responses thereto (dkt. no(s). 31, 55, 78, 81, 87), the Replies thereto (dkt. no(s). 33, 56, 63, 79, 82), the applicable Motions to Reconsider (dkt. no.59), the Responses thereto (dkt. no. 61) , the Motion to Certify this Court's Interlocutory "Waiver" Decision (dkt. no. 69), Response thereto (dkt. no. 77), and this Court's Orders regarding such Motions (dkt. no(s). 35, 58, 60, 66, 75, 85, 86, 88, 93).  The Mickelsons' also rely on the Amicus Brief filed by Homeowners' Attorney with the Supreme Court in Bain, (attached hereto as Appendix 2, and incorporated herein).  This Amicus Brief sets forth the same legal theories as are set forth in the Mickelsons' Complaint and urges that

CONSOLIDATED MOTIONS:  1.) MOTION TO VACATE PREVIOUS ORDERS OF THIS COURT PURSUANT TO FED. R. CIV. PRO. 54 (B); AND 2.) MOTION TO RECONSIDER THIS COURT'S OCTOBER 21 ORDER - 2

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

the Supreme Court not rule in <u>Bain</u> in a manner which would preclude other homeowners

from litigating these same claims as are made in Mickelsens' amended complaint in the

future.

## IV. ARGUMENT

Reconsideration is appropriate if the district court (1) is presented with newly

discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or

(3) if there is an intervening change in controlling law. <u>See e.g.</u> <u>Sch. Dist. No. 1J, Multnomah</u>

<u>County, Or. v. ACandS, Inc</u>., 5 F.3rd 1255, 1262-63 (9th Cir. 1993) (setting forth standard of

review and grounds for reconsideration). <u>All Hawaii Tours, Corp. v. Polynesian Cultural</u>

<u>Center</u>, 116 F.R.D. 645, 648 (D. Hawaii 1987), rev'd on other grounds, 855 F.2d 860 (9th Cir.

1988).

This Court acknowledges in its most recent order that its decision is based on, at least

in part, its earlier rulings in this case dismissing the Mickelsons' CPA complaints as to other

defendants.  <u>See</u> Docket no. 93 at p. 3.  This Court states at page one of its August 21, 2012

Order:

> Plaintiffs one remaining claim against Chicago is that it violated the CPA by
> "contractually, defining, enforcing, or drafting uniform language which defines
> MERS as beneficiary under the Washington Deed of Trust Act as beneficiary
> under the Washington Deed of Trust Act in order to facilitate mass
> foreclosures, when by statute the beneficiary is defined to be the holder of the
> note."

Mickelsons' claims are clearly consistent with the Washington Supreme Court's

holding in <u>Bain</u> that: maintaining MERS, which never holds a promissory note, is a valid

beneficiary to a Washington Deed of Trust is a presumptive deceptive practice under

Washington's Consumer Protection Act.   "The fact that MERS claims to be a beneficiary,

when under a plain reading of the statute it was not, presumptively meets the deception element of a CPA action." <u>Bain</u> at p. 39.  Where, as here, the Supreme Court of a state has made clear that previous federal precedent interpreting the language of a state statute is wrong; the federal court must reconsider its previous interlocutory decisions.  This is because Federal courts are bound to follow the decisions of the highest court of the state.   <u>Huddleston v. Dwyer</u>, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246 (1944).[1]

This Court is bound to follow state court rulings on issues of state law, particularly where (as here) a state court *specifically contradicts an earlier interpretation of state law* by a federal court. <u>Jones-Hamilton v. Beazer Materials & Services</u>, 973 F.2d 688, 696 n. 4 (9th Cir. 1992). The Ninth Circuit is not alone in considering a more recent interpretation of state law by state courts to justify reconsideration of federal circuit and law of the case.   <u>See also</u> <u>Roboserve, Ltd. v. Tom's Foods, Inc.</u>, 940 F.2d 1441, 1451 (11th Cir. 1991); <u>Derflinger v. Ford Motor Co.</u>, 866 F.2d 107, 110 (4th Cir. 1989); <u>Broussard v. Southern Pac. Transp. Co.</u>, 665 F.2d 1387 (5th Cir. 1982); <u>Singletary v. Southeastern Freight Lines, Inc.</u>, 833 F. Supp. 917 (N.D. Ga. 1993) ("a federal court should follow the latest appropriate decision at whatever point in the federal proceedings it comes.").

