The Honorable Judge Marsha J. Pechman

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

8
9

TRAVIS MICKELSON, et. ux.

                Plaintiffs,

vs.

CHASE HOME FINANCE LLC, et. al.

                Defendants.

NO.  2:11-cv-01445

PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

NOTED ON MOTION CALENDAR: October 12, 2012

ORAL ARGUMENT REQUESTED

## I.   RELIEF REQUESTED

COMES NOW the Plaintiffs Travis and Danielle Mickelson ("the Mickelsons"), by and through their attorneys, the Stafne Law Firm, and move for partial summary judgment as a matter of law that Defendant Northwest Trustee Services ("NWTS") violated: (1) its duty of good faith to the Mickelsons, and (2) Washington's Deed of Trust Act ("WDTA"). Ch. 61.24 RCW.  If partial summary judgment is not given, the Mickelsons move in the alternative for a determination of those material facts not in substantial controversy, and for an order specifying those facts.

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

## II.    STATEMENT OF FACTS

Plaintiffs Travis and Danielle Mickelson filed suit against several defendants alleging various improper and illegal acts related to the foreclosure and trustee's sale of their home in Island County.  The Mickelsons set forth specific facts in their amended complaint relating to their attempts to contact the actual beneficiary under the DTA in appendices 1 and 2.  These appendices, as authenticated by the Mickelsons' declarations, are hereby incorporated herein to show the impact the MERS deed of trust instrument and MERS foreclosure practices on DTA policies.

Additionally, the Mickelsons clarify the following facts:

Plaintiffs obtained a loan from MHL Funding Corp on November 22, 2005, to purchase a home in Island County. (Dkt. 29-1, at ex. A (p. 2)).  Plaintiffs signed a promissory note, an "Adjustable Rate Note" in the sum of $403,500.00, which identified the "Lender" as MHL Funding Corp., with monthly payments to be made at MorgageIt, Inc., at an address in Phoenix, AZ. (Dkt. 29-1, at Ex. A (p. 5).  A deed of trust secured the loan. (Dkt. 29-1, at ex. B (p. 7-21)).  The Deed of Trust, recorded by the Island County Auditor on November 28, 2005, directed it to be returned to MortgageIt, at an address in Middleton, WI (Dkt. 29-1, at ex. B (p. 7)).

The Deed of Trust created a four-party "Security Instrument," which identified the parties as: (i) "Trustee" Chicago Title; (ii) "Borrower" Travis and Danielle Mickelson; (iii) "Lender" MHL Funding Corp.; and (iv) MERS "a separate corporation acting solely as a nominee for Lender and Lender's successors and assigns," and as the "beneficiary under the Security Instrument." (Dkt. No. 29-1 at ex. B (p. 7, 8.).  At this time, MortgageIt, MHL Funding Corporation, and Chicago Title were all MERS members. (Defendant MERS's Response to Plaintiffs' Interrogatories No. 3, 4, attached as Ex. A Fallgatter Decl.).  MERS never physically possessed the original Note or original Deed of Trust.  (Defendant MERS's

PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT- 2

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

1    Responses and Objections to Plaintiffs' Interrogatory No. 5, attached as Ex. A Fallgatter

2    Decl.).

3          The MERS database indicates MERS was acting as a nominee for MortgageIT, Inc.,

4    which was not the original lender.  See Paatalo Decl.  However, MortgageIT was the entity

5    which the Mickelsons were directed to pay by the terms of their note.

6          On or about April 4, 2006, the Mickelsons received a letter from MortgageIt advising

7    them that effective April 17, 2006, GMAC Mortgage Corporation ("GMAC") would be their

8    new loan servicer and directing future payments to GMAC's address in Waterloo, IA.  (Decl.

9    D. Mickelson, at ¶ 3, see, Ex. A).

10         Federal Home Loan Mortgage Corp. ("Freddie Mac "), contends it "acquired the

11   beneficial rights to the [Mickelsons'] loan" on April 28, 2006.  (Defendant Freddie Mac's

12   Response to Plaintiffs' Interrogatory No. 4, attached as Ex. B to Decl. Fallgatter).  As will be

13   seen, this assertion contradicts the trustee's claim that Chase Home Finance is the beneficiary

14   and Chase Home Finance's claim that it is the holder of the instrument entitled to enforce the

15   note under RCW 62A.3-301.  See infra.  See also Paatalo Decl.

16         On or about June 1, 2006, the Mickelsons received a letter from GMAC, informing them

17   the **servicing rights** were sold to JP Morgan Chase Bank, effective June 16, 2006.  (Decl. D.

18   Mickelson, at ¶ 4, see, Ex. B).  On or about June 5, 2006, the Mickelsons received a similar

19   notice from Chase Home Finance LLC that it had assumed responsibility for servicing the

20   loan and performing day to day servicing functions for JPMorgan Chase Bank, N.A. (Id., at ¶

21   5, see, Ex. C).

22         In June or July of 2008, Plaintiffs fell behind on their mortgage payments.  (Decl. D.

23   Mickelson, at ¶ 6.).  On or about August 27, 2008 Chase Home Finance, [Id., at ¶ 7, see, Ex.

24   D], Routh Crabtree Olsen [Id., at ¶ 8, see, Ex. E], and NWTS [Id., at ¶ 10, see, Ex. F], began

25   threatening the Mickelsons with foreclosure. (See also, Defendant NWTS' Response to

26   Plaintiffs' Interrogatory No. 11, attached as Ex. C Decl. Fallgatter).

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

On October 28, 2005, Chase Home Finance LLC, recorded with the Island County Auditor, a Limited Power of Attorney, to be returned to Northwest Trustee Services, Inc., individually naming Stephen D. Routh, Jeff Stenman, and Vonnie McElligott (among others) as attorneys-in-fact. (Amended Complaint, Ex. C, Limited Power of Attorney Dkt. 29-1, at p. 24, 25). The powers granted to them included acts of execution, acknowledgment, recording and delivery of Notices of Default, Substitutions of Trustee, and Appointments of Trustee. (Id., Limited Power of Attorney Dkt. 29-1, at p. 24, 25).

Stephen Routh is both an owner of Northwest Trustee Services, Inc. and a shareholder in Routh Crabtree Olsen, P.S. (Heidi Buck 2012 letter, at p. 3, attached as Ex. D Decl. Fallgatter). Routh Crabtree Olsen represented Chase Home Finance as "an attorney/trustee" against the Mickelsons with regard to this non-judicial foreclosure. (Decl. D. Mickelson, at ¶¶ 7, 8, see Ex. D, E).

Jeff Stenman's title is Senior Foreclosure Manager and Vice President for Northwest Trustee Services. (Defendant NWTS' Responses to Plaintiffs' Interrogatory Nos. 1, 14, attached as Ex. C Decl. Fallgatter). Vonnie McElligott's title is Foreclosure Team Manager and Assistant Vice President for NWTS. (Id.)

Without ever physically possessing the original Note or Deed of Trust, on or about, August 25, 2008, MERS (by and through its Vice President, NWTS Employee: Vonnie McElligott), assigned its purported interest as "Beneficiary" under the Deed of Trust to Chase Home Finance LLC, "[f]or Value Received," "[t]ogether with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust." (Defendant MERS's Responses to Plaintiffs' Interrogatory No. 8, attached as Ex. A Decl. Fallgatter; Amended Compl., Ex. D, Assignment of Deed of Trust, Dkt; 29-1, at p. 27).

On or about September 18, 2008, Chase Home Finance LLC, (through its Attorney-in-Fact, NWTS' employee Jeff Stenman), representing itself as the "present beneficiary" under

PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT- 4

STAFNE LAW FIRM
239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

the Mickelsons' Deed of Trust, appointed Northwest Trustee Services, Inc., as successor trustee to replace Chicago Title.  But Freddie Mac's responses to interrogatories dispute that MERS could have simply assigned a new beneficiary, as it claims to have acquired the beneficial rights in the loan shortly after it was made.  This version of the facts is consistent with Paatalo's forensic analysis.

