The Honorable Marsha J. Pechman
October, 12, 2012

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| TRAVIS MICKELSON, DANIELLE H. MICKELSON, and the marital community thereof, | ) ) ) | No. C11-01445 MJP |
| Plaintiffs, | ) ) ) | RESPONSE TO DEFENDANTS NWTS, MCELLIGOTT, AND |
| v. | ) ) ) | RCO'S MOTION FOR SUMMARY JUDGMENT |
| CHASE HOME FINANCE LLC, et al., | ) ) | |
| Defendants. | ) ) ) | |

## I. INTRODUCTION

The non-judicial foreclosure performed by the law firm Routh, Crabtree, and Olsen (RCO), Northwest Trustee Services (NWTS), and its employee (and MERS Vice-President) Vonnie McElligott, (hereafter collectively referred to as Trustee Defendants) was based on a four-party deed of trust. The foreclosure was performed pursuant to the MERS system, not the Washington Deed of Trust Act (DTA). One characteristic of the MERS non-judicial foreclosure system is obfuscation of the identity or identities of the owner(s) of the Note and beneficiary(s) under the DTA through contractual designation of MERS as the beneficiary in the deed of trust (DOT).

It is under this pretext that the Trustee Defendants move for a summary judgment pursuant to Fed. R. Civ. Pro 56 that: as a matter of law their performance of the non-judicial

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

foreclosure of Mickelsons' residence pursuant to the MERS judicial system complied with the DTA. This resulted in the Mickelsons not knowing the identity of the owner of their note during the pendency of the foreclosure process, and their inability to access such owner for purposes of averting a wrongful foreclosure. The Mickelsons contend Trustee Defendants misstate facts and apply incorrect legal precedent, and that consequently, Trustee Defendants' motion for summary judgment should be denied.

## II. STATEMENT OF FACTS

The Mickelsons bought their home in November 2005. Dkt. 106 at Ex A. The promissory note made to MHL Funding Corporation (MHL) directed payments to be made to MortgageIt. Id. On March 28, 2006, MortgageIt advised the Mickelsons that: "the servicing rights for your mortgage account have been sold [***] [e]ffective 04/17/06 GMAC will be your new servicer." Dkt. 107 at Ex. A (1st Decl. D. Mickelson). Approximately 2 months later, on May 31, 2006, GMAC sent a letter to the Mickelsons' advising that the "servicing rights" for their mortgage account had been sold again. Dkt. 107 at Ex. B ("Effective 9/16/06 JPMorgan Chase Bank N.A. will be your new servicer.") On June 3, 2006 Chase Home Finance (Chase Home), on behalf of JP Morgan Chase Bank N.A. (Chase Bank) wrote the Mickelsons:

> JPMorgan Chase Bank, NA (Chase) has assumed responsibility for the servicing of your loan from GMAC Mortgage Corporation (GMAC). Chase Home Finance LLC *(Chase) performs days to day servicing functions for* JPMorgan Chase Bank N.A. and would like to take this opportunity to welcome you to Chase. It is customary in the mortgage industry for loans to be sold and transferred between lending institutions.

> You are hereby notified that the *servicing* of your loan, *that is, the right to collect payments* from you, is being assigned, sold, or transferred from GMAC Mortgage Corporation to JPMorgan Chase Bank, N.A. effective June 16, 2006.

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 2

**STAFNE LAW FIRM**

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

***The assignment, sale, or transfer of your loan does not affect any term or condition of the mortgage documents/security instruments, other than terms directly related to the servicing of your loan***.

Dkt. 107 at Ex. C.

William Paatalo testified the MERS database indicates that MortgageIt was the initial owner of the loan. Dkt. 105 at ¶ 13. MERS' discovery responses are to the contrary; wherein MERS contended, MHL owned the note and that MERS owned the security instrument:

> Plaintiffs and MHL Funding Corporation agreed that MERS would be the named beneficiary of Plaintiffs' Deed of trust, as nominee for MHL Funding Corporation and MHL Funding Corporation's successors and assigns. … As a result MERS held legal title to the security interest.

Dkt. 104 at Ex. A, p. 6:20-7:3 (Response to Interrogatory No. 3). MERS reiterates this adding:

> [***] Chicago Title also issued an ALTA Lenders Policy, insuring MERS acting as nominee for MHL Funding Corporation and MERS holding as nominee for MHL Funding Corporation, and ***MERS holding legal title to the security interest securing the Promissory Note.***

Id., p. 8:2-6 (Response to Interrogatory No. 4)(emphasis supplied).  Other than to explain how the MERS system applies to the Mickelsons, MERS respondents "do not have any personal knowledge regarding any aspect of the Non-Judicial Foreclosure of the Property." Id., at Ex. A, p. 5:24-25 (Response to Interrogatory No. 2).

In response to a request for MERS to state when and how it "as a nominee and/or beneficiary under the Deed of Trust, [***] relinquished control and custody of the promissory note and Deed of Trust," MERS answered, in pertinent part:

> MERS responds that it has no first-hand knowledge regarding note transfers, and pursuant to Fed. R. Civ. Pro. 33 (d) will produce the MERS milestone report reflecting entries made by MERS members reflecting note transfers.

Id. at 13:3-6 (Response to Interrogatory No. 8). The record before this Court reflects the Mickelsons' note and/or possibly deed of trust were transferred in April 2006, to Freddie Mac. Dkt. 104 at Ex. B, p 8:4-9. In this regard Freddie Mac states in its discovery response:

> [***] Freddie Mac responds it acquired the beneficial rights to the loan for the property on February 28, 2006.  Freddie Mac further responds that it bought the Property at the Non-Judicial Foreclosure sale on May 25, 2011, because Plaintiffs had not cured their default or sought to restrain the sale. [***] Pursuant to Fed. R. Civ. Pro. 33 (d) Freddie Mac will arrange for the production of documents reflecting when it acquired interest in Plaintiffs' loan.

