The Honorable Judge Marsha J. Pechman

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| TRAVIS MICKELSON, DANIELLE H. MICKELSON, and the marital community thereof,<br><br>Plaintiffs,<br><br>v.<br><br>CHASE HOME FINANCE, LLC, et al.<br><br>Defendants. | No. 11-01445-MJP<br><br>**DEFENDANTS NWTS, RCO, AND MCELLIGOTT'S REPLY TO MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTED FOR CONSIDERATION: OCTOBER 12, 2012** |

Defendants Northwest Trustee Services ("NWTS"), Vonnie McElligott ("McElligott") and Routh Crabtree Olsen, P.S. ("RCO") (collectively, "Defendants") respectfully submit the following in reply to Plaintiffs' Response to Defendants NWTS, McElligott, and RCO's Motion for Summary Judgment.

## I.      REPLY INTRODUCTION

Based on the Court's Order Granting in Part and Denying in Part Defendants' Motion for Judgment on the Pleadings, which significantly narrowed the issues in this matter,[1] Defendants submitted their Motion for Summary Judgment. In response, Plaintiffs re-argue claims and theories previously rejected by the Court and improperly set forth new claims, most of which go far beyond the issues presently before the Court.

---

[1] The Court determined that the remaining claims for DTA Violation, Breach of Duty of Good Faith, and FDCPA violation against NWTS turned on whether NWTS had sufficient knowledge Chase was the Beneficiary as required by RCW 61.24.030(7). Dkt. 88. The Court determined the remaining claim under the CPA as to McElligott and NWTS turned on whether it could be proven that McElligott had proper authority to sign on behalf of MERS. *Id.*

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S REPLY TO MOTION FOR SUMMARY JUDGMENT – PAGE 1 OF 13 - CASE NO. 11-01445-MJP

ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## II. EVIDENTIARY OBJECTIONS.

**A. The Court Must Strike the Declarations of Danielle Mickelson, Josh Auxier, and Shawn Newman because they present inadmissible irrelevant material.**

Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. F.R.E. 401. Under Federal Rule of Evidence 402, evidence that is not relevant is inadmissible.

The Declaration of Danielle Mickelson makes scant reference to NWTS. In fact, by Mickelson's very own testimony, it is clear that the Mickelsons had no contact with Defendants after 2008. Thus, testimony offered by Danielle Mickelson has no relevance to NWTS' conduct in regard to the 2010 nonjudicial foreclosure that is at issue.

Second, Josh Auxier "testifies" that Defendant RCO represented both Chase and NWTS. Auxier also testifies as to whether he believes the Mickelsons were "dual tracked." Dkt. 111, ¶ 19. Defendants do not dispute that the law firm, Routh Crabtree Olsen, P.S. has represented both Defendant Chase and NWTS, and such representation has absolutely no bearing on whether (1) NWTS had sufficient proof as required by RCW 61.24.030(7)(a) in conjunction with the 2010 foreclosure, (2) whether NWTS and RCO had sufficient proof the debt was owed to Chase, and (3) whether McElligott had authority to sign the assignment on behalf of MERS. Auxier's testimony on such representation is therefore completely unhelpful and irrelevant.

Furthermore, the question of whether the Mickelsons were "dual tracked" is irrelevant. The Court previously determined allegations relating to "dual tracking" were insufficient and dismissed the claim as to RCO and NWTS. Dkt. 88.

Third, the Newman Declaration attacks the underlying "MERS System" as well as an attack on the Federal Home Loan Mortgage Corporation ("Freddie Mac") and Federal National Mortgage Association ("Fannie Mae"). Given that the instant motion is in reference to Defendants NWTS, RCO, and McElligott and both Defendants MERS and Freddie Mac have already been dismissed from this action, the Newman Declaration is wholly and completely irrelevant to the issues before the court. Accordingly, it should be stricken in entirety.

