THE HON. MARSHA J. PECHMAN
*Noted for Oct. 12, 2012*
*Oral Argument Requested*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVIS MICKELSON, et. ux., <br><br> Plaintiffs, <br><br> vs. <br><br> CHASE HOME FINANCE LLC, et. al., <br><br> Defendants. | NO. C11-01445 MJP <br><br> REPLY TO DEFENDANT NORTHWEST TRUSTEE SERVICES, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

COMES NOW Plaintiffs Danielle and Travis Mickelson and submit the following reply to Defendant Northwest Trustee Services, Inc's. (NWTS) Response to Plaintiff's Cross Motion for Partial Summary Judgment (hereafter "NWTS Response")(dkt. 109) and respectfully request the Court grant their Cross Motion for Partial Summary Judgment ("MCMSJ")(dkt. 103).

## I. INTRODUCTION

The Mickelsons' moved that as a matter of law defendant NWTS violated (1) its duty of good faith toward the Mickelsons; and, (2) Washington's Deed of Trust Act (DTA). The motion does not seek to invalidate the original promissory note or prevent a lawful judicial foreclosure by the persons, if any, who are entitled to foreclose the note and security pursuant to the UCC (adopted

under Title 62A RCW). See e.g., Ch. 61.12 RCW. Contrary to NWTS' contention, this Court should avoid considering the UCC issues NWTS raises, which are immaterial to satisfaction of the RCW 61.24.030-.040. See NWTS' Response (dkt. 109) p. 2:16-17. The question presented is whether NWTS met the requirements of the DTA in initiating and performing a non-judicial foreclosure sale.

## II. EVIDENCE THIS REPLY IS BASED UPON

Plaintiffs' reply is based on pleadings and documents filed herein, including the declarations filed in support of MCMSJ, and exhibits attached thereto, including: dkts. No. 104-107; as well as, evidence proffered in the record for NWTS, Vonnie McElligott and the law firm Routh Crabtree and Olsen, P.S. (collectively "Trustee Defendants")'s motion for summary judgment ("DMSJ") (dkt. 99), including: dkts. No. 100-101 and in support of Plaintiffs' responsive filings, i.e., dkts. No. 111-114; and the Decl. of Stafne in Support of Plaintiffs Reply to NWTS Response ("Decl. of Stafne"), and exhibits A-E thereto, filed herein.

## III. REPLY TO NWTS' STATEMENT OF APPLICABLE FACTS

NWTS contends Chase Home Finance, LLC (Chase Home) became the holder of the note in June, 2006. NWTS' Response (dkt. 109), pp. 13-15. But this is inconsistent with other facts in the record. The letter Chase Home sent to the Mickelsons in June, 2006, stated that Defendant JPMorgan Chase Bank, N.A. (Chase Bank) assumed responsibility for servicing their loan. Dkt. 107 at Ex. C. Chase Home described itself in this letter as a sub-servicer doing "day-to-day" tasks for Chase Bank, the actual servicer. Id.

REPLY TO DEFENDANT NORTHWEST TRUSTEE SERVICES,
INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2

STAFNE LAW FIRM
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

Significantly, NWTS appears to concede in its response that Freddie Mac became the note-owner in April, 2006, before Chase Bank became its servicer in June, 2006.[1] See NWTS Response, at p. 5:1-9. As the Mickelsons have no reason to dispute this, there is no longer any genuine issue of fact that Freddie Mac is the owner of the note. Id. There remains a question of fact as to whether Chase Home or Chase Bank was Freddie Mac's servicer.

The beneficiary declaration purportedly provided NWTS on August 17, 2010, by Chase Bank did not say Chase Home was the actual holder of the note, but said Chase Home was the holder *or was entitled to enforce the note under RCW 62A.3-301.* See dkt. 100 at ¶¶ 4-5 and Ex. 1 (emphasis supplied).[2] Only after the foreclosure sale occurred did NWTS state "Chase was permitted to initiate a non-judicial foreclosure because it held the note endorsed in blank." NWTS Response, p. 2: 16-17. The Mickelsons do not concede this;[3] however, they do not think this factual dispute is material to this motion because their challenge is that the Trustee Defendants violated the DTA; not the UCC.

