

**FILED**

JUN 18 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRAVIS MICKELSON; DANIELLE H MICKELSON, and the marital community thereof,<br><br>              Plaintiffs - Appellants,<br><br> v.<br><br>CHASE HOME FINANCE LLC, an unknown entity; JPMORGAN CHASE BANK NA, a foreign corporation; MORTGAGE ELECTRONIC REGISTRATION SERVICE, INC., a foreign corporation; NORTHWEST TRUSTEE SERVICES INC., a domestic corporation; CHICAGO TITLE, an unknown corporation; ROUTH CRABTREE OLSEN PS, a domestic Personal Services Corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, a corporation; VONNIE MCELLIGOTT; JEFF STENMAN; RHEA S PRE,<br><br>              Defendants - Appellees. | No. 13-35008<br><br>D.C. No. 2:11-cv-01445-MJP<br><br>MEMORANDUM[*] |

Appeal from the United States District Court

---

      [*]      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted May 14, 2014
Seattle, Washington

Before: O'SCANNLAIN, KLEINFELD, and BERZON, Circuit Judges.

Travis and Danielle Mickelson appeal the district court's rejection of various claims — some for failure to state a claim, others on summary judgment — arising from the non-judicial foreclosure of their home. We affirm.

**I.** To the extent the Mickelsons seek to unwind the sale by seeking quiet title or injunctive relief, their failure to assert a claim prior to the trustee's sale waives those objections under *Plein v. Lackey*, 67 P.3d 1061, 1066–67 (Wash. 2003). They received notice of the right to enjoin the sale, had constructive knowledge of their defenses, and failed to assert them prior to the sale. *See, e.g.*, *Frizzell v. Murray*, 313 P.3d 1171, 1174 (Wash. 2013).[1] Enforcing waiver here is equitable, because the Mickelsons "had knowledge of how to enjoin the sale and failed to do so through [their] own actions," without being lulled into complaisance "due to the actions of a third party." *Id.* at 1175. And it is consistent with the DTA's policies. *Id.* We need not address the Mickelsons' contention that the DTA

---

[1] The one exception — the Mickelsons' claim that Freddie Mac unlawfully received the trustee's deed — is implausible for failure to allege prejudice, as discussed below. *See infra* Part II.A.4.

2

"does not apply," because the factual predicate of that argument is baseless: the sale *did* comply with the requisites of the DTA, as discussed below. *See infra* Part II.A.

**II.** To the extent the Mickelsons seek damages based on the trustee's alleged failure to comply with the DTA or on the defendants' alleged violations of Washington's Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.020, those claims are not waivable. *See* Wash. Rev. Code § 61.24.127(1)(b)–(c). None of those claims, however, has merit.

**A.** The Mickelsons contend that the trustee, Northwest Trustee Services ("NWTS"), and various of its employees failed to comply with Washington's Deeds of Trust Act ("DTA").

**1.** The Mickelsons assert that NWTS's relationship with Chase and the Mortgage Electronic Registration System, Inc. ("MERS") disqualify NWTS from serving as trustee. *See* Wash. Rev. Code § 61.24.010(3)–(4). Although recent amendments to the DTA have lessened the duty of care a trustee owes the parties to a non-judicial foreclosure, *see* 2009 Wash. Legis. Serv. ch. 292, § 7 (S.B. 5810) (West) (codified at Wash. Rev. Code § 61.24.010(4)), NWTS's signing agreement with MERS and its limited power of attorney for Chase Home Finance LLC ("Chase") do not breach even the more rigorous pre-amendment standard. Those

3

agreements did not compromise NWTS's capacity to exercise its discretion as trustee. *See Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1190 (Wash. 2013); *see also Cox v. Helenius*, 693 P.2d 683, 687 (Wash. 1985) (tolerating the appointment of a beneficiary's lawyer as trustee absent "an actual conflict of interest"). And the Mickelsons offer no evidence that NWTS shares any obligation that Routh Crabtree Olsen, P.S. ("RCO") might owe the beneficiary in its capacity as legal counsel to Chase.

**2.** The Mickelsons allege that NWTS failed to secure adequate proof that Chase owned the note. *See* Wash. Rev. Code § 61.24.030(7). Chase actually held the promissory note during the relevant period. For this reason, even if the Mickelsons were correct that Chase's beneficiary declaration was inadequate under Washington Revised Code § 61.24.030(7)(a), any such failing could not have prejudiced them, *see, e.g.*, *Udall v. T.D. Escrow Servs., Inc.*, 154 P.3d 882, 889–90 (Wash. 2007). In any case, the declaration was adequate. Its reference to a provision of Washington's Uniform Commercial Code is consistent with the Washington Supreme Court's use of that same provision to interpret the meaning of the word "holder" in the DTA. *See Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 44 (Wash. 2012).