The Ninth Circuit requires federal courts to reevaluate prior decisions in light of the more recently handed down state decision where a state court has made a subsequent pronouncement of state law. <u>Owen v. United States</u>, 713 F.2d 1461 (9th Cir. 1983).  In that

---

[1] If the highest state court has not addressed the issue, federal courts should ascertain and apply state law as pronounced by intermediate state appellate courts. <u>Fidelity Union Trust Co. v. Field</u>, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), reh. den. 311 U.S. 730, 61 S.Ct. 438, 85 L.Ed. 475 and reh. den. 314 U.S. 709, 62 S.Ct. 118, 86 L.Ed. 565 (1941). Federal courts should view an intermediate state court's opinion as "indicia of the leanings of the state's highest court," and follow those "leanings," unless the federal court is convinced that the state supreme court would reach a different conclusion. <u>Daigle v. Shell Oil Co.</u>, 972 F.2d 1527 (10th Cir. 1992). <u>See also</u> <u>West v. American Tel. & Tel. Co.</u>, 311 U.S. 223, 236-37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

CONSOLIDATED MOTIONS:  1.) MOTION TO
VACATE PREVIOUS ORDERS OF THIS COURT
PURSUANT TO FED. R. CIV. PRO. 54 (B); AND 2.)
MOTION TO RECONSIDER THIS COURT'S OCTOBER
21 ORDER - 4

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

case, a Ninth Circuit decision interpreting state law was later contradicted by a state court of appeals decision. In evaluating the appropriate course of action, the Court noted that,

> [t]hese recent decisions by the California courts of appeal that have appeared subsequent to our Commercial Union [Insurance Co. v. Ford Motor Co., 640 F.2d 210 (9th Cir. 1981)] decision requires us to reconsider the proper interpretation of § 877. Our interpretation in Commercial Union was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect.

Id. at 1464. In this circuit, if the highest court of the state has not ruled on an issue, federal courts are directed to follow the intermediate appellate courts of the state unless convinced that the highest court would decide differently. Id. Similarly, other circuits have found that "[w]hen a conflict exists between holdings of the . . . Circuit and more recent determinations of state appellate courts, the interpretation of the Circuit is not binding on federal district courts." In re New York Asbestos Litig., 847 F. Supp. 1086, 1111 (S.D.N.Y. 1994). In that situation, the federal court is directed to follow the outcome it believes the highest court of the state would follow. In re E. & S. Dists. Asbestos Litig., 772 F. Supp. 1380, 1391 (E.D.N Y 1991). In this case we now know the Washington Supreme Court has interpreted Washington law differently than was espoused by federal courts generally and this Court specifically. See Bain at 21-2, 28.

The Washington Supreme Court has adopted an interpretation of the term "beneficiary" under RCW 61.24.005 (2) consistent with that proposed in Mickelsons' Complaint and held that use of MERS as a means of non-judicially foreclosing upon a home based on a four party deed of trust constitutes a violation of the DTA, Ch. RCW 21.64, and a presumptive violation of Washington's Consumer Protection Act, RCW Ch. 19.86.

CONSOLIDATED MOTIONS:  1.) MOTION TO
VACATE PREVIOUS ORDERS OF THIS COURT
PURSUANT TO FED. R. CIV. PRO. 54 (B); AND 2.)
MOTION TO RECONSIDER THIS COURT'S OCTOBER
21 ORDER - 5

S T A F N E   L A W   F I R M

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

The Mickelsons' Complaint is a matter of record.  It alleges, among other things, that the Deed of Trust was invalid because MERS did not meet the statutory definition of beneficiary.  <u>Bain</u> confirms the Mickelson's interpretation of the Deed of Trust Act in their complaint.

> Since 1998, the deed of trust act has defined a "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." Laws of 1998, ch. 295, § 1(2), codified as RCW 61.24.005(2).

<u>Bain</u> at p. 14.  Although <u>Bain</u> did not involve the exclusionary language of the beneficiary definition, the Supreme Court made clear that in order to be a beneficiary under the DTA an entity would have to comply with this statutory definition.  Thus, under <u>Bain</u> it is necessary to show both who holds the note and that this entity does not hold the note under those circumstances the legislature has excluded.  The Court indicated mere disclosure of the servicer is not enough.  <u>Bain</u> at p. 13, note 7.  Similarly, mere disclosure of a nominal note holder is not enough.  The note holder must also show that it has not been excluded from holding the note.  Further, it must prove that it meets the definition of Note Holder set forth in the promissory note.  This Court, like all the federal courts before it, simply glossed over the controlling state statute as if it were deciding a matter of common federal law.  This Court has no authority to refuse to interpret the statute the Mickelsons had properly pled.