On or about August 25, 2008, "Chase Home Finance LLC by Northwest Trustee Services, Inc., its duly authorized agent" sent an unsigned Notice of Default, dated 8/25/08, to the Mickelsons. (Decl. D. Mickelson, Ex. E). This notice identifies Chase Home Finance LLC as "the creditor to whom the debt is owed."  (Id.).  The notice directs that further information may be obtained by calling Northwest Trustee Services, at 425-586-1900, or by addressing written requests to Northwest Trustee Services, Inc., P.O. Box 997, Bellevue, WA 98009-0997." (Id.).  Vonnie McElligott is identified as the contact person associated with the given phone number at NWTS. (Id.).

On or about September 25, 2008, NWTS sent an unsigned Notice of Foreclosure, "Pursuant to Revised Code of Washington 61.24, et seq.," to the Mickelsons. (Decl. D. Mickelson, ¶ 10, Ex. F). The notice is dated effective 09/25/08, and Vonnie McElligott is identified as the contact person for NWTS. (Id.).  The notice states, "The attached Notice of Trustee's Sale is a consequence of default(s) in the obligation to the Beneficiary of your Deed of Trust." However, the identity of the beneficiary is not disclosed. Id.

On or about September 25, 2008, NWTS, by Vonnie McElligott, as Authorized Signature, sent a Notice of Trustee's Sale "Pursuant to Revised Code of Washington 61.24, et seq.," to the Mickelsons.  (Decl. D. Mickelson, ¶ 11, Ex. G). Vonnie McElligott's signature follows an effective date of 9/25/08, which was notarized one-day prior, on 9/24/08.  The notice identifies the "Grantors" as Northwest Trustee Services, Inc., Chase Home Finance LLC" and the "Grantee" as Travis Mickelson and Danielle H. Mickelson, husband and wife."

PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT- 5

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

1   (Id.).  On its face this language suggests that NWTS is claiming to have an interest in the

2   property as a grantor.

3       The notice sets the sale date as December 26, 2008 of property:

4

5       "which is subject to that certain Deed of Trust dated 11/22/05, recorded on
        11- 22-05, […] from [Mickelsons] as Grantor, to Chicago Title as Trustee,
6       to secure an obligation 'Obligation' in favor of Mortgage Electronic
        Registration Systems, Inc. solely as nominee for Lender and Lender's
7       successors and assigns, as Beneficiary, the beneficial interest in which was
        assigned by Mortgage Electronic Registration Systems, Inc. 'MERS' to
8       Chase Home Finance LLC, under an Assignment/Successive Assignments
        recorded under Auditor's File No. 423910."
9

10      On or about August 17, 2010 a beneficiary declaration was executed by Susan Massie,

11  who claimed to be a Vice-President of Chase Home Finance, LLC.  (Attached as Ex. F Decl.

12  Fallgatter).  She states:

13

14      Chase Home Finance LLC is the actual owner of the promissory note or
        other obligation evidencing the above referenced loan *or has the requisite*
15      *authority under RCW 62A.3-301 to enforce such obligations.*  (Id.)
        (Emphasis Supplied).

16

17      On or about September 6, 2010, another unsigned Notice of Foreclosure, "Pursuant to

18  Revised Code of Washington 61.24, et seq.," is sent to the Mickelsons, dated effective

19  09/06/10, from NWTS with Vonnie McElligott identified as the contact person. (Decl. D.

20  Mickelson, ¶ 14, Ex. H).

21      On or about September 6, 2010, another Notice of Trustee's Sale "Pursuant to Revised

22  Code of Washington 61.24, et seq.," is sent to the Mickelsons from NWTS.  (Decl. D.

23  Mickelson, ¶ 15, Ex. I). Again, the notice is signed, By Vonnie McElligott, as Authorized

24  Signature.  Vonnie McElligott's signature follows an effective date of 9/06/10, which was

25  notarized three-days prior, on 9/03/10. (Id.)

26

PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT- 6

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

On March 14, 2012, in a letter from Heidi Buck, Routh Crabtree Olsen, attorney for Defendant Northwest Trustee Services, Inc., amended and supplemented its non-response to Plaintiffs' Interrogatory requesting information about the trustee's sale, stating:

> "NWTS amends and supplements its answer to state the following: [...].
> As to subpart (b) and (c), the accepted bid amount at the trustee's sale by Federal Home Loan Mortgage Corporation was $325,297.00.   As to subpart (d), the bid tendered by Federal Home Loan Mortgage Corporation was the only bid." (Heidi Buck 2012 letter, at p. 2, attached as Ex. D Decl. Fallgatter).

When it was pointed out to NWTS that it had maintained Chase Home Finance was the beneficiary, and therefore Freddie Mac could not make a credit bid, NWTS filed a second amended discovery response. This response stated:

> As to subpart (b), NWTS objects to subpart (b) on the basis that it is vague, ambiguous, and NWTS is unable to ascertain what information is being requested.
> As to subpart (c), Freddie Mac paid no fees or costs to NWTS.
>
> As to subpart (d), NWTS received only 1 bid.  Chase Home Finance LLC submitted the high bid at sale.  By direction from Chase Home Finance LLC and course of dealing, NWTS is directed to and did issue the Trustee's Deed to the benefit of Federal Home Loan Mortgage Corporation.  (Id.) (Answer to Interrogatory No. 7).

(Defendant NWTS' Second Response to Plaintiffs' Interrogatory No. 11, attached as Ex. G Decl. Fallgatter).

NWTS "contends that Chase Home Finance LLC was the beneficiary at the times of the trustee's sale by virtue of its status as note holder by Federal Home Loan Mortgage Corporation."   (Heidi Buck 2012 letter, at p. 2, Interrog., 6, attached as Ex. D Decl. Fallgatter).  But plaintiffs do not know what this means.  Who owned the note?

Throughout this litigation NWTS has taken the position the Mickelsons should not care who holds the note.  All that is necessary for borrowers to know under the MERS foreclosure

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

1    system is how much they need to pay the servicer.  See, e.g., (NWTS' Response to Plaintiffs'

2    Interrogatory No. 3, Ex. E Decl. Fallgatter).

3        *Procedural Facts:*  Defendant NWTS previously filed a motion for a judgment on the

4    pleadings. (Dkt. # 70).  This Court ruled on this motion in an Order (Dkt. # 88) which

5    suggested that had the motion been brought as a summary judgment the motion would likely

6    have been granted. Id., p. 7:2-10.  Defendant NWTS filed a motion to reconsider the Court's

7    rulings and an alternative motion to extend the time for filing dispositive motions. (Dkt. # 90).

8        The Mickelsons joined NWTS in filing a stipulated motion asking this Court to allow the

9    filing of additional dispositive motions so as determine whether a trial before the Court would

10   be necessary. (Dkt. # 91)

11           On August 16, 2012 (while these motions were pending in this Court) the

12   Washington Supreme Court Supreme Court decided Bain. See Bain v. Metro. Mortg. Grp.,

13   Inc., 2012 Wash. LEXIS 578 (2012).  The Mickelsons contend Bain changes the meaning of

14   RCW Ch. 61.24.  See Hale v. Wellpinit, 165 Wash.2d 494, 506, 198 P.3d 1021 (2009) (It is a

15   fundamental rule of statutory construction that once a statute has been construed by the

16   highest court of the state, that construction operates as if it were originally written into it).

17   This Court must follow the Washington Supreme Court's construction of Washington

18   statutes, even if a judicial decision changes the construction of a statute while a case is

19   pending.  See authorities cited at pages 4-5 of Mickelsons' consolidated motion to reconsider

20   and vacate (Dkt. #94).

21   **III.  STATEMENT OF ISSUES**

22   **A.  Issues under NWTS' duty of good faith towards the Mickelsons:**

23           1.  Whether NWTS violated its duty of good faith toward the Mickelsons by bringing a

24   non-judicial foreclosure where RCW Ch. 61.24 did not afford such a remedy? See also Issues

25   B1 and B2 below.

26

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

2.    Whether NWTS violated its duty of good faith by violating Deed of Trust Act provisions and policies?

**B.   Issues under the WDTA:**

1.    Whether a MERS four-party Deed of Trust instrument can be a basis for a non-judicial foreclosure under Washington's Deed of Trust Act?