Id. Freddie Mac's records reflect it acquired ownership of the Note on April 27, 2006. Decl. of Fallgatter In Support of Plaintiffs' Response to DMFSJ ("Fallgatter 2nd Decl.") at Ex. A.

In her declaration in support of Trustee Defendants' motion for summary judgment, MERS vice president and NWTS employee, defendant Vonnie McElligott testifies:

> On or about August 25, 2008, I executed an assignment of deed of trust ("Assignment") from MERS, as nominee for Chase Home Lending LLC as successor beneficiary to MHL Funding Corp. to Chase Home Finance.

Dkt. 100 at ¶ 9. As noted supra., defendant MERS had no personal knowledge of this transfer. Dkt. 104 at Ex. A, p. 13:3-6. McElligott presents no evidence of legal authority to transfer the DOT from MHL Funding, Inc. to Chase Home, a mere sub-servicer of Chase Bank, when Freddie Mac claims the beneficial rights to the loan were in fact previously transferred to it. See generally, Dkt. 100. Instead, McElligott relies on the agreement between MERS, Chase Home, and RCO (purportedly on behalf of NWTS) for her authority to sign the assignment. Dkt. 100 at ¶¶ 4-18, Ex. 1.[1]

---

[1] On its face, the agreement purports to grant McElligott, a NWTS' employee, blanket authority to act for MERS, regardless of the fact she may be transferring an interest MHL did not have to Chase Home. See Dkt. 100, at Ex. 1.  Furthermore, all references to NWTS and RCO's acting on behalf of NWTS are hand written notations, the authenticity of which have never been subject to examination or verification.

McElligott's employer, NWTS, did not receive attestation of Chase's purported status as the holder of the Mickelsons' promissory note until two years later, in August of 2010, in the form of a Beneficiary Declaration. Dkt. 100 at ¶¶ 16-17, Ex. 3; c.f., Dkt. 99, at 4:13-13. This declaration stated Chase Home was either the actual holder of the Mickelsons' note *or* had the right to enforce the note.  Dkt. 99, at 4:13-13. As previously stated, the Promissory Note indicates the "lender" was MHL Funding, but payments under the note were to be made to MortgageIt, Inc. or at a different place if required by Note Holder. Dkt. 106, at Ex. A (Promissory Note, ¶ 4).  Noteholder is defined by Paragraph 1 of the note. "I understand the Lender may transfer this Note. *The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."* Id., at ¶ 1 (emphasis supplied).[2]

In August of 2008, the Mickelsons were initially notified that they were in default on their home loan. Decl. of Danielle Mickelson in Support of Plaintiffs' Response to DMFSJ ("D. Mickelson 2nd Decl.") at ¶ 2. For two and a half years the Mickelsons worked with Chase attempting to avoid foreclosure and stay in their home. Id. at ¶¶ 4-7. Often the Mickelsons were instructed to stop proceeding with the program they were working on and to begin trying to qualify with another. Id. at ¶ 6. Frequently one Chase representative would contradict what another had instructed them to do. See Id. Many documents had to be resubmitted because Chase's processing delays resulted in documents being outdated. Id. at ¶ 5. For months after the Mickelsons were notified Freddie Mac now owns their home, Chase continued to contact them regarding their loan modification. Id. at ¶ 9, Ex. C.

---

[2] Because the endorsement of the Note from MHL Funding is not dated, there is no evidence that the note was not assigned to MortgageIt shortly after purchase and that this is why MERS' database reflects the MortgageIt

On or about August 6, 2010, RCO mailed a letter to the Mickelsons. Dkt. 101 at ¶ 4, Ex. B.  The letter stated "[w]e represent your mortgage company and have received notice to commence foreclosure proceedings against your property".  Dkt. 101, at Ex. A, p 1.  The letter identifies "Chase Home Finance, LLC-Columbus OH" as their client. Id. The letter states:  "WE WANT TO KEEP YOU IN YOUR HOME." Id. Although the letter asks the Mickelsons to fill out a Freddie Mac application, it does not state Freddie Mac has any ownership interest in their note or DOT. Id.

Vonnie McElligott testifies in her declaration that she received a beneficiary declaration on August 19, 2010 which stated Chase Home was either the actual holder of the Mickelsons' note *or* had the right to enforce the note. Dkt. 100 at ¶¶ 16-17, Ex. 3. On or about September 7 & 8, 2010, a notice of sale was recorded and transmitted by NWTS to the Mickelsons. Dkt. 100, at ¶¶ 18-19.  This notice did not purport to identify the owner of any promissory notes or other obligations secured by the deed of trust or the servicer of the obligations secured by the deed of trust. Dkt. 100, at Ex 4; D. Dkt. 100, at Ex. J.  Instead the notice identified Chase Home, the sub-servicer, as the Trustee's "client" (Dkt. 100, at Ex 4, p. 4) and stated the foreclosure was based on an "Obligation' in favor of Mortgage Electronic Registrations Systems, Inc., as Beneficiary, the beneficial interest in which was assigned by Mortgage Electronic Systems, Inc. MERS to Chase Home Finance LLC [***]". Id., at p. 2.

While Chase Home, the sub-servicer, worked with the Mickelsons to cure their default between August of 2008, and March of 2011, Trustee Defendants were threatening to non-judicially foreclose upon their home on behalf of this same sub-servicer.  Compare, Dkt. 101

---

Bin number (rather than MHL Funding) as the nominee and agent of MERS.

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 6

STAFNE LAW FIRM

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

at ¶¶ 3-4, Ex. A-B; with, Dkt. 106 at ¶¶ 7–17, Exs. D-K.[3] During the extended modification/foreclosure process by Trustee Defendants and Chase Home, the Mickelsons were told that their modification was going through and the foreclosure of their home was cancelled. Dkt. 106, at ¶¶ 7–17 and Exs. D-K. However, this did not halt the concurrent non-judicial foreclose, which ultimately ended in sale of the Mickelson home.