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 2 OF 13 - CASE NO. 11-01445-MJP

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

### III. REPLY ARGUMENT

**A. Defendant NWTS properly relied upon the records and pleadings on file with the Court to support its motion for summary judgment.**

NWTS may rely on established and uncontroverted facts based on the pleadings and records of the court. *See* Fed. R. Civ. P. 56(c)(1)(A) (A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to particular parts of materials in the record, including documents, affidavits or declarations.). Here, NWTS cited to the previous declarations submitted by Defendant Chase testifying it was the note holder since on or about June 26, 2006. *See* Dkt. 38 and 74. NWTS also cited to the Order granting summary judgment to Defendant Chase, which relied upon Chase's declaration testifying to its note holder status. Dkt. 86. Additionally, NWTS relied upon facts set forth Plaintiffs' complaint and the documents that were attached thereto. *See* Dkt. 29.

To the extent, as Plaintiffs suggest, NWTS erroneously attempted to rely on "interlocutory orders," (See Dkt. 58 and 88), even if the court ignores such orders, it may still rely on the declarations previously submitted as well as any final orders in the matter with or without the urging of NWTS to establish Chase's status as note holder. *See* Fed. R. Civ. P. 56(c)(3) ("The court…may consider other materials in the record."); *see also* Dkt. 29, 38, 74, 86.

The Washington State Supreme Court's decision in *Bain v. Metropolitan Mortgage Group, Inc*. does not change the facts established in this case or Defendants' ability to rely on those facts. Furthermore, NWTS does not rely on any previous documents, pleadings, or orders entered by this court to support its assertion that the Vonnie McElligott was authorized to execute the assignment. Rather, NWTS' motion relies on the Agreement, which was authenticated by McElligott's declaration. Dkt. 100, Ex. 1.

**B. Plaintiffs are barred under the Law of the Case doctrine from re-arguing claims and theories previously rejected by this Court.**

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case... A

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 3 OF 13 - CASE NO. 11-01445-MJP

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

court may have discretion to depart from the law of the case where 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion. *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997) (citing *Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir.), cert. denied, 508 U.S. 951 (1993)). The law of the case doctrine extends to both findings of fact and conclusions of law made in prior decisions. *See Walker v. Mortham,* 158 F.3d 1177, 1185 n.13 (11th Cir. 1998); *Carson Harbor Vill., Ltd. v. Unocal Corp.,* 287 F. Supp. 2d 1118, 1158, n.222 (C.D. Cal.), *aff'd,* 433 F3d 1260 (9th Cir. 2006).

Defendants recognize Plaintiffs' Motion to Vacate and Reconsider is currently pending before the Court. Dkt. 94. However, for all intents and purposes, the Orders, although they have been challenged by Plaintiffs, are currently in effect. Moreover, as briefed by Defendants in their joint response to Plaintiff's Motion to Vacate and Reconsider, Plaintiffs' Motion should fail. *See* Dkt. 108.

### 1. Dual Tracking

The Court previously determined Plaintiffs allegation that "RCO engaged in dual tracking" was insufficient and dismissed Plaintiffs' CPA claim as to RCO. Dkt. 88. Now, Plaintiffs renew their arguments relating to "dual tracking" to support a CPA claim against NWTS and McElligott. Yet, the remaining CPA claim as to NWTS and McElligott relates to whether McElligott had authority to assign the deed of trust on behalf of MERS. Accordingly, Plaintiffs' allegations of damages resulting from any alleged "dual tracking" is irrelevant and appears to simply be an improper attempt to renew claims based on their previously insufficient allegations of "dual tracking."

### 2. CPA claim against MERS

Plaintiffs claim this Court wrongly determined that Plaintiffs' CPA claim was misguided toward MERS because the Washington Supreme Court later determined "characterizing MERS

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 4 OF 13 - CASE NO. 11-01445-MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

as the beneficiary has the capacity to deceive and thus…the first [CPA] element is met." *Bain*, * 117. However, the present motion does not involve MERS and it does not address Plaintiffs', now dismissed, CPA claim as to MERS. This appears to be an inappropriate attempt to renew the CPA claim against MERS.