---

[1] As argued herein, this concession is belated as the identities and addresses of owner of the note and its servicer were required to have been disclosed to Mickelsons by NWTS as part of the non-judicial foreclosure process. See e.g., RCW 61.24.030(8)(l); c.f. RCW 61.24.040(2).

[2] Whether Chase Home is entitled to enforce Freddie Mac's note under the UCC involves factual and legal issues which should be resolved by a court, not by a trustee. Certainly not by a trustee that has power of attorney and contracts to act on behalf of MERS and Chase Home. See Decl. of Shawn Newman (Dkt. 113) at ¶¶ 24, 27-29; see also, RCW 61.24.010(3)-(4); Decl. of Stafne at Ex. D-E. For example, was the note a negotiable instrument under art. 3 or non-negotiable instrument under art. 9? If it was negotiable, did NWTS have proof the note was ever delivered to and received by Freddie Man in April 2008 and then delivered to and received by Chase Bank, NA in June, 2008 and then delivered to and received by Chase Home in June, 2008? Was there a defense, e.g., under RCW 62A.3-305? If the instrument is non-negotiable, then was there a written assignment of note from Freddie Mac to Chase Bank and then to Chase Home? The only proof in the record of such assignment is that provided by Vonnie McElligott, who states she executed an assignment by acting as an agent for MERS to transfer the deed of trust from MHL Funding to Chase Home on Sept. 19, 2008. Dkt. 100 at ¶10.

[3] If Chase Home was the actual servicer or note holder and owner in June 2006, why didn't it provide notice of these facts to the Mickelsons in its June, 2006 letter? Notice of new note owners after a sale is required by ¶ 20 of the deed of trust (DOT) each time the note was transferred. See T. Mickelson decl. (dkt. 106), at Ex. B, ¶ 20. If Chase Home was the actual holder of the note in 2006, why does it qualify its beneficiary declaration to say "it is the actual holder of the note or is entitled to enforce the note under RCW 62A.3-301? And where is any evidence of MHL Funding or MortgageIt delivering or assigning the note to Freddie Mac (depending on whether U.C.C. art. 3 or 9 applies to the note) and Freddie Mac delivering or assigning the note to Chase Home?

NWTS' recitations that it sent a "notice of default" and "notice of sale" in its statement of facts fails to respond to the Mickelson's contention that these documents did not comply with the DTA because they did not identify the name and address of the note owner and its servicer as is required by the DTA and its policies. See e.g., dkt. 100 at ¶¶ 18; Decl. of Stafne at Ex. A-C (notices of default and foreclosure). Similarly, defendants relied on an equivocal "beneficiary statement" stating a conclusion of law regarding Chase Home's right to enforce the note under RCW 62A.3-301 as a basis for allowing the foreclosure in violation of RCW 61.24.030 (7)(a). See Dkt. 100 at ¶¶ 15-17.

## IV. ARGUMENT

### A. RESPONSE TO EVIDENTIARY OBJECTIONS

"Evidence is relevant if it *tends to make the existence of any fact that is material to the determination of an action more or less probable* than it would be without the evidence. ER 401." Lockwood v. A C & S, Inc., 109 Wash.2d 235, 245, 744 P.2d 605 (1987) (emphasis supplied). The declarations offered by Mr. and Mrs. Mickelson, as well as Mr. Paatalo, are relevant evidence regarding the ownership history of the Deed of Trust ("DOT"), promissory note (the "Note"), and servicing rights as well as their transactions and communications relating to the servicing and foreclosure (dual tracking) of the note and DOT. These facts are relevant to proving their CPA, DTA, and FDCPA claims against the trustee defendants.

> Federal Rule of Evidence *702 permits testimony by experts qualified by 'knowledge, skill, expertise, training, or education' to testify* 'in the form of an opinion or otherwise' based on "scientific, technical, or other specialized knowledge' *if that knowledge will* 'assist the trier of fact to understand the evidence or to determine a fact in issue."

Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007)(emphasis supplied).