4

**3.** The Mickelsons allege that NWTS failed to identify the owner of the note in its communications with the Mickelsons, as the DTA requires. *See* Wash. Rev. Code §§ 61.24.030(8)(l), 61.24.040(2). In its communications with the Mickelsons, NWTS identified Chase. Proof of status as the "actual holder" of the note is sufficient to demonstrate ownership under the DTA. *See* Wash. Rev. Code § 61.24.030(7)(a). Even if proof that Chase held the note established only a presumption of ownership, the Mickelsons' reference to an ambiguous interrogatory answer and a declaration would not be sufficient to rebut it. NWTS's communications with the Mickelsons thus complied with the DTA.

**4.** The Mickelsons allege that NWTS conducted the trustee's sale improperly. But receipt of the trustee's deed by Federal Home Loan Mortgage Corp. ("Freddie Mac"), or NWTS's alleged acceptance of a credit bid from it, in no way prejudiced the Mickelsons. Their objection to NWTS's conveyance of the deed to Freddie Mac is thus not actionable. *See Udall*, 154 P.3d at 889–90.

In sum, we reject the Mickelsons' DTA-based claims against NWTS and its employees, as well as any claim against them under Washington's CPA, Wash. Rev. Code § 19.86.020, premised on violation of the DTA.

**B.** The Mickelsons bring CPA claims for damages against MERS, Freddie Mac, and Chase. But they do not plausibly allege that any of those defendants

5

caused them any injury, which is required to prove a CPA claim. *See e.g.*, *Bain*, 285 P.3d at 49. As to MERS, it did not purport to serve as beneficiary at the time of the foreclosure, and the Mickelsons do not allege that they contacted it to re-negotiate their mortgage. As to Freddie Mac, it merely received the trustee's deed. Although the Mickelsons also allege that Freddie Mac "owned" the note, they do not specify what they mean by "ownership" and do not assert that Freddie Mac ever held the note. As to Chase, it actually held the note and was thus authorized to initiate the non-judicial foreclosure process, as noted.

**C.** The Mickelsons allege that NWTS, RCO, and NWTS's employees engaged in "robo-signing" in violation of the CPA. Although falsely dating notarized documents in a non-judicial foreclosure constitutes "an unfair or deceptive act or practice" under the CPA, *see Klem*, 295 P.3d at 1191, the Mickelsons offer no evidence that such false dating occurred here. The disparity between the date on which a document becomes effective and the date on which it was notarized does not indicate that it was signed on one day and notarized on another.

**III.** The district court dismissed the Mickelsons' claims for breach of contract, unconscionability, and violation of Washington's Criminal Profiteering Act as waived under *Plein*, 67 P.3d at 1066–67, finding that none fell within the

6

four exceptions to waiver codified in the DTA. *See* Wash. Rev. Code § 61.24.127. Whether the statutory exceptions to waiver are exclusive is an open question under Washington law, *see Frizzell*, 313 P.3d at 1175, which we decline to answer here. Instead, we affirm the dismissal of the Mickelsons' contract and criminal profiteering claims for failure to plausibly allege any injury. *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001).

**IV.** NWTS and its employees did not violate the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6)(A), by conducting a non-judicial foreclosure at Chase's behest. Chase was the beneficiary and thus empowered to initiate non-judicial foreclosure under Washington's DTA. Nor did RCO violate the FDCPA by sending the Mickelsons letters on behalf of Chase, advising them of alternatives to foreclosure. RCO acted as Chase's agent, a relationship the DTA approves. *See Bain*, 285 P.3d at 45.

**V.** If the Mickelsons harbor any other objections to the district court's resolution of their case — including, for example, any objection regarding the dismissal of all claims against Chicago Title Insurance Company or JPMorgan Chase Bank, N.A. — they have forfeited those objections by failing to raise them in a cognizable manner in their opening brief. *See, e.g.*, *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1228 n.2 (9th Cir. 2013).

7

**VI.** The Mickelsons' motion to certify to the Washington Supreme Court a question concerning the validity of the DTA under the Washington Constitution is **DENIED.** The Mickelsons first raised that question in their motion for certification. They have thus forfeited the claim for failure to assert it both before the district court and in their briefing on appeal. *See, e.g.*, *Hayes*, 736 F.3d at 1228 n.2; *Beets v. Cnty. of L.A.*, 669 F.3d 1038, 1043 (9th Cir. 2012). Answering that question is thus unnecessary to the resolution of this appeal.[2]

**AFFIRMED.**

---

[2] Because we need not rely on a party's motion to take judicial notice of matters of public record, *see* Fed. R. Evid. 201(c)(1), the Mickelsons' motion to take judicial notice is **DENIED** as unnecessary.

8