As there was no valid Deed of Trust since MERS, which never held the note, was defined as the "beneficiary", there was no valid security agreement in force, which would have allowed any non-judicial foreclosure of the Mickelsons' home.  Since the non-judicial foreclosure of Mickelsons' home was based on an illegal Deed of Trust under <u>Bain</u> there could not have been a valid non-judicial foreclosure under RCW Ch. 61.24.  <u>Cf</u>.  <u>Albice v.</u>

CONSOLIDATED MOTIONS:  1.) MOTION TO
VACATE PREVIOUS ORDERS OF THIS COURT
PURSUANT TO FED. R. CIV. PRO. 54 (B); AND 2.)
MOTION TO RECONSIDER THIS COURT'S OCTOBER
21 ORDER - 6

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

*Premier Mortgage Services of Washington,* Inc, 276 P.3d 1277 (2012).  Because the Deed of Trust Act did not apply to a foreclosure based on an invalid deed of trust, that statute cannot require a waiver of the Mickelsons' claims against defendants as this Court has found. Moreover, even if the waiver section did apply, plaintiffs could certainly present a fact issue with regard to prejudice as the Mickelsons have alleged all defendants have acted as a part of a criminal enterprise so as to avoid having to do a judicial foreclosure; as was required under the clear language of Washington law.

With regard to the MERS model, the Washington Supreme Court stated:

MERS, now a Delaware corporation, was established in the mid 1990s by a consortium of public and private entities that included the Mortgage Bankers Association of America, the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), the Government National Mortgage Association (Ginnie Mae), the American Bankers Association, and the American Land Title Association, among many others.  See In re MERSCORP, Inc. v. Romaine, 8 N.Y.3d 90, 96 n.2, 861 N.E.2d 81, 828 N.Y.S.2d 266 (2006); Phyllis K. Slesinger & Daniel McLaughlin, Mortgage Electronic Registration System, 31 Idaho L. Rev. 805, 807 (1995); Christopher L. Peterson, Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System, 78 U. Cin. L. Rev. 1359, 1361 (2010). It established "a central, electronic registry for tracking mortgage rights . . . [where p]arties will be able to access the central registry (on a need to know basis)." Slesinger & McLaughlin, supra, at 806. This was intended to reduce the costs, increase the efficiency, and facilitate the securitization of mortgages and thus increase liquidity. Peterson, supra, at 1361. …

MERS "tracks transfers of servicing rights and beneficial ownership interests in mortgage loans by using a permanent 18-digit number called the Mortgage Identification Number." Resp. Br. of MERS at 13 (Bain) (footnote omitted).  It facilitates secondary markets in mortgage debt and servicing rights,without the traditional costs of recording transactions with the local county records offices. Slesinger & McLaughlin, supra, at 808; In re Agard, 444 B.R. 231, 247 (Bankr. E.D.N.Y. 2011).

Many loans have been pooled into securitization trusts where they, hopefully, produce income for investors.  See, e.g., Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co., 277 F.R.D. 97, 102-03 (S.D.N.Y. 2011)

CONSOLIDATED MOTIONS:  1.) MOTION TO VACATE PREVIOUS ORDERS OF THIS COURT PURSUANT TO FED. R. CIV. PRO. 54 (B); AND 2.) MOTION TO RECONSIDER THIS COURT'S OCTOBER 21 ORDER - 7

STAFNE LAW FIRM
239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

(discussing process of pooling mortgages into asset backed securities). MERS has helped overcome what had come to be seen as a drawback of the traditional mortgage financing model: lack of liquidity. MERS has facilitated securitization of mortgages bringing more money into the home mortgage market. With the assistance of MERS, large numbers of mortgages may be pooled together as a single asset to serve as security for creative financial instruments tailored to different investors. Some investors may buy the right to interest payments only, others principal only; different investors may want to buy interest in the pool for different durations. Mortg. Elec. Registration Sys., Inc. v. Azize, 965 So. 2d 151, 154 n.3 (Fla. Dist. Ct. App. 2007); Dustin A. Zacks, Standing in Our Own Sunshine: Reconsidering Standing, Transparency, and Accuracy in Foreclosures, 29 Quinnipiac L. Rev. 551, 570-71 (2011); ChanaJoffe-Walt & David Kestenbaum, Before Toxie Was Toxic, Nat'l Pub. Radio (Sept.17, 2010, 12:00 A.M.) 6 (discussing formation of mortgage backed securities). In response to the changes in the industries, some states have explicitly authorized lenders' nominees to act on lenders' behalf. See, e.g., Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 491 (Minn. 2009) (noting Minn. Stat. § 507.413 is "frequently called 'the MERS statute'"). As of now, our state has not.