2.    Whether MERS system for securitizing mortgages is compatible with Washington's Deed of Trust Act?

3.    Whether a Deed of Trust which has been voluntarily separated from its promissory note under the MERS system by the owner of the promissory note can be enforced by a trustee pursuant to Washington's Deed of Trust Act?

**IV.  EVIDENCE RELIED UPON:**

The Mickelsons rely on the following evidence in support of their motion: The declaration of Danielle Mickelson and exhibits attached thereto; the declaration of Travis Mickelson and the exhibits attached thereto; the declaration of Jocelynne R. Fallgatter and exhibits attached thereto; the declaration of William J. Paatalo and the exhibits attached thereto; the Deed of Trust (dkt.# 29-1 ex B); Notice of Foreclosure, including the copy of the promissory note attached thereto (dkt. # 29-1 ex. A and F); the pleadings on file, and the responses and amended responses to discovery by defendants.

**V.   ARGUMENT**

A.    **Standard of Review:**  This motion is made pursuant to Fed. R. Civ. P. 56(a). Partial summary judgment may be granted on the issue of liability, reserving for trial the issue of damages. Citibank (South Dakota) N.A. v. F.D.I.C., 857 F. Supp. 976 (D.D.C. 1994); see also, CR 56 (c) ("summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages").  Summary judgment is appropriately granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Where a moving party bears the burden of production at trial, it must make "a prima facie showing that it is entitled to summary judgment[,]" by supporting "its motion with credible evidence - using any of the materials specified in Rule 56(c) — that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 321, 106 S. Ct. 2548 (1986). "Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial." Id.

In this case, the Mickelsons contend that the trustee has the burden of proof as to showing that it foreclosed non-judicially on behalf of an entity which met the statutory definition of beneficiary. See RCW 61.24.005 (2); RCW 61.24.030 (7); 61.24.040 (2).

**B.    The Trustee violated the duties it owed to the Mickelsons.**

*i.    Whether NWTS violated the DTA by bringing and concluding a non-judicial foreclosure under the circumstances of this case?* The Michelson's signed their deed of trust in 2005. This was prior to the legislature's amendment changing the trustee's fiduciary duty to homeowners to being simply a duty of good faith. See Bain, at *9, note 4. Regardless of which standard is used[1], the Mickelson's contend that NWTS violated the duties owed the

---

[1] The fiduciary standard is most famously applied against a trustee in Cox v Helenius, 103 Wash.2d 383, 693 P.2d 683 (1985).

Washington courts do not require a trustee to make sure that a grantor is protecting his or her own interest. However, a trustee of a deed of trust is a fiduciary for both the mortgagee and mortgagor and must act impartially between them. G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.21 (1979). The trustee is bound by his office to present the sale under every possible advantage to the debtor as well as to the creditor. He is bound to use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and creditor alike.

The "good faith" standard has been applied by Judge Laznik in Thepvongsa v. Reg'l Tr. Servs. Corp., 2011 U.S. Dist. LEXIS 7853 (W.D. Wash. 2011). "The DTA required the trustee and successor trustee to "act impartially between the borrower, grantor, and beneficiary." RCW 61.24.010(4) (effective June 12, 2008, amended July 26, 2009 to provide that the trustee "has a duty of good faith to the borrower, beneficiary, and grantor)." The Court concluded this duty could be violated by the trustee failing to follow the requirements imposed by the DTA.

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

1   Mickelsons by bringing a non-judicial foreclosure under the MERS system.  See infra, section

2   C.  This is because the MERS deed of trust instrument, as well as the MERS system

3   generally, violate the Trustee's duty to the Mickelsons to comply with the provisions and

4   policies of the WDTA.  Id.[2]  Thepvongsa v. Reg'l Tr. Servs. Corp., 2011 U.S. Dist. LEXIS

5   7853 (W.D. Wash. 2011).

6          ii.   Whether the trustee violated the duties it owed to the Mickelsons under the DTA?

7          Here NWTS violated their duty of good faith toward the Mickelsons by violating the

8   following provisions of the DTA:

9          RCW 61.24.020.  It is undisputed that NWTS employees acted as an agent/vice

10  president for MERS, one purported beneficiary.  Further, NWTS employees acted as the

11  agent/Vice President for Chase Home Financial, which was assigned MERS' beneficial

12  interest (it had none), to appoint itself as trustee to bring a non-judicial foreclosure.  Indeed, it

13  appears the Mickelson's non-judicial foreclosure resulted from NWTS' interest in bringing a

14  non-judicial foreclosure and ability to act as officers of entities who NWTS claimed to be

15  beneficiaries under the DTA.

16         RCW 61.24.020 provides in pertinent part:  "No person, corporation or association may

17  be both trustee and beneficiary under the same deed of trust ...".  NWTS violated this basic

18  prohibition by knowingly making its employees officers of purported beneficiaries for

19  purposes of bringing MERS' non-judicial foreclosures.

---

[2] It is also the Mickelsons' position that the trustee's attempt to non-judicicly foreclose a MERS four-party deed of trust pursuant to the MERS system resulted in a void non-judicial foreclosure.  See Albice v. Premier Mortgage Services of Washington, Inc, 276 P.3d 1277 (2012). (Trustee had no authority to foreclose non-judicially after statute's 120 day time period lapsed.)  Here, the Trustee had no authority bring a non-judicial foreclosure to foreclose on an invalid deed of trust under circumstances where the true note holders, as defined in the promissory note, were never disclosed to the Mickelsons.

STAFNE LAW FIRM

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

RCW 61.24.030(7). NWTS started the non-judicial foreclosure of Mickelsons' home back in 2008, long before Chase Home Finance declared in August 2010 that it was the holder of the note *or* had authority to enforce the note under RCW 62A.3-301, which provides:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Chase's self-serving conclusory declaration that it is "entitled to enforce the instrument" does not meet the requirements of RCW 61.24.030(7), which states in relevant part:

> (7)(a) That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the ***owner of any promissory note or other obligation secured by the deed of trust***. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection. (Emphasis Supplied).

This provision does not allow Chase Home Financial to simply state, without any authentication, that it *may be* the actual holder of the note *or* in the declarant's opinion Chase Home Finance can enforce the note under RCW 61.24.030 (7). Pavino v. Bank of Am., N.A., 2011 U.S. Dist. LEXIS 22118, 10-11 (W.D. Wash. Mar. 4, 2011). Cf. Aurora Loan Services, LLC v Louis, 2012 Ohio 384; 2012 Ohio, App. Lexis 334 (2012) (Person seeking judicial foreclosure must prove it has rights to enforce a note.)

Since the declaration provided does not clearly state Chase is the actual holder of the note it does not satisfy the second sentence of RCW 61.24.030 (7). Id. This means that NWTS must have proof that Chase Home Financial ***owns*** the note. NWTS cannot prove Chase was the note owner as is required by the first sentence of 61.24.030 (7) because the

Mickelsons' note has been securitized (Paatalo Decl.).  Investors, not Chase, are entitled to Mickelsons' payments.  Id.  This is significant because the note itself states:

> I understand the Lender may transfer this Note.  ***The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."***

Virtually every paragraph of the Mickelsons' promissory note refers to "Note Holder" except the last paragraph, which uses the word "Lender."  The note clearly contemplates the borrower shall have the right to know the identity of the "Note Holder"[3].  The persons who are entitled to receive payments under the note are the investors, not the servicers.

The trustee's inability to prove that Chase Home Financial is a beneficiary under the DTA means it has violated the law.  As the Supreme Court noted in Bain the definition of beneficiary is set forth at RCW 61.24.020 (2).  This provision states:

> "Beneficiary" means the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation.

NWTS had a duty to the Mickelsons to have proof of any Chase Home Financial's beneficiary status before it began any non-judicial foreclosure on their behalf.  NWTS violated this duty.