Three days after their house was foreclosed, Mrs. Mickelson was told by Kevin, a "customer service agent" of Chase, that "Chase had emailed on Wednesday, the 23[rd], asking for another 30 day extension, and that on the following day (Thursday, the 24th), Freddie Mac denied the Extension". Dkt. 106 at ¶ 17. According to Danielle Mickelson "[t]his was the first time I heard anything about Freddie Mac being involved or having the authority to grant or deny extensions." Id.

Trustee Defendants have presented conflicting evidence with regard to whether Freddie Mac acquired the Mickelsons' home by credit bid. See Fallgatter 2nd Decl. at ¶ 4, Ex. B. (Responses to Interrogatories 6 and 7). NWTS originally objected to an interrogatory, which required the Trustee to: "[i]dentify the individual or identity of the Beneficiary at the time of Trustee's sale and state forth how the beneficiary acquired such status." Id. at Ex B., p. 6 (response to interrogatory 6). NWTS contended this interrogatory sought a legal conclusion. Id. On March 14, 2012 NWTS' supplemented and amended its discovery response to interrogatory 6; which stated:

---

[3] The Mickelsons request this Court take judicial notice of dual tracking by loan servicers and trustees. See, United States of America v. Bank of America Corporation, Dist. Court of District of Columbia, Civil action no. 00361-RMC, consent judgment. Ex. A, p. A17- A21. See also, Article: *Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications*, 86 Wash. L. Rev. 755, (December 2011)(Appendix 1). The Servicers and their agents "dual track" Homeowners because there are incentives to delay modification and foreclosures. Id. at 794-96. This results causing unnecessary, inefficient, and expensive foreclosures. Id.

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 7

NWTS amends and supplements its answer to state the following:  NWTS contends that Chase Home Finance LLC was the beneficiary at the times of the trustee's sales by virtue of its status as note holder by Federal Home Loan Mortgage corporation.

Dkt. 104 at Ex. D, p. 2 (supplemented and amended response to interrogatory 6).

### III. COUNTER STATEMENT OF ISSUES

1.)   Whether under RCW 64.21.031 (7)(a) the Trustee Defendants had requisite authority to proceed with a non-judicial foreclosure sale based on a "beneficiary declaration" submitted by Susan Massie, which declared that Chase Home Mortgage was the holder of the note or was entitled to enforce the note?

2.)   Whether there is a genuine question of fact under RCW 64.21.031 (7)(a) that the Trustee Defendants had proof on September 7, 2010 that Chase Home owned the note?

3.)   Whether there is a question of fact the Trustee Defendants' performance of a MERS non-judicial foreclosure sale of the Mickelsons' residence complied with the DTA, specifically:

    A. Did Trustee Defendants' breach its duty of good faith owed to borrowers under RCW 61.24.010 (4); including for purposes of proof under RCW 64.21.030(7)(b)?

    B. Did Trustee Defendants non-judicial foreclosure under the MERS system fail to comply with those provisions of the DTA requiring disclosure of the beneficiary, note owner, and note servicer to the borrower?

4.   Whether there is a question of fact NWTS and RCO violated the Fair Debt Collection Practices Act (FDCPA) by threatening to take the Mickelsons' home pursuant to a MERS foreclosure that failed to comply with provisions and policies of the DTA?

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 8

STAFNE LAW FIRM

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

5.    Whether the Mickelsons can present sufficient evidence to establish the elements of a

Consumer Protection Act, RCW Ch. 19.86 (CPA) claim against Trustee Defendants?

## IV. ARGUMENT

### A.    Standard Of Review

As a matter of law, summary judgment, pursuant to FRCP 56(c), requires "that there

be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is material if it might affect the outcome of the

suit under the governing law. Id.  A court's review on a motion for summary judgment is

governed by the substantive law's determination of which facts are material – that is under the

applicable substantive law "which facts are critical and which facts are irrelevant." Id.

Disputes regarding "irrelevant or unnecessary" facts will be discounted, but where "the

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party," summary judgment will not be granted. Id.

Here the motion for summary judgment made by Trustee Defendants should be denied

as they are not entitled to judgment as a matter of law and/or genuine issues of fact exist.

### B.    DMFSJ's Statement Of Facts Contains Legal Conclusions Based On This Court's Previous Interlocutory Rulings, Which Are Inconsistent With Washington Supreme Court's Statutory Construction Of The DTA In Bain v. MMG.

Trustee Defendants claim that in "[e]ntering its numerous previous orders, the court

has determined most of the salient facts to be true and undisputed."  DMFSJ, p. 2:5-6. This is

untrue.[4] The interlocutory orders Trustee Defendants rely upon to establish findings of fact,

---

[4] Two of this Court's interlocutory orders (Dkt 58 and 88) were granted pursuant to the FRCP 12 (b). The Court assumes the facts set forth in the complaint are true and its task is to determine whether those facts set forth a plausible cause of action.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007). As this Court did not consider in these orders whether there were disputed facts, Defendants invite error by arguing this Court should rely on factual determinations which it did not make

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 9

STAFNE LAW FIRM

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

actually reflect conclusions of law. These orders, which assume that MERS can be a beneficiary under the DTA, include those at: <u>Dkt. 58</u> a Fed. R. Civ. Pro. 12(b)(6) ruling; <u>Dkt. 86</u> which dismissed FDCPA violations against MERS, Chase, and Freddie Mac; and, <u>Dkt. 88</u> which both granted and declined to grant a motion on the pleadings in favor of one or more Trustee Defendants with regard to the Mickelsons' DTA, Consumer Protection Act (CPA), and Fair Debt Collection Practices Act (FDCPA) claims. <u>See</u> Dkt. 58, 86, 88.

After these interlocutory orders were entered the Washington Supreme Court decided <u>Bain v. Metro. Mortgage Group, Inc.</u>, 175 Wash.2d 83, ____ P.3. ____ (2012). Trustee Defendants' near total reliance on this Court's earlier interlocutory orders for its statement of facts lead Trustee Defendants to make erroneous conclusions about the evidence they have submitted in support of their motion to this Court.[5]  In order to consider the legitimacy of Trustees Defendants' statement of facts, (significantly, that MERS assigned the deed of trust from MHL Funding Corporation to Chase Home), then the question at the outset is whether this Court prefers its early interlocutory orders control over <u>Bain</u>.