### 3. Setting Aside the Sale.

The Court previously dismissed Plaintiff's quiet title claim and challenge to the completed trustee's sale. Dkt. 58 (reconsideration denied. Dkt. 66). Now, Plaintiffs attempt to renew their challenge to the completed sale through the erroneous statement that "if this court finds a breach of the Trustee's duty of good faith before September 7, 2010, then no sale may occur by such Trustee."[2] Dkt. 110, *16. As has been previously argued, the law is clear in Washington, even where there would have been grounds to restrain or challenge a trustee's sale, failure to do so prior to the trustee's sale, results in waiver of any right to challenge or set aside the sale. *See Plein v. Lackey*, 67 P.3d 1061, 1066 (Wash. 2003); *Brown v. Household Realty Corp.,* 146 Wn. App. 157, 160, 189 P.3d 223 (2008); *and see* RCW 61.24.127.

Furthermore, even if the court determined setting aside the sale was an available remedy, before the court could do so, Plaintiff must show prejudice. *See Amresco Independence Funding, Inc. v. SPS Properties, LLC*, 119 P.3d 884, 886–87 (Wash. Ct. App. 2005) (citing *Koegel v. Prudential Mut. Sav. Bank*, 752 P.2d 385, 388 (Wash. Ct. App. 1988). In *Koegel*, the court declined to invalidate a sale where Plaintiff identified "technical, formal error[s], non-prejudicial, and correctable." *Koegel*, 752 P.2d at 388. Thus, even where technical errors exist, like those asserted here, Plaintiffs are not entitled to challenge the completed sale. *Id*.[3]

---

[2] Plaintiffs assert the trustee's authority is vested through its satisfaction of the statutory requisites to a trustee's sale. Dkt. 110, *13. This is incorrect. Pursuant to RCW 61.24.010, upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.

[3] The court in *Cervantes* noted examples of prejudice. *Cervantes,* 656 F.3d at 1043. They included circumstanced where no default actually occurred. *See* also *Ed Peters Jewelry Co.*, 124 F.3d 252, 263 n.8; *Mechanics Nat'l Bank of Worcester v. Killeen,* 384 N.E.2d 1231, 1236 (Mass. 1979)); *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571 (Mo. Ct.App. 2009; *Gregorakos v. Wells Fargo Nat'l Ass'n*, 647 S.E.2d 289, 292 (Ga. Ct. App. 2007); *Collins v. Union Fed. Sav. & Loan Ass'n,* 662 P.2d 610, 623 (Nev. 1983).

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 5 OF 13 - CASE NO. 11-01445-MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**C. Plaintiffs overstate the applicability of *Bain*[4] to the present case.**

As set forth in Defendants' Joint Response to Plaintiffs' Motion to Vacate, the decision in *Bain* is inapplicable to the present case because Chase's (and NWTS') authority to enforce the Note and Deed of Trust was based on Chase's possession of the blank endorsed Note, not on the assignment of deed of trust from MERS. *See* Dkt. 108. Nothing in *Bain* discredits the evidence submitted by Defendant Chase to establish it as the note holder. *See Bain v. Metropolitan Mortgage Group, Inc.*, __ P.3d __, 2012 WL 3517326 (Wash. Aug. 16, 2012) (note holder is beneficiary).

Additionally, the *Bain* decision has no bearing on the issues presented in the present motion. In *Bain*, the Court did not address whether an assignment of deed of trust executed pursuant to a Signing Agreement among MERS, the Beneficiary, and the agent signer was sufficient to properly show an agency relationship existed. Nor did *Bain* discuss what constitutes compliance with RCW 61.24.030(7)(a) by the trustee or whether completing nonjudicial foreclosure under a MERS deed of trust amounts to a *per se* breach of the trustee's duty of good faith. *See Bain v. Metro. Mortg. Group, Inc.*, 285 P.3d 34, 2012 WL 3517326 (Wash. 2012).