In asking this court to exclude the expert testimony of Mr. Paatalo, Defendant Trustees rely on Stilwell v. Smith & Nephew, Inc., supra; In Re Norwood, 10-8443-PWB, 2010 WL 4642447 (Bankr. N.D. Ga. 2010);[4] Dkt. 109, p. 4:14-20, and Hanson v. Wells Fargo Bank N.A., 2011 U.S. Dist. LEXIS 57599. Stilwell stands for exactly the opposite result than NWTS cites it for. In Stilwell, after reviewing Fed. R. Evid. 702's "twin concerns of 'reliability' [***] and 'helpfulness[,]'" the Ninth Circuit found the district court had "mingled the analysis required" under Rule 702 and Fed. R. Civ. Pro. 56. Stilwell at 1192. Therefore, the Appeals Court rejected the District Court's order striking the declaration. Id., at 1193. In a motion for summary judgment, an expert's testimony may not be excluded simply because it "does not result in a triable issue of fact." Id.

NWTS' disparagement of forensic loan audits generally does not serve as grounds to exclude Mr. Paatalo's testimony. Dkt. 109, p. 9-15. In Hanson, Judge Zilly stated, "[f]or purposes of the present motion, however, the Court presumes that the Audit Report is legitimate." Hanson v. Wells Fargo Bank N.A., supra at *8, FN 6 (May 26, 2011) (report was admissible, albeit Court found opinions not credible). Here, NWTS does not dispute the validity of any opinion rendered by Mr. Paatalo; e.g., they do not dispute whether the loan was securitized; that the endorsement was "robo-signed," and they even concede Freddie Mac was the note owner. Dkt. 109, 4-5.

## B. REPLY TO LEGAL STANDARD

Incumbent in the Summary Judgment standard (see NWTS Response at 6:1-6) is this Court's determination of what facts are "material" under applicable substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering the requirements of the DTA, it "must be construed in favor of borrowers because of the relative

---

[4] Apparently, In Re Norwood is an unpublished case as counsel for the Mickelsons were unable to locate on LEXIS.

REPLY TO DEFENDANT NORTHWEST TRUSTEE SERVICES,
INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5

STAFNE LAW FIRM
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales." Udall v. T.D. Escrow Servs., Inc., 159 Wash.2d 903, 915-16, 154 P.3d 882 (2007).

## C. REPLY TO RESURRECTION ARGUMENT

NWTS claims this Court should follow its previous interlocutory orders and apply external authority to support their assertions, rather than follow Bain, or its construction of the DTA. See dkt. 109 at *6:17-22; Bain v. Metro. Mortg. Grp., 175 Wash.2d 83. ___ P.3d ___ (2012). Mickelsons disagree with holding to interlocutory orders and applying non-Washington precedent to Washington's non-judicial foreclosure process. See dkt. 94 (pending motion to reconsider and vacate interlocutory orders); dkt. 110 (Mickelson Response).

Mickelson's MCMSJ concerns only NWTS' compliance with the DTA. See dkt. 103 at **8-9. With regard to the statutory issues arising under RCW 61.24.030(7)(a) and (8)(*l*), the Washington Supreme Court stated in Bain:

> Critically under our statutory system, a trustee is not merely an agent for the lender or the lender's successors. Trustees have obligations to all of the parties to the deed, including the homeowner. [***] Among other things, "the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust" and shall provide the homeowner with "the name and address of the owner of any promissory notes or other obligations secured by the deed of trust" before foreclosing on an owner-occupied home. RCW 61.24.030(7)(a), (8)(l).

Bain, at 93-4. NWTS is asking for judicial power to resolve UCC issues with regard to the enforcements of promissory notes under RCW 62A.3-301. This is not the equivalent of determining simply whether someone actually holds the promissory note. This contention involves complex legal and factual issues, which must be resolved by someone other than an interested party, like Susan Massie and/or Vonnie McElligott. Mickelsons contend resolving such issues is

outside the authority the legislature bestowed upon a Trustee. See, e.g., In re Veal, 450 B.R. 897, 912 (2011)(for a discussion as to when and whether a person who owns a note is entitled to enforce it under U.C.C. art. 3 and art. 9); RCW 61.24.030.