As MERS itself acknowledges, its system changes "a traditional three party deed of trust [into] a four party deed of trust, wherein MERS would act as the contractually agreed upon beneficiary for the lender and its successors and assigns." MERS Resp. Br. at 20 (Bain). As recently as 2004, learned commentators William Stoebuck and John Weaver could confidently write that "[a] general axiom of mortgage law is that obligation and mortgage cannot be split, meaning that the person who can foreclose the mortgage must be the one to whom the obligation is due." 18 Stoebuck & Weaver, supra, § 18.18, at 334. MERS challenges that general axiom. Since then, as the New York bankruptcy court observed recently:

> In the most common residential lending scenario, there are two parties to a real property mortgage -- a mortgagee, i.e., a lender, and a mortgagor, i.e., a borrower. With some nuances and allowances for the needs of modern finance this model has been followed for hundreds of years. The MERS business plan, as envisioned and implemented by lenders and others involved in what has become known as the mortgage finance industry, is based in large part on amending this traditional model and introducing a third party into the equation. MERS is, in fact, neither a borrower nor a lender, but rather purports to be both "mortgagee of record" and a "nominee" for the mortgagee. MERS was created to alleviate problems created by, what was determined by the financial community to be, slow and burdensome recording processes adopted by virtually every

state and locality.  In effect the MERS system was designed to circumvent these procedures. MERS, as envisioned by its originators, operates as a replacement for our traditional system of public recordation of mortgages.
<u>Agard</u>, 444 B.R. at 247.

Critics of the MERS system point out that after bundling many loans together, it is difficult, if not impossible, to identify the current holder of any particular loan, or to negotiate with that holder.  While not before us, we note that this is the nub of this and similar litigation and has caused great concern about possible errors in foreclosures, misrepresentation, and fraud.  Under the MERS system, questions of authority and accountability arise, and determining who has authority to negotiate loan modifications and who is accountable for misrepresentation and fraud becomes extraordinarily difficult. The MERS system may be inconsistent with our second objective when interpreting the deed of trust act: that "the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure." <u>Cox</u>, 103 Wn.2d at 387 (citing Ostrander, 6 Wn. App. 28).

The question, to some extent, is whether MERS and its associated business partners and institutions can both replace the existing recording system established by Washington statutes and still take advantage of legal procedures established in those same statutes.  With this background in mind, we turn to the certified questions.

<u>Bain</u>, at pp. 10-14.

The Supreme Court final's sentence above acknowledges that liability for securitization of deeds of trust through use of an illegal four party deed of trust remains an open question of law in Washington depending on the facts.  This Court held that Washington law allows securitization based on a four party deed of trust.  The Washington Supreme Court has made clear this is not the case.  The decision as to whether securitization violates Washington law is one of fact, which must be resolved based upon a statutory interpretation of the term "beneficiary," RCW 21.64.005 (2), and whether the securitization in question complies with the purposes of the DTA.  <u>Bain</u> at p. 9

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

In summary, pleading that all the defendants committed cognizable causes of action by participating together to bring a non-judicial foreclosure where none was warranted under Washington law sets forth plausible theories of liability, which will turn on the facts of this case as set forth in the Mickelsons' Complaint.  This Court previously dismissed these causes of action based on federal precedent, which is no longer tenable.  Therefore, under FRCP 54 (b) this Court should vacate its previous orders granting all defendants' Motions to Dismiss. Further, under FRCP 59 (e) this Court should also reconsider its most recent motion to dismiss, which is based on the same federal precedent, which the Washington Supreme Court has discredited with regard to Washington's Deed of Trust Act.

Rather than proceed to trial against Northwest Trustee Services and RCO based on the presumption of a valid non-judicial foreclosure, the interests of judicial economy require that the previous interlocutory judgments be vacated and the trial date reset so that the correct law can be applied to the Mickelsons' complaint.

## V.   CONCLUSION

The Mickelsons respectfully request this Court vacate its orders granting defendants' motions to dismiss so as to comply with the holdings set forth in Bain v. Metro. Mortg. Grp., Inc. (attached as Appendix 1).

DATED this 27th day of August, 2012 at Arlington, WA.

Respectfully Submitted,


_____/S/ Scott E. Stafne_____
Scott E. Stafne, WSBA #6964
Stafne Law Firm
Attorney for Plaintiffs

1

CERTIFICATE OF ELECTRONIC SERVICE

2

3        I hereby certify that on August 27, 2012, I electronically filed the foregoing with the

4   Clerk of the Court using the CM/ECF system which will send notification of such filing to the

5   following:

6   Fred B. Burnside:  fredburnside@dwt.com

7   Rebecca J. Francis:  RebeccaFrancis@dwt.com

8   Heidi E. Buck:  hbuck@rcolegal.com

9   Andrew Gordon Yates:  yatesa@lanepowell.com

10  John S. Devlin, III:  devlinj@lanepowell.com

11  Erin McDougal Stines:  erin.stines@fnf.com

12       DATED this 27th day of August, 2012 at Arlington, WA.

13                                                          /s/ Chessa R. Tachiki
                                                          Chessa Tachiki, Paralegal
14                                                          Stafne Law Firm

15

16

17

18

19

20

21

22

23

24

25

26

CONSOLIDATED MOTIONS:  1.) MOTION TO
VACATE PREVIOUS ORDERS OF THIS COURT
PURSUANT TO FED. R. CIV. PRO. 54 (B); AND 2.)
MOTION TO RECONSIDER THIS COURT'S OCTOBER
21 ORDER - 11