///

///

///

---

[3] For example, paragraph **"5. BORROWER'S RIGHT TO PREPAY"** specifically allows for prepayments of principal to "Note Holder".   In this regard, the third sentence of this provision states: "When I make a Prepayment, I will tell the Note Holder in writing that I am doing so." This provision, as well as most of the provisions referring to "Note Holder" indicate that borrower will be able to obtain the identity of the "Note Holder" in order to perform the provisions of the promissory note, Appendix I.

PLAINTIFFS'  MOTIONS  FOR  PARTIAL  SUMMARY
JUDGMENT- 13

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

1    <u>RCW 61.24.040.</u>  RCW 61.24.040 (2) states:

2

3    In addition to providing the borrower and grantor the notice of sale
     described in subsection (1)(f) of this section, the trustee shall include with
4    the copy of the notice which is mailed to the grantor, a statement to the
     grantor in substantially the following form:
5
     NOTICE OF FORECLOSURE
6
7    [***]

8    The attached Notice of Trustee's Sale is a consequence of default(s) in the
     obligation to . . . . . ., the Beneficiary of your Deed of Trust **and owner of**
9    **the obligation secured thereby**. Unless the default(s) is/are cured, your
     property will be sold at auction on the . . . . day of . . . . . ., . . .
10
     RCW 61.24.040 (2) (emphasis supplied).
11
12       In <u>Bain</u> the Court observed the trustee "shall provide the homeowner with 'the name and

13   address of the owner of any promissory notes or other obligations secured by the deed of

14   trust' before foreclosing on an owner-occupied home." <u>Bain</u> at *9 (<u>citing</u> RCW

15   61.24.030(7)(a), (8)(l)); <u>c.f.</u>, <u>Thepvongsa v. Reg'l Tr. Servs. Corp.</u>, 2011 U.S. Dist. LEXIS

16   7853, -- F. Supp. 2d -- (W.D. Wash. Jan. 26, 2011) (Plaintiff stated a claim under the

17   Washington Deed of Trust Act as plaintiff alleged that certain defendants had not responded

18   to his requests to determine what interests each defendant had in his loan and deed of trust,

19   and that the present holder of the note was "unknown," which suggested that the defendants

20   did not provide the required notice).

21       Requiring disclosure of the note owner(s) enhances the homeowner's opportunity to

22   prevent wrongful foreclosure by providing complete information as to the parties involved in

23   the foreclosure. <u>See</u> <u>Cox v. Helenius</u>, 103 Wash.2d at 87. Further it promotes the stability of

24   land titles as the true party in interest is documented. <u>See</u> <u>Id.</u> Finally, the party best suited to

25   provide this information efficiently is the trustee, upon whom such proof should be delivered.

26   <u>See</u> <u>Id.</u>

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

Here NWTS' notices of Foreclosure, Default and Sale do not disclose the owner of the note, or its contact information. See dkt. 29-1 at Exs. D-F, (pp.27, 29, 31-32, 34, 36-38, 40-41, 44-45). The Mickelsons only learned this information after the sale was complete. Decl. D. Mickelson, ¶ 17.

RCW 61.24.070(2)   Under RCW 61.24.070(2), the trustee may only accept a credit bid from the beneficiary. However, "[***] [i]f the purchaser is not the beneficiary, the entire bid shall be paid to the trustee in the form of cash, certified check, cashier's check, money order, or funds received by verified electronic transfer, or any combination thereof." RCW 61.24.070(2). In this case NWTS danced around the issue of who owned the note or was the beneficiary under the DTA, because the owners were unidentified investors. Therefore, it originally accepted a credit bid from Freddie Mac even though it knew that it had declared Chase Home Finance to be the beneficiary. But neither Chase Home Finance or Freddie Mac meet the statutory definition of beneficiary or the definition of note holder under the promissory note.

**C. The trustee violated the DTA by bringing and concluding a non-judicial foreclosure of Plaintiffs' home based on the MERS four-party deed of trust.**

i. *MERS four-party deed of trust security instruments are unenforceable under the DTA.* The most recent construction of the DTA by the Supreme Court is in Bain. Justice Chambers wrote for a unanimous Supreme Court:

> The primary issue is whether MERS is a lawful beneficiary with the power to appoint trustees within the deed of trust act if it does not hold the promissory notes secured by the deeds of trust. A plain reading of the statute leads us to conclude that only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property. Simply put, if MERS does not hold the note, it is not a lawful beneficiary.

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

<u>Bain</u>, p. 3  In this case, it is undisputed that MERS never held the Mickelson's promissory note.  Therefore under <u>Bain</u> MERS was never a valid beneficiary under RCW 61.24.005 (2) for purposes of bringing a non-judicial foreclosure in this case.  Because MERS was not a lawful beneficiary, it had no power to assign beneficiary status to anyone else for purposes of initiating a non-judicial foreclosure.  <u>Id.</u>  Thus, NWTS' attempt on behalf of MERS, through its employee Vonnie McElliott, to give Chase Home Mortgage beneficiary status constituted an unsuccessful attempt to create a new beneficiary client, which would employ NWTS services to bring a wrongful non-judicial foreclosure against the Mickelsons.

<u>Bain's</u> discussion suggests that "MERS deed of trust security instruments" do not comply with the WTA because they are four-party security instruments.

> In Washington, "[a] mortgage creates nothing more than a lien in support of the debt which it is given to secure." Pratt v. Pratt, 121 Wash. 298, 300, 209 P. 535 (1922) (citing Gleason v. Hawkins, 32 Wash. 464, 73 P. 533 (1903)); see also 18 Stoebuck & Weaver, supra, § 18.2, at 305.  Mortgages come in different forms, but we are only concerned here with mortgages secured by a deed of trust on the mortgaged property.  These deeds do not convey the property when executed; instead, "[t]he statutory deed of trust is a form of a mortgage." 18 Stoebuck & Weaver, supra, § 17.3, at 260. "More precisely, it is a three-party transaction in which land is conveyed by a borrower, the 'grantor,' to a 'trustee,' who holds title in trust for a lender, the 'beneficiary,' as security for credit or a loan the lender has given the borrower." Id.  Title in the property pledged as security for the debt is not conveyed by these deeds, even if "on its face the deed conveys title to the trustee, because it shows that it is given as security for an obligation, it is an equitable mortgage."

<u>Id.</u>, pp. 7-8.

Further, the Court observes throughout <u>Bain</u> that it should have been obvious to MERS (and by implication a Washington trustee) that only three-party deed of trust instruments are permissible under RCW Ch. 61.24.  <u>Id.</u>. <u>see also</u>, at 12-14; 15; note 8.  Indeed, the Supreme Court suggests the author of the MERS Deed of Trust forms purposefully violated Washington's statutes.  "... [I]t is not the plaintiffs that manipulated the terms of the act: it

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

was whoever drafted the forms used in these cases." Id., 27.  The Court implies that non-judicial foreclosures cannot be based on MERS deed of trust forms by stating: "nothing herein should be interpreted as preventing the parties to proceed with judicial foreclosures."

MERS argued the Supreme Court should allow the parties to contract around the deed of trust provisions.  The Supreme Court refused to do so.  Id., pp. 25 – 26.   In support of its holding the Court cited Godfrey v. Hartford Ins. Cas. Co., 142 Wash.2d 885, 16 P.3d 617 (2001); Nat'l Union Ins. Co. of Pittsburgh, Pa. v. Puget Sound Power & Light, 94 Wash. App. 163, 177, 972 P.2d 481 (1999); Standard Optical Co. v. Superior Court, 17 Wash.2d 323, 329, 135 P.2d 839 (1943); cf. Vizcaino v. Microsoft Corp., 120 F.3d 1006, 1011-12 (9th Cir. 1997).

As this Court stated in Hansen v. Ticket Track, Inc.:

> "It is well established that a contract or contract provision that is 'contrary
> to the provisions of any statute [is] void.' Coey v. Low, 36 Wash. 10, 17,
> 77 P. 1077 (1904); Evans v. Luster, 84 Wash.App. 447, 450, 928 P.2d 455
> (1996)."

Hansen v. Ticket Track, Inc., 280 F. Supp. 2d 1196 , 1201 (W.D. Wa 2006).   See also Coronado v. Orona, 137 Wash.App. 308, 153 P.3d 217 (2007).