Trustee Defendants cannot state legal conclusions as facts where the legal conclusions are erroneous. "Until such time as a case is no longer *sub judice* the duty rests upon federal courts to apply state law under the rules of decision statute in accordance with the then controlling decision of the highest court." <u>Huddleston v. Dwyer</u>, 322 U.S. 232, 64 S. Ct. 1015,

---

in these 12(b) motions.  Genuine issues of material fact cannot be resolved pursuant to Rule 56 motion. <u>Anderson v. Liberty Lobby, Inc.</u>, supra.

[5] Dkt. 100 at Ex. 1 provides a good example as to how the significance of evidence changes depending upon whether this Court applies the <u>Bain</u> holdings or this Court's interlocutory rulings. It is an agreement among MERSCORP, MERS, Chase Home Finance, and RCO, purporting to give RCO and NWTS employees powers to act as beneficiaries for MERS under the DTA. Id. The Mickelsons would offer Ex. 1 as evidence of Defendants intent to violate the DTA by allowing MERS, an entity which never held the note, to transfer a beneficial interest it never had. Id. Defendant Trustees argue that this agreement gave MERS power  to allow McElligott to robo-sign documents about which she had no personal knowledge. Id.

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 10

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

84 L.Ed. 1246 (1944) (citing, Vandenbark v Owens-Illinois Glass Co., 311 U.S. 538, 543

(1941)). Under the principles of federalism this Court should follow Bain, the controlling

decision of the highest court. Vandenbark, at 542, see also, Liberty Lobby, Inc., 477 U.S. at

248.

**C.   The Trustee Defendants Did Not Have Proof That Chase Home Was The Beneficiary Before Instituting A Non-Judicial Foreclosure Or Recording The Notice Of Trustee Sale.**

Trustee Defendants' argue Chase Home, a mere sub-servicer, provided a "beneficiary

statement" which authorized them to begin Mickelson's 2010 foreclosure.[6] Dkt. 100 at Ex. 3.

The Mickelsons disagree. "The [deed of trust] Act must be construed in favor of borrowers

because of the relative ease with which lenders can forfeit borrowers' interests and the lack of

judicial oversight in conducting nonjudicial foreclosure sales." Udall v. T.D. Escrow Servs.,

Inc., 159 Wash.2d 903, 915-16, 154 P.3d 882 (2007). "Requisite[s] to a trustee's sale", within

the DTA states that:

> (7)(a) [Clause 1:] That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee **shall have proof** that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. [Clause 2:] A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be **sufficient proof** as required under this subsection.

> (b) Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as **evidence of proof** required under this subsection. [***]

RCW 61.24.030 (emphasis supplied).

---

[6] Trustee Defendants offer no evidence demonstrating authority to initially begin foreclosure proceedings in 2008.

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 11

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

What "proof" is necessary depends on the definition of "beneficiary", "owner", and "actual holder." Id. As <u>Bain</u> stated, U.C.C. art. 1's definition of "holder" is instructive where beneficiary status is claimed through transfer or assignment: "Washington's deed of trust act contemplates that the security instrument will follow the note, not the other way around. MERS is not a 'holder' under the plain language of the statute." <u>Bain</u>, 175 Wash.2d at 104. Whether that proof may be relied upon by the trustee depends on whether the trustee has violated the duty of good faith. RCW 61.24.030(2). Trustee Defendants' motion asks this Court to construe that a "person entitled to enforce" under U.C.C. art. 3 (negotiable instrument)[7] should nullify the procedural requisites under RCW 61.24.030(7); specifically they argue: "the Uniform Commercial Code, Article 3, is the applicable Washington authority to determine who is entitled to enforce a promissory note and trust deed". DMFSJ, p. 8:18-20 (<u>citing</u> <u>Bain</u> at pp. *9-10).

Trustee Defendants citation to <u>Bain</u> conflates U.C.C. art. 3-301 to the questions of proof of ownership under RCW 61.24.030(7)(a).   <u>See</u> <u>Bain</u>, 175 Wash.2d at 104-105 (rejecting MERS deed of trust, and finding "a beneficiary must either actually possess the promissory note or be the payee"). This is demonstrated by <u>Bain</u>'s disapproval of the Fourth Circuit's decision in <u>Hovarth</u>: "that UCC Article 3 controlled application of Virginia's Deed

---

[7] Under UCC Article 3, the definition of an "instrument" is complex and highly technical. Whitman, D.A., *How Negotiability Has Fouled Up the Secondary Mortgage Market, and What to Do About It*, 37 Pepp. L. Rev. 737, 747 (2010) (Appendix 2). The threshold question is whether the instrument is even negotiable. <u>See generally</u>, Id. If so, transfer is performed by endorsement, if not, transfer is performed by assignment.  In this case the Mickelsons contend their promissory note is not negotiable because "note holder" is defined so as to include only the original lender and thereafter "*anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder.*"  The language "entitled to receive payments under this note" imposes a condition on the Mickelsons' promise to pay the note to any other person.  To be negotiable an instrument must "(a) be signed by the maker or drawer; and (b) contain an unconditional promise ... and no other promise, order, obligation or power given by the maker or drawer ... ; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer." Id. (<u>citing</u> U.C.C. § 3-104(a)(1)-(2)); <u>c.f.</u>, <u>Bain</u>, 175 Wn.2d at FN 7 (raising further concerns of transparency of transfers in Secondary Market practices and MERS).

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 12

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

of Trust statute" (See Id.; Hovarth v. Bank of N.Y., N.A., 641 F. 3d 617, 620 (2011)). In

dispensing with Hovarth in such manner[8], our Supreme Court correctly implicated it is the

DTA which controls non-judicial foreclosures in Washington; not the U.C.C. See Bain, 175

Wash.2d at 105; see also, Dec. of Newman at ¶¶ 7, 15.