The *Bain* Court did, however, note that the question of whether a cause of action under the Consumer Protection Act ("CPA") can be stated against a foreclosure trustee who relied in good faith on MERS' apparent authority to appoint a successor trustee was "far outside the scope of the certified question," and ultimately declined to consider the question. *Bain*, 2012 WL 3517326, *15 at Fn 17. Similarly, here the Plaintiffs attempt to rely on *Bain* as determinative on issues that are far outside the scope of what was considered and determined in *Bain*. In sum, *Bain* is not instructive on the trustee's compliance with its duties under the DTA nor is it instructive on whether the Signing Agreement authorized McElligott to sign.

**D. Plaintiffs fail to set forth any genuine issue of material fact that precludes summary judgment in Defendants favor as to their claims under the DTA.**

---

[4] Plaintiffs' Motion to Vacate has been fully briefed and is currently pending. Dkt. 94 and 108. To the extent Plaintiffs attempt to re-argue the issues presented in their Motion to Vacate, Defendants incorporate by reference the arguments in response thereto set forth in Defendants' Joint Response to Plaintiffs' Motion to Vacate. *See* Dkt. 108.

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 6 OF 13 - CASE NO. 11-01445-MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

### 1. The declaration received by NWTS complied with RCW 61.24.030(7)(a) and NWTS was not required to obtain additional proof to proceed.

There is no dispute that NWTS received a declaration pursuant to RCW 61.24.0307(a). There is no dispute that NWTS received the declaration in advance of recording the subject notice of trustee's sale. Yet, Plaintiffs assert that the declaration did not suffice and NWTS was not entitled to rely on the declaration. Moreover, Plaintiffs assert NWTS must have obtained independent additional proof that Chase also owned the Note. *See* Dkt. 110.

Plaintiffs' present argument is akin to a previous argument they advanced that in order to satisfy its duty of good faith, an original trustee under a trust deed must undertake a separate investigation as to whether signatures on papers appointing the successor beneficiary and trustee were valid or forgeries. *See* Dkt. 35, *5. This Court concluded that such a view was unreasonable and the "duty of good faith extends only to ensuring that there are no obvious or known defects in the documents replacing the trustee." *See* Dkt. 35, *6.

Here, Plaintiffs again "propose an untenable and expansive view of the duty of good faith of the trustee to a deed of trust" by imposing a duty upon the successor trustee to "second guess" and undertake its own investigation into the reliability of every beneficiary declaration it receives. *Id.* Just as such a duty was unreasonable and too great as to the original trustee, so is it here. Moreover, this was surely not what the legislature intended in providing that "the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection." RCW 61.24.030(7)(b).

NWTS was entitled to rely on the declaration provided to it by Chase on or about August 19, 2010. The declaration attested, under the penalty of perjury, that Chase was the actual Note holder. *See* Dkt. 100 at ¶ 16 and Exhibit 3 attached thereto. Plaintiffs offer no support or authority for their assertion that the trustee is required to seek additional forms of proof to comply with RCW 61.24.030(7)(a) when it receives such a declaration. Based on the sworn declaration of NWTS employees, NWTS received, in advance of issuing the notice of sale, the required proof under RCW 61.24.030(7)(a) and relied on such declaration as is contemplated by

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 7 OF 13 - CASE NO. 11-01445-MJP

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   the DTA. The law requires nothing more.