      Bain rejected several cases stating they were not helpful or instructive to the issue of the meaning of Washington's Non-Judicial Foreclosure Statute or parties' capability to contract around it. Bain at 105-06 (We do not find Cervantes instructive, we do not find Horvath helpful). The Bain Court also indicated that it did not find UCC precedent, like In re Veal, very helpful. Bain at 105-06. In re Veal concerned an appeal of a bankruptcy court's order lifting a stay so as to allow a person to commence a foreclosure, stating in that context (under the U.C.C.) borrowers only need know where to pay their obligations, not the identity of the note owners. In re Veal, 450 B.R. 897, 905 (2011). But the Bain court identified both the borrower and note owner as "stakeholders," and indicated the legislature determined the borrower and note owner should have knowledge about and access to one another, rather than just the servicer, during the non-foreclosure process set forth in the DTA. See Bain, at note 7.[5]

      The Bain decision intimates that such cases may be helpful under "another provision of Title 61 RCW" specifically Ch. 61.12 RCW. Bain at 105. That Ch. 61.12 RCW allows:

> [w]hen default is made in the performance of any condition contained in a mortgage, the mortgagee or his or her assigns may proceed in the superior court of the county where the land, or some part thereof, lies, to foreclose the equity of redemption contained in the mortgage.

---

[5] Another reported case from this Court the Supreme Court declined to follow was Vawter v. Quality Loan Serv. Corp., 707 F. Supp. 2d 1115 (2011). See Bain, at *109. NWTS erroneously cites Vawter for the proposition that the Mickelsons cannot bring a claim for a wrongful non-judicial foreclosure; but Vawter is not applicable here because NWTS has already foreclosed. Compare NWTS Response at *8 (citing Vawter at 1123)(trustee's sale was discontinued) with, dkt. 107 at ¶¶ 16 (trustee sale occurred).

RCW 61.12.040; see also, RCW 61.12.120 (prohibition of concurrent actions); Bain at 109 ("nothing herein should be interpreted as preventing the parties to proceed with judicial foreclosures").

The logical supposition of Bain is that if a non-judicial foreclosure cannot be commenced due to irregularity, then a mortgagee or its agents may proceed with a foreclosure in the superior court. RCW 61.12.040. This is justifiable and preferable, where: the DTA is not strictly complied with; provides less opportunity to discover and prevent wrongful foreclosures (which may be void); and, therefore, could destabilize Washington's land title system. Cox v. Helenius, 103 Wash.2d 383, 389, 693 P.2d 683 (1985).

Here, the facts regarding NWTS' violations of the DTA as claimed in the MCMSJ are uncontroverted. NWTS enforced a four party deed of trust. It accepted an equivocal beneficiary statement as a basis for bringing a non-judicial foreclosure in violation of RCW 61.24.030(7)(a). NWTS failed to identify the note owner and servicer to the borrower before beginning the foreclosure process or during that process in violation of RCW61.24.030 (8)(*l*), RCW 61.24.040(2), and acted as a beneficiary in appointing itself trustee in violation of RCW 61.24.020.

Bain stands for the proposition that the Washington legislature put detailed procedures and protections in place and that Washington courts will not allow parties to vary such procedures:

> The legislature has set forth in great detail how nonjudicial foreclosures may proceed. We find no indication the legislature intended to allow the parties to vary these procedures by contract. We will not allow waiver of statutory protections lightly. MERS did not become a beneficiary by contract or under agency principals.

Bain at 108.[6] NWTS's contentions that this motion is about the UCC misses the mark. See dkt. 109 at *6:17-22, 13 at FN 6. Bain did not say the UCC controls; rather, the Court agreed only that statutory interpretation of the DTA "should be guided by these UCC definitions". See Bain at 104. The Court then looks to the definition of "holder" under RCW 62A.1-201 to give meaning to the term holder in RCW 61.24.005. Id. In light of Bain's construction analysis, NWTS' assertions at FN 6 and page 11 of its response become a perplexing fallacy, i.e., that Bain stands for a wholesale import of the UCC into the DTA:

> It is NWTS' position that the term "owner" is misused as a synonym for the term "holder" in RCW 61.24.030(7)(a). The terms are not synonymous. *In re Veal*, 450 B.R. 897, 912 ("one can be an owner of a note without being' a holder."). ***The term "owner" is not defined in Articles 3 or 9 of the UCC, or in the Deed of Trust Act.*** RCW 62A.3-103 (negotiable instruments); RCW 62A.9A-102 (secured transactions); RCW 61.24.005. Rather, as discussed herein, under both the DTA's definition of beneficiary and the U.C.C., the note holder is the party entitled to enforce the Note and Deed of Trust through nonjudicial foreclosure. *See* RCW 61.24.005(2) and RCW 62A.3-301.

NWTS Response at FN 6. NWTS's assertions as to meaning of "owner" misapply well-established principals of statutory construction with regard to the DTA. See e.g., Cox v. Helenius, 103 Wash.2d 383, 387-8, 693 P.2d 683 (1985); see also, Bain, at 93-4 ("We are required, when possible, to give effect to every word, clause and sentence of a statute. [***] No part should be deemed inoperative or superfluous unless the result of obvious mistake or error [***]"). This federal Court should not accept NWTS' invitation to conclude the legislature and the Washington Supreme Court have said "owner," when they should have said "holder." If this Court believes that both the state legislature and Supreme Court has erred, then it would seem preferable to certify

---

[6] NWTS's also conflates "ignoring" with "not deciding" this issue of note splitting. See Bain at 112-113, (we do not know whether or not there has been a split of the obligation from the security instrument, we have no occasion to consider this remedy)

such issues to the Washington Supreme Court for resolution. See RCW 2.60.020 (Federal Court Local Law Certificate Act).

**D. As a Matter of Law, NWTS was Not Entitled to Rely on the Beneficiary Declaration Because it did not Unequivocally State Chase Home Was the Actual Holder of the Note.**

Trustee Defendants' assert "NWTS was entitled to rely on the Beneficiary Declaration and therefore carry out the foreclosure as successor trustee for Defendant Chase." NWTS's assertion that it was "entitled to rely on" refers to the language under RCW 61.24.030(7). Their argument fails because the declaration was equivocal and relies, in part, on their flawed UCC interpretation and statutory construction. See Supra at § IV(C)(3)

"Sufficient proof" may be: "a declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust." RCW 61.24.030(7)(a). To constitute sufficient proof, the beneficiary must state unequivocally under oath that it is the "actual holder" of the note or obligation, and the trustee must not have violated its duty of good faith. RCW 61.24.030(7)(b). Here, the Beneficiary Declaration provided by Chase Home, the loan's sub-servicer, to NWTS did not meet this standard because it states: "Chase Home Finance LLC is the actual holder of the promissory note or other obligation evidencing the above referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation." Dkt. 100 at Ex. 3 (emphasis supplied). The use of the clause "or otherwise entitled to enforce such obligation" renders the statement made by Susan Massie equivocal because no one knows whether she means: (a) Chase Home actually holds the note, or (b) Chase Home does not actually hold the note, but is entitled to enforce the note under U.C.C. Article 3. Id.

**E. As a matter of law, NWTS Did Not Issue Proper Notices.**

Here, review of NWTS' notices sent to the Mickelsons establish NWTS did not disclose the name and address of the note owner and servicer as is required by RCW 61.24.030(8)(*l*) and RCW 61.24.040(2). See Dkt. 100 at ¶ 10; Decl. of Stafne at Ex. A-C.

### F. NWTS' Violation of its Duty of Good Faith to the Mickelsons.

NWTS attempts to defend the breach of their duty of good faith via its violations of the DTA (see generally, MCMSJ) based on the contention it followed the law the way NWTS believes the legislature intended to write the statute; not the way the statute is written. Dkt. 109, FN 6.[7] If NWTS believed the law contained mistakes, it should have addressed those contentions to the legislature; not completed a dubious foreclosure of the Mickelsons' home based on notices which did not comply with the statute. Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wash.2d 560, 567-68, 575, 276 P.3d 1277 (2012) (A lawful foreclosure sale must comply with the timing and notice obligations of RCW 61.24.040.)