This rule against enforcement of illegal contracts was applied by the United States Supreme Court to void a DOT instrument in Alabama. Chattanooga Nat'l Bldg. & Loan Asso. v. Denson, 189 U.S. 408, 23 S. Ct. 630 (1903).  More recently the Supreme Court of Hawaii, applied the same principles to hold a DOT contract, which did not comply with the provisions and policies of Hawaii's Deed of Trust statute, to be void.  See e.g. Lee v. HSBC Bank USA, 121 Haw. 287, 291-4, 218 P.3d 775 (2009).   The Ninth Circuit approved this approach in Kekauoha-Alisa v. Ameriquest Mort. Co., 674 F.3d 1083 (2012).  As a four-party deed of trust instrument violates the DTA, the remedies provided by that act, namely, non-judicial foreclosure, are not available to note holders.

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM@AOL.COM

*ii.) The MERS foreclosure system violates the language and policies of the DTA.*

The Mickelsons incorporate herein their argument set forth at B ii hereof, relating to the trustee's violations of the DTA.   In summary, these violations of the DTA appear to stem from the NWTS' eagerness to follow MERS process as opposed to the process set forth in Ch. 61.24 RCW.   Washington's DTA is premised upon the notion that borrowers will have access to the real beneficiaries.   Washington law does not contemplate that servicers, coupled up with trustees, who both benefit from foreclosures, will be able to call all the shots without consulting with the investors who are entitled to the payments made pursuant to a promissory note which belongs to investors.

Because the DTA dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor. Udall v. T.D. Escrow Servs., Inc., 159 Wash.2d 903, 915-16, 154 P.3d 882 (2007); Koegel v. Prudential Mut. Sav. Bank, 51 Wash. App. 108, 111-12, 752 P.2d 385 (1988).   The DTA should be construed to further three basic objectives. First, the non-judicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles. Bain at *10 (citing, Cox v. Helenius, 103 Wash.2d 383, 387, 693 P.2d 683 (1985)).

The Washington Supreme Court noted in Bain, at *14:   "The MERS system may be inconsistent with our second objective when interpreting the deed of trust act: that 'the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure.'"   The Court also acknowledged that critics of the MERS system point out "that after bundling loans together, it is difficult, if not impossible, to identify the current holder of any particular loan, or to negotiate with that holder." Id., at *13.

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

The question, to some extent, is whether MERS and its associated business partners and institutions can both replace the existing recording system established by Washington statutes and still take advantage of legal procedures established in those same statutes.

<u>Bain</u> at *13.

In this case entities which represented themselves in the loan documents as the "lender" were no more than table funders and/or loan originators, who never actually intended to loan the Mickelson's money or rely on their home for security. <u>See</u> Decls. of Travis and Daneille Mickelson. <u>See also</u> Decl. of William J. Paatalo. Indeed, MortgageIt, Inc. and MHL Funding Corp had such little interest in the deed of trust security that it was reported to MERS as belonging to MortgageIT, Inc., rather than MHL Funding, Inc., who appears to be the lender on the face of the note. Decl. William J. Paatalo.

There can be no dispute that the reason these companies made the loan in question was for purposes of selling and/or securitizing the Mickelsons' promissory note as part of a large pool of similar notes. There was never any attention or thought given to the fact that the Mickelsons would not have access to an actual lender after securitization so as to provide an adequate opportunity to prevent wrongful foreclosure, or that they would not even know who actually had authority to stop the foreclosure sale until after the sale occurred. See Decl. D. Mickelson ¶ 17. Indeed, the whole MERS system of securitizing home loans increases the incentives for servicers to foreclose in the event of default; rather than protect the interests of either the investors (who actually own the right to the revenues from the note) or the homeowners. <u>Culhane v. Aurora Loan Services of Nebraska</u>, 2011 U.S. Dist. LEXIS 136112, note 15 (D. MASS. 2011).

This Court should hold that MERS system of foreclosure, which is based on a four-party deed of trust, violated the DTA and therefore did not constitute a valid non-judicial foreclosure. This Court should respect Washington law and void the sale of Mickelsons' home.

*iii. The deed of trust was separated from the note.* The evidence shows MortgageIT, Inc. was MERS' agent with regard to the Deed of Trust, but that MHL Funding was identified

**STAFNE LAW FIRM**

239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

as the lender.  Someone needs to explain how MortgageIT, Inc., (or perhaps its successor), transferred the deed of trust to Chase Home Mortgage and how it now serves as security for the Mickelsen's securitized loan.  In other words, it has to be shown that the note and deed of trust are still owned by the same person before the deed of trust can be relied upon as security for the payment of Mickelsons' debt. <u>Bain</u>, at *21-2.

**VI. CONCLUSION**

This Court Should grant the Mickelsons' partial motions for summary judgment that NWTS violated their duty of good faith to the Mickelsons and violated the DTA by performing a non-judicial foreclosure against the Mickelsons' home.


DATED this 7th day of September, 2012 at Arlington, WA.

Respectfully Submitted,

STAFNE LAW FIRM



<u>s/ Scott E. Stafne</u>
Scott E. Stafne, WSBA #6964



<u>s/ Jocelynne R. Fallgatter</u>
Jocelynne R. Fallgatter, WSBA #44587
239 N. Olympic Ave
Arlington, WA 98223
Phone: (360) 403-8700
Fax: (360) 386-4005

**STAFNE LAW FIRM**
239 NORTH OLYMPIC AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM@AOL.COM

1

## CERTIFICATE OF ELECTRONIC SERVICE

2

3      I hereby certify that on September 7, 2012, I caused to be electronically filed, the

4    foregoing with the Clerk of the Court using the CM/ECF system which will send notification

5    of such filing to the following:

6    Fred B. Burnside:  fredburnside@dwt.com

7    Rebecca J. Francis:  RebeccaFrancis@dwt.com

8    Heidi E. Buck:  hbuck@rcolegal.com

     Andrew Gordon Yates:  yatesa@lanepowell.com
9
     John S. Devlin, III:  devlinj@lanepowell.com
10
     Erin McDougal Stines: erin.stines@fnf.com
11

12      DATED this 7th day of September, 2012 at Arlington, WA.

13                                                          /s/ Scott E. Stafne
                                                       Scott E. Stafne, WSBA #6964
14                                                          Stafne Law Firm

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS'   MOTIONS   FOR   PARTIAL   SUMMARY
JUDGMENT- 21

APPENDIX I




Caution
As of: Sep 07, 2012

**Aurora Loan Services, LLC, Appellee v. Dion T. Louis, et al., Appellant**

**Court of Appeals No. L-10-1289**

**COURT OF APPEALS OF OHIO, SIXTH APPELLATE DISTRICT, LUCAS COUNTY**

*2012 Ohio 384; 2012 Ohio App. LEXIS 334*

**February 3, 2012, Decided**

**PRIOR HISTORY:**  [**1]
   Trial Court No. CI0200905312.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellee corporation, alleging to be the mortgage assignee, filed an action for repayment of the promissory note and foreclosure on the mortgage and requested to be declared the real party in interest. Appellant home owner asserted affirmative defenses. The Lucas County Court of Common Pleas (Ohio) granted summary judgment for the corporation in the amount of $30,472.27, plus interest, and ordered foreclosure of the property. The owner appealed.

**OVERVIEW:** The home owner argued that the trial court erred. The appellate court held that the trial court erred by granting summary judgment for the corporation because it failed to satisfy its initial burden of demonstrating that no genuine issue of material fact existed as to whether it was the real party in interest. The corporation submitted affidavits that failed to demonstrate that it was the holder of the note or mortgage because the mortgage was not recorded and the title search revealed that the chain of title was deficient. The only evidence submitted in support of the motion for summary judgment were the affidavits by the corporation's vice president and assistant vice president. Neither affidavit established that the corporation was the holder of the note or mortgage at issue. Further, the assistance vice president failed to assert any facts indicating that the corporation was entitled to enforce the instrument. On the face of the note, it was impossible for the corporation to be a "holder" as defined by former *R.C. 1301.01* because the instrument was not on bearer paper, and the corporation was not an identified person on the instrument.