And in applying the DTA, the Mickelson's argue that this Court need not and should

not reach U.C.C. issues. The U.C.C. may (or may not) support a judicial determination of a

person entitled to enforce a note or obligation, e.g., whether the instrument is negotiable,

enforceable. It may also answer the question of whether Chase Home was "beneficiary" (But

see, Supra § IV B)(effect of Bain on this Court's prior determination of beneficiary status).

The issue here is satisfaction of the requisites to the trustee sale which vest authority in

Trustee's performance of sale. See RCW 61.24.030(7)(a);[9] Dec. of Newman at ¶ 7. The

U.C.C. does not provide authority or discretion for Trustee Defendants to deviate from the

plain requirements under RCW 61.24.030. RCW 61.24.030(7)(a); c.f., Bain, 75 Wash.2d at

---

[8] The Washington Supreme Court found Hovarth's almost complete reliance on the UCC, without an adequate consideration of Virginia's Deed of Trust Act to be "unhelpful":

> [***] There is no discussion anywhere in Horvath of any statutory definition of "beneficiary." While the opinion discussed transferability of notes under the UCC as adopted in Virginia, there is only the briefest mention of the Virginia deed of trust act. Compare Hovarth, 641 F.3d at 621-2 (citing various provisions of VA. CODE ANN. Titles 8.1A, 8.3A (UCC)), with id. At 623, n. 3 (citing Va. Code. Ann. § 55-59(7) (discussing deed of trust foreclosure proceedings)). We do not find Horvath helpful.

Bain, 175 Wash.2d at 105-106. Further, there are significant issues of how the U.C.C. applies to loans owned by Freddie Mac. See e.g., Dec. of Newman at Ex. 2.

[9] After the Bain decision, it is unclear whether the MERS system has resulted in voiding the security for the original loan or ascertain the effect of splitting the obligation and mortgage. See, e.g., Bain, 175 Wash. 2d at 96, FN 12 (citing 18 Stoebuck & Weaver, supra, § 18.18, at 33; and, U.S. Bank NA v. Ibanez, 458 Mass. 637, 941 N.E.2d 40 (2011)). For example, under the Restatement of Mortgages it is the parties' intent that ultimately controls whether the parties have severed the security from the note.  See Restat. 3d of Property: Mortgages, § 5.4 (and specifically Comment e and illustration 8, which provides that "in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation [***], in the absence of some additional facts creating authority in A to enforce the mortgage for B, B cannot cause the mortgage to be foreclosed since B does not own the mortgage").

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 13

STAFNE LAW FIRM
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

109 (nothing in its decision should be construed as to prevent parties from proceeding with judicial foreclosures). And, therefore, for the following reasons, Chase Home's "beneficiary declaration" does not meet the terms of subsections (a) clause 1 or 2; or, (b) satisfy the standards of granting summary judgment in Trustee Defendants' favor.

1.   *Chase's "beneficiary declaration" does not comply with (7)(a) clause 2 because the declaration made by Susan Massie was equivocal.*

Trustee Defendants' assertion that the declaration was "sufficient proof" under clause 2 of RCW 61.24.030(7) fails. "Sufficient proof" may be: "a declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust". To constitute sufficient proof, the beneficiary must state unequivocally under oath that it is the "actual holder" of the note or obligation, and the trustee must not have violated its duty of good faith.

Here, the Beneficiary Declaration provided by Chase Home, the loan's sub-servicer, to Trustee Defendants does not meet this standard because it states: "Chase Home Finance LLC is the actual holder of the promissory note or other obligation evidencing the above-referenced loan ***or*** has requisite authority under RCW 62A.3-301 to enforce said obligation." Dkt. 100 at Ex. 3 (emphasis supplied). The use of the clause "or otherwise entitled to enforce such obligation" renders the statement made by Susan Massie equivocal because no one knows whether she means: (a) Chase Home actually holds the note, or (b) Chase Home does not actually hold the note, but is entitled to enforce the note under U.C.C. Article 3. Id. Again, whether the note is enforceable under RCW 62A.3-301 constitutes a legal conclusion that a Court must make; not Mrs. McElligott, her employer, of an interested subservicer. RCW

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 14

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

61.24.030(7); see *Article: Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications*, 86 Wash. L. Rev. 755, at *777-8 (December 2011) (Appendix 1).[10]

2.    *Trustee Defendants did not have proof that Chase Home was the owner of any promissory note or other obligation secured by the deed of trust.*

Under clause 1: "for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee **shall have proof** that the **beneficiary is the owner** of any promissory note or other obligation secured by the deed of trust." RCW 61.24.030(7)(a). The question presented by Trustee Defendants' Motion is whether the Beneficiary Declaration constituted proof that on or before September 7, 2010, the stated beneficiary, Defendant Chase Home, was the owner of any promissory note or other obligation secured by the deed of trust. RCW 61.24.030(7); see Dkt. 100 ¶ 18, Ex. 4 (September 7, 2010 was the date the notice of Trustee sale was recorded).

Trustee Defendants' state "NWTS received the Beneficiary Declaration dated August 17, 2010 identifying Chase Home Finance LLC as Note holder in compliance with RCW 61.24.030(7)(a)." Dkt. 100 ¶ 16, Ex. 3.  If this conclusory statement is to be read as Trustee Defendants having proof of ownership at the time of recording the notice, then evidence of these additional relationships (including those described DMFSJ at 2:17-20) raises a dispute

---

[10] In the event the borrower is eventually foreclosed upon the trustee and servicers fees have priority to sale proceeds:

> For servicers, the true sweet spot lies in stretching out a delinquency without either a modification or a foreclosure. [***] How long a delay in the foreclosure will be profitable depends on the interplay of the servicer's ability to charge additional fees during the foreclosure, the servicer's financing costs for advances, and the time limits for proceeding through foreclosure imposed by the investor contracts and credit rating agencies. If the servicer can juggle the time limits - perhaps by offering short-term workout agreements - the prospect of increased fees may outweigh interim interest costs. Once the servicer's financing costs outweigh the incremental fees that can be extracted by maintaining a borrower in delinquency, the servicer will then choose the faster option - either a foreclosure or a modification -  all other things being equal.