2   Moreover, Plaintiffs assertion that NWTS was obligated to obtain additional proof Chase
3   was the Note owner is inconsistent with the law and creates an absurd result. "The issue of
4   ownership, however, is largely immaterial...[b]ecause under Washington law the focus of the
5   analysis is on who is the holder of the note, and thus the beneficiary under the [DTA], Plaintiff's
6   concern should be whether he knows who to pay." *In re Reinke*, BR 09-19609, 2011 WL
7   5079561 at *11 (Bankr. W.D. Wash. Oct. 26, 2011) (citing *Veal v. American Home Mortg.*
8   *Servicing, Inc. (In re Veal)*, 450 B.R. 897, 912 (9th Cir. BAP 2011)). Chase has set forth
9   uncontroverted evidence that it was the Note holder entitled to enforce the Note and Deed of
10  Trust through nonjudicial foreclosure at all times relevant, and the Court has agreed. Yet, under
11  Plaintiffs' view, the trustee may only foreclose on behalf of the note **owner** despite the fact (1)
12  that the DTA defines beneficiary as the note holder (RCW 61.24.005(2)), (2) under the U.C.C.,
13  the note holder is entitled to enforce the note (RCW 62A.3-301), and (3) the trustee was in
14  receipt of a declaration from the actual note holder as required by RCW 61.24.030(7)(a). As has
15  been discussed and briefed at length in this matter[5], the Note holder is entitled to enforce the
16  Note and Deed of Trust through nonjudicial foreclosure. Thus, Plaintiffs' view that would
17  impose additional requirements on the trustee when it has complied with what is required of it
18  under the DTA should be rejected.[6]

---

[5] As Defendants (through their Joint Response to Plaintiff's Motion for Reconsideration) previously provided, "Plaintiffs acknowledge that Chase was acting as servicer for Freddie Mac, see Am. Compl. ¶ 2.11, and thus Freddie Mac was Note owner but Chase was Note holder with the right to foreclose. *See, e.g., Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 2011 WL 4899957, *4 (W.D. Wash. 2011) ('even if a lender sells a loan to Fannie Mae, the lender's possession of the Note endorsed in blank means that it may foreclose in its own name'); *In re Veal*, 450 B.R. 897, 912 (9th Cir. BAP 2011) ('one can be an owner of a note without being' a holder). Although the Trustee's discovery responses—subsequently corrected—initially identified Freddie Mac as the entity purchasing the property at the sale (because it received the Trustee's Deed), the Trustee's Deed attached to the Complaint shows that Chase was the entity that bid at the sale." Dkt. 61, *2.

[6] It is NWTS' position that the term "owner" is misused as a synonym for the term "holder" in RCW 61.24.030(7)(a). The terms are not synonymous. *In re Veal*, 450 B.R. 897, 912 ("one can be an owner of a note without being' a holder."). The term "owner" is not defined in Articles 3 or 9 of the UCC, or in the Deed of Trust Act. RCW 62A.3-103 (negotiable instruments); RCW 62A.9A-102 (secured transactions); RCW 61.24.005. Rather, as discussed herein, under both the DTA's definition of beneficiary and the U.C.C., the note holder is the party

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S REPLY TO MOTION FOR SUMMARY JUDGMENT – PAGE 8 OF 13 - CASE NO. 11-01445-MJP

ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## 2. **Plaintiffs fail to set forth evidence that NWTS breached its duty of good faith based on its conduct in carrying out the nonjudicial foreclosure.**

As discussed in Defendants' motion for summary judgment, Plaintiffs' breach of duty of good faith allegation may only support a post-sale damages claims as allowed under RCW 61.24.127 in light of Plaintiffs' failure to wage a pre-sale challenge. RCW 61.24.127 allows a post sale damages claim for failure of the trustee to **materially** comply with RCW 61.24 *et seq*. The DTA does not define "material." *See* RCW 61.24 *et seq*. Yet, in analyzing whether prejudice has been shown in a similar context, courts have determined that "technical, formal error[s], non-prejudicial, and correctable" are insufficient to show prejudice. *See Koegel*, 752 P.2d at 388. Similarly, technical, formal, nonprejudicial and correctable errors should be deemed immaterial in the context of a claim under RCW 61.24.127. Here, Plaintiffs fail to demonstrate material non-compliance with the DTA that resulted in a breach of NWTS' duty of good faith that could support a claim under RCW 61.24.127.