It is undisputed NWTS and the other trustee defendants are "associated business partners and institutions" with MERS. Decl. of McElligott (dkt. 100), at Ex 1 (agreement between MERS, MERSCORP, RCO, Chase Home Financial, LLC, and NWTS); Decl. of Stafne at Ex D-E ("Sister Law Firm" & "allied company"). The Washington's Supreme Court stated:

---

[7] NWTS admits they did not comply with several provisions of the DTA as written, see e.g., RCW 61.24.030(8)(*l*) and RCW 61.24.040(2). Moreover NWTS does not attempt to present any evidence that it attempted to act in good faith. Rather, NWTS attempts to minimize what constitutes "good faith" and argues that the Mickelsons have not shown NWTA has not "materially" complied with the DTA. Dkt. 109, pp. 8:22-9:4; 9:5-17. The Supreme Court has stated otherwise saying such provision is "critical" under the non-judicial system:
> Critically under our statutory system ... the trustee shall have proof that the beneficiary is the *owner* of any promissory note or other obligation secured by the deed of trust" and shall provide the homeowner with "the name and address of the ***owner*** of any promissory notes or other obligations secured by the deed of trust" before foreclosing on an **owner**-occupied home. RCW 61.24.030(7)(a), (8)(l).

Bain, at 93-4 (emphasis supplied); see also, Albice 174 Wash.2d at 567-68 (notice provisions extensively spelled out and are critical under policies of the act, and then goes further to override waiver doctrine due to defects).

> The question, to some extent, is whether MERS and its ***associated business partners and institutions*** can both replace the existing recording system established by Washington statutes and still take advantage of legal procedures established in those same statutes [***].

Bain, at 98 (emphasis supplied). The non-judicial foreclosure of a four-party DOT naming MERS as beneficiary so as to prevent disclosure of the name and address of the true note owner to a homeowner violated NWTS' duty of good faith to follow the DTA foreclosure process, not MERS system.

> Critics of the MERS system point out that after bundling many loans together, it is difficult, if not impossible, to identify the current holder of any particular loan, or to negotiate with that holder. While not before us, we note that this is the nub of this and similar litigation and has caused great concern about possible errors in foreclosures, misrepresentation, and fraud. Under the MERS system, questions of authority and accountability arise, and determining who has authority to negotiate loan modifications and who is accountable for misrepresentation and fraud becomes extraordinarily difficult. The MERS system may be inconsistent with our second objective when interpreting the deed of trust act: that "the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure." Cox, 103 Wash.2d at 387 (citing Ostrander, 6 Wash. App. 28).

Bain, at 97-98. This case presents those facts to this Court, which validate the Supreme Court's observation that the MERS system is inconsistent with the second policy of the DTA by assuming borrowers do not need to know the identity and contact information for both the note owner and servicer.

## V. CONCLUSION

Plaintiffs respectfully request the Court grant their Partial Motion for Summary Judgment.

///

///

///

DATED this 12th day of October, 2012 at Arlington, WA.

          Respectfully Submitted,

          STAFNE LAW FIRM

          s/ Scott E. Stafne
          Scott E. Stafne, WSBA #6964

          s/ Andrew J. Krawczyk
          Andrew J. Krawczyk, WSBA #42982

          s/ Jocelynne R. Fallgatter
          Jocelynne R. Fallgatter, WSBA #44587
          239 N. Olympic Ave
          Arlington, WA 98223
          Phone: (360) 403-8700
          Fax: (360) 386-4005

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on October 12, 2012, I caused to be electronically filed, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred B. Burnside:  fredburnside@dwt.com
Rebecca J. Francis:  RebeccaFrancis@dwt.com
Heidi E. Buck:  hbuck@rcolegal.com
Andrew Gordon Yates:  yatesa@lanepowell.com
John S. Devlin, III:  devlinj@lanepowell.com
Erin McDougal Stines:  erin.stines@fnf.com

DATED this 12th day of October, 2012 at Arlington, WA.

/s/ *Scott E. Stafne*
Scott E. Stafne, WSBA #6964
Stafne Law Firm