**OUTCOME:** The judgment of the trial court was reversed and the cause was remanded for further proceedings.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
[HN1] When reviewing a trial court's summary judgment decision, the appellate court conducts a de novo review.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN2] Summary judgment will be granted when there are no genuine issues of material fact, and when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.

**Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants**
**Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants**
[HN3] On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. The moving party must point to some evidence in the record of the type listed in *Civ.R. 56(C)*. The evidence permitted to be considered is limited to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action. *Civ.R. 56(C)*. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist.

**Civil Procedure > Justiciability > Standing > General Overview**
**Civil Procedure > Parties > Real Parties in Interest > General Overview**
**Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > General Overview**
[HN4] In foreclosure actions, the real party in interest is the current holder of the note and mortgage. *Civ.R. 17(A)* requires that a civil action must be prosecuted by the real party in interest, that is, by a party who can discharge the claim upon which the action is brought or is the party who, by substantive law, possesses the right to be enforced. If an individual or one in a representative capacity does not have a real interest in the subject matter of the action, that party lacks the standing to invoke the jurisdiction of the court.

**Civil Procedure > Summary Judgment > Evidence**
**Civil Procedure > Summary Judgment > Standards > General Overview**
**Civil Procedure > Summary Judgment > Supporting Materials > General Overview**
[HN5] Pursuant to *Civ.R. 56(C)*, summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

**Civil Procedure > Summary Judgment > Opposition > Supporting Materials**

**Civil Procedure > Summary Judgment > Supporting Materials > Affidavits**
[HN6] Regarding summary judgment motions, *Civ.R. 56(E)* provides that supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit.

**Civil Procedure > Summary Judgment > Supporting Materials > Affidavits**
[HN7] In support of a summary judgment motion, an affiant need not have firsthand knowledge of the transaction, but must demonstrate that the affiant is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance, and retrieval, such that the witness can reasonably testify on the basis of this knowledge that the record is what it purports to be.

**Commercial Law (UCC) > Negotiable Instruments (Article 3) > Enforcement > Holders in Due Course > General Overview**
**Commercial Law (UCC) > Negotiable Instruments (Article 3) > Enforcement > Person Entitled to Enforce**
[HN8] Ohio's version of the Uniform Commercial Code governs who may enforce a note. Former *R.C. 1301.01 et seq.* (now *R.C. 1301.201 et seq.*). Article 3 of the UCC governs the creation, transfer and enforceability of negotiable instruments, including promissory notes secured by mortgages on real estate. Under the code, a "person entitled to enforce" an instrument means any of the following persons: (1) the holder of the instrument, (2) a non-holder in possession of the instrument who has the rights of the holder, (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to *R.C. 1303.38* or *R.C. 1303.58(D)*. *R.C. 1301.31*. More specifically, under former *R.C. 1301.01*, "holder" means either of the following: (a) if the instrument is payable to bearer, a person who is in possession of the instrument; or (b) if the instrument is payable to an identified person, the identified person when in possession of the instrument.

**Real Property Law > Financing > Mortgages & Other Security Instruments > Transfers > Transfers by Mortgagees**
[HN9] "Holder of the mortgage" means the holder of the mortgage as disclosed by the records of the recorder or

recorders of the county or counties in which the mortgaged premises are situated. *R.C. 5301.232(E)(3)*.

*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
*Evidence > Inferences & Presumptions > Inferences*
*Real Property Law > Financing > Mortgages & Other Security Instruments > Transfers > Transfers by Mortgagees*

[HN10] Inferences from an affidavit are inappropriate, insufficient support for summary judgment and are contradictory to the fundamental mandate that evidence be construed most strongly in favor of the nonmoving party. However, where other evidence of a mortgage transfer exists, such as a valid transfer of one instrument as evidence of the other, courts have relied on affidavits to confirm such facts.

*Commercial Law (UCC) > Negotiable Instruments (Article 3) > Enforcement > General Overview*
*Real Property Law > Financing > Mortgages & Other Security Instruments > Transfers > Transfers by Mortgagees*

[HN11] It has been a longstanding rule in Ohio that whenever a promissory note is secured by a mortgage, the note constitutes the evidence of the debt and the mortgage is mere incident to the obligation. Thus, a transfer of an obligation secured by a mortgage also acts as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered. Also, U.C.C. 9-203(g) codifies the common law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien. Thus, there is no requirement that a signed assignment of a mortgage be contained in the record.

**COUNSEL:** Darryl E. Gormley, for appellee.

Brandon S. Cohen, for appellant.

**JUDGES:** Mark L. Pietrykowski, J., Arlene Singer, P.J., Stephen A. Yarbrough, J. CONCUR.

**OPINION BY:** Mark L. Pietrykowski

**OPINION**

**DECISION AND JUDGMENT**

YARBROUGH, J.

**I. INTRODUCTION**

[\*P1]   Appellant Dion T. Louis appeals from a judgment of the Lucas County Court of Common Pleas, which granted summary judgment in favor of appellee, Aurora Loan Services, LLC ("Aurora"), and denied appellant's cross-motion for summary judgment. Thereafter, the trial court entered a judgment and decree of foreclosure and ordered the property sold. For the reasons that follow, we reverse.

**A. Facts and Procedural History**

[\*P2]   On April 16, 1999, appellant entered into a contract with Mayflower d.b.a. Republic Bancorp Mortgage, Inc. to purchase a property located in Toledo, Ohio. Appellant signed a note that contained a promise to pay $33,750 plus interest at the rate of 10.825 percent per annum. In exchange, Mayflower received a mortgage against the property as security for repayment of the note. The mortgage was later assigned to Mayflower d.b.a. Union Mortgage Services, and the assignment was recorded on October 13, 1999. Sometime after 1999, Aurora began to  [\*\*2]  service the loan and appellant made his monthly payments to it.

[\*P3]   In early 2009, appellant stopped making payments on the loan. Aurora contends that appellant's default enabled them to exercise an "option" clause contained in the note and mortgage to accelerate the debt. On July 6, 2009, Aurora filed an action for repayment of the note and foreclosure on the mortgage. Aurora attached copies of the note and mortgage to its complaint. Both the note and mortgage were endorsed by and made payable to Mayflower. There was no mention of Aurora on either document. In addition, Aurora requested that the trial court declare it a real party in interest as the holder of the note and mortgage. Aurora also submitted a preliminary judicial report which revealed that the assignment of the mortgage from Mayflower to Aurora was not recorded, and an attempted recording on January 13, 2006, revealed that the chain of title was defective.

[\*P4]   On September 22, 2009, appellant answered the complaint and raised six affirmative defenses, including that Aurora failed to state a claim upon which relief could be granted.

[\*P5]   On December 7, 2009, Aurora filed a motion for summary judgment in which it included an affidavit  [\*\*3]  submitted by Cheryl Marchant, the vice president of Aurora. The affidavit states that Aurora exercised the "option" contained in the mortgage and note which were attached to the pleadings and had accelerated and called due the entire principal balance. The affidavit also declares that Marchant was authorized to make the affidavit and that she possessed personal knowledge of all of the facts therein.

2012 Ohio 384, *; 2012 Ohio App. LEXIS 334, **

[*P6]   On December 28, 2009, appellant moved for summary judgment and filed a memorandum in opposition to Aurora's motion for summary judgment based on the contention that Aurora lacked standing as a real party in interest. Appellant argued that Aurora's first affidavit omitted the chain of title issues and did not address the issue of an assignment from Mayflower to Aurora. In response, on January 29, 2010, Aurora filed a brief in opposition to appellant's motion for summary judgment, stating that Mayflower had intended to assign the mortgage to Aurora but the assignment was lost or unrecorded.