Appendix 1 at *777-8 (December 2011).

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 15

of fact over proof of ownership. Indeed the beneficiary declaration speaks for itself, wholly neglecting the actual owner, Freddie Mac.

However, based on Trustee Defendants' amended and supplementary discovery response that NWTS filed in March, 2012, the record supports only the conclusion that Freddie Mac, not Chase Home, was the Owner. Dkt. 104 at Ex. A (Responses to Interrogatories). Therein, NWTS "contends that Chase Home Finance LLC was the beneficiary at the times of the trustee's sales by virtue of its status as note holder by Federal Home Loan Mortgage Corporation". See Dkt. 59, (Decl. of Andrew Krawczyk) at ex. A.

A party must be entitled to summary judgment as a matter of law. See Supra. § IV A. In sum, the requisite standard is proof of ownership is RCW 61.24.030(7)(a). If the only evidence proffered in support of Trustee Defendants' motion for summary judgment, is the declaration of Susan Massie, then this motion should fail because the declaration is immaterial: it says nothing about Chase Home having ownership of the note or other obligation at the time they issued notices. Alternatively, there is a genuine dispute of fact, based on the record, as to what NWTS did and did not have in terms of proof prior to sending the notice of trustee sale.

*3.   If the Trustee Defendants violated their duty of good faith to the Mickelsons before Declaration was Received, then Sale may not occur.*

If the trustee, by its prior actions (discussed infra. § IV E), violates their duty of good faith, then even if the declaration under RCW 61.24.030(7)(a) was properly made, subsection (b) precludes its use as authority to act as trustee and/or generates an issue of fact as to proof. Therefore as a matter of law, if this court finds a breach of the Trustee's duty of good faith before September 7, 2010, then no sale may occur by such Trustee.

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 16

**S T A F N E   L A W   F I R M**

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

**D.    Summary Judgment is Not Proper Where Trustee Defendants Violated The DTA, And Its Legislative Policies, By Not Identifying the Parties' And Their Status In Their Notices.**

> Washington's deed of trust act should be construed to further three basic objectives. First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles.

Bain, 175 Wash.2d at 94 (citing Cox v. Helenius, 103 Wash.2d 383, 389, 693 P.2d 683

(1985); Peoples Nat'l Bank of Wash. v. Ostrander, 6 Wash. App. 28, 491 P.2d 1058 (1971);

Joseph L. Hoffmann, *Comment, Court Actions Contesting the Nonjudicial Foreclosure of*

*Deeds of Trust in Washington*, 59 Wash. L. Rev. 323, 330 (1984). As the Court also

commented recent legislation has been designed to "Create a framework for homeowners and

beneficiaries to communicate with each other to reach a resolution and avoid foreclosure". Id.

at 102-03 (citing Laws of 2011, ch. 58, § 1).

RCW 61.24.030(8) states in relevant part:

> (8) That at least thirty days before notice of sale shall be recorded, transmitted or served, written notice of default shall be transmitted by the beneficiary or trustee to the borrower and grantor at their last known addresses by both first-class and either registered or certified mail, return receipt requested, and the beneficiary or trustee shall cause to be posted in a conspicuous place on the premises, a copy of the notice, or personally served on the borrower and grantor. This notice shall contain the following information:
> *          *          *
> (l) In the event the property secured by the deed of trust is residential real property, the name and address of the ***owner of any promissory notes or other obligations secured by the deed of trust*** and the name, address, and telephone number of a party acting as a ***servicer of the obligations secured by the deed of trust***.

RCW 61.24.030 (8). After this process a notice of sale may be sent by the trustee setting the

date of the sale. See RCW 61.24.040(1). In addition to a notice of trustee sale being sent to

various parties including the borrower, the statute requires:

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 17

S T A F N E   L A W   F I R M
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

(2) In addition to providing the borrower and grantor the notice of sale described in subsection (1)(f) of this section, the trustee shall include with the copy of the notice which is mailed to the grantor, a statement to the grantor in substantially the following form:

NOTICE OF FORECLOSURE

Pursuant to the Revised Code of Washington,

Chapter 61.24 RCW

The attached Notice of Trustee's Sale is a consequence of default(s) in the obligation to ......, the Beneficiary of your Deed of Trust and owner of the obligation secured thereby.

RCW 61.24.040(2). It is apparent from the above DTA provisions that the legislature intended identification of the owner of the promissory note to the borrower. Further, based on the language of RCW 61.24.030(8)(l), it appears that the legislature did not anticipate the owner of the note and the servicer could be misrepresented by Trustee Defendants to the home owners as being one and the same throughout the non-judicial process.

MERS argued to the Supreme Court in <u>Bain</u>, as it, and Defendant Trustees, do here, that borrowers only need to know the servicer's identity and where to pay money. <u>See e.g.</u>, <u>Bain</u>, 175 Wash.2d at FN 7; Dkt. 104 at Ex. A.[11] The Washington Supreme Court rejected this contention because note owners have different interests than servicers. <u>Id.</u>[12] The Supreme Court observed the DTA contemplated borrowers would know and have access to interested

---

[11] MERS states in its discovery responses to interrogatories 5, 6, 7, and 10: "[T]he [borrower] should be indifferent as to who own the note or who has an interest in the note so long as it does not affect their ability to pay." Dkt. 104 at Ex. A, pp. 8-10, 14.

[12] The Washington Supreme Court rejects this analysis. In the text of its opinion, the Court states: "[u]nder the MERS system, questions of authority and accountability arise, and determining who has authority to negotiate loan modifications and who is accountable for misrepresentation and fraud becomes extraordinarily difficult. <u>See Bain</u>, 175 Wash.2d at 97-98." The decision notes numerous law review articles to show there is considerable reason to believe that servicers will not or are not in a position to negotiate loan modifications or respond to similar requests. <u>Id.</u>, at FN 7. Each of these law review articles has been submitted with this brief for this Court's review (Appendix 1-4).