Plaintiffs allege that the notice of default and notice of trustee's sale did not comply with DTA because the documents did not identify the note owner and such failure resulted in the "Mickelsons not knowing the identity of the owner of their note during the pendency of the foreclosure process, and their inability to access such owner for purposes of averting a wrongful foreclosure." Dkt. 110, *2. Even if Plaintiffs could show that the notice of default and notice of trustee's sale improperly failed to identify Freddie Mac as the note owner, such alleged errors were not prejudicial to Plaintiffs nor do they constitute material noncompliance.

First, as the note owner,[7] Freddie Mac does not deal directly with borrowers. Rather, Freddie Mac grants sweeping authority to its servicer (the note holder) to "act in the most time, efficient and responsible manner to protect Freddie Mac's interests."[8] Additionally, Freddie Mac

---

entitled to enforce the Note and Deed of Trust through nonjudicial foreclosure. *See* RCW 61.24.005(2) and RCW 62A.3-301.

[7] "Under established rules, the maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note. *In re Veal*, 450 B.R. 897, 912 (9th Cir. BAP 2011).

[8] Defendants request the Court to take judicial notice of the Freddie Mac Servicer Guide pursuant to Fed. R. Ev. 201 (A court may take judicial notice of facts that are "not subject to reasonable dispute."). The Freddie Mac Seller Servicer Guide is similar to public documents filed with SEC or records and reports of administrative bodies. *See In*

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 9 OF 13 - CASE NO. 11-01445-MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

requires that its loan servicer possess the blank endorsed Note, and charges the servicer with authority and responsibility to collect payments, initiate foreclosure upon borrower's default, and review Plaintiff's loan for possible modification in accordance with investor guidelines.[9] In the event Plaintiffs would have contacted Freddie Mac directly, Freddie Mac would have referred them directly to Chase.[10]

Here, Plaintiffs do not dispute they had full knowledge that Defendant Chase was their loan servicer with whom they were required to negotiate any and all attempts to modify their loan. *See* (1) the letter dated May 31, 2006 from GMAC advising "Effective September 16, 2006, JPMorgan Chase Bank, NA will be your new servicer" [Dkt. 110, *2], (2) the letter dated June 3, 2006 from Chase identifying Chase as the loan servicer [Dkt. 110, *2], (3) the letters dated August 25, 2008 and August 6, 2010 letters from RCO on behalf of Defendant Chase identifying Chase as Plaintiffs' mortgage company [Dkt. 29, ¶ 3.23; Dkt. 110, *6], and (4) the Notice of Sale recorded September 7, 2010 identifying Defendant Chase as the grantor and beneficiary under the Deed of Trust [Dkt. 110, *6].

Based on Plaintiffs' own account, Plaintiffs dealt solely and extensively with Chase in their attempt to work out a loan modification. Dkt. 110, *5. Thus, even if Freddie Mac would have been identified, Plaintiffs still would have been required to deal with Chase, the Note holder, and therefore Plaintiffs cannot show any prejudice or that an alleged failure to identify the note owner constitutes a material violation.

---

*re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 495, Fed. Sec. L. Rep. P 95233, 2009 WL 1393679 (W.D. Wash. 2009) (citing *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1064 n. 7 (9th Cir.2008) and *Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986)). Additionally, other courts have taken judicial notice of the Freddie Mac Servicer Guide. *See In re Thorien*, 06-00081-TLM, 2008 WL 5683488 (Bankr. D. Idaho Nov. 6, 2008); *see also In re Mitchell*, 476 B.R. 33, 48, 2012 WL 2974781 (Bankr. D. Mass. 2012). The Freddie Mac Service Guide, Volume 2 Chapter 51.1, is available at http://www.freddiemac.com/sell/guide/.