[*P7]   Attached to its brief in opposition to appellant's motion for summary judgment is an affidavit by Theodore Schultz, the assistant vice president of Aurora, as to the lost assignment of the mortgage. This [**4] second affidavit states that "[t]he Original Lender assigned its right, title and interest in the note to Mayflower * * * [w]hereas Mayflower assigned its right, title and interest in the note to Aurora." The affidavit goes on to state that "[t]he original assignment of the Open-end Mortgage between Mayflower DBA Union Mortgage Services and Aurora Loan Services has been lost and or was not recorded." The affidavit does not assert that Schultz had personal knowledge of the matters stated in the affidavit, nor does it provide the circumstances by which Schultz may have gained personal knowledge of the assignment. Since Mayflower is now out of business, Schultz asserts that a replacement assignment to confirm that it is the proper holder of the mortgage is unattainable. Schultz further asserts that Aurora is the holder of the promissory note in question.

[*P8]   After considering the motions and affidavits, the trial court granted summary judgment in favor of Aurora on August 30, 2010, in the amount of $30,472.27 plus interest on the principal amount at the rate of 10.825 percent per annum from January 1, 2009. In addition, the court found that Aurora had a valid lien and ordered the foreclosure [**5] of the property. The trial court reasoned that Aurora established its prima facie case when it submitted the affidavits as evidence. In so determining this, the trial court found that the burden shifted to appellant to show the existence of a genuine issue of material fact pursuant to *Civ.R. 56(C)*. The trial court concluded that appellant "fail[ed] to bring any [additional] evidence under *Civ.R. 56(C)* to show a genuine issue of material fact" and denied appellant's cross-motion for summary judgment.

**B. Assignments of Error**

[*P9]   Appellant now appeals, asserting the following assignment of error: The trial court erred in granting plaintiff-appellee's motion for summary judgment because it failed to demonstrate that it is entitled to

judgment as a matter of law; the unrefuted *Civ.R. 56* Evidence demonstrates, at the least, that a genuine issue of material fact exists as to whether plaintiff appellee is the equitable party in interest.

**II. ANALYSIS**

**A. Standard of Review**

[*P10]   [HN1] When reviewing a trial court's summary judgment decision, the appellate court conducts a de novo review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996 Ohio 336, 671 N.E.2d 241 (1996). [HN2] Summary judgment will be granted when there are [**6] no genuine issues of material fact, and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66-67, 375 N.E.2d 46 (1978).

[*P11]   [HN3] On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996 Ohio 107, 662 N.E.2d 264 (1996). The moving party must point to some evidence in the record of the type listed in *Civ.R. 56(C)*. *Id.* at 292-293. The evidence permitted to be considered is limited to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action * * *." *Civ.R. 56(C)*. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293. See also *Civ.R. 56(E)*.

**B. Summary judgment improper**

**1. No demonstration that Aurora is the note holder**

[*P12]   [HN4] In foreclosure actions, the real party in interest is the current holder of the note and mortgage. [**7] See, e.g., *Deutsche Bank Natl. Trust Co. v. Greene*, 6th Dist. No. E-10-006, 2011-Ohio-1976, ¶ 13. *Civ.R. 17(A)* requires that "a civil action must be prosecuted by the real party in interest," that is, by a party "who can discharge the claim upon which the action is brought * * * [or] is the party who, by substantive law, possesses the right to be enforced." (Citations omitted.) *Discover Bank v. Brockmeier*, 12th Dist. No. CA2006-057-078, 2007-Ohio-1552, ¶ 7. If an individual or one in a representative capacity does not have a real interest in the subject matter of the action, that party lacks the standing to invoke the jurisdiction of the court. *State ex rel. Dallman v. Court of Common Pleas, Franklin Cty.*, 35 Ohio St.2d 176, 179, 298 N.E.2d 515 (1973), syllabus.

[*P13]   In its complaint, Aurora alleged that it is the current holder of the note and mortgage. Nevertheless, the mortgage was not recorded and the title search revealed that the chain of title is deficient. In fact, Aurora admitted this in its complaint and asked the trial court for a declaratory judgment to establish that it is the holder of the note and mortgage. The only evidence submitted in support of Aurora's motion for summary [**8] judgment were the Marchant and Schultz affidavits.

[*P14]   In determining the sufficiency of these affidavits, we turn to the requirements set forth by *Civ.R. 56.*

[*P15]   [HN5] Pursuant to *Civ.R. 56(C),*

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

[*P16]   Further, [HN6] *Civ.R. 56(E)* provides:

Supporting and opposing affidavits shall be made on *personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. *Sworn or certified copies* of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. (Emphasis added.)

[*P17]   Marchant does not assert or aver to any facts which support a finding that Aurora is the holder of the note or mortgage at issue. In fact, the note filed [**9] with her affidavit shows the following endorsement: "PAY WITHOUT RECOURSE TO THE ORDER OF: LIFE BANK BY: [ILLEGIBLE SIGNATURE] TIMOTHY A MERRITT, BRANCH MANAGER FOR MAYFLOWER D.B.A. UNION MORTGAGE SERVICES." There is no explanation of any facts to illustrate how Aurora became the holder of the note. Rather, Marchant's testimony is that "Aurora Loan Services, LLC has exercised the option contained in the note and

mortgage and has accelerated and called due the entire principal balance due thereon." This statement fails to establish Aurora as a real party in interest.

[*P18]   Next, we turn to the Schultz affidavit and find that it is deficient in establishing Aurora's status as a holder of the note and mortgage for three reasons.

[*P19]   First, the Schultz affidavit states that: (1) "Aurora Loan Services LLC is holder ('Holder') of the following described promissory note (the 'Note'): * * * Loan No: 0115933855 * * * Borrowers: Dion T. Louis, an unmarried man * * * Property address: 280 Knower St., Toledo, OH 43609 * * * Amount: $33,750.00;" and (2) "Mayflower DBA Union Mortgage Services assigned its right, title and interest in the note to Aurora." A sworn or certified copy of the note was not attached [**10] or served with this affidavit as required by *Civ.R. 56(E).*

[*P20]   Second, there is no explanation as to how Schultz came to know this information or whether he personally presided over appellant's account. We note,

[HN7] [t]he [affiant] need not have firsthand knowledge of the transaction, but must demonstrate [that] the [affiant] is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, such that the witness can reasonably testify on the basis of this knowledge that the record is what it purports to be * * *. *Wachovia Bank of Delaware, N.A. v. Jackson, 5th Dist. No. 2010-CA-00291, 2011-Ohio-3203, ¶ 36,* citing *State v. Patton, 3d Dist. No. 1-91-12, 1992 Ohio App. LEXIS 997, 1992 WL 42806 (Mar. 5, 1992).*

[*P21]   Moreover, Schultz's position as assistant vice president of Aurora does not create a presumption that he had personal knowledge of the assignment from Mayflower to Aurora. For example, in *TPI Asset Mgt. v. Conrad-Eiford, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, ¶ 21,* the affiant stated that "from my own personal knowledge the following facts are true as I verily believe, and * * * I am competent to testify to same." The *TPI* court [**11] held that, regardless of the affiant's position in the bank as team leader, the affidavits failed to demonstrate the particular basis on which the affiants gained their understanding of the facts. *Id. at ¶ 23.* Because the Schultz affidavit does not demonstrate that Schultz had personal knowledge of the assignment to Aurora, it does not meet the requirements for affidavits set forth in *Civ.R. 56(E).*

[*P22]  Third, Schultz asserted that Aurora is the holder of the note, but failed to set forth any facts in support of this legal conclusion. Affidavits filed in support of summary judgment containing "inferences and bald assertions" rather than a "clear statement or documentation" proving that the original holder of the note and mortgage transferred its interest to Aurora are not sufficient to support a finding that Aurora is the holder of the note and mortgage. *See First Union Natl. Bank v. Hufford, 146 Ohio App. 3d 673, 678, 2001 Ohio 2271, 767 N.E.2d 1206 (2001)* (inferences and bald assertions are insufficient evidence of a transfer of a note and mortgage). Furthermore, Schultz stated, "Mayflower DBA Union Mortgage Services assigned its right, title and interest in the note to Aurora Loan Services." This statement  [**12] is contradictory to the endorsement contained on the note which indicates that Mayflower d.b.a. Union Mortgage Services assigned the note to Life Bank.