RESPONSE TO DEFENDANTS NWTS, MCELLIGOTT, AND RCO'S MOTION FOR SUMMARY JUDGMENT - 18

stakeholders, not just servicers, so that meaningful discussions could occur. See Bain, 175 Wash.2d at 100-103 and note 7 ("The legislature was attempting to create a framework where the stakeholders could negotiate a deal in the face of changing conditions").

While not directly addressed in their motion, Trustee Defendants implicitly argue that they met the notice requirements. See e.g., DMFSJ at 4:23-24, 8:1-3, 10:10-11. Mickelsons argue in response, that the failure to have the owner identified in the notices is a violation, propounds additional problems in transmittal of non-judicial notices, and fails to provide them adequate opportunity to prevent wrongful foreclosure or communicate with the proper parties to reach a resolution and avoid foreclosure. See RCW 61.24.030(8)(l); RCW 61.24.040(2). The MERS foreclosure system is based on the premise that there is no need for the interested parties and stakeholders to have access to one another for purposes of averting non-judicial foreclosures.  This, however, is not the case in Washington, where non-judicial foreclosures are controlled by the DTA.  As our Supreme Court observed, depending on the facts:  "The MERS system may be inconsistent with our second objective when interpreting the deed of trust act: that "the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure."  Bain, 175 Wash.2d at 98.  The facts present in this case represent exactly such a situation.

Under the aforementioned provisions, the Trustee has a duty to identify the owner (and servicer) to the borrower. Here the facts in the record show the owner had not been identified to the Mickelsons until after the non-judicial foreclosure sale occurred.  Neither the notice made pursuant to RCW 61.24.030(8)(l) nor notice under RCW 61.24.040(2) identified the owner. See Dkt. 29-1 at Ex. G, pp. 5-6; Dkt. 107 at Ex. E. Further, Danielle Mickelson

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 19

S T A F N E   L A W   F I R M

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

testifies that she only found out that Freddie Mac had been the owner after the sale. D. Dkt. 107 at ¶ 17; D. Mickelson 2nd Decl. at ¶ 8, Ex. B.

Based on the foregoing, it is undisputed that there was a failure of the trustee to identify Freddie Mac in the aforementioned notices. Alternatively, Defendant Trustee will assert some yet to be presented, and objectionable evidence, thereby raising a genuine issue of fact. In either case, summary judgment should not be granted in favor of the Trustee Defendants.

**E.     Trustee Defendants Breached Duty Of Good Faith To Borrower**

Again trying their argument to the Beneficiary Declaration, Trustee Defendants argue they committed no breach of good faith because they are entitled to rely on beneficiary representation and that the trustee is not required to have proof before issuance of notice of default. DMFSJ at 7. Therein citation is made to Black's Law Dictionary, 701 (7th ed. 1999)(good faith is "absence of intent to defraud or to seek unconscionable advantage") and Indus. Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 792 P.2d 520 (1990). Id. A more current and comprehensive definition of good faith includes:

> A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage.

*Good Faith*, Black's Law Dictionary, 713 (Deluxe 8th ed. 1999); see also, Columbia Park Golf Course, Inc. v. City of Kennewick, 160 Wash. App. 66, 98, FN 11 (Wash. Ct. App. 2011)(citing  State v. Sizemore, 48 Wash. App. 835, 837, 741 P.2d 572, review denied, 109 Wash.2d 1013 (1987) (noting good faith also has other definitions such as in the instance of insurance contracts like those considered in Kallevig)).

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 20

Here, Mickelsons provide facts demonstrating Trustee Defendants breached this duty, including transferring beneficial interest in the Deed of Trust without legal authority to do so, and initiating foreclosure proceedings against the Mickelsons prior to obtaining **any** proof verifying Chase's actual ownership of the "promissory note or other obligation secured by the deed of trust." RCW 61.24.030(7)(a). Trustee Defendants argue that McElligott was a proper agent for MERS and therefore had lawful authority to assign MERS beneficial status to someone else misses the point.  Under <u>Bain</u>, MERS never was a beneficiary under the DTA and could not assign a status it did not have.  <u>See</u> <u>Bain</u>, at 175 Wn.2d at 111-12.  The agreement attached to Vonnie McElligott's declaration as Exhibit 1 cannot change this. Id. The execution and performance of that contract simply incorporates Trustee Defendants into an agreement which violates the DTA and results in illegal non-judicial foreclosures.

## F.    RCO and NWTS violated 15 U.S.C. 1692 (6)

Here, the Trustee Defendants implicitly admit they conflated the servicer or sub-servicer's rights to collect payment with ownership of the promissory note, obscuring the actual identity of the beneficiary/note owner from the borrower.  This violates numerous DTA provisions, and the second policy of the DTA, namely, promoting cooperation between the beneficiary and the borrower. <u>See e.g.</u>, <u>Udall</u>, 159 Wash.2d at 915-16. The facts in this case show the whole purpose for the appointment of the successor trustee *by an employee of the successor trustee* was to perpetrate a non-judicial foreclosure on behalf of someone other than the beneficial owner of the note, i.e. the true stakeholder, while, simultaneously, hiding this omission from the Mickelsons.

RCO and NWTS conduct violated 15 U.S.C. 1692(f)(6). The FDCPA makes it illegal for a debt collector to "take or threaten to take any non-judicial action to effect dispossession

or disablement of property if -- there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).  In refusing to dismiss the Mickelsons claims that RCO and NWTS violated 15 U.S.C. § 1692f(6)(A), this Court stated:

> Plaintiffs plausibly allege NWTS and RCO violated § 1692f(6) by trying to foreclose on a debt when it was unaware if the debt was properly owed to Chase. Plaintiffs allege that NWTS did not have sufficient knowledge of Chase's status as the beneficiary at the time of foreclosure.