[9] The Servicer Guide requires that all promissory notes sold to Freddie Mac be endorsed in blank. *See* Freddie Mac Servicer Guide, Document Custody Procedures Handbook, Chapter 3, Endorsements, available at http://www.freddiemac.com/sell/guide/.

[10] *See* Federal Home Loan Mortgage Corporation's website, found at http://www.freddiemac.com/singlefamily/service/mha_modification.html. ("If you believe you qualify for this program, please contact the company to whom you make your mortgage payments. Delinquent borrowers eligible for assistance will be contacted by their mortgage Servicer. Delinquent borrowers eligible for assistance will be contacted by their mortgage Servicer.").

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S REPLY TO MOTION FOR SUMMARY JUDGMENT – PAGE 10 OF 13 - CASE NO. 11-01445-MJP

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Second, any confusion about who owned the loan did not prejudice them by preventing
2    them from suing to stop or challenge the foreclosure prior to the sale. Nothing prevented them
3    suing both the trustee and servicer prior to the sale to prevent the alleged "wrongful foreclosure."
4    Plaintiffs also alleged NWTS breached its duty of good faith by "transferring beneficiary
5    interest in the Deed of Trust without legal authority to do so." Dkt. 110, * 21. As set forth in
6    Defendants motion for summary judgment, the assignment of deed of trust was executed on
7    behalf of MERS, not NWTS. The Agreement demonstrates Vonnie McElligott is authorized to
8    sign documents on behalf of MERS, which is exactly what she did in this case. Dkt. 100, Ex. 1.
9    Moreover, given that none of the parties relied on the Assignment for its authority to conduct the
10   foreclosure, Plaintiff cannot show any prejudice as a result of the Assignment. Accordingly,
11   Plaintiff, as a matter of law, cannot rely on the assignment to support an allegation of breach of
12   duty of good faith to support a post-sale damages claim for failure of the trustee to materially
13   comply with the DTA.

**E. Plaintiffs cannot raise their claim that the Note is not a negotiable instrument in response to Defendants' Motion for Summary Judgment.**

A "new claim cannot be raised for the first time in response to a summary judgment motion." *Daigre v. Edmonds Comty. Coll.*, 2008 WL 4614286, *4 (W.D. Wash. 2008) (Martinez, J.); *see also Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) (Posner, J.). Here, Plaintiffs raise a new claim—that the Note is not a negotiable instrument. Dkt. 110, *12, Fn 7. At this juncture, Plaintiffs are not entitled to raise this new claim nor should this claim be raised against Defendants NWTS.

**F. Plaintiffs still fail to show any genuine issue of material fact exists to preclude summary judgment on the FDCPA claim against NWTS or RCO.**

As the Court previously determined, "Plaintiffs plausibly allege NWTS and RCO violated § 1692f(6) by trying to foreclose on a debt when it was unaware if the debt was properly

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 11 OF 13 - CASE NO. 11-01445-MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

owed to Chase." Dkt. 88, * 9.[11]

Chase, the Note holder[12] and therefore beneficiary, appointed NWTS successor trustee under Plaintiffs' Deed of Trust on or about September 19, 2008. At all times after September 2008, the terms of the Deed of Trust gave NWTS the right to institute foreclosure proceedings by issuing the notice of default[13] and recording the notice of trustee's sale.[14] *See Amador v. Cent. Mortg. Co.*, C11-414 MJP, 2012 WL 405175 (W.D. Wash. Feb. 8, 2012) (granting summary judgment in favor of NWTS on a claim under §1692f(6) concluding "Even if a foreclosure action was considered a dispossession action under § 1692f(6), NWTS did not violate the FDCPA because the Deed of Trust gave NWTS the right to institute foreclosure proceedings").