[*P23]  [HN8] Ohio's version of the Uniform Commercial Code governs who may enforce a note. *R.C. 1301.01 et seq.*[1] Article 3 of the UCC governs the creation, transfer and enforceability of negotiable instruments, including promissory notes secured by mortgages on real estate. *Fed. Land Bank of Louisville v. Taggart, 31 Ohio St.3d 8, 10, 31 Ohio B. 6, 508 N.E.2d 152 (1987).*

> 1  *R.C. 1301.01* was repealed by Am.H.B. No. 9, 2011 Ohio Laws File 9, effective June 29, 2011. That act amended the provisions of *R.C. 1301.01* and renumbered that section so that it now appears at *R.C. 1301.201.* Because *R.C. 1301.201* only applies to transactions entered on or after June 29, 2011, we apply *R.C. 1301.01* to this appeal.

[*P24]  Under the code, a "person entitled to enforce" an instrument means any of the following persons: (1) The holder of the instrument, (2) A non-holder in possession of the instrument who has the rights of the holder, (3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to *Section 1303.38 or division (D) of section 1303.58 of the Revised Code.*  [**13] *R.C. 1301.31.*

[*P25]  More specifically, under former *R.C. 1301.01*, "holder" means either of the following:

[*P26]  "(a) if the instrument is payable to bearer, a person who is in *possession* of the instrument;

[*P27]  "(b) if the instrument is payable to an identified person, the identified person when in possession of the instrument." (Emphasis added.)

[*P28]  Schultz failed to assert any facts indicating that Aurora is entitled to enforce the instrument. On the face of the note, it is impossible for Aurora to be a "holder" as defined by former *R.C. 1301.01.* The instrument is not bearer paper, and Aurora is not an identified person on the instrument. Thus, Aurora has failed to meet its *Dresher* burden of establishing that it is the current note holder.

## 2. No demonstration that Aurora is the mortgage holder

[*P29]  [HN9]  "'Holder of the mortgage' means the holder of the mortgage as disclosed by the records of the recorder or recorders of the county or counties in which the mortgaged premises are situated." *R.C. 5301.232(E)(3).*

[*P30]  In support of Aurora's motion for summary judgment, Schultz, in his affidavit, stated: "The Loan is secured by an Open-end Mortgage dated 4/16/1999 Book 99 1465 at Page B11 Instrument 24635 in the County of  [**14] Lucas, State of Ohio." We note that a certified copy of the mortgage assignment was not attached to the Schultz affidavit as required by *Civ.R. 56(E).* Furthermore, in regards to the mortgage assignments, the preliminary judicial report filed on July 6, 2009, indicates that the mortgage was initially given to Mayflower d.b.a. Republic Bancorp Mortgage Inc., filed April 21, 1999, in File No. 99 1465B11 of the Lucas County Records. Thereafter, the mortgage was assigned to Mayflower d.b.a. Union Mortgage Services, and filed October 13, 1999, in File No. 99 3915C12 of the Lucas County Records.

[*P31]  The report goes on to state:

> Attempted assignment of mortgage to First Union National Bank as Trustee of the Amortizing Residential Collateral Mortgage Trust 2000-BC1, (by Life Bank), by separate instrument dated April 18, 2001 and filed April 18, 2001 in File No. 01 4794 E01 of Lucas County Records. There is no assignment of mortgage to Life Bank.
>
> Attempted assignment of mortgage to Aurora Loan Services LLC FKA Aurora Loan Services Inc., (by Pacific Premier Bank, FSB, FKA Life Bank, FSB or Life Bank), by separate instrument dated January 13, 2006 and filed March 6, 2006 in file No. 20060306-0013641  [**15] of Lucas County Records. *The chain of mortgage assignment is defective.* (Emphasis added.)

[*P32]   Thus, the record reflects that Aurora is unable to establish that there is no genuine issue of material fact as to whether it is the current holder of the mortgage, given the chain of assignments and transfers of the mortgage.

[*P33]   Furthermore, courts have been reluctant to rely on affidavits as a basis for granting summary judgment in foreclosure actions where there is an absence of supporting evidence or circumstances. In *DLJ Mortg. Capital, Inc. v. Parsons, 7th Dist. No. 07-MA-17, 2008-Ohio-1177, ¶ 17*, the Seventh District Court of Appeals stated that summary judgment could not be granted for the mortgagee where there was no evidence of an assignment of the note and mortgage besides an affidavit by an employee. Although the employee presided over Parson's account, the affidavit was deemed insufficient to support a motion for summary judgment because it failed to mention "how, when, or whether appellee was assigned the mortgage and note." *Id.* Similarly, in *First Union, 146 Ohio App.3d at 679, 767 N.E.2d 1206*, the Third District Court of Appeals declined to grant summary judgment based exclusively [**16] on an affidavit where there was no evidence of an assignment to the mortgagee. The court stated that "though inferences could have been drawn from [the affidavit], [HN10] inferences are inappropriate, insufficient support for summary judgment and are contradictory to the fundamental mandate that evidence be construed most strongly in favor of the nonmoving party." *Id.* However, where other evidence of a transfer exists, such as a valid transfer of one instrument as evidence of the other, courts have relied on affidavits to confirm such facts. *See, e.g., Greene, 6th Dist. No. E-10-006, 2011-Ohio-1976, at ¶ 15*. In *Greene*, we held that the assignment of the mortgage, in conjunction with interlocking references in the mortgage and the note, transferred the note as well. We cannot find the same here. As in *DLJ Mtge.* and *First Union*, the affidavits in this case were the only evidence that a transfer of the note and mortgage occurred. As discussed, these affidavits fail to establish Aurora as the holder of either the note or the mortgage.

[*P34]   We note that appellant also argues in his first assignment of error that, "[u]nder statute of frauds principles, Plaintiff-Appellee's would have to show a signed [**17] 'option' or 'assignment' from Lender - Mortgage Holder - to be the real party in interest against Louis." To support his argument, appellant claims that "without a signed document expressly granting Aurora an assignment in the mortgage to Louis' property - the trial court cannot grant summary judgment based solely on Aurora's (self-serving) affidavit." However, [HN11] it has been a longstanding rule in Ohio that whenever a promissory note is secured by a mortgage, the note constitutes the evidence of the debt and the mortgage is mere incident to the obligation. *U.S. Bank Natl. Assn. v. Marcino, 181 Ohio App.3d 328, 2009-Ohio-1178, 908 N.E.2d 1032, ¶ 52*, citing *Edgar v. Haines, 109 Ohio St. 159, 164, 141 N.E. 837, 21 Ohio L. Rep. 350 (1923)*. Thus, a transfer of an obligation secured by a mortgage also acts as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered. *Kuck v. Sommers, 59 Ohio Law Abs. 400, 100 N.E.2d 68, 75 (3d Dist.1950)*. Also, "'[s]ubsection (g) [of U.C.C. 9-203] codifies the common law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien.'" *Marcino at ¶ 53* [**18] , quoting Official Comment 9 to *U.C.C. 9-203*. Thus, there is no requirement that a signed assignment of a mortgage be contained in the record. Finally, both instruments that Aurora seeks to enforce were signed by appellant and an option in the mortgage enables the holder to accelerate the debt upon default. Therefore, we do not believe that the statute of frauds argument is pertinent to this appeal.

[*P35]   In sum, Aurora submitted affidavits that fail to demonstrate that Aurora is the holder of the note or mortgage. Therefore, we hold that Aurora has failed to satisfy its initial burden of demonstrating that no genuine issue of material fact exists as to whether it is the real party in interest, and thus, summary judgment is inappropriate.

[*P36]   Accordingly, appellant's first assignment of error is well-taken.

## III. CONCLUSION

[*P37]   Because a genuine issue of material fact exists as to whether Aurora is a real party in interest, the judgment of the Lucas County Court of Common Pleas is reversed and this case is remanded to the trial court for further proceedings. Pursuant to *App.R. 24*, appellee is ordered to pay costs of this appeal.

Judgment reversed.

A certified copy of this entry shall constitute the [**19] mandate pursuant to *App.R. 27*. See also 6th *Dist.Loc.App.R. 4*.

Mark L. Pietrykowski, J.

Arlene Singer, P.J.

Stephen A. Yarbrough, J.
CONCUR.