Dkt. 88, p 9:7-9. The same facts establishing that Trustee Defendants had no right to non-judicially foreclose under the DTA are determinative of whether RCO and NWTS violated 15 U.S.C. § 1692f(6)(A) by threatening to foreclose on behalf of Chase Home.

Contrary to Trustee Defendants' arguments, a question of fact exists as to whether RCO, (who referred to its client Chase Home, a mere sub-servicer), was acting as the lawyer for a valid beneficiary as that term is defined by RCW 64.21.005 (2).  A jury could find RCO was acting on behalf of Chase Home, and that sub-servicer Chase Home, had no rights to bring or threaten a non-judicial foreclosure under the DTA.

Similarly, the issue of whether NWTS had the authority to non-judicially foreclose or threaten to do so, based on the beneficiary declaration and NWTS' contention that "Chase Home Finance owned the note by Freddie Mac" is challenged both legally and factually by the Mickelsons.  Trustee Defendants were not entitled to foreclose under the DTA on behalf of a sub-servicer without a proper declaration or disclosing the name of the owner or servicer. Thus NWTS had absolutely no right to threaten to take Mickelsons' home; let alone do so.

## G.   Trustee Defendants Have Presumptively Violated The CPA

This Court decided the Consumer Production Act issues in its previous interlocutory

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 22

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

orders differently than did the Supreme Court in <u>Bain</u>. This Court held:

> Plaintiffs' first claim is misguided as to MERS. Plaintiffs seem to contend that
> MERS cannot be a beneficiary to the deed of trust because it cannot be the
> nominee and beneficiary. This argument is flawed. There is no legal reason
> why MERS cannot be the beneficiary, as that term is defined in the DTA.

Dkt. 58, pp. 7:14-8:6. However, the Supreme Court held "While we are unwilling to say it is

per se deceptive, [***] characterizing MERS as the beneficiary has the capacity to deceive

and thus, for the purposes of answering the certified question, presumptively the first element

is met." <u>Bain</u>, 175 Wn.2d at 117. Further, unlike this Court in its earlier orders, the

Washington Supreme Court unanimously held that MERS and its associated entities' practices

relating to treating MERS as the beneficiary was sufficiently wide spread so as to meet the

public interest requirement of the CPA.

> [T]here is considerable evidence that MERS is involved with an enormous
> number of mortgages in the country (and our state), perhaps as many as half
> nationwide. John R. Hooge & Laurie Williams, *Mortgage Electronic
> Registration Systems, Inc.: A Survey of Cases Discussing MERS' Authority to
> Act*, Norton Bankr. L. Advisory No. 8, at 21 (Aug. 2010). If in fact the
> language is unfair or deceptive, it would have a broad impact. This element is
> also presumptively met.

<u>Id.</u>, 175 Wn.2d at 118. The Supreme Court also held that borrowers who could not get in

contact with the actual beneficiary or owner of the note could be harmed for purposes of the

CPA, (<u>Id.</u> 175 Wn.2d at 118-119) even if this harm could be deduced from the language of the

illegal deed of trust at the outset. <u>See Id.</u> at 107-09 (where the Supreme Court declines to

allow the parties to a deed of trust instrument to contract around the provisions of the DTA).

The Supreme Court also distinguishes <u>Cervantes v. Countrywide Home Loans, Inc.</u>, 656 F.2d

1034 (9th Cir. 2011) as not involving an attempt to contract around the terms of the Nevada

deed of trust statute. <u>See Bain</u> 175 Wn.2d at 105.

S T A F N E   L A W   F I R M

239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

The Mickelsons present evidence that they have been harmed under the CPA. Mrs. Mickelson testified that had they been able to get their mortgage modified at about the time they first defaulted they likely could have obtained family help to pay a reasonable modification. Further, the money the Mickelsons paid during the time they were dual tracked and after the foreclosure was used to pay trustee fees by the servicer. Dec. of Josh Auxier at ¶¶ 25-31; see e.g., Fallgatter 2nd Decl. at Ex. C. There was a substantial waste of time and resources related to dual tracking and a tremendous amount of emotional distress. See generally, D. Mickelson 2nd Decl. at ¶¶ 4-7. Finally, the Mickelsons hired a lawyer, and paid fees, to fight against the MERS system nonjudicial foreclosure, which had never been properly implemented under the DTA for the reasons set forth above. These costs constitute harm under the CPA. C.f., Burkart v. Mortgage Elec. Registration Sys., 2012 U.S. Dist. LEXIS 140794, at *13 (Among the reasons that the CPA claim is plausible is that the Burkarts can plausibly point to an injury—they contend they incurred late fees and other charges as a result of BofA's misconduct in the loan modification process).

## V. CONCLUSION

For the foregoing reasons the Motion for Summary Judgment of the Trustee Defendants should be denied.

Respectfully Submitted this 8th day of October, 2012. By

STAFNE LAW FIRM

_____/s/ Scott E. Stafne_____
Scott E. Stafne, WSBA 6964
Jocelynne R. Fallgatter, WSBA 44587
239 N. Olympic Ave
Arlington, WA 98223
scott.stafne@stafnelawfirm.com
stafnelawfirm@aol.com

RESPONSE TO DEFENDANTS NWTS,
MCELLIGOTT, AND RCO'S MOTION FOR
SUMMARY JUDGMENT - 24

<u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on October 8, 2012, I caused to be electronically filed, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred B. Burnside: fredburnside@dwt.com
Rebecca J. Francis: RebeccaFrancis@dwt.com
Heidi E. Buck: hbuck@rcolegal.com
Andrew Gordon Yates: yatesa@lanepowell.com
John S. Devlin, III: devlinj@lanepowell.com
Erin McDougal Stines: erin.stines@fnf.com

DATED this 8th day of October, 2012 at Arlington, WA.

_____/s/ Shaina Dunn___
Shaina Dunn
Stafne Law Firm

CERTIFICATE OF ELECTRONIC SERVICE - 1