Nothing set forth by Plaintiffs refute the key facts that support dismissal of the FDCPA claim: (1) Chase was, in fact, the note holder at all times since June 2006, (2) at all times during the 2010 nonjudicial foreclosure NWTS had been appointed successor trustee by the note holder, (3) the terms of the Deed of Trust authorized NWTS to take the action it did in carrying out the nonjudicial foreclosure on behalf of Chase.

As to RCO, Plaintiffs have not presented a genuine issue of material fact by alleging a "jury could find RCO was acting on behalf of Chase Home, and that sub-servicer Chase Home, had no rights to bring or threaten a nonjudicial foreclosure under the DTA." Dkt. 110, * 22. Again, it is settled, Chase was the note holder since June 26, 2006, was entitled to enforce the Note, and as its agent, RCO was entitled to rely on representations by Chase that it was entitled to enforce the Note. Defendants are entitled to summary judgment on the FDCPA claim.

---

[11] Again, Plaintiffs' attempt to insert the question of ownership into the FDCPA claim. As we know, "ownership…is…immaterial…[b]ecause under Washington law the focus of the analysis is on who is the holder of the note, and thus the beneficiary under the [DTA], Plaintiff's concern should be whether he knows who to pay." *In re Reinke*, BR 09-19609, 2011 WL 5079561 at *11 (Bankr. W.D. Wash. Oct. 26, 2011) (citing *Veal v. American Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 912 (9th Cir. BAP 2011)).

[12] "Chase has now presented a[n] [unrebutted] declaration from Thomas Reardon, a Vice President at JPMorgan Chase Bank, N.A., who swears under penalty of perjury that Chase has held the note, indorsed in blank, since June 26, 2006." Dkt. 86; *See* also, Dkt. 74 ("Chase's business records further reflect that Chase has held the Adjustable Rate Note continuously from [June 26, 2006] until October 2011, when it was delivered to the law offices of Davis Wright Tremaine LLP.")

[13] The Notice of Default is dated August 6, 2010.

[14] The Notice of Trustee's Sale was recorded September 7, 2010. *See* Dkt. 99 and 100, Ex. 4.

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 12 OF 13 - CASE NO. 11-01445-MJP

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**G. Plaintiffs still fail to show any genuine issue of material fact exists to preclude summary judgment on the CPA claim.**

In their Response, Plaintiffs argue that NWTS presumptively violated the CPA based on the *Bain* court's determination that "characterizing MERS as the beneficiary has the capacity to deceive and thus…the first [CPA] element is met." *Bain*, * 117. Plaintiffs also note that, in discussing whether a CPA claim lies against MERS, the court was concerned with "Borrowers who could not get in contact with the actual beneficiary." *Bain*, *118-119.

The issue before the court here is not whether the assignment violated the CPA on the basis that it was done by MERS, the issue is whether McElligott had authority to execute the assignment of deed of trust on behalf of MERS. Indeed, *Bain* recognized the propriety of the use of agents in nonjudicial foreclosures. *Bain*, * 24. The Agreement produced in conjunction with Defendants' motion for summary judgment demonstrates McElligott's authority to sign on behalf of MERS. The inquiry should end there, and summary judgment granted in Defendants' favor.

## II.     CONCLUSION

In view of the foregoing, Defendants respectfully request the Court consider this reply in further support of their Motion for Summary Judgment.

DATED this 12th day of October, 2012.

                        **ROUTH CRABTREE OLSEN, P.S.**

                        _____/s/ Heidi Buck_____
                        Heidi E. Buck, WSBA No. 41769
                        Of Attorneys for Defendants Northwest Trustee Services, Inc., Vonnie McElligott, and Routh Crabtree Olsen, P.S.

DEFENDANTS NWTS, RCO AND MCELLIGOTT'S
REPLY TO MOTION FOR SUMMARY JUDGMENT –
PAGE 13 OF 13 - CASE NO. 11-01445-MJP

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131